## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**       **2. PLEASE TYPE OR PRINT**       **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| Nino Martinenko, on behalf of herself and others similarly situated,<br><br>Plaintifff,<br><br>-against-<br><br>212 Steakhouse Inc., and<br>Nikolay Volper,<br><br>Defendants. | Southern District of New York | Hon. Jennifer L. Rochon |

| | District Court or Agency | |
|---|---|---|
| Date the Order or Judgment Appealed from was Entered on the Docket:<br>9/25/24 Judgment & 11/14/24 Final Judgment | District Court Docket No.:<br>1:22-cv-00518JLR-RWL | |
| Date the Notice of Appeal was Filed:<br><br>12/11/2024 | Is this a Cross Appeal?<br>☐ Yes   ☒ X☐ No | |

| **Attorney(s) for Appellant(s):**<br>☐ Plaintiff<br>☒ X☐ Defendant | Counsel's Name:<br>Jonathan Greenbaum | Address:<br>Coburn Greenbaum & Eisenstein PLLC<br>1710 Rhode Island Avenue<br>Suite 200<br>Washington DC 20036 | Telephone No.:<br>202-744-5003 | Fax No.:<br>866-561-9712 | E-mail:<br>jg@coburngreenbaum.com |
|---|---|---|---|---|---|
| **Attorney(s) for Appellee(s):**<br>☒ X Plaintiff<br>☐ Defendant | Counsel's Name:<br>Denise Schulman | Address:<br>Joseph & Kirschenbaum LLP<br>32 Broadway Suite 601<br>New York, NY 10004 | Telephone No.:<br>212-688-5640 | Fax No.:<br>212-981-9587 | E-mail:<br>denise@jhllp.com |

| Has Transcript Been Prepared?<br><br>N/A<br><br>(Summary Judgment) | Approx. Number of Transcript Pages:<br><br>N/A | Number of Exhibits Appended to Transcript:<br><br>N/A | Has this matter been before this Circuit previously? ☐ Yes  ☒ X No<br><br>If Yes, provide the following:<br><br>Case Name:<br><br>2d Cir. Docket No.:          Reporter Citation: (i.e., F.3d or Fed. App.) |
|---|---|---|---|

**ADDENDUM "A":** COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

**ADDENDUM "B":** COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

### PART A:  JURISDICTION

| 1. Federal Jurisdiction | 2. Appellate Jurisdiction |
|---|---|
| ☐ U.S. a party          ☐ Diversity<br><br>☒ X Federal question          ☐ Other (specify): _____<br>    (U.S. not a party) | ☒ X Final Decision          ☐ Order Certified by District Judge (i.e., Fed . R. Civ. P. 54(b))<br><br>☐ Interlocutory Decision Appealable As of Right<br><br>☐ Other (specify): _____ |

### IMPORTANT.  COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.

**FORM C** (Rev. October 2016)

**PART B: DISTRICT COURT DISPOSITION** (Check as many as apply)

| 1. Stage of Proceedings | 2. Type of Judgment/Order Appealed | 3. Relief |
|---|---|---|
| [X] Pre-trial<br>[ ] During trial<br>[ ] After trial | [ ] Default judgment<br>[ ] Dismissal/FRCP 12(b)(1) lack of subject matter juris.<br>[ ] Dismissal/FRCP 12(b)(6) failure to state a claim<br>[ ] Dismissal/28 U.S.C. § 1915(e)(2) frivolous complaint<br>[ ] Dismissal/28 U.S.C. § 1915(e)(2) other dismissal | [ ] Dismissal/other jurisdiction<br>[ ] Dismissal/merit<br>[ ] Judgment / Decision of the Court<br>[X] Summary judgment<br>[ ] Declaratory judgment<br>[ ] Jury verdict<br>[ ] Judgment NOV<br>[ ] Directed verdict<br>[X] Other (specify): Motion to Decertify Class Action | [✓] Damages:<br>  Sought: $ _____<br>  Granted: $ _____<br>  Denied: $ _____<br>[✓] Judgment : $251,269.84 | [ ] Injunctions:<br>[ ] Preliminary<br>[ ] Permanent<br>[ ] Denied |

**PART C: NATURE OF SUIT** (Check as many as apply)

| 1. Federal Statutes | | | 2. Torts | 3. Contracts | 4. Prisoner Petitions |
|---|---|---|---|---|---|
| [ ] Antitrust<br>[ ] Bankruptcy<br>[ ] Banks/Banking<br>[ ] Civil Rights<br>[ ] Commerce<br>[ ] Energy<br>[ ] Commodities<br>[ ] Other (specify): _____ | [ ] Communications<br>[ ] Consumer Protection<br>[ ] Copyright [ ] Patent<br>[ ] Trademark<br>[ ] Election<br>[ ] Soc. Security<br>[ ] Environmental | [ ] Freedom of Information Act<br>[ ] Immigration<br>[X] Labor<br>[ ] OSHA<br>[ ] Securities<br>[ ] Tax | [ ] Admiralty/<br>[ ] Maritime<br>[ ] Assault /<br>[ ] Defamation<br>[ ] FELA<br>[ ] Products Liability<br>[ ] Other (Specify): | [ ] Admiralty/<br>[ ] Maritime<br>[ ] Arbitration<br>[ ] Commercial<br>[ ] Employment<br>[ ] Insurance<br>[ ] Negotiable Instruments<br>[ ] Other Specify | [ ] Civil Rights<br>[ ] Habeas Corpus<br>[ ] Mandamus<br>[ ] Parole<br>[ ] Vacate Sentence<br>[ ] Other |

| 5. Other | 6. General | 7. Will appeal raise constitutional issue(s)? |
|---|---|---|
| [ ] Hague Int'l Child Custody Conv.<br>[ ] Forfeiture/Penalty<br>[ ] Real Property<br>[ ] Treaty (specify): _____<br>[ ] Other (specify): _____ | [ ] Arbitration<br>[ ] Attorney Disqualification<br>[ ] Class Action<br>[ ] Counsel Fees<br>[ ] Shareholder Derivative<br>[ ] Transfer | [ ] Yes  [X] No<br><br>Will appeal raise a matter of first impression?<br><br>[ ] Yes  [X] No |

1. Is any matter relative to this appeal still pending below? [X] Yes, specify: _____Attorneys Fees_____ [ ] No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

    (A)    Arises from substantially the same case or controversy as this appeal? [ ] Yes  [X] No

    (B)    Involves an issue that is substantially similar or related to an issue in this appeal? [ ] Yes  [X] No

If yes, state whether □ "A," or □ "B," or □ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| Name of Appellant: | | | |
| Date:  12/13/24 | | Signature of Counsel of Record: | |

# NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.

2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.

3. Pay the$505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

    **PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C** (Rev. December 2016)

# *ADDENDUM A*

## CIVIL APPEAL PRE-ARGUMENT
## STATEMENT (FORM C)

### Nature of the Action and Result Below

This was a Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") complaint for minimum wage violations (tip credit), and overtime violations. State claims were also asserted for spread of hours and Wage Statement and Notice penalty claims under New York Labor Law Section 195. The district court exercised supplemental jurisdiction over the New York claims. There was a conditional collective action certification of the FLSA claims for minimum wage and overtime. Only one former employee of Defendant opted-in to the FLSA collective action. The New York Labor Law claims were subsequently certified as a Fed. R. Civ. P. 23 class.

Defendants filed a Motion to Decertify the Class and also to dismiss the NYLL wage notice and wage statement penalty claims for lack of Article III standing. Plaintiffs moved for summary judgment on the overtime, minimum wage (tip credit) and spread of hours claims, as well as the NYLL Section 195 penalty claims.

The Court granted Plaintiffs' motion for summary judgment on Plaintiff Martineko's claims and the Class claims under New York Labor Law for the tip credit minimum wage claim, overtime and spread of hours including damages, but denied Martinenko's summary judgment and the Class claims for NYLL statutory penalties under NYLL Section 195. The Court dismissed Class Representative Huk's New York Labor Law 195 claim for statutory penalties for lack of Article III standing. Thereafter, the Court granted Plaintiff Martinenko's and the Class's motion to voluntarily dismiss their remaining NYLL Section 195 penalty claims. In so doing, the Judge also denied Defendants' renewed Motion to Decertify the class. The Court then issued a final judgment. Neither the final judgment nor the judgment contains any mention of the FLSA claims.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

NINO MARTINENKO, on behalf of herself
and others similarly situated,

                      Plaintiffs,                 22 **CIVIL** 0518 (JLR)

       -against-                      **JUDGMENT**

212 STEAKHOUSE, INC., and NIKOLAY
VOLPER,

                      Defendants.

-------------------------------------------------------------------X

      It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Opinion and Order dated September 24, 2024, the Court adopts the R&R in its entirety. Defendants' motion to decertify the Rule 23 class is DENIED. Plaintiffs' motion for summary judgment is GRANTED in part and DENIED in part. Defendants cross-motion for summary judgment is GRANTED in part and DENIED in part. Specifically, the Court orders that: 1. The class is awarded unpaid minimum wages under the NYLL without a tip credit allowance in the total amount of $96,608.35; 2. The class is awarded unpaid overtime wages under the NYLL without a tip credit allowance in the total amount of $2,530.75; 3. The class is awarded unpaid spread-of-hours premiums under the NYLL where applicable in the total amount of $2,388; 4. The class is awarded liquidated damages under the NYLL in the total amount of $101,527.10; 5. Defendant Volper is held individually liable for damages under the FLSA and NYLL; 6. Plaintiff Huk's NYLL Section 195 wage notice and statement claims be dismissed for lack of standing; 7. Summary judgment is denied on the rest of the class members' NYLL Section 195 wage notice and wage statement claims; 8. The parties is ordered to meet and confer

regarding next steps for addressing individualized injury with respect to the unnamed class

member Section 195 claims; and 9. Prejudgment interest awarded from June 18, 2019, at a rate

of 9% on the total unpaid wages of $101,527.10 to the entry of the judgment in the amount of

$48,215.64.

**Dated:** New York, New York
September 25, 2024

**DANIEL ORTIZ**

**Acting Clerk of Court**

BY:

**Deputy Clerk**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NINO MARTINENKO, on behalf of               CASE NO. 22 CV 518 (JLR)
herself and others similarly situated,

        Plaintiff,

    v.

212 STEAKHOUSE, INC., and
NIKOLAY VOLPER,

        Defendants.
------------------------------------------------------------x

## [PROPOSED] JUDGMENT

It is hereby **ORDERED, ADJUDGED, AND DECREED**, that the Clerk of Court shall enter judgment as follows:

1.    Pursuant to the Court's Opinion and Order dated September 24, 2024, judgment shall be entered against Defendants 212 Steakhouse, Inc. and Nikolay Volper, jointly and severally, and in favor of the class in the total amount of $251,269.84 as follows: i. The class is awarded unpaid minimum wages under the NYLL without a tip credit allowance in the total amount of $96,608.35; ii. The class is awarded unpaid overtime wages under the NYLL without a tip credit allowance in the total amount of $2,530.75; iii. The class is awarded unpaid spread-of-hours premiums under the NYLL where applicable in the total amount of $2,388; iv. The class is awarded liquidated damages under the NYLL in the total amount of $101,527.10; v. Prejudgment interest is awarded from June 18, 2019 to September 25, 2024, at a rate of 9% on the total unpaid wages of $101,527.10 in the amount of $48,215.64. The judgment of $251,269.84 shall be allocated among the Class Members as set forth in Exhibit A to this Judgment.

2.    If the judgment is not entirely paid within 90 days of judgment, or 90 days after the expiration of time to appeal and no appeal is then pending, whichever is later, the total amount of

1

judgment shall automatically increase by 15 percent. The Court also awards post-judgment interest pursuant to 28 U.S.C. § 1961.

3.    For the reasons stated in the Court's Opinion and Order dated September 24, 2024, Plaintiff Huk's NYLL Section 195 wage notice and statement claims are dismissed without prejudice for lack of standing.

4.    The Court grants Plaintiffs' request to dismiss Plaintiff Martinenko's and all remaining class members' NYLL Section 195 wage notice and statement claims without prejudice. The Clerk of Court is respectfully requested to close the case.

Dated: November 14, 2024
       New York, New York

By:    _Jennifer Rochon_
       Hon. Jennifer L. Rochon, U.S.D.J.

2

Judgement Allocation Among Class Members

| Class Member | Share of Judgment |
|---|---|
| Angel Hernandez | $13,941.55 |
| Benny Torres | $150.87 |
| Charles Gabriel | $3,214.97 |
| Cora Bethea | $4,989.41 |
| Dagmara Huk | $20,651.32 |
| Damian Zabrodin | $3,396.33 |
| Danny Birlandeau | $4,613.97 |
| Gisely Rosa | $536.31 |
| Haley Melendez | $1,321.35 |
| Hector Conoz | $7,987.01 |
| Iroel Vazquez | $1,343.39 |
| Jake Willis | $2,515.20 |
| Jamie Tovar | $10,448.24 |
| Jose Garcia | $64.59 |
| Jose Pena | $528.98 |
| Juan Aguilar | $11,342.60 |
| Juan Deluna | $3,731.74 |
| Kelsey Foley | $6,081.58 |
| Keya Rocaverte | $608.35 |
| Lytchez Lazarov | $28,566.20 |
| Mark Smith | $10,509.59 |
| Michelle Marquez | $456.73 |
| Miguel Torress | $7,489.40 |
| Nino Martinenko | $54,149.63 |
| Noel Lora | $19,862.55 |
| Radzivon Babaniyazav | $8,126.97 |
| Raul Romero | $3,827.93 |
| Shonda Williams | $220.03 |
| Stefana Marzano | $4,327.97 |
| Tela Wittig | $3,344.59 |
| Tristian Collazzo | $9,935.74 |
| Vivian Peng | $2,984.75 |
| **Total:** | **$251,269.84** |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

NINO MARTINENKO, on behalf of herself                    Case No.: 22-CV-518 (JLR) (RWL)
and others similarly situated,

                    Plaintiff,

                                **NOTICE OF APPEAL**

          -against-

212 STEAKHOUSE, INC., and
NIKOLAY VOLPER,

                    Defendants.

---

      NOTICE IS HEREBY GIVEN THAT 212 Steakhouse, Inc. and Nikolay Volper, defendants

in the above-captioned action ("Defendants"), hereby appeal to the United States Court of Appeals

for the Second Circuit from the entirety of the Final Judgment entered in this action on November

14, 2024 ("Final Judgment"). Defendants also appeal the Court's Judgment entered in this action

on September 25, 2024 ("Judgment"). Specifically, Defendant appeals from the Judgment as to

the Court's denial of Defendants motions to decertify the Rule 23 class and the grant of summary

judgment to Plaintiffs on the New York Labor Law claims, as specified in Exhibit B hereto.

      Attached hereto as Exhibit A is a true and correct copy of the Final Judgment. Attached

hereto as Exhibit B is a true and correct copy of the Judgment.

Date    December 11, 2024
New York, New York

                                            
Jonathan W. Greenbaum
COBURN GREENBAUM & EISENSTEIN PLLC
Second Floor
1710 Rhode Island Avenue, NW
Washington, DC. 20036

Telephone No.: 202.744.5003
Facsimile No.: 1866.561.9712
Email: jg@coburngreenbaum.com

**NEW YORK ADDRESS:**

99 Hudson Street
Fifth Floor
New York, NY 10013

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Notice of Appeal was filed this 11th day of December 2024 via ecf.

_____
Jonathan W. Greenbaum

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
NINO MARTINENKO, on behalf of                          CASE NO. 22 CV 518 (JLR)
herself and others similarly situated,

       Plaintiff,

   v.

212 STEAKHOUSE, INC., and
NIKOLAY VOLPER,

       Defendants.
-------------------------------------------------------------x

## [PROPOSED] JUDGMENT

It is hereby **ORDERED, ADJUDGED, AND DECREED**, that the Clerk of Court shall enter judgment as follows:

1.    Pursuant to the Court's Opinion and Order dated September 24, 2024, judgment shall be entered against Defendants 212 Steakhouse, Inc. and Nikolay Volper, jointly and severally, and in favor of the class in the total amount of $251,269.84 as follows: i. The class is awarded unpaid minimum wages under the NYLL without a tip credit allowance in the total amount of $96,608.35; ii. The class is awarded unpaid overtime wages under the NYLL without a tip credit allowance in the total amount of $2,530.75; iii. The class is awarded unpaid spread-of-hours premiums under the NYLL where applicable in the total amount of $2,388; iv. The class is awarded liquidated damages under the NYLL in the total amount of $101,527.10; v. Prejudgment interest is awarded from June 18, 2019 to September 25, 2024, at a rate of 9% on the total unpaid wages of $101,527.10 in the amount of $48,215.64. The judgment of $251,269.84 shall be allocated among the Class Members as set forth in Exhibit A to this Judgment.

2.    If the judgment is not entirely paid within 90 days of judgment, or 90 days after the expiration of time to appeal and no appeal is then pending, whichever is later, the total amount of

1

Case 1:22-cv-00518-JLR-RWL    Document 154    Filed 11/14/24    Page 2 of 3

judgment shall automatically increase by 15 percent. The Court also awards post-judgment interest pursuant to 28 U.S.C. § 1961.

      3.     For the reasons stated in the Court's Opinion and Order dated September 24, 2024, Plaintiff Huk's NYLL Section 195 wage notice and statement claims are dismissed without prejudice for lack of standing.

      4.     The Court grants Plaintiffs' request to dismiss Plaintiff Martinenko's and all remaining class members' NYLL Section 195 wage notice and statement claims without prejudice. The Clerk of Court is respectfully requested to close the case.

Dated: November 14, 2024
      New York, New York

By: _____
     Hon. Jennifer L. Rochon, U.S.D.J.

2

Judgement Allocation Among Class Members

| Class Member | Share of Judgment |
|---|---|
| Angel Hernandez | $13,941.55 |
| Benny Torres | $150.87 |
| Charles Gabriel | $3,214.97 |
| Cora Bethea | $4,989.41 |
| Dagmara Huk | $20,651.32 |
| Damian Zabrodin | $3,396.33 |
| Danny Biriandeau | $4,613.97 |
| Gisely Rosa | $536.31 |
| Haley Melendez | $1,321.35 |
| Hector Conoz | $7,987.01 |
| Iroel Vazquez | $1,343.39 |
| Jake Willis | $2,515.20 |
| Jamie Tovar | $10,448.24 |
| Jose Garcia | $64.59 |
| Jose Pena | $528.98 |
| Juan Aguilar | $11,342.60 |
| Juan Deluna | $3,731.74 |
| Kelsey Foley | $6,081.58 |
| Keya Rocaverte | $608.35 |
| Lytchez Lazarov | $28,566.20 |
| Mark Smith | $10,509.59 |
| Michelle Marquez | $456.73 |
| Miguel Torress | $7,489.40 |
| Nino Martinenko | $54,149.63 |
| Noel Lora | $19,862.55 |
| Radzivon Babaniyazav | $8,126.97 |
| Raul Romero | $3,827.93 |
| Shonda Williams | $220.03 |
| Stefana Marzano | $4,327.97 |
| Tela Wittig | $3,344.59 |
| Tristian Collazzo | $9,935.74 |
| Vivian Peng | $2,984.75 |
| **Total:** | **$251,269.84** |

# EXHIBIT B

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

NINO MARTINENKO, on behalf of herself
and others similarly situated,

                    Plaintiffs,                    22 **CIVIL** 0518 (JLR)

        -against-                                  **JUDGMENT**

212 STEAKHOUSE, INC., and NIKOLAY
VOLPER,

                    Defendants.

-------------------------------------------------------------X

It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons

stated in the Court's Opinion and Order dated September 24, 2024, the Court adopts the R&R in

its entirety. Defendants' motion to decertify the Rule 23 class is DENIED. Plaintiffs' motion for

summary judgment is GRANTED in part and DENIED in part. Defendants cross-motion for

summary judgment is GRANTED in part and DENIED in part. Specifically, the Court orders

that: 1. The class is awarded unpaid minimum wages under the NYLL without a tip credit

allowance in the total amount of $96,608.35; 2. The class is awarded unpaid overtime wages

under the NYLL without a tip credit allowance in the total amount of $2,530.75; 3. The class is

awarded unpaid spread-of-hours premiums under the NYLL where applicable in the total amount

of $2,388; 4. The class is awarded liquidated damages under the NYLL in the total amount of

$101,527.10; 5. Defendant Volper is held individually liable for damages under the FLSA and

NYLL; 6. Plaintiff Huk's NYLL Section 195 wage notice and statement claims be dismissed for

lack of standing; 7. Summary judgment is denied on the rest of the class members' NYLL

Section 195 wage notice and wage statement claims; 8. The parties is ordered to meet and confer

Case 1:22-cv-00518-JLR-RWL    Document 142    Filed 09/25/24    Page 2 of 2

regarding next steps for addressing individualized injury with respect to the unnamed class

member Section 195 claims; and 9. Prejudgment interest awarded from June 18, 2019, at a rate

of 9% on the total unpaid wages of $101,527.10 to the entry of the judgment in the amount of

$48,215.64.

**Dated:** New York, New York
          September 25, 2024

**DANIEL ORTIZ**

**Acting Clerk of Court**

BY:

**Deputy Clerk**

CLOSED,APPEAL,CASREF,ECF,MEDTFR9,MOTREF

## U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:22-cv-00518-JLR-RWL

Martinenko v. 212 Steakhouse Inc. et al
Assigned to: Judge Jennifer L. Rochon
Referred to: Magistrate Judge Robert W. Lehrburger
Cause: 29:201 Fair Labor Standards Act

Date Filed: 01/20/2022
Date Terminated: 11/14/2024
Jury Demand: Defendant
Nature of Suit: 710 Labor: Fair Standards
Jurisdiction: Federal Question

### Plaintiff

**Nino Martinenko**
*on behalf of herself and others similarly
situated*

represented by **Denise Andrea Schulman**
Joseph & Kirschenbaum LLP
32 Broadway, Suite 601
New York, NY 10004
212-688-5640
Email: denise@jhllp.com
*ATTORNEY TO BE NOTICED*

**Michael Digiulio**
Joseph & Kirschenbaum LLP
32 Broadway
Suite 601
New York, NY 10004
212-688-5640
Fax: 212-981-9587
Email: mike@jk-llp.com
*ATTORNEY TO BE NOTICED*

**Daniel Maimon Kirschenbaum**
Joseph, Herzfeld, Hester, & Kirschenbaum
233 Broadway, 5th Floor
New York, NY 10017
(212)688-5640x2548
Fax: (212)688-5639
Email: maimon@jhllp.com
*ATTORNEY TO BE NOTICED*

### Plaintiff

**Dagmara Maja Huk**

represented by **Denise Andrea Schulman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Digiulio**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Nikolay Volper**                           represented by **Jonathan Wolfe Greenbaum**
                                             Coburn & Coffman, PLLC
                                             1244 19th Street, N.W.
                                             Washington, DC 20036
                                             (202) 657-5006
                                             Fax: (866) 561-9712
                                             Email: jg@coburngreenbaum.com
                                             *ATTORNEY TO BE NOTICED*

                                             **Mitchell S. Segal**
                                             Law Office of Mitchell S. Segal P.C.
                                             1129 Northern Boulevard
                                             Suite 404
                                             Manhasset, NY 11030
                                             516-415-0100
                                             Email: msegal@segallegal.com
                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**212 Steakhouse Inc.**                      represented by **Jonathan Wolfe Greenbaum**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

                                             **Mitchell S. Segal**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Nikolay Volper**                           represented by **Mitchell S. Segal**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**212 Steakhouse Inc.**                      represented by **Mitchell S. Segal**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Nino Martinenko**                          represented by **Denise Andrea Schulman**
*on behalf of herself and others similarly*  (See above for address)
*situated*                                   *ATTORNEY TO BE NOTICED*

                                             **Daniel Maimon Kirschenbaum**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|

| 01/20/2022 | 1 | COMPLAINT against 212 Steakhouse Inc., Nikolay Volper. (Filing Fee $ 402.00, Receipt Number ANYSDC-25610557)Document filed by Nino Martinenko..(Kirschenbaum, Daniel) (Entered: 01/20/2022) |
|---|---|---|
| 01/20/2022 | 2 | CIVIL COVER SHEET filed..(Kirschenbaum, Daniel) (Entered: 01/20/2022) |
| 01/20/2022 | 3 | **FILING ERROR - DEFICIENT - SUMMONS REQUEST -** REQUEST FOR ISSUANCE OF SUMMONS as to 212 Steakhouse Inc and Nikolay Volper, re: 1 Complaint. Document filed by Nino Martinenko..(Kirschenbaum, Daniel) Modified on 1/21/2022 (vf). (Entered: 01/20/2022) |
| 01/20/2022 | 4 | NOTICE OF APPEARANCE by Daniel Maimon Kirschenbaum on behalf of Nino Martinenko..(Kirschenbaum, Daniel) (Entered: 01/20/2022) |
| 01/20/2022 | 5 | CONSENT TO SUE UNDER THE F.L.S.A.. Document filed by Nino Martinenko.. (Kirschenbaum, Daniel) (Entered: 01/20/2022) |
| 01/21/2022 | 6 | NOTICE OF APPEARANCE by Denise Andrea Schulman on behalf of Nino Martinenko..(Schulman, Denise) (Entered: 01/21/2022) |
| 01/21/2022 | | **\*\*\*NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Daniel Maimon Kirschenbaum. The party information for the following party/parties has been modified: Nino Martinenko. The information for the party/parties has been modified for the following reason/reasons: party text was omitted. (vf)** (Entered: 01/21/2022) |
| 01/21/2022 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Lewis J. Liman. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district-judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf-related-instructions..(vf) (Entered: 01/21/2022) |
| 01/21/2022 | | Magistrate Judge Robert W. Lehrburger is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (vf) (Entered: 01/21/2022) |
| 01/21/2022 | | Case Designated ECF. (vf) (Entered: 01/21/2022) |
| 01/21/2022 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney Daniel Maimon Kirschenbaum to RE-FILE Document No. 3 Request for Issuance of Summons. The filing is deficient for the following reason(s): Plaintiff party name error on summons caption. Party name spelling does not correspond to pleading caption. Re-file the document using the event type Request for Issuance of Summons found under the event list Service of Process - select the correct filer/filers - and attach the correct summons form PDF. (vf)** (Entered: 01/21/2022) |
| 01/21/2022 | 7 | REQUEST FOR ISSUANCE OF SUMMONS as to 212 Steakhouse Inc and Nikolay Volper, re: 1 Complaint. Document filed by Nino Martinenko..(Schulman, Denise) (Entered: 01/21/2022) |
| 01/21/2022 | 8 | ELECTRONIC SUMMONS ISSUED as to 212 Steakhouse Inc., Nikolay Volper. (vf) (Entered: 01/21/2022) |

| 02/02/2022 | 9 | AFFIDAVIT OF SERVICE. 212 Steakhouse Inc. served on 1/28/2022, answer due 2/18/2022. Service was accepted by Andrez Pizarro. Document filed by Nino Martinenko..(Schulman, Denise) (Entered: 02/02/2022) |
| --- | --- | --- |
| 02/02/2022 | 10 | AFFIDAVIT OF SERVICE. Nikolay Volper served on 1/28/2022, answer due 2/18/2022. Service was accepted by Andrez Pizarro - coworker. Service was made by Mail. Document filed by Nino Martinenko..(Schulman, Denise) (Entered: 02/02/2022) |
| 02/27/2022 | 11 | NOTICE OF APPEARANCE by Mitchell S. Segal on behalf of 212 Steakhouse Inc., Nikolay Volper..(Segal, Mitchell) (Entered: 02/27/2022) |
| 02/27/2022 | 12 | FIRST LETTER MOTION for Extension of Time to File addressed to Judge Lewis J. Liman from Mitchell Segal, Esq. dated February 27, 2022. Document filed by 212 Steakhouse Inc., Nikolay Volper..(Segal, Mitchell) (Entered: 02/27/2022) |
| 02/28/2022 | 13 | ORDER granting 12 Letter Motion for Extension of Time to File (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (Liman, Lewis) (Entered: 02/28/2022) |
| 03/17/2022 | 14 | NOTICE OF INITIAL PRETRIAL CONFERENCE: Parties are directed to dial into the Court's teleconference number at 888-251-2909, Access Code 2123101, and follow the necessary prompts. Initial Conference set for 4/6/2022 at 12:00 PM before Judge Lewis J. Liman. (Signed by Judge Lewis J. Liman on 3/17/2022) (tg) (Entered: 03/17/2022) |
| 03/28/2022 | 15 | FIRST RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by 212 Steakhouse Inc., Nikolay Volper..(Segal, Mitchell) (Entered: 03/28/2022) |
| 03/28/2022 | 16 | NOTICE OF APPEARANCE by Mitchell S. Segal on behalf of 212 Steakhouse Inc., Nikolay Volper..(Segal, Mitchell) (Entered: 03/28/2022) |
| 03/28/2022 | 17 | ANSWER to 1 Complaint with JURY DEMAND., COUNTERCLAIM against Nino Martinenko. Document filed by Nikolay Volper, 212 Steakhouse Inc...(Segal, Mitchell) (Entered: 03/28/2022) |
| 03/30/2022 | 18 | PROPOSED CASE MANAGEMENT PLAN. Document filed by Nino Martinenko.. (Schulman, Denise) (Entered: 03/30/2022) |
| 04/04/2022 | 19 | MOTION to Certify Class *FLSA collective pursuant to 29 USC 216(b)*. Document filed by Nino Martinenko..(Schulman, Denise) (Entered: 04/04/2022) |
| 04/04/2022 | 20 | MEMORANDUM OF LAW in Support re: 19 MOTION to Certify Class *FLSA collective pursuant to 29 USC 216(b)*. . Document filed by Nino Martinenko..(Schulman, Denise) (Entered: 04/04/2022) |
| 04/04/2022 | 21 | DECLARATION of Denise A. Schulman in Support re: 19 MOTION to Certify Class *FLSA collective pursuant to 29 USC 216(b)*.. Document filed by Nino Martinenko. (Attachments: # 1 Exhibit Ex 1 - proposed notice, # 2 Exhibit Ex 2 - proposed text notice).(Schulman, Denise) (Entered: 04/04/2022) |
| 04/04/2022 | 22 | DECLARATION of Nino Martinenko in Support re: 19 MOTION to Certify Class *FLSA collective pursuant to 29 USC 216(b)*.. Document filed by Nino Martinenko. (Attachments: # 1 Exhibit Ex 1 - paystubs, # 2 Exhibit Ex 2 - paystubs).(Schulman, Denise) (Entered: 04/04/2022) |
| 04/06/2022 | | Minute Entry for proceedings held before Judge Lewis J. Liman: Initial Pretrial Conference held on 4/6/2022 by Telephone Conference. Denise Schulman present by telephone for Plaintiff. Mitchell Segal present by telephone for Defendants. Case management plan approved. Defendants' to amend counterclaims by May 4, 2022. Defendants' opposition to conditional certification due by April 18, 2022. Post-Discovery |

| | | Status Conference set for January 3, 2023 at 2:00PM before Judge Lewis J. Liman. (mf) (Entered: 04/15/2022) |
|---|---|---|
| 04/11/2022 | 23 | LETTER addressed to Judge Lewis J. Liman from Denise A. Schulman dated April 11, 2022 re: briefing schedule. Document filed by Nino Martinenko..(Schulman, Denise) (Entered: 04/11/2022) |
| 04/11/2022 | 24 | MEMO ENDORSEMENT on re: 23 Letter filed by Nino Martinenko. ENDORSEMENT: Plaintiff should make her motion to dismiss on April 18, 2022 unless she is able to reach an agreement with Defendants otherwise. SO ORDERED. ( Motions due by 4/18/2022.) (Signed by Judge Lewis J. Liman on 4/11/2022) (va) (Entered: 04/12/2022) |
| 04/12/2022 | 25 | LETTER addressed to Judge Lewis J. Liman from Denise A. Schulman dated April 12, 2022 re: briefing schedule. Document filed by Nino Martinenko..(Schulman, Denise) (Entered: 04/12/2022) |
| 04/15/2022 | 26 | CASE MANAGEMENT PLAN AND SCHEDULING ORDER: All parties do not consent to conducting all further proceedingsbefore a United States Magistrate Judge, including motions and trial. Any motion to amend or to join additional parties shall be filed no later than 5/6/2022. Fact Discovery due by 10/6/2022. Depositions shall be completed by 10/6/2022. Expert Discovery due by 11/21/2022. Deposition due by 11/21/2022. Discovery due by 12/21/2022. Status Conference set for 1/3/2023 at 02:00 PM before Judge Lewis J. Liman. Motions due by 1/9/2023. This case is to be tried to a jury. The parties have conferred and their present best estimate of the length of trial is 4 days. (Signed by Judge Lewis J. Liman on 4/15/2022) (va) (Entered: 04/15/2022) |
| 04/18/2022 | 27 | FIRST MEMORANDUM OF LAW in Opposition re: 19 MOTION to Certify Class *FLSA collective pursuant to 29 USC 216(b)*. . Document filed by 212 Steakhouse Inc., Nikolay Volper..(Segal, Mitchell) (Entered: 04/18/2022) |
| 04/21/2022 | 28 | REPLY MEMORANDUM OF LAW in Support re: 19 MOTION to Certify Class *FLSA collective pursuant to 29 USC 216(b)*. . Document filed by Nino Martinenko..(Schulman, Denise) (Entered: 04/21/2022) |
| 04/21/2022 | 29 | DECLARATION of Denise A. Schulman in Support re: 19 MOTION to Certify Class *FLSA collective pursuant to 29 USC 216(b)*.. Document filed by Nino Martinenko. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2).(Schulman, Denise) (Entered: 04/21/2022) |
| 04/26/2022 | 30 | MEMORANDUM AND ORDER granting 19 Motion to Certify Class. For the reasons stated, the motion for conditional certification of this action under Section 216(b) is GRANTED, and Plaintiff is authorized to disseminate notice consistent with this Memorandum and Order. Defendants shall provide the requested discovery within seven (7) days of the date of this Memorandum and Order, and Plaintiff shall disseminate notice within fourteen (14) days of the date of this Memorandum and Order. Plaintiff's counsel is ORDERED to file on ECF copies (in redacted form if necessary) of any consents to join the FLSA action. The Clerk of Court is respectfully directed to close Dkt. No. 19. SO ORDERED. (Signed by Judge Lewis J. Liman on 4/26/2022) (va) (Entered: 04/26/2022) |
| 04/30/2022 | 31 | AMENDED ANSWER to with JURY DEMAND. Document filed by 212 Steakhouse Inc., Nikolay Volper..(Segal, Mitchell) (Entered: 04/30/2022) |
| 05/19/2022 | 32 | CONSENT TO SUE UNDER THE F.L.S.A.. Document filed by Dagmara Maja Huk.. (Schulman, Denise) (Entered: 05/19/2022) |
| 05/26/2022 | 33 | LETTER MOTION for Extension of Time to Complete Discovery addressed to Judge Lewis J. Liman from Denise A. Schulman dated May 26, 2022. Document filed by Nino |

| | | |
|---|---|---|
| | | Martinenko. (Attachments: # 1 Exhibit Ex 1 - proposed case management plan). (Schulman, Denise) (Entered: 05/26/2022) |
| 05/27/2022 | 34 | ORDER granting 33 Letter Motion for Extension of Time to Complete Discovery. The requested extension is granted, and the proposed revised Case Management Plan will be entered. By June 1, 2022, Defendants are ordered to file a letter in response to Plaintiff's request that the Court set a deadline for Defendants to respond to Plaintiff's discovery requests. (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (kc) (Entered: 05/27/2022) |
| 05/27/2022 | 35 | AMENDED CASE MANAGEMENT PLAN AND SCHEDULING ORDER: All parties do not consent to conducting all further proceedings before a United States Magistrate Judge, including motions and trial. 28 U.S.C. § 636(c). Motions due by 4/4/2023. Depositions shall be completed by 1 6/2023. Expert Deposition due by 2/20/2023. Fact Discovery due by 1/6/2023. Expert Discovery due by 2/20/2023. Discovery due by 3/21/2023. Post-Discovery Status Conference set for 3/23/2023 at 11:00 AM before Judge Lewis J. Liman. This case is to be tried to a jury. The parties have conferred and their present best estimate of the length of trial is 4 days. (Signed by Judge Lewis J. Liman on 5/27/2022) (mml) Modified on 6/1/2022 (mml). (Entered: 05/27/2022) |
| 06/13/2022 | 36 | LETTER MOTION for Discovery addressed to Judge Lewis J. Liman from Denise A. Schulman dated June 13, 2022. Document filed by Nino Martinenko..(Schulman, Denise) (Entered: 06/13/2022) |
| 06/13/2022 | 37 | ORDER granting 36 Letter Motion for Discovery. Defendants shall respond to Plaintiff's document requests and produce all responsive documents by June 27, 2022. The proposed amended case management plan is approved. The parties shall submit the post-discovery letter referred to in that order by March 21, 2023; that letter shall also request a post-discovery conference. (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (Liman, Lewis) (Entered: 06/13/2022) |
| 06/30/2022 | 38 | LETTER MOTION for Discovery *for discovery sanctions and to compel discovery* addressed to Judge Lewis J. Liman from Denise A. Schulman dated June 30, 2022. Document filed by Nino Martinenko. (Attachments: # 1 Exhibit Exhibit 1 - discovery requests, # 2 Exhibit Exhibit 2 - email correspondence).(Schulman, Denise) (Entered: 06/30/2022) |
| 06/30/2022 | 39 | ORDER taking under advisement 38 Motion for Discovery. Defendant to respond by 5:00 p.m. on July 5, 2005, and to show cause why sanctions should not be imposed. (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (Liman, Lewis) (Entered: 06/30/2022) |
| 07/05/2022 | 40 | LETTER RESPONSE in Opposition to Motion addressed to Judge Lewis J. Liman from Mitchell Segal, Esq. dated 7/05/2022 re: 38 LETTER MOTION for Discovery *for discovery sanctions and to compel discovery* addressed to Judge Lewis J. Liman from Denise A. Schulman dated June 30, 2022. . Document filed by 212 Steakhouse Inc., Nikolay Volper..(Segal, Mitchell) (Entered: 07/05/2022) |
| 07/05/2022 | 41 | ORDER granting in part and denying in part 38 Letter Motion for Discovery. Defendants are ordered to produce all responsive documents on or before July 15, 2022. All objections to the document request are deemed waived by virtue of Defendants' failure to respond to the request in the time period permitted by the Rules and by this Court's Order. Parties are to jointly report on July 18, 2022, whether the document request has been complied with. The motion for sanctions is denied, save that after July 15, 2022, Plaintiff may move for its reasonable expenses in making this motion. See Fed. R. Civ. P. 37(a)(5). (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (Liman, Lewis) (Entered: 07/05/2022) |

| | | |
|---|---|---|
| 07/18/2022 | 42 | NOTICE OF APPEARANCE by Michael Digiulio on behalf of Dagmara Maja Huk, Nino Martinenko..(Digiulio, Michael) (Entered: 07/18/2022) |
| 07/18/2022 | 43 | STATUS REPORT. Document filed by Dagmara Maja Huk, Nino Martinenko. (Attachments: # 1 Exhibit 1 - Interrogatories, # 2 Exhibit 2 - Requests for Production). (Digiulio, Michael) (Entered: 07/18/2022) |
| 07/18/2022 | 44 | STATUS REPORT. Document filed by 212 Steakhouse Inc., Nikolay Volper..(Segal, Mitchell) (Entered: 07/18/2022) |
| 07/19/2022 | 45 | LETTER addressed to Judge Lewis J. Liman from Denise A. Schulman dated July 19, 2022 re: Defendants' July 18, 2022 letter. Document filed by Nino Martinenko.. (Schulman, Denise) (Entered: 07/19/2022) |
| 07/19/2022 | | ORDER: The Court will hold a Telephone Conference to address the discovery dispute in this matter on July 22, 2022 at 10:00AM. Parties are directed to dial into the Court's teleconference line at 888-251-2909 and use access code 2123101. (HEREBY ORDERED by Judge Lewis J. Liman) (Text Only Order) (mf) (Entered: 07/19/2022) |
| 07/19/2022 | | Set/Reset Hearings: Telephone Conference set for 7/22/2022 at 10:00 AM before Judge Lewis J. Liman. (mf) (Entered: 07/19/2022) |
| 07/22/2022 | 46 | ORDER re: 43 Status Report filed by Nino Martinenko, Dagmara Maja Huk. The discovery dispute raised by Plaintiff at Dkt. No. 43 was resolved at the conference held today in this matter. Plaintiff may move after August 5, 2022 for sanctions as discussed at the conference and attorneys fees as the Court indicated in its July 5, 2022 Order at Dkt. No. 41. (HEREBY ORDERED by Judge Lewis J. Liman) (Text Only Order) (kc) (Entered: 07/22/2022) |
| 07/22/2022 | | Minute Entry for proceedings held before Judge Lewis J. Liman: Telephone Conference held on 7/22/2022 in re: discovery dispute. Denise Schulman and Michael Digiulio present by telephone for Plaintiffs. Mitchell Segal present by telephone for Defendants. Court reporter present. (mf) (Entered: 07/25/2022) |
| 08/12/2022 | 47 | TRANSCRIPT of Proceedings re: CONFERNECE held on 7/22/2022 before Judge Lewis J. Liman. Court Reporter/Transcriber: Alena Lynch, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/2/2022. Redacted Transcript Deadline set for 9/12/2022. Release of Transcript Restriction set for 11/10/2022..(McGuirk, Kelly) (Entered: 08/12/2022) |
| 08/12/2022 | 48 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 7/22/2022 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 08/12/2022) |
| 08/31/2022 | 49 | LETTER addressed to Judge Lewis J. Liman from Denise A. Schulman dated August 31, 2022 Document filed by Nino Martinenko..(Schulman, Denise) (Entered: 08/31/2022) |
| 08/31/2022 | 50 | MEMO ENDORSEMENT: on re: 49 Letter filed by Nino Martinenko. ENDORSEMENT: The proposed briefing schedule is approved. SO ORDERED. (Signed by Judge Lewis J. Liman on 8/31/2022) (ama) (Entered: 08/31/2022) |

| 09/22/2022 | 51 | LETTER MOTION to Compel Defendant 212 Steakhouse, Inc. to Appear for Deposition addressed to Judge Lewis J. Liman from Michael DiGiulio dated September 22, 2022. Document filed by Dagmara Maja Huk, Nino Martinenko. (Attachments: # 1 Exhibit A - Deposition Notice).(Digiulio, Michael) (Entered: 09/22/2022) |
|---|---|---|
| 09/22/2022 | 52 | ORDER taking under advisement 51 Motion to Compel. Defendant to respond by 5:00 p.m. on September 23, 2022, selecting one of the two dates offered by Plaintiff. Plaintiff may move for sanctions at the same time as it moves for the other discovery-related sanctions. (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (Liman, Lewis) (Entered: 09/22/2022) |
| 09/23/2022 | 53 | LETTER RESPONSE to Motion addressed to Judge Lewis J. Liman from Mitchell Segal dated 9/23/2022 re: 51 LETTER MOTION to Compel Defendant 212 Steakhouse, Inc. to Appear for Deposition addressed to Judge Lewis J. Liman from Michael DiGiulio dated September 22, 2022. . Document filed by 212 Steakhouse Inc., Nikolay Volper..(Segal, Mitchell) (Entered: 09/23/2022) |
| 09/23/2022 | 54 | ORDER granting 51 Letter Motion to Compel. As agreed, Nikolay Volper shall be made available for deposition on October 6, 2022 at 10:00 a.m. (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (Liman, Lewis) (Entered: 09/23/2022) |
| 09/26/2022 | | NOTICE OF CASE REASSIGNMENT to Judge Jennifer L. Rochon. Judge Lewis J. Liman is no longer assigned to the case. (nb) (Entered: 09/26/2022) |
| 09/27/2022 | 55 | NOTICE OF REASSIGNMENT This case has been reassigned to the undersigned. All counsel must familiarize themselves with the Court's Individual Rules, which are available at https://nysd.uscourts.gov/hon-jennifer-1-rochon. Unless and until the Court orders otherwise, all prior orders, dates, and deadlines shall remain in effect notwithstanding the case's reassignment. Any conference or oral argument before or directed by the Magistrate Judge will proceed as ordered. However, all previously-scheduled appearances or conferences before the District Judge are hereby adjourned pending further notice from the Court. Additionally, within two weeks of the filing of this Order, the parties are hereby ORDERED to file on ECF a joint letter updating the Court on the status of the case. The joint letter shall not exceed four (4) pages. If this case has been settled or otherwise terminated, counsel need not submit such letter or appear, provided that a stipulation of discontinuance, voluntary dismissal, or other proof of termination is filed on the docket prior to the joint letter submission deadline, using the appropriate ECF Filing Event. See SDNY ECF Rules & Instructions§§ 13.17-13.19, available at http://nysd.uscourts.gov/ecf filing.php. Requests for extensions or adjournment of dates not affected by this Order may be made only in accordance with the Court's Individual Rules and Practices, which are available at https://nysd.uscourts.gov/hon-jennifer-1-rochon. (And as further set forth herein.) SO ORDERED. (Signed by Judge Jennifer L. Rochon on 9/27/2022) (jca) (Entered: 09/27/2022) |
| 10/11/2022 | 56 | STATUS REPORT. Document filed by Dagmara Maja Huk, Nino Martinenko..(Digiulio, Michael) (Entered: 10/11/2022) |
| 10/24/2022 | 57 | ORDER REFERRING CASE TO MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for General Pretrial (includes scheduling, discovery, non-dispositive pretrial motions, and settlement). Referred to Magistrate Judge Robert W. Lehrburger. SO ORDERED. (Signed by Judge Jennifer L. Rochon on 10/24/2022) (jca) (Entered: 10/24/2022) |
| 10/24/2022 | 58 | ORDER: The Court has reviewed the parties' joint letter. ECF No. 56. The parties report an interest in conducting mediation at the close of fact discovery. Id. Accordingly, it is hereby ORDERED that this case, involving claims under the Fair Labor Standards Act, 29 |

| | | |
|---|---|---|
| | | U.S.C. § 201 et seq., is referred for mediation to the Court-annexed Mediation Program for mediation at or around the close of fact discovery. The parties are notified that Local Rule 83.9 shall govern the mediation and are directed to participate in the mediation in good faith. The mediation will have no effect upon any scheduling Order issued by this Court without leave of this Court. By separate order today, the Court will refer this case to the designated Magistrate Judge for General Pretrial Purposes, including settlement. SO ORDERED. Please reference the following when corresponding with the Mediation Office. E-mail MediationOffice@nysd.uscourts.gov, telephone (212) 805-0643, and facsimile (212) 805-0647. Mediator to be Assigned by 11/7/2022. (Signed by Judge Jennifer L. Rochon on 10/24/2022) (jca) (Entered: 10/24/2022) |
| 10/24/2022 | 59 | LETTER MOTION for Leave to File Sanctions Motion addressed to Magistrate Judge Robert W. Lehrburger from Michael DiGiulio dated October 24, 2022. Document filed by Nino Martinenko..(Digiulio, Michael) (Entered: 10/24/2022) |
| 10/25/2022 | 60 | ORDER granting 59 Letter Motion for Leave to File Document. A pre-motion letter for the sanctions motion authorized by Judge Liman is not necessary. However, the Court encourages Plaintiffs to keep the motion short. The motion shall be filed by November 1, 2022. Defendants shall file their opposition by November 15, 2022. Plaintiffs shall file a reply, if any, by November 22, 2022. SO ORDERED. (Signed by Magistrate Judge Robert W. Lehrburger on 10/25/2022) (mml) (Entered: 10/25/2022) |
| 10/25/2022 | | Set/Reset Deadlines: Motions due by 11/1/2022. Responses due by 11/15/2022 Replies due by 11/22/2022. (mml) (Entered: 10/25/2022) |
| 11/01/2022 | 61 | MOTION for Sanctions . Document filed by Nino Martinenko..(Schulman, Denise) (Entered: 11/01/2022) |
| 11/01/2022 | 62 | MEMORANDUM OF LAW in Support re: 61 MOTION for Sanctions . . Document filed by Nino Martinenko..(Schulman, Denise) (Entered: 11/01/2022) |
| 11/01/2022 | 63 | DECLARATION of Denise A. Schulman in Support re: 61 MOTION for Sanctions .. Document filed by Nino Martinenko. (Attachments: # 1 Exhibit Ex 1 - collective list, # 2 Exhibit Ex. 2 - Plaintiff's document requests, # 3 Exhibit Ex. 3 - Plaintiff's interrogatories, # 4 Exhibit Ex. 4 - 7/22/22 conference transcript, # 5 Exhibit Ex. 5 - deposition notice, # 6 Exhibit Ex. 6 - Veritext invoice, # 7 Exhibit Ex. 7 - deposition excerpts, # 8 Exhibit Ex. 8 - weekly tip sheets, # 9 Exhibit Ex. 9 - daily tip sheets, # 10 Exhibit Ex. 10 - check images, # 11 Exhibit Ex. 11 - paystubs, # 12 Exhibit Ex. 12 - time records, # 13 Exhibit Ex. 13 - class list, # 14 Exhibit Ex. 14 - Defendants' document responses, # 15 Exhibit Ex. 15 - Plaintiff's counsel's time records, # 16 Exhibit Ex. 16 - hearing transcript, # 17 Exhibit Ex. 17 - hearing transcript, # 18 Exhibit Ex. 18 - hearing transcript, # 19 Exhibit Ex. 19 - Wolters Kluwer report excerpts).(Schulman, Denise) (Entered: 11/01/2022) |
| 11/01/2022 | 64 | DECLARATION of Nino Martinenko in Support re: 61 MOTION for Sanctions .. Document filed by Nino Martinenko. (Attachments: # 1 Exhibit Ex. 1 - tip sheets, # 2 Exhibit Ex. 2 - tip sheets, # 3 Exhibit Ex. 3 - paystubs, # 4 Exhibit Ex. 4 - pay records, # 5 Exhibit Ex. 5 - pay records).(Schulman, Denise) (Entered: 11/01/2022) |
| 11/15/2022 | 65 | MEMORANDUM OF LAW in Opposition re: 61 MOTION for Sanctions . . Document filed by 212 Steakhouse Inc., Nikolay Volper. (Attachments: # 1 Affidavit Opposition). (Segal, Mitchell) (Entered: 11/15/2022) |
| 11/16/2022 | 66 | SECOND MEMORANDUM OF LAW in Opposition re: 61 MOTION for Sanctions . . Document filed by 212 Steakhouse Inc., Nikolay Volper..(Segal, Mitchell) (Entered: 11/16/2022) |
| 11/16/2022 | 67 | THIRD MEMORANDUM OF LAW in Opposition re: 61 MOTION for Sanctions . . Document filed by 212 Steakhouse Inc., Nikolay Volper..(Segal, Mitchell) (Entered: |

| | | 11/16/2022) |
|---|---|---|
| 11/22/2022 | 68 | REPLY MEMORANDUM OF LAW in Support re: 61 MOTION for Sanctions . . Document filed by Nino Martinenko..(Digiulio, Michael) (Entered: 11/22/2022) |
| 11/22/2022 | 69 | DECLARATION of Denise A. Schulman in Support re: 61 MOTION for Sanctions .. Document filed by Nino Martinenko. (Attachments: # 1 Exhibit 1).(Digiulio, Michael) (Entered: 11/22/2022) |
| 12/09/2022 | 70 | MOTION to Certify Class . Document filed by Dagmara Maja Huk, Nino Martinenko.. (Digiulio, Michael) (Entered: 12/09/2022) |
| 12/09/2022 | 71 | MEMORANDUM OF LAW in Support re: 70 MOTION to Certify Class . . Document filed by Dagmara Maja Huk, Nino Martinenko..(Digiulio, Michael) (Entered: 12/09/2022) |
| 12/09/2022 | 72 | DECLARATION of Michael DiGiulio in Support re: 70 MOTION to Certify Class .. Document filed by Dagmara Maja Huk, Nino Martinenko. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10).(Digiulio, Michael) (Entered: 12/09/2022) |
| 12/09/2022 | 73 | DECLARATION of Nino Martinenko in Support re: 70 MOTION to Certify Class .. Document filed by Dagmara Maja Huk, Nino Martinenko. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3).(Digiulio, Michael) (Entered: 12/09/2022) |
| 12/09/2022 | 74 | DECLARATION of Dagmara Huk in Support re: 70 MOTION to Certify Class .. Document filed by Dagmara Maja Huk, Nino Martinenko. (Attachments: # 1 Exhibit 1). (Digiulio, Michael) (Entered: 12/09/2022) |
| 12/23/2022 | 75 | FIRST MEMORANDUM OF LAW in Opposition re: 70 MOTION to Certify Class . . Document filed by 212 Steakhouse Inc., Nikolay Volper. (Attachments: # 1 Exhibit Declaration).(Segal, Mitchell) (Entered: 12/23/2022) |
| 12/27/2022 | 76 | LETTER MOTION for Extension of Time to File Response/Reply addressed to Judge Jennifer L. Rochon from Denise A. Schulman dated December 27, 2022. Document filed by Dagmara Maja Huk, Nino Martinenko..(Schulman, Denise) (Entered: 12/27/2022) |
| 12/28/2022 | 77 | AMENDED ORDER REFERRING CASE TO MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for General Pretrial (includes scheduling, discovery, non-dispositive pretrial motions, and settlement) and Dispositive Motion (i.e., motion requiring a Report and Recommendation). Referred to Magistrate Judge Robert W. Lehrburger. Motions 70, 76 referred to Robert W. Lehrburger. SO ORDERED. (Signed by Judge Jennifer L. Rochon on 12/28/2022) (vfr) (Entered: 12/28/2022) |
| 12/28/2022 | | MOTIONS REFERRED: 70 MOTION to Certify Class ., 76 LETTER MOTION for Extension of Time to File Response/Reply addressed to Judge Jennifer L. Rochon from Denise A. Schulman dated December 27, 2022. Motions referred to Robert W. Lehrburger. (vfr) (Entered: 12/28/2022) |
| 12/28/2022 | 78 | ORDER granting 76 Letter Motion for Extension of Time to File Response/Reply re 76 LETTER MOTION for Extension of Time to File Response/Reply addressed to Judge Jennifer L. Rochon from Denise A. Schulman dated December 27, 2022. Granted. SO ORDERED. Replies due by 1/9/2023.. (Signed by Magistrate Judge Robert W. Lehrburger on 12/28/2022) (kv) (Entered: 12/28/2022) |
| 01/04/2023 | 79 | REPLY MEMORANDUM OF LAW in Support re: 70 MOTION to Certify Class . . Document filed by Dagmara Maja Huk, Nino Martinenko..(Digiulio, Michael) (Entered: 01/04/2023) |

| 03/16/2023 | 80 | ORDER: The Court will hold a hearing on Plaintiff's motion for sanctions on April 4, 2023, at 2:30 p.m. in Courtroom 18D, 500 Pearl Street, New York, N.Y. 10007 before Magistrate Judge Robert W. Lehrburger. Parties are instructed to review and adhere to Judge Lehrburger's individual rules and practices. (HEREBY ORDERED by Magistrate Judge Robert W. Lehrburger) (Text Only Order). (rsh) (Entered: 03/16/2023) |
|---|---|---|
| 03/16/2023 | | Set/Reset Hearings: Motion for Sanctions Conference set for 4/4/2023 at 02:30 PM in Courtroom 18D, 500 Pearl Street, New York, NY 10007 before Magistrate Judge Robert W. Lehrburger. (rsh) (Entered: 03/16/2023) |
| 03/27/2023 | 81 | FIRST LETTER MOTION for Conference addressed to Magistrate Judge Robert W. Lehrburger from Mitchell Segal, Esq. dated 03/27/2023. Document filed by 212 Steakhouse Inc., Nikolay Volper..(Segal, Mitchell) (Entered: 03/27/2023) |
| 03/28/2023 | 82 | ORDER terminating 81 Letter Motion for Conference re: 81 FIRST LETTER MOTION for Conference addressed to Magistrate Judge Robert W. Lehrburger from Mitchell Segal, Esq. dated 03/27/2023. The Court will not provide legal advice. Counsel should adhere to this Court's individual rules of practice, which includes provisions regarding filing under seal. SO ORDERED. (Signed by Magistrate Judge Robert W. Lehrburger on 3/28/2023) (tg) (Entered: 03/28/2023) |
| 04/03/2023 | 83 | NOTICE: The April 4, 2023 conference on Motion for Sanctions will begin at 3:30 p.m. in Courtroom 18 D. Please note this is a time change. (Entered: 04/03/2023) |
| 04/03/2023 | 84 | FIRST LETTER MOTION for Conference *Pre Motion Conference to Disqualify and Sanctions* addressed to Magistrate Judge Robert W. Lehrburger from Mitchell Segal, Esq. dated April 3, 2023. Document filed by 212 Steakhouse Inc., Nikolay Volper. (Attachments: # 1 Exhibit Text Message, # 2 Exhibit Affidavits, # 3 Exhibit Deposition - Hug).(Segal, Mitchell) (Entered: 04/03/2023) |
| 04/03/2023 | 85 | LETTER RESPONSE in Opposition to Motion addressed to Magistrate Judge Robert W. Lehrburger from Denise A. Schulman dated April 3, 2023 re: 84 FIRST LETTER MOTION for Conference *Pre Motion Conference to Disqualify and Sanctions* addressed to Magistrate Judge Robert W. Lehrburger from Mitchell Segal, Esq. dated April 3, 2023. . Document filed by Nino Martinenko. (Attachments: # 1 Exhibit Ex 1 - conditional collective certification order).(Schulman, Denise) (Entered: 04/03/2023) |
| 04/04/2023 | 86 | ORDER denying 84 Letter Motion for Conference re: 84 FIRST LETTER MOTION for Conference *Pre Motion Conference to Disqualify and Sanctions* addressed to Magistrate Judge Robert W. Lehrburger from Mitchell Segal, Esq. dated April 3, 2023. As discussed during the hearing held on April 4, 2023, Defendants' letter motion at Dkt. 84 regarding disqualification of Plaintiff's counsel and imposing sanctions is DENIED. The text communication, and the communication with Huk, both were authorized pursuant to the Court's earlier order granting conditional certification of the collective and approving notice by text and other means. SO ORDERED. (Signed by Magistrate Judge Robert W. Lehrburger on 4/4/2023) (tg) (Entered: 04/04/2023) |
| 04/04/2023 | | Minute Entry for proceedings held before Magistrate Judge Robert W. Lehrburger: Motion for Sanctions Conference held on 4/4/2023 t 4:00 p.m. (rsh) (Entered: 04/06/2023) |
| 04/12/2023 | 87 | REPORT AND RECOMMENDATION TO HON. JENNIFER L. ROCHON: CLASS CERTIFICATION re: 70 MOTION to Certify Class . filed by Nino Martinenko, Dagmara Maja Huk. For the foregoing reasons, I recommend that Plaintiff's motion for class certification be GRANTED and that: (1) a class be certified and defined as follows: "all tipped employees - servers, runners, bussers, and bartenders - who worked for Defendants at any time on or after January 20, 2016 at 212 Steakhouse"; (2) Plaintiffs Nino |

| | | |
|---|---|---|
| | | Martinenko and Dagmara Huk be appointed class representatives; (3) Joseph & Kirschenbaum LLP be appointed Class Counsel; (4) Defendants be required to produce a complete class list to the extent they are in possession, custody, or control of information to compile that list; and (5) The class notice presented as Exhibit 1 to the DiGiulio Declaration be approved and authorized to issue. To the extent not addressed above, the Court has considered Defendants' arguments and finds them to be without merit. Objections to R&R due by 4/26/2023 (Signed by Magistrate Judge Robert W. Lehrburger on 4/12/2023) (tg) (Entered: 04/12/2023) |
| 04/12/2023 | 88 | REPORT AND RECOMMENDATION TO HON. JENNIFER L. ROCHON: MOTION FOR SANCTIONS re: 61 MOTION for Sanctions . filed by Nino Martinenko. For the foregoing reasons, I recommend that to redress Defendants' various violations of discovery obligations and orders: (1) The Court deem established the following facts: (i) 212's gross annual revenue in 2021 and 2022 exceeded $500,000; (ii) Defendant Volper was the sole owner of 212 in 2021 and 2022; (iii) all front-of-house employees who clocked in and out on the restaurant's POS system were paid the applicable New York tip credit minimum wage for the hours for which they were clocked in; (iv) Defendants paid putative class members their regular rate for overtime hours (rather than time-and-a-half); and (v) Defendants did not pay putative class members a spread-of-hours premium. (2) The Court find Defendants in contempt for failing to comply with the Court's order requiring production of all tip sheets and time records for the putative class, and impose coercive sanctions as follows: (i) Defendants be given 14 days from the date of the Court's decision on the instant motion to produce all tip sheets and time records for the putative class that are within Defendants' possession, custody or control, along with a sworn affidavit from Defendants attesting that Defendants have produced all such documents found after a reasonable search and explaining what they have done to search for and collect them; (2) that, starting 15 days from the date of the Court's decision on the instant motion, to the extent that the contempt still has not been purged, coercive sanctions be imposed, payable to the Clerk of Court, at the rate of $100 per day of continued non-compliance until the contempt is purged; and (3) if Defendants still have not purged the contempt after a total of 30 days from the date of the decision on the instant motion, the coercive sanctions increase to a daily amount of $250. (3) The Court order Defendants' attorney Mitchell Segal to pay Plaintiff for the $313 court reporter fee incurred when Defendant 212 failed to appear for its deposition on the first day for which it was noticed; and (4) The Court order Defendants to pay reasonable attorney's fees and costs in the amount of $28,805, which were incurred in connection with the instant motion and the subject discovery violations. I further recommend that Plaintiff's request to find numerosity established be denied as moot, and that Plaintiff's motion be denied in all other respects. To the extent not discussed above, the Court has considered all of Defendants' arguments and finds them to be without merit. Objections to R&R due by 4/26/2023 (Signed by Magistrate Judge Robert W. Lehrburger on 4/12/2023) (tg) (Entered: 04/12/2023) |
| 04/26/2023 | 89 | NOTICE of Substitution of Attorney. Old Attorney: Mitchell S. Segal, New Attorney: Jonathan W. Greenbaum, Address: Coburn & Greenbaum, PLLC, 1710 Rhode Island Avenue, NW, Suite 200, Washington, DC, America 20036, 202.744.5003. Document filed by 212 Steakhouse Inc...(Greenbaum, Jonathan) (Entered: 04/26/2023) |
| 04/27/2023 | 90 | NOTICE of APPEARANCE by Jonathan Wolfe Greenbaum on behalf of 212 Steakhouse Inc...(Greenbaum, Jonathan) (Entered: 04/27/2023) |
| 04/27/2023 | 91 | NOTICE of APPEARANCE by Jonathan Wolfe Greenbaum on behalf of 212 Steakhouse Inc...(Greenbaum, Jonathan) (Entered: 04/27/2023) |
| 04/27/2023 | 92 | MEMORANDUM OPINION AND ORDER for 87 Report and Recommendations, 70 Motion to Certify Class filed by Nino Martinenko, Dagmara Maja Huk, 88 Report and |

Recommendation. Accordingly, the Court adopts the Class Certification Report in its entirety. The Court GRANTS Plaintiffs' motion for class certification and HEREBY ORDERS that: 1) A class is certified and defined as follows: "all tipped employees servers, runners, bussers, and bartenders who worked for Defendants at any time on or after January 20, 2016 at 212 Steakhouse"; 2) Plaintiffs Nino Martinenko and Dagmara Huk are appointed class representatives; 3) Joseph & Kirschenbaum LLP is appointed Class Counsel; 4) Defendants are required to produce a complete class list to the extent they are in possession, custody, or control of information to compile that list; and 5) The class notice presented as Exhibit 1 to the Declaration of Michael DiGiulio, filed December 9, 2022 at ECF No. 72 is approved and authorized to issue. The lack of any timely objections, in light of the clear notice provided in the Class Certification Report, precludes appellate review of this decision. See Frank, 968 F.2d at 300; Lee, 473 F. Supp. 2d at 436. The Clerk of Court is respectfully directed to terminate ECF No. 70. (Signed by Judge Jennifer L. Rochon on 4/27/2023) (tro) (Entered: 04/28/2023)

| 04/28/2023 | 93 | MEMORANDUM OPINION AND ORDER for 88 Report and Recommendations. Accordingly, the Court adopts the Sanctions Report in its entirety, and the Court GRANTS in part and DENIES in part Plaintiff's motion for sanctions as follows: First, the Court deems established the following facts: (i) 212's gross annual revenue in 2021 and 2022 exceeded $500,000; (ii) Defendant Volper was the sole owner of 212 in 2021 and 2022; (iii) all front-of-house employees who clocked in and out on the restaurant's point-of-sale system were paid the applicable New York tip credit minimum wage for the hours for which they were clocked in; (iv) Defendants paid putative class members their regular rate for overtime hours (rather than time-and-a-half); and (v) Defendants did not pay putative class members a spread-of-hours premium. Second, the Court finds Defendants in contempt for failing to comply with the Court's order requiring production of all tip sheets and time records for the putative class, and imposes coercive sanctions as follows: (i) Defendants are given 14 days from the date of this Order to produce all tip sheets and time records for the putative class that are within Defendants' possession, custody or control, along with a sworn affidavit from Defendants attesting that Defendants have produced all such documents found after a reasonable search and explaining what they have done to search for and collect them; (2) that, starting 15 days from the date of this Order, to the extent that the contempt still has not been purged, coercive sanctions be imposed, payable to the Clerk of Court, at the rate of $100 per day of continued non-compliance until the contempt is purged; and (3) if Defendants still have not purged the contempt after a total of 30 days from the date of this Order, the coercive sanctions increase to a daily amount of $250. Third, the Court orders Defendants' attorney Mitchell Segal to pay Plaintiff for the $313 court reporter fee incurred when Defendant 212 failed to appear for its deposition on the first day for which it was noticed; and Fourth, the Court orders Defendants to pay reasonable attorney's fees and costs in the amount of $28,805, which were incurred in connection with the instant motion and the subject discovery violations. Additionally, Plaintiff's request to find numerosity established is denied as moot, and Plaintiff's motion is denied in all other respects. The lack of any timely objections, in light of the clear notice provided in the Sanctions Report, precludes appellate review of this decision. See Frank, 968 F.2d at 300; Lee, 473 F. Supp. 2d at 436. The Clerk of Court is respectfully directed to terminate ECF No. 61. (Signed by Judge Jennifer L. Rochon on 4/27/2023) (tro) (tro). (Entered: 04/28/2023) |
| 06/06/2023 | 94 | TRANSCRIPT of Proceedings re: Conference held on 4/4/2023 before Magistrate Judge Robert W. Lehrburger. Court Reporter/Transcriber: Carole Ludwig, (212) 420-0771. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/27/2023. Redacted Transcript Deadline set for 7/7/2023. Release of Transcript Restriction set for 9/5/2023. (nmo) (Entered: 06/06/2023) |

| | | |
|---|---|---|
| 06/06/2023 | 95 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Conference proceeding held on 04/04/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(nmo) (Entered: 06/06/2023) |
| 07/13/2023 | 96 | AFFIDAVIT of Nikolay Volper re: 88 Report and Recommendations,,,,,,,,,,, . Document filed by 212 Steakhouse Inc., Nikolay Volper..(Greenbaum, Jonathan) (Entered: 07/13/2023) |
| 08/22/2023 | 97 | FIRST MOTION for Conference *Requesting A Pre Motion Conference*. Document filed by 212 Steakhouse Inc...(Greenbaum, Jonathan) (Entered: 08/22/2023) |
| 08/23/2023 | 98 | ORDER By separate order today, the Court is amending the existing order of reference to Magistrate Judge Lehrburger to include all dispositive motions, including the motions contemplated by Defendants at ECF No. 97. In light of the referral of dispositive motions, to conserve resources, to promote judicial efficiency, and in an effort to achieve a faster disposition of this matter, the parties must discuss whether they are willing to consent, under 28 U.S.C. § 636(c), to conducting all further proceedings before Magistrate Judge Lehrburger If the parties consent to proceed before Magistrate Judge Lehrburger, they must, by September 6, 2023, submit to the Court a fully executed Notice, Consent, and Reference of a Civil Action to a Magistrate Judge form, a copy of which is attached to the Order of Reference (and also available at https://nysd.uscourts.gov/forms/consent-proceed-us-magistrate-judge). If the Court approves that form, all further proceedings will then be conducted before Magistrate Judge Lehrburger rather than before this Court. Any appeal would be taken directly to the United States Court of Appeals for the Second Circuit, as it would be from this Court if the consent form were not signed and so ordered. An information sheet on proceedings before magistrate judges is also attached to the Order of Reference. If any party does not consent to conducting all further proceedings before the Magistrate Judge, the parties must file a joint letter, by September 6, 2023, advising the Court that the parties do not consent, but without disclosing the identity of the party or parties who do not consent. No adverse consequences will result from the withholding of that consent. SO ORDERED. (Signed by Judge Jennifer L. Rochon on 8/23/2023) (jca) (Entered: 08/23/2023) |
| 08/23/2023 | 99 | AMENDED ORDER REFERRING CASE TO MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for General Pretrial (includes scheduling, discovery, non-dispositive pretrial motions, and settlement) and Dispositive Motion (i.e., motion requiring a Report and Recommendation). Referred to Magistrate Judge Robert W. Lehrburger. SO ORDERED. Motions referred to Robert W. Lehrburger. (Signed by Judge Jennifer L. Rochon on 8/23/2023) (jca) (Entered: 08/23/2023) |
| 08/25/2023 | 100 | LETTER RESPONSE in Opposition to Motion addressed to Magistrate Judge Robert W. Lehrburger from Denise A. Schulman dated August 25, 2023 re: 97 FIRST MOTION for Conference *Requesting A Pre Motion Conference*. . Document filed by Nino Martinenko. (Attachments: # 1 Exhibit Ex 1 - exclusion requests, # 2 Exhibit Ex 2 - mailing envelopes, # 3 Exhibit Ex 3 - paystubs, # 4 Exhibit Ex 4 - Volper deposition excerpts, # 5 Exhibit Ex 5 - Martinenko deposition excerpts).(Schulman, Denise) (Entered: 08/25/2023) |
| 08/30/2023 | 101 | FIRST LETTER MOTION for Conference re: 100 Response in Opposition to Motion,, *Request A Pre-Motion Conference* addressed to Magistrate Judge Robert W. Lehrburger from Jonathan W. Greenbaum dated August 30, 2023. Document filed by 212 Steakhouse Inc...(Greenbaum, Jonathan) (Entered: 08/30/2023) |

| 08/30/2023 | 102 | NOTICE of Hearing: Pre-Motion Conference set for 9/14/2023 at 10:30 AM before Magistrate Judge Robert W. Lehrburger. This conference will be conducted via Microsoft Teams. A link will be emailed to the parties, one week prior to the conference. The public may dial in to the listen only line at (646)-453-4442, access code 289588271#. Parties are instructed to review and adhere to Judge Lehrburger's individual rules and practices. (rsh) (Entered: 08/30/2023) |
| 08/30/2023 | 103 | JOINT LETTER addressed to Judge Jennifer L. Rochon from Jonathan W. Greenbaum dated August 30, 2023 re: Nin Martinenko, et al v. 212 Steakhouse, Inc., et al. Document filed by 212 Steakhouse Inc...(Greenbaum, Jonathan) (Entered: 08/30/2023) |
| 09/01/2023 | 105 | LETTER MOTION for Conference re: Plaintiff's anticipated summary judgment motion addressed to Magistrate Judge Robert W. Lehrburger from Denise A. Schulman dated September 1, 2023. Document filed by Nino Martinenko..(Schulman, Denise) (Entered: 09/01/2023) |
| 09/07/2023 | 106 | FIRST LETTER MOTION for Conference re: 105 LETTER MOTION for Conference re: Plaintiff's anticipated summary judgment motion addressed to Magistrate Judge Robert W. Lehrburger from Denise A. Schulman dated September 1, 2023. Response to Plaintiff's September 1, 2023 Letter addressed to Magistrate Judge Robert W. Lehrburger from Jonathan W. Greenbaum dated September 6, 2023. Document filed by 212 Steakhouse Inc...(Greenbaum, Jonathan) (Entered: 09/07/2023) |
| 09/14/2023 | | Minute Entry for proceedings held before Magistrate Judge Robert W. Lehrburger: Pre-Motion Conference held on 9/14/2023 at 10:30 a.m. (rsh) (Entered: 09/14/2023) |
| 09/14/2023 | 107 | ORDER terminating 97 Letter Motion for Conference re: 97 FIRST MOTION for Conference Requesting A Pre Motion Conference, 101 FIRST LETTER MOTION for Conference re: 100 Response in Opposition to Motion,, Request A Pre-Motion Conference addressed to Magistrate Judge Robert W. Lehrburger from Jonathan W. Greenbaum dated August 30, 2023., 105 LETTER MOTION for Conference re: Plaintiff's anticipated summary judgment motion addressed to Magistrate Judge Robert W. Lehrburger from Denise A. Schulman dated September 1, 2023., 106 FIRST LETTER MOTION for Conference re: 105 LETTER MOTION for Conference re: Plaintiff's anticipated summary judgment motion addressed to Magistrate Judge Robert W. Lehrburger from Denise A. Schulman dated September 1, 2023. Re ; terminating 101 Letter Motion for Conference re: 97 FIRST MOTION for Conference Requesting A Pre Motion Conference, 101 FIRST LETTER MOTION for Conference re: 100 Response in Opposition to Motion,, Request A Pre-Motion Conference addressed to Magistrate Judge Robert W. Lehrburger from Jonathan W. Greenbaum dated August 30, 2023., 105 LETTER MOTION for Conference re: Plaintiff's anticipated summary judgment motion addressed to Magistrate Judge Robert W. Lehrburger from Denise A. Schulman dated September 1, 2023., 106 FIRST LETTER MOTION for Conference re: 105 LETTER MOTION for Conference re: Plaintiff's anticipated summary judgment motion addressed to Magistrate Judge Robert W. Lehrburger from Denise A. Schulman dated September 1, 2023. Re ; terminating 105 Letter Motion for Conference re: 97 FIRST MOTION for Conference Requesting A Pre Motion Conference, 101 FIRST LETTER MOTION for Conference re: 100 Response in Opposition to Motion, Request A Pre-Motion Conference addressed to Magistrate Judge Robert W. Lehrburger from Jonathan W. Greenbaum dated August 30, 2023., 105 LETTER MOTION for Conference re: Plaintiff's anticipated summary judgment motion addressed to Magistrate Judge Robert W. Lehrburger from Denise A. Schulman dated September 1, 2023., 106 FIRST LETTER MOTION for Conference re: 105 LETTER MOTION for Conference re: Plaintiff's anticipated summary judgment motion addressed to Magistrate Judge Robert W. Lehrburger from Denise A. Schulman dated September 1, 2023. Re ; terminating 106 Letter Motion for Conference re: 97 FIRST MOTION for Conference Requesting A Pre Motion Conference, 101 FIRST |

| | | |
|---|---|---|
| | | LETTER MOTION for Conference re: [100](#) Response in Opposition to Motion,, Request A Pre-Motion Conference addressed to Magistrate Judge Robert W. Lehrburger from Jonathan W. Greenbaum dated August 30, 2023., [105](#) LETTER MOTION for Conference re: Plaintiff's anticipated summary judgment motion addressed to Magistrate Judge Robert W. Lehrburger from Denise A. Schulman dated September 1, 2023., [106](#) FIRST LETTER MOTION for Conference re: [105](#) LETTER MOTION for Conference re: Plaintiff's anticipated summary judgment motion addressed to Magistrate Judge Robert W. Lehrburger from Denise A. Schulman dated September 1, 2023. As set forth during the pre-motion conference held on September 14, 2023: 1. Plaintiffs may proceed with filing their motion for summary judgment. Defendants may proceed with their motion to decertify (and, if warranted, summary judgment). The parties will file their motions on the same schedule: Opening motion papers shall be filed by November 16, 2023; Opposing motion papers shall be filed by December 21, 2023; Reply briefs shall be filed by January 12, 2024. 2. Defendants' motion to amend to add a faithless-employee counterclaim is denied for lack of good cause, undue delay, and lack of merit. 3. By September 21, 2023, the parties shall jointly file a letter regarding the end date for sanctions keyed to document production rather than provision of the requisite affidavit. The Clerk of Court is respectfully directed to terminate the motions at Dkts. 97, 100, 105, and 106. SO ORDERED. (Signed by Magistrate Judge Robert W. Lehrburger on 9/14/2023) (mml) (Entered: 09/14/2023) |
| 09/14/2023 | | Set/Reset Deadlines: Motions due by 11/16/2023. Responses due by 12/21/2023. Replies due by 1/12/2024. (mml) (Entered: 09/14/2023) |
| 09/19/2023 | 108 | NOTICE of Hearing: Settlement Conference set for 10/5/2023 at 9:30 AM before Magistrate Judge Robert W. Lehrburger. This conference will be conducted via Microsoft Teams. A link will be emailed to the parties, one week prior to the conference. The parties are instructed to review and adhere to Judge Lehrburger's individual Settlement Conference Procedures. The parties are further instructed to submit their pre-conference submissions, along with their Attendance Acknowledgment Form (available in pdf fillable format as attachment to the Settlement Conference Procedures) no later than September 28, 2023, by 5:00 p.m. (rsh) (Entered: 09/19/2023) |
| 09/21/2023 | [109](#) | JOINT LETTER addressed to Magistrate Judge Robert W. Lehrburger from Jonathan W. Greenbaum dated 09.21.2023 re: Sanctions. Document filed by 212 Steakhouse Inc... (Greenbaum, Jonathan) (Entered: 09/21/2023) |
| 09/21/2023 | [110](#) | MEMO ENDORSEMENT on re: [109](#) Letter Sanctions filed by 212 Steakhouse Inc. ENDORSEMENT: SO ORDERED. (Signed by Magistrate Judge Robert W. Lehrburger on 9/21/23) (yv) Transmission to Finance Unit (Cashiers) for processing. (Entered: 09/21/2023) |
| 10/05/2023 | | Minute Entry for proceedings held before Magistrate Judge Robert W. Lehrburger: Settlement Conference held on 10/5/2023 at 9:30 a.m. (rsh) (Entered: 10/05/2023) |
| 11/16/2023 | [111](#) | FIRST MOTION to Dismiss *Defendants Motion To Decertify Rule 23 Class And Motion for Judgment As To Plaintiff's Count 5 Of The Complaint*. Document filed by 212 Steakhouse, Inc., Nikolay Volper. (Attachments: # [1](#) Proposed Order Proposed Order). (Greenbaum, Jonathan) (Entered: 11/16/2023) |
| 11/16/2023 | [112](#) | FIRST MOTION to Dismiss *Memorandum In Support Of Motion To Decertify Rule 23 Class And Motion For Judgment As To Count 5 Of The Complaint*. Document filed by 212 Steakhouse, Inc., Nikolay Volper. (Attachments: # [1](#) Affidavit Declaration of Jonathan Greenbaum, # [2](#) Exhibit Exhibit 1 To Declaration of Jonathan Greenbaum, # [3](#) Exhibit Exhibit 2 To Declaration of Jonathan Greenbaum, # [4](#) Exhibit Exhibit 3 To Declaration of Jonathan Greenbaum, # [5](#) Exhibit Exhibit 4 To Declaration of Jonathan Greenbaum, # [6](#) Exhibit Exhibit 5 To Declaration of Jonathan Greenbaum, # [7](#) Affidavit Declaration of |

| | | |
|---|---|---|
| | | Nikoly Volper, # <u>8</u> Exhibit Exhibit 1 To Declaration of Nikolay Volper, # <u>9</u> Exhibit Exhibit 2 To Declaration of Nikolay Volper, # <u>10</u> Exhibit Exhibit 3 To Declaration of Nickolay Volper, # <u>11</u> Exhibit Exhibit 4 To Declaration of Nikolay Volper, # <u>12</u> Exhibit Exhibit 5 To Declaration of Nikolay Volper, # <u>13</u> Exhibit Exhibit 6 To Declaration of Nikolay Volper).(Greenbaum, Jonathan) (Entered: 11/16/2023) |
| 11/16/2023 | <u>113</u> | MOTION for Summary Judgment . Document filed by Dagmara Maja Huk, Nino Martinenko..(Digiulio, Michael) (Entered: 11/16/2023) |
| 11/16/2023 | <u>114</u> | MEMORANDUM OF LAW in Support re: <u>113</u> MOTION for Summary Judgment . . Document filed by Dagmara Maja Huk, Nino Martinenko..(Digiulio, Michael) (Entered: 11/16/2023) |
| 11/16/2023 | <u>115</u> | DECLARATION of Michael DiGiulio in Support re: <u>113</u> MOTION for Summary Judgment .. Document filed by Dagmara Maja Huk, Nino Martinenko.. (Attachments: # <u>1</u> Exhibit 1, # <u>2</u> Exhibit 2, # <u>3</u> Exhibit 3, # <u>4</u> Exhibit 4, # <u>5</u> Exhibit 5, # <u>6</u> Exhibit 6, # <u>7</u> Exhibit 7, # <u>8</u> Exhibit 8, # <u>9</u> Exhibit 9, # <u>10</u> Exhibit 10, # <u>11</u> Exhibit 11, # <u>12</u> Exhibit 12, # <u>13</u> Exhibit 13).(Digiulio, Michael) (Entered: 11/16/2023) |
| 11/16/2023 | <u>116</u> | DECLARATION of Denise A. Schulman in Support re: <u>113</u> MOTION for Summary Judgment .. Document filed by Dagmara Maja Huk, Nino Martinenko. (Attachments: # <u>1</u> Exhibit 1, # <u>2</u> Exhibit 2, # <u>3</u> Exhibit 3, # <u>4</u> Exhibit 4, # <u>5</u> Exhibit 5, # <u>6</u> Exhibit 6, # <u>7</u> Exhibit 7, # <u>8</u> Exhibit 8, # <u>9</u> Exhibit 9, # <u>10</u> Exhibit 10).(Digiulio, Michael) (Entered: 11/16/2023) |
| 11/16/2023 | <u>117</u> | DECLARATION of Nino Martinenko in Support re: <u>113</u> MOTION for Summary Judgment .. Document filed by Dagmara Maja Huk, Nino Martinenko..(Digiulio, Michael) (Entered: 11/16/2023) |
| 11/16/2023 | <u>118</u> | RULE 56.1 STATEMENT. Document filed by Dagmara Maja Huk, Nino Martinenko.. (Digiulio, Michael) (Entered: 11/16/2023) |
| 11/27/2023 | | CASHIERS OFFICE REMARK on <u>93</u> Order Adopting Report and Recommendations, in the amount of $3150.00, paid on 11/27/23, Receipt Number 23609.(amf) (Entered: 11/27/2023) |
| 12/21/2023 | <u>119</u> | RESPONSE in Opposition to Motion re: <u>113</u> MOTION for Summary Judgment . *Opposition To Plaintiffs' Motion For Summary Judgment*. Document filed by 212 Steakhouse Inc.. (Attachments: # <u>1</u> Supplement Defendants Counter-Statement Of Disputed Facts Pursuant To Local Civil Rule 56.1, # <u>2</u> Supplement Declaration of Nikolay Volper In Opposition To Plaintiffs Motion For Summary Judgment, # <u>3</u> Exhibit Exhibit 1 To Declaration of Nikolay Volper, # <u>4</u> Exhibit Exhibit 2 To Declaration of Nikolay Volper, # <u>5</u> Exhibit Exhibit 3 To Declaration of Nikolay Volper, # <u>6</u> Supplement Tab 1 To Exhibit 3 To Declaration of Nikolay Volper, # <u>7</u> Supplement Tab 2 To Exhibit 3 To Declaration of Nikolay Volper, # <u>8</u> Exhibit Exhibit 4 To Declaration Of Nikolay Volper, # <u>9</u> Supplement Declaration of Jonathan Greenbaum, # <u>10</u> Exhibit Exhibit 1 To Declaration of Jonathan Greenbaum, # <u>11</u> Exhibit Exhibit 2 To Declaration of Jonathan Greenbaum, # <u>12</u> Exhibit Exhibit 3 To Declaration of Jonathan Greenbaum).(Greenbaum, Jonathan) (Entered: 12/21/2023) |
| 12/21/2023 | <u>120</u> | MEMORANDUM OF LAW in Opposition re: <u>111</u> FIRST MOTION to Dismiss *Defendants Motion To Decertify Rule 23 Class And Motion for Judgment As To Plaintiff's Count 5 Of The Complaint*., <u>112</u> FIRST MOTION to Dismiss *Memorandum In Support Of Motion To Dismiss Rule 23 Class And Motion For Judgment As To Count 5 Of The Complaint*. . Document filed by Dagmara Maja Huk, Nino Martinenko..(Digiulio, Michael) (Entered: 12/21/2023) |

| 12/21/2023 | 121 | DECLARATION of Michael DiGiulio in Opposition re: 112 FIRST MOTION to Dismiss *Memorandum In Support Of Motion To Decertify Rule 23 Class And Motion For Judgment As To Count 5 Of The Complaint.*, 111 FIRST MOTION to Dismiss *Defendants Motion To Decertify Rule 23 Class And Motion for Judgment As To Plaintiff's Count 5 Of The Complaint..* Document filed by Dagmara Maja Huk, Nino Martinenko. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6). (Digiulio, Michael) (Entered: 12/21/2023) |
|---|---|---|
| 12/21/2023 | 122 | DECLARATION of Nino Martinenko in Opposition re: 111 FIRST MOTION to Dismiss *Defendants Motion To Decertify Rule 23 Class And Motion for Judgment As To Plaintiff's Count 5 Of The Complaint.*, 112 FIRST MOTION to Dismiss *Memorandum In Support Of Motion To Decertify Rule 23 Class And Motion For Judgment As To Count 5 Of The Complaint..* Document filed by Nino Martinenko..(Digiulio, Michael) (Entered: 12/21/2023) |
| 12/21/2023 | 123 | DECLARATION of Dagmara Huk in Opposition re: 111 FIRST MOTION to Dismiss *Defendants Motion To Decertify Rule 23 Class And Motion for Judgment As To Plaintiff's Count 5 Of The Complaint.*, 112 FIRST MOTION to Dismiss *Memorandum In Support Of Motion To Decertify Rule 23 Class And Motion For Judgment As To Count 5 Of The Complaint..* Document filed by Dagmara Maja Huk..(Digiulio, Michael) (Entered: 12/21/2023) |
| 01/10/2024 | 124 | FIRST LETTER addressed to Magistrate Judge Robert W. Lehrburger from Jonathan W. Greenbaum re: Request Leave To File Replies To The Respective Motions Of No More Than 12 Pages, 2 Over Your Honor's Individual Rules. Document filed by 212 Steakhouse Inc...(Greenbaum, Jonathan) (Entered: 01/10/2024) |
| 01/11/2024 | 125 | MEMO ENDORSEMENT on re: 124 Letter, filed by 212 Steakhouse Inc. ENDORSEMENT: Granted. SO ORDERED. (Signed by Magistrate Judge Robert W. Lehrburger on 1/11/2024) (mml) (Entered: 01/11/2024) |
| 01/12/2024 | 126 | REPLY MEMORANDUM OF LAW in Support re: 113 MOTION for Summary Judgment . . Document filed by Dagmara Maja Huk, Nino Martinenko..(Digiulio, Michael) (Entered: 01/12/2024) |
| 01/12/2024 | 127 | REPLY AFFIRMATION of Michael DiGiulio in Support re: 113 MOTION for Summary Judgment . . Document filed by Dagmara Maja Huk, Nino Martinenko. (Attachments: # 1 Exhibit A).(Digiulio, Michael) (Entered: 01/12/2024) |
| 01/12/2024 | 128 | FIRST REPLY MEMORANDUM OF LAW in Opposition re: 112 FIRST MOTION to Dismiss *Memorandum In Support Of Motion To Decertify Rule 23 Class And Motion For Judgment As To Count 5 Of The Complaint. Defendants' Reply To Plaintiffs Opposition To Decertify Rule 23 Class And In Further Support Of Defendants' Motion For Judgment As To Count 5 Of The Complaint.* Document filed by 212 Steakhouse Inc...(Greenbaum, Jonathan) (Entered: 01/12/2024) |
| 01/16/2024 | 129 | LETTER MOTION for Leave to File sur-reply addressed to Magistrate Judge Robert W. Lehrburger from Denise A. Schulman dated January 16, 2024. Document filed by Nino Martinenko..(Schulman, Denise) (Entered: 01/16/2024) |
| 01/18/2024 | 130 | FIRST LETTER addressed to Magistrate Judge Robert W. Lehrburger from Jonathan W. Greenbaum dated 01.18.2024 re: Plaintiffs' Request For Leave To File A Surreply Be Denied. Document filed by 212 Steakhouse Inc...(Greenbaum, Jonathan) (Entered: 01/18/2024) |
| 01/19/2024 | 131 | ORDER denying 129 Letter Motion for Leave to File Document. The request to submit a sur-reply brief is denied, but the Court will accept and consider both the instant letter as a |

| | | sur-reply as well as the Plaintiff's letter in response at Dkt. 130. SO ORDERED. (Signed by Magistrate Judge Robert W. Lehrburger on 1/19/2024) (mml) (Entered: 01/19/2024) |
|---|---|---|
| 08/13/2024 | 132 | REPORT AND RECOMMENDATION TO HON. JENNIFER L. ROCHON: CLASS DECERTIFICATION AND SUMMARY JUDGMENT re: 111 FIRST MOTION to Dismiss *Defendants Motion To Decertify Rule 23 Class And Motion For Judgment As To Plaintiff's Count 5 Of The Complaint* filed by 212 Steakhouse Inc., Nikolay Volper, 112 FIRST MOTION to Dismiss *Memorandum In Support Of Motion To Decertify Rule 23 Class And Motion For Judgment As To Count 5 Of The Complaint* filed by 212 Steakhouse Inc., Nikolay Volper, 113 MOTION for Summary Judgment filed by Nino Martinenko, Dagmara Maja Huk. To the extent not discussed herein, the Court has considered all of the parties' arguments and determined them to be moot or without merit. For the foregoing reasons, I recommend that Defendants motion to decertify the Rule 23 class be DENIED and Plaintiffs' motion for summary judgment be GRANTED in part and DENIED in part. Specifically, I recommend that: 1. The class be awarded unpaid minimum wages under the NYLL without a tip credit allowance in the total amount of $96,608.35; 2. The class be awarded unpaid overtime wages under the NYLL without a tip credit allowance in the total amount of $2,530.75; 3. The class be awarded unpaid spread-of-hours premiums under the NYLL where applicable in the total amount of $2,388; 4. The class be awarded liquidated damages under the NYLL in the total amount of $101,527.10; 5. Defendant Volper be held individually liable for damages under the FLSA and NYLL; 6. Plaintiff Huk's NYLL § 195 wage notice and statement claims be dismissed for lack of standing; 7. Summary judgment is denied on the rest of the class members' NYLL § 195 wage notice and wage statement claims; and 8. The parties be ordered to meet and confer regarding next steps for addressing individualized injury with respect to the unnamed class member § 195 claims. 9. Prejudgment interest be awarded from June 18, 2019 at a rate of 9% on the total unpaid wages of $101,527.10. Objections to R&R due by 8/27/2024. (Signed by Magistrate Judge Robert W. Lehrburger on 8/13/2024) (mml) (Entered: 08/13/2024) |
| 08/14/2024 | 133 | LETTER MOTION for Extension of Time addressed to Judge Jennifer L. Rochon from Jonathan Greenbaum dated 8/14/24. Document filed by 212 Steakhouse Inc., Nikolay Volper..(Greenbaum, Jonathan) (Entered: 08/14/2024) |
| 08/14/2024 | 134 | ORDER granting in part and denying in part 133 Letter Motion for Extension of Time. The request is GRANTED in part and DENIED in part. Objections to the R&R shall be filed no later than August 30, 2024. Responses to objections shall be filed no later than September 10, 2024. SO ORDERED. Objections to R&R due by 8/30/2024. (Signed by Judge Jennifer L. Rochon on 8/14/2024) (tg) (Entered: 08/15/2024) |
| 08/14/2024 | | Terminate Transcript Deadlines (tg) (Entered: 08/15/2024) |
| 08/30/2024 | 135 | OBJECTION to 132 Report and Recommendations *Defendants' Objection To Report And Recommendation* Document filed by 212 Steakhouse Inc.. (Attachments: # 1 Proposed Order Proposed Order).(Greenbaum, Jonathan) (Entered: 08/30/2024) |
| 08/30/2024 | 136 | OBJECTION to 132 Report and Recommendations Document filed by Dagmara Maja Huk, Nino Martinenko..(Schulman, Denise) (Entered: 08/30/2024) |
| 09/03/2024 | 137 | NOTICE of supplemental authority re: 136 Objection to Report and Recommendations. Document filed by Dagmara Maja Huk, Nino Martinenko. (Attachments: # 1 Exhibit Ex 1 - Guthrie v. Rainbow Fencing Inc.).(Schulman, Denise) (Entered: 09/03/2024) |
| 09/09/2024 | 138 | NOTICE of supplemental authority re: 136 Objection to Report and Recommendations. Document filed by Dagmara Maja Huk, Nino Martinenko. (Attachments: # 1 Exhibit Ex 1- Castillo v Hollis Delicatessen Corp, # 2 Exhibit Ex 2 - Reyes v Crystal Window & Door Sys.).(Schulman, Denise) (Entered: 09/09/2024) |

| 09/10/2024 | 139 | MEMORANDUM OF LAW in Opposition re: 135 Objection to Report and Recommendations . Document filed by Dagmara Maja Huk, Nino Martinenko.. (Schulman, Denise) (Entered: 09/10/2024) |
|---|---|---|
| 09/10/2024 | 140 | FIRST MEMORANDUM OF LAW in Opposition *Opposition And Response To Plaintiffs Objections To Report And Recommendation*. Document filed by 212 Steakhouse Inc... (Greenbaum, Jonathan) (Entered: 09/10/2024) |
| 09/24/2024 | 141 | OPINION AND ORDER for 132 Report and Recommendations. For the foregoing reasons, the Court adopts the R&R in its entirety. Defendants' motion to decertify the Rule 23 class is DENIED. Plaintiffs' motion for summary judgment IS GRANTED in part and DENIED in part. Defendants cross-motion for summary judgment is GRANTED in part and DENIED in part. Specifically, the Court orders that: 1. The class be awarded unpaid minimum wages under the NYLL without a tip credit allowance in the total amount of $96,608.35; 2. The class be awarded unpaid overtime wages under the NYLL without a tip credit allowance in the total amount of $2,530.75; 3. The class be awarded unpaid spread-of-hours premiums under the NYLL where applicable in the total amount of $2,388; 4. The class be awarded liquidated damages under the NYLL in the total amount of $101,527.10; 5. Defendant Volper be held individually liable for damages under the FLSA and NYLL; 6. Plaintiff Huk's NYLL Section 195 wage notice and statement claims be dismissed for lack of standing; 7. Summary judgment be denied on the rest of the class members' NYLL Section 195 wage notice and wage statement claims; 8. The parties be ordered to meet and confer regarding next steps for addressing individualized injury with respect to the unnamed class member Section 195 claims; and 9. Prejudgment interest be awarded from June 18, 2019, at a rate of 9% on the total unpaid wages of $101,527.10. SO ORDERED. (Signed by Judge Jennifer L. Rochon on 9/24/2024) (jca) Transmission to Orders and Judgments Clerk for processing. (Entered: 09/24/2024) |
| 09/25/2024 | 142 | CLERK'S JUDGMENT re: 141 Opinion Order. in favor of Dagmara Maja Huk, Nino Martinenko against 212 Steakhouse Inc., Nikolay Volper in the amount of $ 251,269.84. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Opinion and Order dated September 24, 2024, the Court adopts the R&R in its entirety. Defendants' motion to decertify the Rule 23 class is DENIED. Plaintiffs' motion for summary judgment is GRANTED in part and DENIED in part. Defendants cross-motion for summary judgment is GRANTED in part and DENIED in part. Specifically, the Court orders that: 1. The class is awarded unpaid minimum wages under the NYLL without a tip credit allowance in the total amount of $96,608.35; 2. The class is awarded unpaid overtime wages under the NYLL without a tip credit allowance in the total amount of $2,530.75; 3. The class is awarded unpaid spread-of-hours premiums under the NYLL where applicable in the total amount of $2,388; 4. The class is awarded liquidated damages under the NYLL in the total amount of $101,527.10; 5. Defendant Volper is held individually liable for damages under the FLSA and NYLL; 6. Plaintiff Huk's NYLL Section 195 wage notice and statement claims be dismissed for lack of standing; 7. Summary judgment is denied on the rest of the class members' NYLL Section 195 wage notice and wage statement claims; 8. The parties is ordered to meet and confer regarding next steps for addressing individualized injury with respect to the unnamed class member Section 195 claims; and 9. Prejudgment interest awarded from June 18, 2019, at a rate of 9% on the total unpaid wages of $101,527.10 to the entry of the judgment in the amount of $48,215.64. (Signed by Acting Clerk of Court Daniel Ortiz on 9/25/2024) (Attachments: # 1 Notice of Right to Appeal) (nd) (Entered: 09/25/2024) |
| 10/01/2024 | 143 | LETTER MOTION for Extension of Time to File *motion for attorneys' fees and costs* addressed to Judge Jennifer L. Rochon from Denise A. Schulman dated October 1, 2024. |

| | | Document filed by Dagmara Maja Huk, Nino Martinenko..(Schulman, Denise) (Entered: 10/01/2024) |
|---|---|---|
| 10/02/2024 | 144 | ORDER granting in part 143 Letter Motion for Extension of Time to File. The request is GRANTED in part. Plaintiffs' deadline for their motion for attorneys' fees and costs is extended to November 8, 2024. SO ORDERED. (Signed by Judge Jennifer L. Rochon on 10/2/2024) (jca) (Entered: 10/02/2024) |
| 10/02/2024 | | Set/Reset Deadlines: Motions due by 11/8/2024. (jca) (Entered: 10/02/2024) |
| 10/15/2024 | 145 | LETTER addressed to Judge Jennifer L. Rochon from Denise A. Schulman dated October 15, 2024 re: request to dismiss without prejudice all remaining NYLL 195 claims. Document filed by Dagmara Maja Huk, Nino Martinenko. (Attachments: # 1 Exhibit Ex 1 - proposed notice, # 2 Exhibit Ex 2 - proposed judgment).(Schulman, Denise) (Entered: 10/15/2024) |
| 10/16/2024 | 146 | MEMO ENDORSEMENT on re: 145 Letter, filed by Nino Martinenko, Dagmara Maja Huk ENDORSEMENT Defendant shall respond to this letter by October 21, 2024. (Signed by Judge Jennifer L. Rochon on 10/16/2024) (jca) (Entered: 10/16/2024) |
| 10/21/2024 | 147 | LETTER addressed to Judge Jennifer L. Rochon from Jonathan W. Greenbaum dated 10.16.2024 re: Response To Docket No. 145 10.15. 24 Letter. Document filed by 212 Steakhouse Inc...(Greenbaum, Jonathan) (Entered: 10/21/2024) |
| 10/23/2024 | 148 | MEMO ENDORSEMENT on re: 147 Letter filed by 212 Steakhouse Inc. ENDORSEMENT Given that new items were raised in this letter, Plaintiff shall respond by October 28, 2024. SO ORDERED. (Signed by Judge Jennifer L. Rochon on 10/23/2024) (jca) (Entered: 10/23/2024) |
| 10/28/2024 | 149 | LETTER addressed to Judge Jennifer L. Rochon from Denise A. Schulman dated October 28, 2024 re: NYLL 195 claims. Document filed by Dagmara Maja Huk, Nino Martinenko. (Attachments: # 1 Exhibit Ex 1 - state court complaints, # 2 Exhibit Ex 2 - state court dockets, # 3 Exhibit Ex 3 - state court appearances, # 4 Exhibit Ex 4 - revised proposed judgment).(Schulman, Denise) (Entered: 10/28/2024) |
| 11/08/2024 | 150 | MOTION for Attorney Fees *and Costs*. Document filed by Nino Martinenko..(Digiulio, Michael) (Entered: 11/08/2024) |
| 11/08/2024 | 151 | MEMORANDUM OF LAW in Support re: 150 MOTION for Attorney Fees *and Costs*. . Document filed by Nino Martinenko..(Digiulio, Michael) (Entered: 11/08/2024) |
| 11/08/2024 | 152 | DECLARATION of Michael DiGiulio in Support re: 150 MOTION for Attorney Fees *and Costs*.. Document filed by Nino Martinenko. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6).(Digiulio, Michael) (Entered: 11/08/2024) |
| 11/13/2024 | 153 | OPINION AND ORDERFor the foregoing reasons, Plaintiffs' motion to voluntarily dismiss the remaining NYLL Section 195 claims without prejudice is GRANTED, and Defendants' motion to decertify the class is DENIED. The Court will enter the proposed judgment at Dkt. 145-2 that includes the allocation among Class Members, and Plaintiffs are ordered to issue the notice to Class Members set forth at Dkt. 145-1. SO ORDERED. (Signed by Judge Jennifer L. Rochon on 11/13/2024) (jca) (Entered: 11/13/2024) |
| 11/14/2024 | 154 | JUDGMENT It is hereby ORDERED, ADJUDGED, AND DECREED, that the Clerk of Court shall enter judgment as follows: 1.Pursuant to the Courts Opinion and Order dated September 24, 2024, judgment shall be entered against Defendants 212 Steakhouse, Inc. and Nikolay Volper, jointly and severally, and in favor of the class in the total amount of $251,269.84 as follows: i. The class is awarded unpaid minimum wages under the NYLL without a tip credit allowance in the total amount of $96,608.35; ii. The class is awarded |

| | | |
|---|---|---|
| | | unpaid overtime wages under the NYLL without a tip credit allowance in the total amount of $2,530.75; iii. The class is awarded unpaid spread-of-hours premiums under the NYLL where applicable in the total amount of $2,388; iv. The class is awarded liquidated damages under the NYLL in the total amount of $101,527.10; v. Prejudgment interest is awarded from June 18, 2019 to September 25, 2024, at a rate of 9% on the total unpaid wages of $101,527.10 in the amount of $48,215.64. The judgment of $251,269.84 shall be allocated among the Class Members as set forth in Exhibit A to this Judgment. 2.If the judgment is not entirely paid within 90 days of judgment, or 90 days after the expiration of time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by 15 percent. The Court also awards post-judgment interest pursuant to 28 U.S.C. § 1961. 3. For the reasons stated in the Courts Opinion and Order dated September 24, 2024, Plaintiff Huk's NYLL Section 195 wage notice and statement claims are dismissed without prejudice for lack of standing. 4. The Court grants Plaintiffs' request to dismiss Plaintiff Martinenko's and all remaining class members' NYLL Section 195 wage notice and statement claims without prejudice.The Clerk of Court is respectfully requested to close the case. (Signed by Judge Jennifer L. Rochon on 11/14/2024) (jca) Transmission to Finance Unit (Cashiers) for processing. (Entered: 11/14/2024) |
| 11/22/2024 | 155 | RESPONSE in Opposition to Motion re: 150 MOTION for Attorney Fees *and Costs*. *Defendants Opposition To Plaintiffs Motion For Attorneys' Fees*. Document filed by 212 Steakhouse Inc...(Greenbaum, Jonathan) (Entered: 11/22/2024) |
| 11/22/2024 | 156 | LETTER MOTION for Extension of Time to File Response/Reply *in further support of motion for attorneys' fees and costs* addressed to Judge Jennifer L. Rochon from Denise A. Schulman dated November 22, 2024. Document filed by Dagmara Maja Huk, Nino Martinenko..(Schulman, Denise) (Entered: 11/22/2024) |
| 11/22/2024 | 157 | ORDER granting 156 Letter Motion for Extension of Time to File Response/Reply Plaintiffs' request for an extension is GRANTED. Plaintiffs shall file their reply by December 6, 2024. SO ORDERED. Replies due by 12/6/2024. (Signed by Judge Jennifer L. Rochon on 11/22/2024) (jca) (Entered: 11/22/2024) |
| 11/25/2024 | 158 | LETTER addressed to Judge Jennifer L. Rochon from Michael DiGiulio dated November 25, 2024 re: Request for Amended Judgment. Document filed by Nino Martinenko. (Attachments: # 1 Exhibit A - Amended Proposed Judgement).(Digiulio, Michael) (Entered: 11/25/2024) |
| 11/26/2024 | 159 | ORDER On September 24, 2024, this Court denied Defendants' motion to decertify the class and granted summary judgment in Plaintiffs' and the Class's favor on their Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") claims, with the exception of the NYLL § 195 claims. Dkt. 141. The Court dismissed without prejudice the NYLL § 195 claims for opt-in Plaintiff Huk for lack of standing and denied the motions as to the remaining NYLL § 195 claims. Dkt. 141. Plaintiffs thereafter moved to voluntarily dismiss the remaining NYLL § 195 claims without prejudice. Dkts. 145, 149. Defendants in turn moved to dismiss these claims with prejudice and to decertify the Class. Dkt. 147. On November 13, 2024, the Court granted Plaintiffs' request to dismiss the claims without prejudice and denied Defendants' motion in its entirety, Dkt. 153, and on November 14, 2024, the Court entered final judgment, Dkt. 154. Plaintiffs now request that the Court amend the final judgment to clarify that the NYLL § 195 claims that were dismissed without prejudice are dismissed without leave to replead in this action. Dkt. 158. Plaintiffs' request for an amendment of the final judgment in this action is therefore denied. (And as further set forth herein.) SO ORDERED. (Signed by Judge Jennifer L. Rochon on 11/26/2024) (jca) (Entered: 11/26/2024) |

| | | |
|---|---|---|
| 12/05/2024 | 160 | REPLY MEMORANDUM OF LAW in Support re: 150 MOTION for Attorney Fees *and Costs*. . Document filed by Dagmara Maja Huk, Nino Martinenko..(Schulman, Denise) (Entered: 12/05/2024) |
| 12/05/2024 | 161 | DECLARATION of Denise A. Schulman in Support re: 150 MOTION for Attorney Fees *and Costs*.. Document filed by Dagmara Maja Huk, Nino Martinenko. (Attachments: # 1 Exhibit Ex 1 - time records, # 2 Exhibit Ex 2 - time records).(Schulman, Denise) (Entered: 12/05/2024) |
| 12/11/2024 | 162 | **FILING ERROR - NO ORDER SELECTED FOR APPEAL - FIRST NOTICE OF APPEAL.** Document filed by 212 Steakhouse Inc.. Filing fee $ 605.00, receipt number ANYSDC-30312997. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Attachments: # 1 Exhibit A, # 2 Exhibit B).(Greenbaum, Jonathan) Modified on 12/11/2024 (km). (Entered: 12/11/2024) |
| 12/11/2024 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT APPEAL. Notice to attorney Jonathan Greenbaum to RE-FILE Document No. 162 Notice of Appeal. The filing is deficient for the following reason(s): the order/judgment being appealed was not selected. Re-file the appeal using the event type Notice of Appeal found under the event list Appeal Documents - attach the correct signed PDF - select the correct named filer/filers - select the correct order/judgment being appealed. When refiling, bypass the payment screen since it was already paid. (km)** (Entered: 12/11/2024) |
| 12/11/2024 | 163 | NOTICE OF APPEARANCE by Jonathan Wolfe Greenbaum on behalf of 212 Steakhouse Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B).(Greenbaum, Jonathan) (Entered: 12/11/2024) |
| 12/11/2024 | 164 | FIRST NOTICE OF APPEAL from 142 Clerk's Judgment,,,,,,, 154 Judgment,,,,,,,,. Document filed by 212 Steakhouse Inc.. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Attachments: # 1 Exhibit A, # 2 Exhibit B). (Greenbaum, Jonathan) (Entered: 12/11/2024) |
| 12/11/2024 | | USCA Appeal Fees received $605.00 receipt number ANYSDC-30312997 on 12/11/2024 re: 164 Notice of Appeal, filed by 212 Steakhouse Inc.(km) (Entered: 12/11/2024) |
| 12/11/2024 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 164 Notice of Appeal.(km) (Entered: 12/11/2024) |
| 12/11/2024 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 164 Notice of Appeal, filed by 212 Steakhouse Inc. were transmitted to the U.S. Court of Appeals.(km) (Entered: 12/11/2024) |
| 12/12/2024 | 165 | NOTICE OF CROSS APPEAL from 154 Judgment,,,,,,,, 141 Order Adopting Report and Recommendations,,,,,, 142 Clerk's Judgment,,,,,,,. Document filed by Dagmara Maja Huk. Filing fee $ 605.00, receipt number ANYSDC-30325544. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Schulman, Denise) (Entered: 12/12/2024) |

**PACER Service Center**

| **Transaction Receipt** | | | |
|---|---|---|---|
| 12/13/2024 13:14:47 | | | |
| **PACER Login:** | bc35922015 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:22-cv-00518-JLR-RWL |

| Billable Pages: | 23 | Cost: | 2.30 |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/4/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____
                                                    :
NINO MARTINEKO, On behalf of herself       :
and others similarly situated,                  :              22-CV-518 (JLR) (RWL)
                                                    :
                              Plaintiff,         :              **ORDER**
                                                    :
              - against -                         :
                                                    :
212 STEAKHOUSE, INC., and                   :
NIKOLAY VOLPER,                             :
                                                    :
                              Defendants.       :
_____:

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

       As discussed during the hearing held on April 4, 2023, Defendants' letter motion

at Dkt. 84 regarding disqualification of Plaintiff's counsel and imposing sanctions is

DENIED.  The text communication, and the communication with Huk, both were

authorized pursuant to the Court's earlier order granting conditional certification of the

collective and approving notice by text and other means.


                                   SO ORDERED.


                                   _____
                                   ROBERT W. LEHRBURGER
                                   UNITED STATES MAGISTRATE JUDGE

Dated: April 4, 2023
         New York, New York

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                :      22-CV-518 (JLR) (RWL)

NINO MARTINEKO, on behalf of herself  :
and others similarly situated,         :
                                :

                  Plaintiffs,  :  **REPORT AND RECOMMENDATION**
                                :   **TO HON. JENNIFER L. ROCHON:**
       - against -        :      **CLASS DECERTIFICATION**
                                :    **AND SUMMARY JUDGMENT**
                                :

212 STEAKHOUSE, INC., and       :
NIKOLAY VOLPER,            :
                 Defendants.  :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

      Class representatives Nino Martinenko and Dagmara Huk, individually and on

behalf of others similarly situated, brought this wage-and-hour action against Defendants

212 Steakhouse, Inc. and its owner Nikolay Volper.  Plaintiffs, who are former front-of-

house employees of 212 Steakhouse, allege violations of the Fair Labor Standards Act

("FLSA") and the New York Labor Law ("NYLL").  Plaintiffs allege that Defendants violated

the FLSA and NYLL by (1) paying employees pursuant to a tip credit without providing

the notice required under New York law; (2) failing to pay overtime premiums; (3) failing

to pay spread of hours premiums; and (4) failing to provide employees with wage notices

and wage statements as required by NYLL § 195.  The Court already has certified both a

collective action under the FLSA and class action under the NYLL.  Defendants now move

to decertify the Rule 23 class.  Defendants also seek dismissal of Plaintiffs' NYLL § 195

claims due to lack of standing.  Plaintiffs cross-move for summary judgment as to liability

and damages on all claims.  For the reasons that follow, the Court recommends that

Defendants' motion to decertify the class be DENIED and that Plaintiffs' motion for summary judgment be GRANTED in part and DENIED in part.  Specifically, summary judgment should be granted in Plaintiffs' favor on Martinenko's and Huk's FLSA overtime claims; summary judgment should be granted in Plaintiffs' favor on all class members' NYLL minimum wage, overtime, and spread-of-hours claims; summary judgment should be granted against Huk on her NYLL wage notice and wage statement claims; and summary judgment should be denied as to Martinenko's and the rest of the class members' NYLL wage notice and wage statement claims.

## FACTUAL BACKGROUND[1]

### A.    The Parties

Defendant 212 Steakhouse, Inc. ("212 Steakhouse") owns and operates a restaurant of the same name located at 316 East 53rd Street, New York, NY 10022 (the "Restaurant").   (Def. 56.1 ¶ 1.)   Defendant Nikolay Volper is the founder of 212

---

[1] The factual background is based on the Court's April 27, 2023 Memorandum Opinion And Order at Dkt. 92 ("Class Certification Order"); the Court's April 28, 2023 Memorandum Opinion And Order at Dkt. 93 ("Sanctions Order"); Plaintiffs' Statement Of Undisputed Facts Pursuant To Local Civil Rule 56.1 filed Nov. 16, 2023 at Dkt. 118 ("Pl. 56.1"); Defendants' Counter-Statement Of Disputed Facts Pursuant To Local Civil Rule 56.1 filed Dec. 21, 2023 at Dkt. 119-1 ("Def. 56.1"); Declaration of Jonathan Greenbaum filed Nov. 16, 2023 (Dkt. 112-1) ("11/16/2023 Greenbaum Decl."); Declaration of Nikolay Volper filed on Nov. 16, 2023 at Dkt. 112-7 ("11/16/2023 Volper Decl."); Declaration of Nikolay Volper filed on Dec. 21, 2023 at Dkt. 119-2 ("12/23/2023 Supp. Volper Decl."); Declaration of Nino Martinenko filed Nov. 16, 2023 at Dkt. 117 ("11/16/2023 Martinenko Decl"); Declaration of Nino Martinenko filed on Dec. 21, 2023, at Dkt. 122 ("12/21/2023 Martinenko Decl."); Declaration of Dagmara Huk filed on Dec. 21, 2023, at Dkt. 123 ("12/21/2023 Huk Decl."); Declaration of Michael DiGiulio filed Nov. 16, 2023, at Dkt. 115 ("11/16/2023 DiGiulio Decl."); Declaration of Denise A. Schulman filed Nov. 16, 2023, at Dkt. 116 ("Schulman Decl."); Declaration of Michael DiGiulio filed December 21, 2023 at Dkt. 121 (12/21/2023 DiGiulio Decl.); Deposition of Dagmara Huk filed Dec. 21, 2023, at Dkt. 119-10 ("Huk Dep."); Deposition of Nino Martinenko, filed Dec. 21, 2023, at Dkt. 119-11 ("Martinenko Dep."); Deposition of Nikolay Volper, filed Dec. 21, 2023, at Dkt. 119-12 ("Volper Dep.").  The facts are undisputed except where noted.

Steakhouse and has been its sole owner since 2016. (*Id.* ¶ 6.) 212 Steakhouse's gross revenue exceeded $500,000 for 2016 through 2022. (*Id.* ¶ 2.) Volper is the ultimate decision-maker at 212 Steakhouse. (*Id.* ¶ 11.)

Plaintiff Nino Martinenko ("Martinenko") worked as a server at the Restaurant from 2016 through December 2018, and then again from March 2021 until December 2021. (*Id.* ¶ 3.) Plaintiff Dagmara Huk ("Huk") worked at the Restaurant as a bartender from August 2020 through September 2021. (*Id.* ¶ 4.) Martinenko and Huk represent a class of front-of-house tipped employees – including servers, runners, bussers, and bartenders – who worked at the Restaurant at any time on or after January 20, 2016. (Class Certification Order at 3.)

**B.    The Timekeeping System**

Defendants required all employees to clock in and out on 212 Steakhouse's point of sale ("POS") system when starting and finishing their work, but Defendants "did not police this." (Def. 56.1 ¶ 15.) The POS records are the only time records that Defendants maintained for the class members, and Defendants paid the class members based on these records. (*Id.* ¶ 15.) The parties dispute whether Defendants required class members to clock out on the POS system for breaks. (*Id.* ¶ 17.) Plaintiffs maintain that Defendants did not require employees to clock out for breaks, while Defendants assert that employees were supposed to clock out when they were not working. (Pl. 56.1 ¶ 17; Def. 56.1 ¶ 17.) Volper testified, however, that he did not believe he instructed front-of-house employees to clock out when taking breaks and "could not remember" if there was a policy requiring employees to clock out for breaks. (Volper Dep. 74:9-17; Def. 56.1 ¶ 17.) Plaintiffs assert that they worked during all hours they were clocked in (Pl. 56.1 ¶

22), while Defendants assert the time records do not reflect the precise hours Plaintiffs worked because employees did not clock out for breaks and did not always immediately clock out when their shifts were over (Def. 56.1 ¶ 22).

## C.    Payroll Practices

Prior to 2019, Defendants paid class members by handwritten checks. (*Id.* ¶ 28.) They also provided class members statements showing "check in/check out totals and reported tips for the week."  (*Id.* ¶ 36.)  Defendants began providing class members with paystubs in 2019, when Defendants hired an accounting company to assist with payroll. (Pl. 56.1 ¶ 29; Def. 56.1 ¶ 29.)  The paystubs included hours worked, the hourly wage, and tax deductions, but they did not state the tip credit taken or overtime hours worked. (Pl. 56.1 ¶ 33; Def. 56.1 ¶ 33.)

Defendants paid employees the applicable New York tip credit minimum wage for all of the hours during which they were clocked in.  (Def. 56.1 ¶ 16; Sanctions Order at 3.)  Defendants did not pay an overtime rate, instead paying the regular hourly rate regardless of the number of hours Plaintiffs were clocked in per week. (Pl. 56.1 ¶ 18; Sanctions Order at 3.)  Defendants did not pay a spread-of-hours premium when Plaintiffs' workdays lasted longer than 10 hours.  (Sanctions Order at 3; Pl. 56.1 ¶ 19.) Defendants did not provide any class members with written wage notices informing them of their hourly pay rate, overtime hour pay rate, and the amount of tip credit that was being deducted from their wages.  (Def. 56.1 ¶ 27.)

## D.    Prior Litigation

This is not the first time Defendants have been subject to wage-and-hour litigation. In 2018, 212 Steakhouse and Volper were defendants in a wage-and-hour action brought

in this same District, in which former tipped employees alleged Defendants violated FLSA and NYLL provisions governing overtime, minimum wage, and spread of hours. (Quizhpi Complaint, attached as Ex.11 to DiGiulio Decl. at Dkt. 115-11.) In 2020, 212 Steakhouse and Volper were Defendants in another wage-and-hour action brought in New York Supreme Court, in which a former non-tipped employee alleged Defendants violated NYLL's overtime provisions and wage notice and wage statement provisions. (Flores Summons, attached as Ex. 12 to DiGiulio Decl. at Dkt. 115-12.) Both the federal and state actions settled. (Def. 56.1 ¶¶ 40, 43.)

## PROCEDURAL BACKGROUND

Martinenko commenced this action on January 20, 2022, on behalf of herself and others similarly situated, alleging Defendants violated federal and state labor laws regarding overtime pay requirements, minimum wage requirements, spread of hours requirements, and wage notice requirements. (Dkt. 1.) On April 4, 2022, Martinenko moved for conditional certification of a collective action on her FLSA claim pursuant to 29 U.S.C. § 216(b). (Dkt. 19.) The Court granted that motion on April 26, 2022, and authorized Martinenko to send notice of the collective action to all front-of-house employees employed by Defendants on or after January 20, 2019. (Dkt. 30.) Defendants produced a collective list of 24 front-of-house employees, following which Martinenko disseminated the Court-approved notice. One former employee, Huk, joined the collective action as an opt-in Plaintiff. (Dkt. 32.)

On November 11, 2022, Plaintiffs moved for sanctions pursuant to Federal Rule of Civil Procedure 37, asserting that Defendants and their counsel breached their discovery obligations by failing to respond to Martinenko's discovery requests. (Dkt. 61.) The Court

granted in part and denied in part Plaintiffs' motion for sanctions, ordering Defendants to comply with the Court's order requiring production of all tip sheets and time records for the putative class, imposing coercive sanctions, and deeming the following facts established:

> "(i) 212's gross annual revenue in 2021 and 2022 exceeded $500,000; (ii) Defendant Volper was the sole owner of 212 in 2021 and 2022; (iii) all front-of-house employees who clocked in and out on the restaurant's point-of-sale system were paid the applicable New York tip credit minimum wage for the hours for which they were clocked in; (iv) Defendants paid putative class members their regular rate for overtime hours (rather than time-and-a-half); and (v) Defendants did not pay putative class members a spread-of-hours premium."

(Sanctions Order 3 at 3.)

On December 9, 2022, Martinenko moved for class certification of the NYLL claims pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"). (Dkt. 70.) Although Defendants had initially produced a list of only 24 front-of-house employees, more than 40 such employees eventually were identified. On April 27, 2023, the Court certified a class with respect to the NYLL claims, defined as "all tipped employees – servers, runners, bussers, and bartenders – who worked for Defendants at any time on or after January 20, 2016 at 212 Steakhouse." (Class Certification Order at 3.) The Court also authorized notice to be sent by Plaintiff. (*Id.*) Plaintiff sent notice by first class mail.[2] (11/16/2023 Greenbaum Decl. ¶ 4.)

On November 16, 2023, the parties filed competing motions. Defendants moved for decertification of the class primarily on the basis that class size no longer supported

---

[2] The record does not reflect when notice was sent.

certification. (Dkt. 111; *see generally* Def. Decert. Mem.[3]) Arguing lack of standing, Defendants also moved for judgment on the pleadings on Plaintiffs' NYLL § 195 claims for failure to provide wage notices and wage statements.[4] (Dkt. 111.) For their part, Plaintiffs filed a motion for summary judgment as to both liability and damages. (Dkt. 113.) The motions are fully briefed and have been referred to me for report and recommendation. (Dkt. 99.)

## LEGAL STANDARDS

### A.    Class Action Decertification

An "order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Indeed, "courts are required to reassess their ruling as the case develops." *Boucher v. Syracuse University*, 164 F.3d 113, 118 (2d Cir.1999) (internal quotation marks omitted*); see also Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016) ("the district court has the affirmative duty of monitoring its class decisions in light of the evidentiary development of the case" (internal quotation marks omitted)).

---

[3] "Def. Decert. Mem." refers to Defendants' Memorandum In Support Of Motion To Decertify Rule 23 Class And Motion For Judgment As To Count 5 Of The Complaint, filed November 16, 2023 at Dkt. 112.

[4] Although Defendants initially moved against Plaintiffs' NYLL § 195 claims based on the pleadings, Defendants have cited the factual record, including depositions and declarations in support of their motion. (*E.g.*, Def. Decert. Mem. at 4, 8, 12, 15.) Both parties have effectively treated Plaintiffs' motion as one for summary judgment, and the Court does the same. Accordingly, Defendants motion for judgment on Plaintiffs' NYLL § 195 claims must be treated as one for summary judgment. Fed. R. Civ. P. 56(d). All parties have been given a reasonable opportunity to present all the material that is pertinent to the motion.

Courts may decertify classes "if it appears that the requirements of Rule 23 are not in fact met." *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 572 (2d Cir.1982) *cert. denied*, 459 U.S. 838 (1982). Reconsideration of class certification is appropriate where there is a "significant intervening event" or "compelling reasons" that the Rule 23 requirements are no longer satisfied. *Doe v. Karadzic*, 192 F.R.D. 133, 136-37 (S.D.N.Y. 2000) (internal citations omitted). Thus, not only is this Court able to reevaluate its earlier determinations regarding class certification, it has an obligation to do so. *Boucher*, 164 F.3d at 118. In opposing decertification, the plaintiff retains "the burden to demonstrate that [the Rule 23] requirements [a]re satisfied." *Mazzei*, 829 F.3d at 270 (citing *Rossini v. Ogilvy and Mather, Inc.*, 798 F.2d 590, 596-600 (2d Cir. 1986)).

## B.    Summary Judgment

To obtain summary judgment under Rule 56 of the Federal Rules of Civil Procedure, the movant must show that there is no genuine dispute of material fact. Fed. R. Civ. P. 56(a). A fact is material "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of identifying "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then come forward with evidence demonstrating the existence of a genuine dispute of material fact. *Anderson*, 477 U.S. at 248; *Geyer v. Choinski*, 262 F. App'x 318, 318 (2d Cir. 2008). Where the nonmoving party fails to make "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted. *Celotex*, 477 U.S. at 322; *accord El-Nahal v. Yassky*, 835 F.3d 248, 252 (2d Cir. 2016).

The moving party may demonstrate the absence of a genuine issue of material fact "'in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim.'" *Nick's Garage, Inc. v. Progressive Casualty Insurance Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quoting *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988)).  A party asserting that a fact cannot be, or is, genuinely disputed "must support the assertion by" either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B); *see also Powell v. National Board of Medical Examiners*, 364 F.3d 79, 84 (2d Cir. 2004) (if movant demonstrates absence of genuine issue of material fact, nonmovant bears burden of demonstrating "specific facts showing that there is a genuine issue for trial") (citation omitted).

In assessing the record to determine whether there is a genuine issue of material fact, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *Anderson*, 477 U.S. at 255; *Smith v. Barnesandnoble.com, LLC*, 839 F.3d 163, 166 (2d Cir. 2016); *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995) ("The district court must draw all reasonable inferences and resolve all ambiguities in favor of the nonmoving party and grant summary judgment only if no reasonable trier of fact could find in favor of the nonmoving party").  The court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson*, 477 U.S. at 249.  Summary judgment may be granted, however, where

9

the nonmovant's evidence is conclusory, speculative, or not significantly probative. *Id.* at 249-50. If there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

### I. Decertification

Defendants argue that the class previously certified under Rule 23 must be decertified because the Rule 23(a) elements of numerosity and commonality as well as the Rule 23(b) elements of predominance and superiority are no longer met. (Def. Decert. Mem. at 3.) Defendants do not challenge continued certification on the basis of typicality or adequacy. Because the Rule 23 requirements remain satisfied, Defendants' motion to decertify the class should be denied.

### A.    Numerosity

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is presumed satisfied if the class has at least 40 members, *see Robidoux v. Celani,* 987 F.2d 931, 936 (2d. Cir. 1993), while prospective classes of twenty to forty members fall in a "gray area." 1 Newberg on Class Actions § 3:12 (5th ed. 2011).) Plaintiffs have the burden of showing numerosity, but they need not prove the "exact class size or identity of class members to satisfy the numerosity requirement." *Robidoux,* 987 F.2d at 935. When there are less than 40 class members, "[r]elevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for

prospective injunctive relief which would involve future class members." *Id.* at 936. Taking these factors into consideration, the Court concludes that numerosity is satisfied.

In its certification order, the Court counted 38 previously identified class members and inferred that there were more than 40 members in the prospective class. *Martinenko v. 212 Steakhouse, Inc.*, No. 22-CV-518, 2023 WL 2919766, at *5 (S.D.N.Y. Apr. 12, 2023), *R. & R. adopted*, 2023 WL 3160118 (S.D.N.Y. Apr. 27, 2023). After certification, Defendants produced a list of 44 initial class members, to whom Plaintiffs then sent notices via first-class mail. (11/16/2023 Greenbaum Decl. ¶ 4; Dkt. 112-2.) Plaintiffs also independently identified two deceased individuals who met the definition of the class and sent notices to their last known addresses. (11/16/2023 Volper Decl. ¶ 5.)

The parties dispute the number of class members remaining at this stage of the litigation. Defendants assert that there are at most 24 remaining class members, while Plaintiffs assert there are 33 remaining class members. (Def. Decert. Mem. at 4; Pl. Decert. Mem. at 8.[5]) Defendants' count of 24 remaining class members excludes employees who submitted opt-out notices, deceased individuals, individuals whose notices were returned as undelivered, and class members whom Defendants assert they mistakenly initially identified as class members but have now determined that they were either not employed in tipped positions or not employed by 212 Steakhouse at all. (Def. Decert. Mem. at 4 (citing Greenbaum Decl. and Exs. 1-2.) Plaintiffs' count of 33 excludes only the employees who submitted opt-out notices and one employee on Defendants' initial class list whom Defendants now assert never worked at 212 Steakhouse.

---

[5] "Pl. Decert. Mem." refers to Plaintiffs' Memorandum Of Law In Opposition To Defendants' Motion To Decertify Rule 23 Class And Motion For Judgment As To Count 5 of The Complaint, filed Dec. 21, 2023 at Dkt. 120.

(11/16/2023 DiGiulio Decl. ¶ 17-21.)  Plaintiffs' number is more accurate.  But even if it were not, numerosity remains satisfied in the circumstances of this case.

### 1.    Determining The Number Of Class Members

#### a.  Notices Returned As Undeliverable

Defendants first contend that the class size must be reduced by the number of notices returned as undelivered.  (Def. Decert. Reply[6] at 2-3 (citing *Zimmerman v. Portfolio Recovery Associates*, LLC, No. 09-CV-4602, 2013 WL 1245552, at *3 (S.D.N.Y. March 27, 2013) and *Benavides v. Serenity Spa NY Inc.,* No. 15-CV-9189, 2018 WL 2383144, at *2 n.2 (S.D.N.Y. May 25, 2018)).  Plaintiffs counter that undelivered notices must still be counted because Rule 23 does not require actual notice, but instead provides that "the court must direct to class members the best notice that is practicable under the circumstances."  (Pl. Decert. Mem. at 8 (citing Fed. R. Civ. P. 23(c)(2)(B).)  Plaintiffs are correct.  It is well established that for due process to be met, it is not necessary that every class member receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform persons affected.  *Weigner v. The City of New York*, 852 F.2d 646, 649 (2d Cir.1988); *accord Moukengeshcaie v. Eltman, Eltman & Cooper, P.C.,* No. 14-CV-7539, 2019 WL 5204809, at *10 (E.D.N.Y. Oct. 15, 2019) ("Notice need not be perfect, but must be the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential Class Members").  That

---

[6] "Def. Decert. Reply" refers to Defendants' Reply To Plaintiffs' Opposition To Decertify Rule 23 Class And In Further Support of Defendants' Motion For Summary Judgment As To Count 5 Of The Complaint, filed January 12, 2024 at Dkt. 128.

precept, however, does not directly answer the question of whether notices returned as undelivered should be included in the class count for purposes of assessing numerosity.

The Court is aware of two federal appellate court cases that have touched upon the interplay of numerosity and notices returned as undeliverable.  The more recent of the two is *Rannis v. Recchia*, 380 F. App'x 646 (9th Cir. 2010), cited by Plaintiffs.  Though *Rannis* is non-precedential, it remains instructive.  There, the Ninth Circuit affirmed the district court's decision denying the defendant's motion to decertify the class and including in the Rule 23 class count seven putative class members whose class notices were returned as undeliverable.  *Id.* at 649-50.  The court held that the class members whose notices were returned as undeliverable were properly included in the class.

The other Court of Appeals case is *Rule v. International Association of Bridge, Structural & Ornamentals Ironworkers,* 568 F.2d 558, 563–64 (8th Cir.1977).  In that case, the Eighth Circuit addressed whether for purposes of numerosity the court should consider only individuals who sent in responses to the opt-out notice.  (*Id.*)  The Court held that proceeding on that basis would have been improper for the very reason that the notices sent required individuals to respond only if they desired to opt out, the procedural foundation for Rule 23 class actions.  (*Id.*)  In that context, the number of responses received was irrelevant to numerosity.  The court then stated:  "Since the notice clearly did not require a response, the numerosity requirement must be judged by the size of the class to whom the notices were sent, reduced only by the number of class members who affirmatively elected not to participate or whose notices were returned undelivered."  (*Id.*)  While the court's statement does support exclusion of undelivered notices, the court,

unlike the court in *Rannis*, did not analyze and was not even presented with that specific issue. Accordingly, the Court finds *Rule* to be less persuasive.

Turning to cases in this District, the court in *Pefanis v. Westway Diner, Inc.* used similar reasoning as *Rannis* when denying a motion to exclude from a class two putative class members whose corrective class notices were returned as undeliverable after the employees initially opted out of the class. No.08-CV-002, 2010 WL 3564426 (S.D.N.Y. Sept. 7, 2010). After a hearing, the court invalidated certain employees' initial opt out requests based on the employees' testimony that they opted out to curry favor with their employer. As a remedy, the Court ordered corrective notice. Although two of the notices were returned as undeliverable, the court counted them as class members. The court reasoned that the corrective notice satisfied the requirements of Rule 23(c)(2)(B) and due process where it had been both mailed and posted at the employees' place of work. *Id.*, at \*6. *Pefanis* is distinguishable to some extent as the court concluded that the employees had actual notice of the action by virtue of having received the first notice and participated in the hearing. Nonetheless, the corrective notices were returned as undeliverable, and the court nonetheless included them in the class.

The two cases Defendants cite for the proposition that undeliverable notices must be excluded from the class count are distinguishable. In *Zimmerman,* the Court quoted *Rule*, including its language about excluding undelivered notices. But rather than holding that class members whose notices are undeliverable cannot be counted as class members, the court found no evidence that any class notices were in fact returned as undeliverable. *Zimmerman*, 2013 WL 1245552, at \*4 n.10. The court thus did not further discuss or analyze the quoted language from *Rule*.

14

In *Benavides*, the other case cited by Defendants, the court excluded putative class members whose FLSA collective action notices were previously returned as undeliverable in its count of Rule 23 class members. The facts of that case, however, depart significantly from those here. Unlike the parties here, the *Benavides* parties jointly sought to decertify the class in order to resolve the matter on an individual basis; the parties were only in the early stages of litigation and had not even mailed out Rule 23 notices to class members; and the Court reasoned that class members were unlikely to be prejudiced by decertification because none of the class claims had been decided on the merits. *Benavides v. Serenity Spa NY Inc.*, No. 15-CV-9189, 2018 WL 2383144, at *3 (S.D.N.Y. May 25, 2018). Here, in contrast, the parties are not in agreement on decertification; notice has already been sent; the notice period has closed; Plaintiffs have moved for summary judgment on all claims; and the Court has already deemed established material facts applicable classwide. (Sanctions Order at 3.)

Even in the class action settlement context, many courts include for numerosity purposes individuals whose notices were returned as undeliverable. They do so because "actual receipt of class notice is not necessary in order to bind an absent class member to a final judgment. Indeed, many of the cases standing for this proposition also indicate that notice by mail sent to the last known address of the absent class member meets the due process requirement of notice through 'reasonable effort' even where numerous class members have since changed addresses and do not receive notice." *In re Prudential Securities. Inc. Ltd. Partnerships Litigation*, 164 F.R.D. 362, 369 (S.D.N.Y. 1996), *aff'd*, 107 F.3d 3 (2d Cir. 1996); *see also, e.g.*, *Emeterio v. A&P Restaurant Corp.*, No. 20-CV-970, 2022 WL 274007, at *3 (S.D.N.Y. Jan. 26, 2022) (finding numerosity satisfied and

including individuals from whom notice was returned as undeliverable in the class member count when certifying a settlement class); *Romero v. La Revise Associates, L.L.C.*, 58 F. Supp.3d 411, 419 (S.D.N.Y. 2014) (same).

At the same time, there are cases to the contrary. *See In re 3D Systems Securities Litiga*tion, No. 21-CV1-920, 2024 WL 50909, at *5 (E.D.N.Y. Jan. 4, 2024) (finding that numerosity was satisfied and excluding from the count of class members the notices that were returned as undeliverable); *Garland v. Cohen & Krassner*, No. 08-CV-4626, 2011 WL 6010211, at *14 (E.D.N.Y. Nov. 29, 2011) (finding that numerosity was satisfied and subtracting notices that were returned as undeliverable from the total number of class members when certifying a settlement class).  But of course, subtracting undelivered notices may make sense in the settlement context, where no further notices are to be sent and the defendants contribute to a common fund to be distributed among class members.  The instant context is quite different.  Further notice to the class is contemplated, at which point it may be appropriate to require skip tracing to attempt to locate class members.  (*See* Class Notice, Dkt. 72-1 at 2 (informing class members that "if you remain in this lawsuit and the Class Representatives succeed in proving the claims against 212 Steakhouse, you will be notified about how to receive your share of the money").)  In short, it is premature to determine that the class members at issue should not be counted.

Accordingly, class members whose notices were returned as undeliverable should be included for purposes of determining numerosity.

### b. Deceased Class Members

Defendants next argue that the two deceased class members (one of whom is also one of the individuals whose notice was returned as undeliverable) should be excluded from the class because both passed away in 2019, which was more than one year prior to the commencement of this action.[7]  (Def. Decert. Reply at 4.)  Defendants are incorrect.

The Second Circuit has held that a claim survives the injured party's death "if applicable state law creates a right of survival."  *Barrett v. United States*, 689 F.2d 324, 331 (2d Cir.1982) (holding that a cause of action under 42 U.S.C. § 1983 survived injured party's death).  New York law provides a right of survival.  Specifically, "no cause of action for injury to person or property is lost because of the death of the person in whose favor the cause of action existed."  N.Y. Estates, Powers and Trusts Law § 11–3.2(b).  But, "[w]here a person entitled to commence an action dies before the expiration of the time within which the action must be commenced and the cause of action survives, an action may be commenced by his representative within one year after his death."  N.Y. C.P.L.R. 210(a).  Here, the two deceased employees passed away in 2019, prior to expiration of the six-year statute of limitation for NYLL claims.  Defendants argue that because the action was filed in 2022, well more than a year after their death, their state law claim thus are untimely pursuant to § 210(a).

---

[7] Defendants do not cite record evidence to support the statement that both employees passed away in 2019, although the record contains an inadmissible item suggesting that one of the individuals did pass away in 2019.  (*See* 12/21/2024 DiGiulio Decl. ¶¶ 15-17 (citing a GoFundMe page indicating that the employee passed away in November 2019).) In any event, Plaintiffs have not contested the assertion that both employees passed away in 2019.

Plaintiffs argue that § 210(a) is inapplicable here. They point to New York state courts holding that § 210(a) cannot be used to shorten statutes of limitation and can only be applied in situations where the claimant died with less than one year remaining on the relevant statute of limitations. *See* Dkt. 129 (citing *Gordon v. Gordon*, 10 A.D.2d 623, 625, 487 N.Y.S.2d 574, 577 (2d Dep't 1985) (CPLR § 210(a) is "designed to extend periods of limitations that would otherwise expire shortly after a plaintiff's death"); *Barnes v. County of Onodaga*, 103 A.D.2d 624, 630, 481 N.Y.S.2d 539, 545 (4th Dep't 1984), *aff'd sub nom.* 65 N.Y.2d 664, 481 N.E.2d (1985) (because more than one year remained on the statute of limitation at the time of the decedent's death, CPLR § 210 was not applicable); *Gelpi v. New York City Health & Hospitals Corp.,* 90 A.D.2d 503, 504, 454 N.Y.S.2d 891, 892-93 (2d Dep't 1982) (same).)

Defendants counter that the cases holding that § 210(a) cannot be used to shorten the statute of limitations only involve causes of action brought by the executor of a decedent's estate – not a class representative in a class action.[8] (*See* Dkt. 130 at 2.) In addition, Defendants point out that while there are cases in which NYLL claims survived an employee's death, those cases addressed survivorship in the context of motions to substitute deceased plaintiffs' representatives where the action was commenced by the deceased plaintiff while they were living. *See, e.g., Jipeng Du v. Wan Sang Chow*, No. 18-CV-1692, 2019 WL 3767536, at *7 (E.D.N.Y. Aug. 9, 2019) (acknowledging that deceased plaintiffs' NYLL claims survived but denying motion to substitute because the

---

[8] Plaintiffs requested permission to file a sur-reply to respond to Defendants' arguments in their reply brief regarding the deceased class members. *See* Dkt. 129. The Court denied Plaintiffs' request to file a sur-reply but has considered both parties' positions on the issue, which the parties addressed in letters to the Court at Dkts. 129 and 130.

proposed substituted party was not a lawful representative of the deceased plaintiff); *Lai Yoong Low v. Tian Yu Inc.,* No. 12-CV-7237, 2015 WL 1011699, at *2 (S.D.N.Y. March 9, 2015) (holding that deceased plaintiff's NYLL claims survived and granting plaintiffs' motion to substitute the deceased plaintiff with the representative of his estate).

Neither deceased putative class member commenced the instant action while living, and the class definition does not include legal representatives of any deceased employees, as other class definitions sometimes do.  *See, e.g., In re AXA Equitable Life Insurance Co. COI Litigation,* No. 16-CV-740, 2023 WL 4118054 (S.D.N.Y. June 22, 2023); *Elliot v. Leatherstocking Corp.,* No. 3:10-CV-0934, 2012 WL 6024572, at *2 (N.D.N.Y. Dec. 4, 2012).  However, the class definition includes "all tipped employees, servers, runners, bussers and bartenders who worked for Defendants at any time on or after January 20, 2016 at 212 Steakhouse."  (Class Certification Order at 3.)  The deceased employees meet the definition, and the Court sees no logical reason that the principle that §210(a) cannot be used to shorten the statute of limitations should not apply equally to individual actions as to class actions.  In as much as the statute of limitations under the NYLL continues to run, it is still possible for a representative of the deceased employees to stake a claim as a representative of the employee's estate.  Accordingly, the two deceased class members should not be excluded from the class.

### c.   Misdesignated Class Member

The parties agree that two employees were mistakenly included in the class list. (Pl. Decert. Mem. at 3 n.4.)  But they dispute whether there is one class member – Adrian Pizarro – who should never have been included in the class because he was an untipped "back-of-house" employee.  (Def. Decert. Mem. at 4.)  Defendants produced Pizarro's

time records and included him on the front-of-house class list. Later, however, they said that was a mistake because his time records show him clocking in at 2:00 p.m., which was typical of back-of-house employees. (12/21/2023 Volper Decl. ¶ 4; 12/21/23 Digiulio Decl. ¶ 18-21.) Indeed, the class members' time records show that Pizarro is the only employee on the class list who consistently clocked in at 2:00 p.m., whereas all front-of-house employees consistently clocked in around 4:00 p.m. (*See* Dkt. 116-5.) Plaintiffs have provided no contrary evidence to contradict Defendants' explanation that Pizarro was mistakenly included on the class list. Accordingly, Pizarro should not be included as a class member.

### 2.    Numerosity Remains Satisfied

By the Court's count, the class now stands at 32 members: Defendants provided a list of 44 initial class members and then added two more; twelve class members opted out; and three employees initially included in the class list were indisputably mistakenly included. Whereas at the outset of the case the class size met the typical 40-member threshold, it has dropped below that mark. Nonetheless, the class still satisfies numerosity in light of the relevant factors, including judicial economy, financial resources of class members, and the ability of members to file individual suits, and the Court would reach the same conclusion even if the class size were reduced to 24 as Defendants contend. *See Robidoux*, 987 F.2d at 936 ("Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers"); *see also Provencher v. Bimbo Bakeries USA, Inc.*, No. 22-CV-198, 2023 WL 6050398, at *2 (D. Vt. Aug. 7, 2023) (28 class members satisfied numerosity where "(i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their availability to sue

separately, and (v) requests for injunctive relief that would involve future class members"
weighed in favor of plaintiffs); *Omar v. 1 Front St. Grimaldi, Inc.,* No. 16-CV-5824, 2019
WL 1322614, at *10 (E.D.N.Y. Jan. 8, 2019) (32 class members satisfied numerosity
where "the Court has considered the factors such as the inconvenience of trying individual
actions, as well as the financial resources of potential class members, and finds that these
factors weigh heavily in favor of a class action in this case"); *Balverde v. Lunella
Ristorante, Inc.,* No. 15-CV-5518, 2017 WL 1954934, at *6 (S.D.N.Y. May 10, 2017) (38
class members satisfied numerosity where "the more efficient use of judicial resources
counsels in favor of class certification in this matter"); *Frank v. Eastman Kodak Co.*, 228
F.R.D. 174, 181 (W.D.N.Y. 2005) (28 class members satisfied numerosity in light of
*Robidoux* factors).

      Other than the reduced number of class members, Defendants point to no material
changes in the facts or law that would alter the conclusion that numerosity remains
satisfied.  *See Gortat v. Capala Bros.*, 949 F. Supp.2d 374, 383–84 (E.D.N.Y. 2013)
(denying decertification where class was reduced from 28 initial class members to 24
class members because application of the *Robidoux* factors remained unchanged), *aff'd,*
568 F. App'x 78 (2d Cir. 2014) (summary order).

      First, judicial economy continues to weigh against decertification because
adjudicating all putative class members' cases in one action would eliminate the
significant burden on the Court and the parties that would arise if each of the individual
cases were to be litigated separately.  *See, e.g., Mangahas v. Eight Oranges Inc.,* No.
22-CV-4150, 2024 WL 2801922, at *5 (S.D.N.Y. May 31, 2024) ("[t]he interest of judicial
economy is served by proceeding through a class action, which will ensure that the claims

of all the putative class members are addressed and avoid a multiplicity of litigation based on largely the same facts and circumstances"); *Neff v. Flowers Foods, Inc.*, No. 5:15-CV-254, 2019 WL 10750005, at *12 (D. Vt. May 16, 2019) (denying motion to decertify FLSA collective of 33 and granting motion to certify Rule 23 class of 33 and observing that "a class of two or three would save no time or effort. Thirty-three cases would represent a considerable burden to the court and to the parties to prepare and try as individual lawsuits").

Second, the financial resources of class members continue to weigh against decertification because the class members are minimum wage restaurant workers alleging labor law violations regarding their compensation. *Mangahas v. Eight Oranges Inc.*, No. 22-CV-4150, 2024 WL 2801922, at *5 (S.D.N.Y. May 31, 2024) ("[t]he putative class members are restaurant workers who allege labor law violations, including failure to pay minimum wage and overtime, and misappropriation of tips. There is every reason to believe they lack the financial resources to independently participate in the litigation through joinder"); *Carollo v. United Capital Corp.*, 528 F. Supp.3d 37, 53 (N.D.N.Y. 2021) ("[t]he very nature of this case – an employer allegedly taking advantage of minimum-wage workers – also suggests that the proposed class may lack the financial capabilities to bring lawsuits individually") *deMunecas v. Bold Food, LLC*, No. 09-CV-00440, 2010 WL 3322580, at *3 (S.D.N.Y. Aug. 23, 2010) (finding numerosity in part because the plaintiffs, restaurant employees, "have limited financial resources").  Defendants argue that "while the 212 front of house employees are hourly workers, it is not a fair assumption that they do not have the financial resources to file an individual suit in state court."  (Def. Decert. Mem. at 5.)  In support of this assertion, they argue that Martinenko's hourly

average wage including tips reached as much as $52.00 per hour, suggesting she and the other plaintiffs have the financial resources to pursue their own lawsuits.  (*Id.* at 5-6.)  The W-2 issued by Defendants to Martinenko in 2021 showing that she made a total of $44,504 suggests otherwise.  (Dkt. 121-6.)  That amount falls well below the median household income in New York City.[9]  The Court is not persuaded that that class members have the resources to pursue their litigation individually.

Another factor weighing against decertification is that fear of retaliation may discourage current employees from bringing individual actions.  *See Omar,* 2019 WL 1322614, at *9 (finding class of 33 hourly workers sufficiently numerous and observing that "for those current employees who might be inclined to complain about their wages, the fear of retaliation may be a further impediment to their bringing individual actions").  Indeed, there is evidence to suggest Defendants may have improperly influenced the opt out process.  In particular, every current employee of the Restaurant opted out of the class using virtually identical forms.  (12/21/2023 DiGiulio Decl. ¶ 22; Dkt. 121-3).  Of the eight current employees who sent opt-out notices, seven sent their opt-out notice in the same non-standard envelope by the same method, and five of those were sent from the Restaurant's zip code.  (*Id.*)  They also included the same idiosyncrasies, including

---

[9] *See* https://www.census.gov/quickfacts/fact/table/newyorkcitynewyork,US/INC910222. The Court takes judicial notice of the publicly disseminated government census information.  *See United States v. Style,* 771 F. App'x 43, 44 (2d Cir. 2019) (taking judicial notice of United States Census Bureau facts published at www.census.gov/quickfacts); *Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co.*, 630 F. Supp.2d 255, 263 n.3 (E.D.N.Y. 2008) ("[t]he Court can take judicial notice of government statistics"); *Barkley v. Olympia Mortgage Co*., No. 04-CV-875, 2010 WL 3709278, at *15 (E.D.N.Y. Sept. 13, 2010), *aff'd*, 557 F. App'x 22 (2d Cir. 2014), as amended (Jan. 30, 2014) (taking judicial notice of census tract maps compiled by the United States Census Bureau).

exaggerated indentations, capitalization of "Class" and writing 212Steakhouse as one word.  (Dkts. 121-3, 121-4.)

Although these facts are hardly conclusive, they suggest that Defendants may have pressured current employees to opt out.  *See, e.g., Romano v. SLS Residential Inc.*, 253 F.R.D. 292, 294 (S.D.N.Y. 2008) (determining that all opt-outs from the class were void where Defendants engaged in deliberate and improper conduct by communicating misleading information to putative class members in an attempt to coerce them into opting out); *Magtoles v. United Staffing Registry, Inc.,* No. 21-CV-1850, 2022 WL 4096180, at *3 (E.D.N.Y. Sept. 6, 2022) (authorizing curative notice to class members who opted out and finding that Defendants' unauthorized email to current employees encouraging them to opt out, providing sample responses, and offering to reimburse them for the costs of mailing the opt out form "was misleading, coercive, and otherwise interfered with the proper administration of this class action").  To be sure, unlike in *Romano* or *Magtoles*, there is no direct evidence here of Defendants improperly communicating with or using abusive practices to coerce current employees into opting out of the class action. However, the fact that every current employee opted out, and that most of them opted out using nearly identical forms, sent from the same zip code, using the same type of envelope, and including the same typographical idiosyncrasies, at least suggests the possibility that Defendants improperly urged current employees to opt-out.  The Court, in its discretion, concludes that this factor also counsels in favor of keeping the class certified.

The two remaining *Robidoux* factors – the geographical dispersion of Plaintiffs and the requests for prospective relief – do not weigh in favor of class certification.  Most of

the class members appear to be in the New York metropolitan area (*see* Dkt. 112-8), and there is no request for prospective relief.  As the other three factors discussed above weigh strongly in favor of maintaining certification, numerosity remains satisfied.

## B.   Commonality

Rule 23(a) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality generally is considered a "low hurdle."  *In re JPMorgan Chase & Co. Securities Litigation*, No. 12-CV-3852, 2015 WL 10433433, at *3 (S.D.N.Y. Sept. 29, 2015) (internal quotation marks and citations omitted). "[C]ommonality has never been understood to require that all issues must be identical as to each member, but rather require[s] that plaintiffs identify some unifying thread among the members' claims that warrant[s] class treatment."  *Meyer v. United States Tennis Association*, 297 F.R.D. 75, 83 (S.D.N.Y. 2013) (internal quotation marks omitted) (alterations in original).  "What matters to class certification" is whether a class action has "the capacity … to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotation marks omitted).  "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices."  *Spencer v. No Parking Today, Inc.*, No. 12-CV-6323, 2013 WL 1040052, at *15 (S.D.N.Y. March 15, 2013), *R. & R. adopted*, 2013 WL 2473039 (S.D.N.Y. June 7, 2013); s*ee also Flores v. Anjost Corp.,* 284 F.R.D. 112, 125 (S.D.N.Y.2012) ("[c]ourts in this district have ... focused on whether the employer had company-wide wage policies that injured the proposed class. And claims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been

held to meet the commonality prerequisite for class certification") (citations and internal quotation marks omitted).  Here, the commonality requirement remains satisfied because Plaintiffs allege several unlawful labor practices that apply to all members of the class.

Defendants do not appear to dispute that the commonality requirement is satisfied for the overtime, tip credit, and spread of hours claims.  (*See* Def. Decert. Reply Mem. at 6-7; Def. Decert. Mem. at 6-8.)  Defendants instead reserve that argument for Plaintiffs' wage notice and wage statement claims under NYLL ¶ 195, arguing that the claims cannot be maintained as a class action because they present individualized issues as to each Plaintiff's injuries, if any, and each Plaintiff's Article III standing must be evaluated individually.  (Def. Decert. Mem. at 6-8 (citing *Wal-Mart,* 564 at 350).)

Defendants' argument fails for three reasons.  First, for purposes of the commonality inquiry, it is sufficient that the question of whether Defendants provided accurate wage notices and statements generates a common answer:  they did not.  *Pino v. Harris Water Main & Sewer Contractors Inc.*, No. 17-CV-5910, 2021 WL 3675148, at *8 (E.D.N.Y. Aug. 19, 2021) (commonality satisfied with respect to Plaintiffs' § 195 wage notice and wage statement claims where Defendants showed through testimony that Defendants had a common policy of failing to provide compliant wage notices in violation of New York law); *Espinoza v. 953 Associates LLC,* 280 F.R.D. 113, 124 (S.D.N.Y. 2011) ("[c]ommonality may be met even though class members' individual circumstances differ, so long as their injuries derive from a unitary course of conduct").

Second, even if the § 195 claims required an individualized injury inquiry, the other claims at issue – improper tip credit; failure to pay overtime; failure to pay spread of hours – readily present common issues that are more than sufficient to sustain the class.  *See*

*Shahriar v. Smith & Wollensky Restaurant Group, Inc.,* 659 F.3d 234, 252 (2d Cir. 2011) (commonality satisfied where evidence showed that all Class Members were subject to the same tipping policies a "common policy and practice of not paying the spread of hours premium"); *Gomez v. Lace Entertainment, Inc.,* No. 15-CV-3326, 2017 WL 129130, at *7 (S.D.N.Y. Jan. 6, 2017) ("[c]ourts in this Circuit have routinely found that commonality and typicality is satisfied where, as here, Defendants have a uniform policy, practice, and/or procedure of … failing to ensure that employees receive the minimum wage for all hours").

Here, it already has been deemed established that Defendants engaged in unlawful practices applicable to all front-of-house employees.  Defendants paid all front-of-house employees the tip credit minimum wage for the hours they were clocked in; Defendants paid class members the regular rate for overtime (rather than time-and-a-half); and Defendants did not pay class members a spread-of-hours premium.  (Sanctions Order at 3.)  And, Defendants have admitted that they did not provide statements containing all the information required by NYLL § 195.  (*See* Def. 56.1 ¶ 36.)  The questions of whether Defendants lawfully used the tip credit, whether Defendants paid the lawful overtime rate; whether Defendants paid the spread-of-hours premium for workdays spanning more than ten hours; and whether Defendants provided employees wage notices and statements all generate a common answer:  no.  (*See* Sanctions Order at 3.)  Because these policies and procedures apply to all members of the class, commonality is satisfied.

Third, Defendants' argument that a lack of standing for § 195 claims defeats commonality also fails.  Standing for the NYLL § 195 claims is discussed in detail in Part II below, where the Court concludes there are individualized issues.  That conclusion,

however, does not change the commonality analysis given Plaintiffs' undisputed standing for all their other claims (i.e., minimum wage, overtime, spread of hours) and the many common issues that exist as to Plaintiffs' claims collectively. Accordingly, commonality remains satisfied. *See Marisol A. by Forbes v. Giuliani,* 929 F. Supp. 662, 690 (S.D.N.Y. 1996), *aff'd sub nom.*, 126 F.3d 372 (2d Cir. 1997) (commonality "will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class …. Indeed, a single common question may be sufficient to satisfy this rule") (internal quotation marks and citations omitted); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 371 (S.D.N.Y. 2007) ("[o]nce a common question is identified, 'differences among the questions raised by individual members [of the class] will not defeat commonality'") (quoting *German v. Federal Home Loan Mortgage Corp.*, 885 F. Supp. 537, 553 (S.D.N.Y.1995)).

Because Defendants do not challenge certification on the basis of the other Rule 23(a) elements of adequacy and typicality, the Court now turns to whether the requirements of Rule 23(b) remain satisfied.

## C. Predominance

Having found that the elements of Rule 23(a) remain satisfied, the next inquiry is whether the action remains qualified for certification as one of the types of classes recognized by Rule 23(b). Plaintiffs sought and obtained certification pursuant to Rule 23(b)(3). A class qualifies for certification under Rule 23(b)(3) if it meets the prerequisites of Rule 23(a), and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating

the controversy." Fed. R. Civ. P. 23(b)(3). Here, common questions predominate, and a class action is the superior means of proceeding.

Predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these issues are more substantial than the issues subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litigation*, 729 F.3d 108, 118 (2d Cir. 2013). At the same time, the predominance inquiry does not require a plaintiff to show that there are no individual issues. *In re NYSE Specialists Securities Litigation*, 260 F.R.D. 55, 75 (S.D.N.Y. 2009). Additionally, "the Second Circuit has routinely found that individualized calculations of damages do not defeat the predominance requirement." *Enea v. Bloomberg, L.P.*, No. 12-CV-4656, 2014 WL 1044027, at *7 (S.D.N.Y. March 17, 2014).

This Court previously found that predominance was satisfied because even though there were individualized issues related to damages, including number of hours worked and regular rate of pay for each employee, those issues did not predominate over the questions of (1) whether Defendants did or did not provide written notice of the tip credit and whether use of the tip credit was unlawful; (2) whether Defendants failed to pay time-and-a-half for overtime; (3) whether Defendants paid a premium for a workday spanning more than ten hours; and (4) whether Defendants provided class members with compliant wage notices and wage statements. *Martinenko v. 212 Steakhouse, Inc.*, No. 22-CV-518, 2023 WL 2919766, at *20 (S.D.N.Y. Apr. 12, 2023), R. & R. adopted, 2023 WL 3160118 (S.D.N.Y. Apr. 27, 2023) . Defendants have presented no factual changes, no significant

intervening event, nor any compelling reasons to disturb the Court's original conclusion. Accordingly, predominance remains satisfied.

Defendants primarily repeat the arguments raised above with respect to commonality, i.e., that predominance is not satisfied because there are individualized questions as to the injury each class member suffered. (*See* Def. Decert. Mem. at 9-10 ("[t]he individual issues presented here are not merely a calculation of damages, but the controversy of whether each class member suffered a particular injury in fact and thus [has] standing to maintain the claim in this Court").) However, this argument fails for the same reasons set forth above. The common policy issues predominate over the individualized damages issues.

Defendants also seem to argue that individual damages issues surrounding overtime claims and spread of hours claims predominate because there is no way to know whether each employee consistently took an uninterrupted meal break and whether Defendants' clock-in/clock-out records accurately reflect the time plaintiffs were working. (*See* Def. Decert Reply at 6-7.) But as discussed further below, Defendants cannot contest the accuracy of their own records and are unable to show a genuine dispute of fact as to whether class members were paid for non-compensable time. Regardless, the Second Circuit has repeatedly found that "common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 139 (2d Cir. 2001), *abrogated on other grounds by In re Initial Public Offerings Securities Litigation*, 471 F.3d 24 (2d Cir. 2006); *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 237

(same); *Sykes v. Mel S. Harris and Associates LLC*, 780 F.3d 70, 81 (2d Cir. 2015) (same); *Shahriar*, 659 F.3d at 253 (citing *In re Visa Check* and holding that common issues predominated in NYLL action where Defendants did not deny that all servers were subject to uniform practices, and plaintiffs were likely to prevail on liability, even though there were individualized damages issues).

Unsurprisingly then, District courts in this Circuit regularly have found predominance satisfied with respect to overtime, minimum wage, and spread of hours, even when other individualized issues such as damages inquiries remained. *See, e.g., Bayne v. NAPW, Inc.,* No. 18-CV-3591, 2021 WL 4822426, at *8 (E.D.N.Y. Aug. 10, 2021), *R. & R. adopted*, 2021 WL 4820603 (E.D.N.Y. Oct. 15, 2021) ("[w]here Plaintiffs allege that all [c]lass [m]embers were systematically underpaid due to the same policy and practice, and they have provided testimony and time records corroborating these claims, differences as to the number of hours worked by or wages paid to each class member do not preclude class certification") (internal quotation marks omitted); *Manley v. Midan Rest*aurant Inc., No. 14-CV-1693, 2016 WL 1274577, at *6 (S.D.N.Y. March 30, 2016) (predominance satisfied where "all class members allege that they were subject to Defendants' violations of the NYLL … including failure to provide minimum wages; failure to pay overtime pay; [failure to pay] spread of hours pay; misappropriation of gratuities; and unlawful deductions from wages"); *Lizondro-Garcia v. Kefi LLC,* 300 F.R.D. 169, 177 (S.D.N.Y. 2014) ("[t]he central issues in this litigation are whether defendants had policies that denied their employees overtime, spread-of-hours pay and tips. Because defendants' practices applied to members of the putative NYLL class uniformly, questions regarding the legality of those policies are about the most perfect questions for class treatment")

(internal quotation marks omitted); *Shabazz v. Morgan Funding Corp.*, 269 F.R.D. 245, 250-51 (S.D.N.Y. 2010) ("[a]ny class action based on unpaid wages will necessarily involve calculations for determining individual class member damages, and the need for such calculations [does] not preclude class certification").

Here, numerous common questions of liability predominate over individualized issues – which include damages and standing for NYLL § 195 claims – because all class members were subject to uniform policies and procedures with respect to Defendants' failure to notify employees of the tip credit minimum wage; failure to pay overtime; failure to pay spread of hours premiums, and failure to provide wage notices and statements. Predominance remains satisfied.

## D.    Superiority

Under Rule 23(b)(3), a court must consider several factors to determine whether a class action is superior to individual actions:  "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3).  These factors continue to weigh in favor of keeping the instant class certified.  The arguments that Defendants raise to the contrary do not stand up to scrutiny.

Defendants first repeat their arguments about standing and individualized injury inquiries.  They argue that "superiority cannot be established as the question of injury-in-fact as to Plaintiffs [sic] tip credit and New York Labor wage notice and statement claims must be made on an individualized basis."  (Def. Decert. Mem. at 11.)  Again, however,

the presence of individualized damages issues does not eliminate superiority of proceeding as a class.[10]  *See Shabazz*, 269 F.R.D. at 250–51 (finding superiority satisfied with respect to class bringing NYLL claims where "the Court is not convinced that any unique manageability problems exist in this proceeding that distinguish the proposed class from any other class action for unpaid wages, or from the collective action conditionally certified in this case" and observing that "[a]ny class action based on unpaid wages will necessarily involve calculations for determining individual class member damages, and the need for such calculations do not preclude class certification"); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 200 (S.D.N.Y. 2011) (superiority satisfied for class of restaurant workers alleging NYLL overtime and spread of hours violations despite Defendant's argument that "the job duties and thus the projected shift hours differ among the different types of tipped employees across the three [restaurant] locations"); *Alonso v. Uncle Jack's Steakhouse, Inc.,* No. 08-CV-7813, 2011 WL 4389636, at *5 (S.D.N.Y. Sept. 21, 2011) (holding that "class action is superior to other means of adjudicating the action" and reasoning that "although individual inquiries may be necessary as to the amount of hours worked for purposes of the overtime claim, all other aspects of this case are subject to generalized proof and applicable to the class as a whole")*. See generally Morris* v. *Alle Processing Corp.*, No. 08-CV-4874, 2013 WL 1880919, at *14 (E.D.N.Y. May 6, 2013) ("a class action is superior to other available

---

[10] On reply, Defendants also include a single sentence asserting that superiority is not satisfied for the overtime and spread of hours claims "given that individual trials would be necessary."  (Def. Decert. Reply at 7.)  That "given" is mistaken.  Individual trials would not be necessary on the overtime and spread of hours claims because damages can be calculated using Defendants' time records alone, as discussed in Part II below.

methods, given that the [NYLL] claims are nearly identical to the FLSA claims, which will be tried collectively in this Court").

Defendants next argue that class treatment is not the superior method of resolution because the aggregation of statutory penalties, especially where there is no injury-in-fact, raises due process and manageability issues. (Def. Decert. Mem. at 11-12.) Defendants assert that the damages for Plaintiffs' § 195 claims would amount to $10,000 for each class member, which would have a devastating financial impact on Defendants, who are already in debt. (*Id.* (citing *Parker v. Time Warner Entertainment Co., L.P.,* 331 F.3d 13, 22 (2d Cir. 2003). Defendants argue that because the damages award would be disproportionately large compared to the actual harm suffered by the individual class members, continuing in a class action is not the superior manner of proceeding.

In *Parker*, the potential class could have included up to 12 million individuals who might each be entitled to a recovery of $1,000 thus potentially exposing Defendants to a $12,000,000,000 judgment. The district court denied certification on the basis that certifying a class would lead to the Defendant's "financial demise." The Second Circuit reversed and determined that the district court's conclusion was unsupported by the record. *Parker*, 331 F.3d at 22. The Court acknowledged the district court's "legitimate concern that the potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues." *Id.* And the court went on to say that "in a sufficiently serious case the due process clause might be invoked, not to prevent certification, but to nullify that effect and reduce the aggregate damage award." *Id.* Although *Time Warner* and Defendants are obviously of quite disparate means, it is hard to imagine that the instant case is

"sufficiently serious" to implicate due process: the class is small, and Plaintiffs seek a total of $255,900 in damages on their § 195 claims. (Pl. Decert. Mem. at 17.). In any event, even if the case was "sufficiently serious," class certification would be unaffected. *Parker,* 331 F.3d at 22.

Finally, Defendants argue that superiority is not satisfied for Plaintiffs' § 195 claims because those claims should be brought on an individualized basis in state court. (Def. Decert. Mem. at 12.) Defendants cite NY CPLR § 901(b), which provides that unless a statute imposing a penalty specifically authorizes recovery in a class action, recovery of a penalty cannot be maintained as a class action. NY CPLR § 901(b). Because § 195 does not expressly authorize class actions, Defendants argue, Plaintiffs' § 195 claims must be brought individually in state court. Not so. The Supreme Court held in *Shady Grove Orthopedics, P.A. v. Allstate Insurance Co.* that § 901 conflicted with and was pre-empted by Rule 23. 559 U.S. 393, 393 (2010).

"[C]lass actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery." *In re U.S. Foodservice Inc. Pricing Litigation*, 729 F.3d at 130 (citing *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 617 (1997)). "District courts in this Circuit routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation and many potential class members are currently employed by Defendant." *Morris,* 2013 WL 1880919, at *14 (holding superiority was satisfied with respect to a class bringing NYLL § 195 claims) (internal quotation marks omitted). In short, superiority is satisfied here, as "substituting a single class action for numerous trials

in a matter involving substantial common legal issues and factual issues susceptible to generalized proof will achieve significant economies of time, effort and expense, and promote uniformity of decision." *In re U.S. Foodservice Inc. Pricing Litigation*, 729 F.3d at 130-31 (citing Fed. R. Civ. P. 23 advisory committee's notes) (internal quotation marks omitted).

Finally, "[t]here are a number of management tools available to a district court to address any individualized damages issues." *In re Nassau County Strip Search Cases*, 461 F.3d 219, 231 (2d Cir. 2006) (quoting *In re Visa Check*, 280 F.3d at 141). These include (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class. *Id.*; *see also* Fed. R. Civ. P. 23(c)(4) ("[w]hen appropriate, (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class"). Individualized damages issues in this case do not defeat superiority.

The requirements of Rule 23(a) and Rule 23(b) remain satisfied. The class should not be decertified, at least not without first resolving the instant summary judgment motion.

## II. Summary Judgment

Plaintiffs have moved for summary judgment as to liability and damages on all claims for all class members. Specifically, Plaintiffs move for summary judgment on all claims for (1) NYLL minimum wage violations based on Defendants' unlawful use of the

tip credit; (2) overtime violations under the FLSA and NYLL; (3) failure to pay the spread of hours premium under NYLL; and (4) failure to provide wage notices and wage statements as required under NYLL § 195.

Defendants do not genuinely dispute that they failed to provide notice of the tip credit, that they did not pay an overtime premium, that they did not pay a spread of hours premium, and that they did not provide wage notices and wage statements required under NYLL § 195. However, Defendants argue that summary judgment should be denied as to Plaintiffs' tip credit, overtime, and spread of hours claims because material fact disputes exist as to whether employees' clock-in/clock-out times reflect actual hours worked, whether any overtime was actually worked, and whether the claimed overtime was "compensable" work time. (Def. SJ Mem. at 8.[11]) In addition, Defendants argue that the Court must deny summary judgment as to liability on Plaintiffs' NYLL § 195 wage notice and wage statement claims because the Plaintiffs do not have Article III standing to bring those claims in federal court. (*Id.* at 7.)

The Court finds no genuine dispute of material fact that Defendants did not comply with the relevant provisions of the NYLL and FLSA. The Court also finds that Defendants' time records reflect the compensable hours employees worked. Accordingly, summary judgment should be granted as to liability and damages on Plaintiffs' tip credit, overtime, and spread of hours claims. However, while there is no dispute that Defendants violated the wage notice and wage statement provisions under NYLL § 195, there are unresolved

---

[11] "Def. SJ Mem." refers to Opposition To Plaintiffs' Motion For Summary Judgment filed Dec. 21, 2023 at Dkt. 119.

questions about standing that, except for Huk, merit denial of summary judgment as to Martinenko and class members' NYLL § 195 wage and notice claims.

## FAILURE TO PAY REQUISITE WAGES

Plaintiffs contend (1) they were not paid the minimum wage as required by law due to Defendants' failure to notify Plaintiffs they were taking a "tip credit," (2) they did not receive time-and-a-half pay for overtime in excess of 40 hours per, and (3) they were not paid a "spread-of-hours" premium for days on which their workday spanned more than ten hours.  The Court agrees on all counts.

### A.    Minimum Wage Violations Based on Unlawful Use of Tip Credit

Summary judgment should be granted on Plaintiffs' minimum wage claim based on Defendants' unlawful use of a tip credit because there is no genuine dispute that Defendants paid class members pursuant to a tip credit without providing the required written notice.  Employers in New York are required to pay non-exempt employees at least the minimum wage.  NYLL § 652.  However, employers may deviate from the statutory minimum wage for tipped employees by taking a "tip credit" against employees' wages if certain requirements are met.  N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") 12 §§ 146-1.3, 146-2.2.  In other words, an employer may "pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage."  *Gamero v. Koodo Sushi Corp.*, 272 F. Supp.3d 481, 500 (S.D.N.Y. 2017), *aff'd*, 752 F. App'x 33 (2d Cir. 2018).

Employers seeking to take a tip credit must satisfy strict requirements.  Notice of the tip credit must be in writing and provided both in English and the employee's primary

language.  12 N.Y.C.R.R. § 146-2.2(a).  Once an employer has provided written notice of the tip credit, the employer must obtain a signed acknowledgement of the tip credit notice, which must be kept on file for six years.  *Id.* § 146-2.2(c).  "The employer has the burden of proving compliance with the notification provisions."  *Id.* § 146-2.2.  If an employer does not provide the written notice as described in § 146-2.2, the employer may not take a tip credit.  *See, e.g., Villanueva v. 179 Third Ave. Restaurant Inc.,* 500 F. Supp.3d 219, 235 (S.D.N.Y. 2020), *R. & R. adopted,* 2021 WL 2139441 (S.D.N.Y. May 26, 2021).

Here, it is undisputed that Defendants took a tip credit from class members' wages without providing the notice to employees that New York law requires.  There is no genuine dispute that Defendants paid all class members who clocked in and out the applicable New York tip credit minimum wage – not the regular minimum wage – for the hours for which they were clocked in.  (Sanctions Order at 3; Def. 56.1 ¶ 16 (admitting that "Defendants paid all front-of-house employees who clocked in and out on 212 Steakhouse's POS system the applicable New York tip credit wage for the hours for which they were clocked in").)  There is also no genuine dispute that Defendants failed to provide notice of their taking the tip credit as required under 12 N.Y.C.R.R. § 146-2.2.  (Def. 56.1 ¶ 26 ("Defendants admit that written wage notices were not provided, but Defendants did post federal and state wage hour notices."), ¶ 27 (stating that "Defendants did provide wage statements to employees prior to 2019 but not the type of statements characterized by Plaintiff," which included notices that "informed them of their hourly pay rate, overtime hourly pay rate, and the amount of tip credit that was being taken from their wages.")[12]

---

[12] Defendants' Counterstatement of Facts contains denials and assertions that are not supported by citation to relevant admissible evidence, or, in some instances, any citation to the record at all.  *See, e.g.,* Def. 56.1 ¶¶ 16, 18, 20, 27, 31, 33, 35, 42.  Local Civil Rule

Although Volper asserted in deposition that he provided NYLL compliant wage notices to some employees, possibly before 2022, he could not provide details about when and to whom those notices were provided, nor could he produce a single compliant notice. (Volper Dep. 115:20-116:18; 118:8-119:10; Def. 56.1 ¶¶ 26-27.) That vague testimony is insufficient to create a dispute of fact that legally adequate notice was provided. *See Chang v. Loui Amsterdam, Inc.*, No. 19-CV-3056, 2022 WL 4586100, at *8 (E.D.N.Y. Sept. 29, 2022) ("[c]ourts in this Circuit have found witness testimony regarding the notice provided to employees insufficient to create a triable issue of fact with respect to tip credit eligibility where that testimony does not establish that the plaintiff was provided all the information enumerated by the tip credit notice regulation or that plaintiff understood the manner in which a tip credit would be taken") (collecting cases).

And, although Defendants produced pay stubs from 2021 for Martinenko and Huk that listed their hourly wage rate, cash tips, tax information, and meal contribution deduction, the pay stubs did not explain that Defendants took a tip credit against employees' hourly rate; nor were they signed by the employees. (*See* Dkt. 115-6.) Defendants produced no "wage statements" of any kind for the rest of the class. (Pl. 56.1 ¶¶ 25-27, 30-31; Def. 56.1 ¶¶ 25-27, 30-31.) Even if Defendants had provided paystubs

---

56.1 requires a party to specifically dispute material facts set forth in an opposing party's statement with citations to evidence that would be admissible at trial. Local Civil Rule 56.1 (b)-(d). Accordingly, the Court disregards Defendants' unsupported assertions, and Plaintiffs' facts are deemed admitted where they are supported by record evidence. *See, e.g., Loucar v. Boston Market Corp.,* 294 F. Supp.2d 472, 478 (S.D.N.Y. 2003) (deeming admitted defendant's Rule 56.1 statement where "plaintiff offers nothing but unsupported, conclusory statements and denials to refute defendant's properly-supported statements of material fact"); *see generally Giannullo v. City of New York,* 322 F.3d 139, 142 (2d Cir.2003) (unsupported facts in moving party's Local Rule 56.1 statement disregarded).

like those for Martinenko and Huk for other employees, they would not be sufficient to satisfy the tip-credit notice requirements. *See Galvez v. 800 Ginza Sushi Inc.,* No. 19-CV-8549, 2022 WL 748286, at *10 (S.D.N.Y. March 11, 2022) (finding individual defendants' testimony insufficient where defendant "did not ... testify that he also described how tipping interacted with [p]laintiffs' wages," noting that "[e]mployers must state the intent to take a tip credit specifically, and not just, for example, inform employees that they will receive wages augmented by tips."); *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp.2d 253, 289–90 (S.D.N.Y. 2011) ("Given the 'strictly construed' nature of the notice requirement," defendants' evidence of a government poster informing employees that minimum wage obligations exist "is insufficient to create a triable issue of fact as to whether the notice requirement has been satisfied, as it compels only the conclusion that the tipped employees knew that they were tipped and that minimum wage obligations exist") (internal quotation marks omitted).

Accordingly, there is no triable issue as to whether Defendants satisfied the tip-credit notice requirement – they did not.  As a result, Defendants were required to pay class members the full minimum wage without taking a tip credit against employees' hourly rates.  *See Lopez v. MNAF Pizzeria, Inc.*, No. 18-CV-06033, 2021 WL 1164336, at *10 (S.D.N.Y. March 25, 2021) (finding Defendants could not claim a tip credit and granting summary judgment as to liability on Plaintiff's minimum wage claims where there was no issue of material fact whether Defendants failed to comply with the NYLL); *Hernandez v. Jrpac Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *25 (S.D.N.Y. June 9, 2016) ("[a]n employer that fails to comply with the notice requirements under the NYLL may not utilize the tip credit to satisfy its minimum wage and overtime obligations"); *Inclan*

*v. New York Hospitality Group, Inc.*, 95 F. Supp.3d 490, 498 (S.D.N.Y. 2015) (finding restaurant liable under the NYLL for plaintiffs' unpaid minimum wages without a tip credit allowance where Defendants acknowledged not providing proper tip-credit notification under the NYLL).    Summary judgment should be granted in favor of Plaintiffs and the class on their NYLL claims that Defendants failed to pay the minimum wage.

## B.    Overtime and Spread of Hours Violations

Summary judgment should be granted on Plaintiffs' overtime and spread of hours claims because there is no genuine dispute that Defendants did not pay Plaintiffs the required rate of one and one-half times their regular hourly wage for hours worked in excess of forty hours per week and failed to pay a spread of hours premium for any day in which Plaintiffs' spread of hours exceeded ten hours.    Both the FLSA and New York law require an employer to pay an overtime wage of one and one-half times the regular rate for each hour worked in excess of forty hours per work week.    29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 146–1.4.    In addition, under New York law, an employee is entitled to an additional hour of pay at the minimum hourly rate on each day on which his spread of hours exceeds ten.    12 N.Y.C.R.R. § 146–1.6(a).    "Spread of hours" is defined as "the length of the interval between the beginning and end of an employee's workday."    *Id.*    Here, it has been established that class members were paid their regular hourly rate for all hours during which they were clocked in, even when those hours exceeded forty hours per week. (Sanctions Order at 3; Def. 56.1 ¶ 18.)    It is also has been established that Plaintiffs did not receive a spread of hours premium for days on which their workday, as reflected by Defendants' time records, lasted longer than ten hours.    (Sanctions Order at 3; Pl. 56.1 ¶ 19; Def. 56.1 ¶ 19.)

Defendants seek to avoid the consequence of those facts by disputing the accuracy of their own records.  (Def. SJ Mem. at 8, 13-17.)  Specifically, while Defendants do not dispute that they failed to pay Plaintiffs overtime and spread of hours premiums for the hours Plaintiffs were clocked in, Defendants nonetheless argue that summary judgment should be denied because genuine disputes exist as to whether employees were actually working during all of the hours they were clocked in and whether their claimed overtime was in fact compensable time.[13]  (Def. SJ Mem. at 8.)  Plaintiffs argue that Defendants' records reflect the compensable hours Plaintiffs worked inasmuch as Defendants paid Plaintiffs for all the hours they were clocked in, and there is nothing in the Defendants own records that suggests class members did not work during the hours they were clocked in.  (Pl. SJ Mem. at 15.)  Plaintiffs are correct.

---

[13] Defendants also assert that summary judgment must be denied as to the overtime and spread of hours claims because most class members have no claim to overtime or, even if they do, their overtime hours are de minimis.  (Def. SJ Mem. at 8.)  Second Circuit law says otherwise; if an employer "failed to compensate [employees] properly for even one hour of overtime, liability is established. Anything else relates only to damages." *Estrella v. P.R. Painting Corp.*, 356 F. App'x 495, 497 (2d Cir. 2009).  Similarly, Defendants' assertion, in a footnote (Def. SJ Mem. at 13 n.15), that the class should be decertified as to the overtime and spread of hours claims because less than 20 class members are claiming overtime also fails.  Although some members of the class did not work overtime, the other issues common to the class, including tip credit, wage notice, and wage statements claims predominate. *See In re Air Cargo Shipping Servs. Antitrust Litigation*, No. 06-MD-1175, 2014 WL 7882100, at *44 (E.D.N.Y. Oct. 15, 2014), R. & R. adopted, 2015 WL 5093503 (E.D.N.Y. July 10, 2015) ("Nothing in our class certification jurisprudence requires that every single class member suffer an impact or damages, regardless of the size of the class. To the contrary, courts have routinely recognized what an unrealistic burden this would put on plaintiffs.") (collecting cases).

1.    **Accuracy Of Defendants' Time Records**

"Where an employer's payroll records are inaccurate or incomplete, courts apply a burden-shifting scheme to determine whether an employee has established that he was underpaid, and what damages he suffered." *Gamero,* 272 F. Supp.3d at 497.    The burdens are similar under both the FLSA and NYLL.    *Id.*    Under the FLSA, "[w]hen an employer fails to maintain accurate and complete records of the hours employees work and the amounts they are paid, the plaintiff-employee need only ... submit 'sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred.'" *Gonzalez v. Masters Health Food Serv. Inc.*, No. 14-CV-7603, 2017 WL 3835960, at *16 (S.D.N.Y. July 27, 2017) (quoting *Reich v. Southern New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997).)    An employee discharges his burden at this first step if he can prove that he "in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."    *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).    The employee's burden is "not high" and may even be met "through estimates based on his own recollection." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011).

Once an employee makes this showing, the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to "negative the reasonableness of the inference to be drawn from the employee's evidence."    *Anderson*, 328 U.S. at 687-88.    Under the NYLL, the employer's burden is even heavier, as an employer can only satisfy its burden by coming forward with evidence

of the precise amount of work performed (and not just by undermining the reasonableness of the employee's evidence.)  *See Galvez*, 2022 WL 748286, at *8.

Here, Plaintiffs have met their burden of producing evidence they were underpaid by using Defendants' own time records to show "the amount and extent of work as a matter of just and reasonable inference."  *See Nam v. Permanent Mission of Republic of Korea to United Nations*, 657 F. Supp. 3d 382, 410 (S.D.N.Y. 2023) (Plaintiff satisfied his burden to show the amount and extent of his work where he submitted time records showing when he started and stopped working, and testified that he regularly worked from 9:00 a.m. to 6:00 p.m. and defendant did "not dispute that Plaintiff recorded his hours for his employer's review"); *Mascol v. E & L Transportation, Inc.*, 387 F. Supp. 2d 87, 95 (E.D.N.Y. 2005) (employees in FLSA actions satisfied their burden to show the amount worked with evidence consisting of "numerous weekly pay stubs explicitly setting forth the hourly rates at which they were paid and in many cases the hours worked at these hourly rates"). The burden thus shifts to Defendants to rebut Plaintiffs' evidence.

Defendants advance two arguments in an attempt to rebut the accuracy of their own records. They argue that: (1) Plaintiffs did not clock out for meal breaks, which were not considered compensated time that should count toward overtime calculations (even though the Court already deemed established that plaintiffs were paid the tip credit minimum wage for the hours for which they were clocked in) (*see* Sanctions Order at 3), and (2) Martinenko stayed at the Restaurant after her shift ended, but remained clocked in.  (Def. SJ Mem. at 4, 6.)  The Court concludes that Defendants' evidence is insufficient to satisfy their burden to "negative the reasonableness of the inference to be drawn from the employees' evidence" under the FLSA, and thus also insufficient to satisfy the NYLL's

more demanding burden of coming forward with evidence of the precise amount worked. Galvez, 2022 WL 748286, at *7.  The Court first discusses the issue related to breaks and then the issue related to compensable hours.

### 2.    Breaks

Defendants argue that employees did not clock out for meal breaks, which were not compensable time.  (Def. SJ Mem. at 7, 13, 16.)  They argue that "for an employee working a 5-day schedule, this amounts to 2.5 hours per week, which would eliminate the claimed overtime for a large percentage of the class."  (*Id.* at 13.)  Plaintiffs counter that Defendants treated meal breaks as compensable time because they paid class members for all time clocked in.  (Pl. SJ Reply at 4.)  Under such circumstances, courts regularly reject the argument that Defendants try to make here.

"Under the FLSA, and by extension the NYLL, all of the time worked during a continuous workday is compensable, save for bona fide meal breaks."  *Hart v. Rick's Cabaret International, Inc.*, 60 F. Supp. 3d 447, 476 n.15 (S.D.N.Y. 2014).  "[M]eal periods are compensable under the FLSA[,]" however, "when employees during a meal break perform duties predominantly for the benefit of the employer."  *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 65 (2d Cir. 1997).  Meal breaks also are compensable where Defendants had an established agreement or practice of treating break time as hours worked.  *See, e.g., Alonso v. 144 Ninth Gotham Pizza, Inc.,* No. 12-CV-3133, 2016 WL 4257526 (S.D.N.Y. Aug. 10, 2016) ("Allowing an employer to treat meal breaks as compensable time but then claim an ex post facto credit invites fraud and undermines the goals of the federal and New York labor laws."); *Scott v. City of New York*, 592 F. Supp.2d 386, 408 (S.D.N.Y. 2008) (rejecting defendant's argument "that its own

FLSA records must be recalculated in order to exclude plaintiffs' meal periods from their hours worked where longstanding NYPD practices evinced an agreement to treat meal periods as working hours, including payment for such hours and – more importantly – inclusion of such hours in the NYPD's own FLSA calculations").

Plaintiffs have presented substantial evidence that Defendants had an established practice of treating meal breaks as compensable. The evidence includes not only Defendants' own records, but also testimony from Huk and Martinenko that they worked during their meals, that they were never told that the meals were not compensable, and that they were never told to clock out for meals. For example, Huk testified that employees did not have a "formal break" and that employees were usually served a meal at the beginning of the shift but "we didn't really have time to do it because there were things we had to take care of. So it wasn't consistent." (Huk Dep. 20:16-25; 21:14-22.) Huk also testified that she would start eating but would get up if there was work to do, such as answering a phone. (Huk Dep. 21:19-22.) Martinenko similarly testified that there was "not really" a meal break, and that Defendants "would provide food, but there was no break specifically." (Martinenko Dep. 61:8-10.) Martinenko also testified that sometimes she would sit to eat the meal but that most of the time when the meal was ready, the restaurant was already opening up. (*See* Martinenko Dep. 62:3-14 ("a lot of times I had to eat my meal inside the kitchen because there were already clients -- customers inside the restaurant. So, like, why would I clock out and clock in if I'm biting a meal and then I'm going and serving a customer.") Both employees also testified that no one told them to clock out while they were eating a meal during their shifts. (Martinenko Dep. 85:9-12; Huk Dep. 21:13-17.)

Defendants argue that Huk and Martinenko's testimony shows that their meal breaks were inconsistent and creates a factual question as to how inconsistent the breaks were and whether employees were substantially working during their breaks. (Def. SJ Mem. at 15.)  Additionally, Defendants argue that Plaintiffs have not provided evidence as to how the rest of the class spent their breaks.  (*Id.* at 16.)  But Defendants do not provide sufficient admissible evidence to "negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687-88.  Regardless of whether Plaintiffs consistently worked through each meal break, Defendants' only evidence that meal breaks were to be treated as non-compensable is Volper's declaration, which is not based on personal knowledge and contradicts his earlier testimony.

Volper initially testified at deposition that he did not police whether employees clocked in or out, and that he did not believe he required employees taking breaks to clock in and out.  (Volper Dep. 74:9-74.)  In his declaration, however, Volper testified that he "expect[s] the front of house employees to take a full 30 to 40 minute meal break." (12/21/23 Volper Decl. ¶ 11.)  Whether that was his expectation is irrelevant because there is no evidence that he communicated that expectation to employees.  Volper's conclusory statements that he "did not believe the front of the house employees worked overtime" and that "the overtime and spread of hours sought in this case is attributable to non-compensable time in which an employee remained clocked in" are insufficient to create a material issue of fact.  (12/21/23 Volper Decl. ¶ 21.)  [A] party cannot create a triable issue of fact merely by stating in an affidavit the very proposition they are trying to prove," as "[c]onclusory allegations cannot by themselves create a genuine issue of

material fact where none would otherwise exist." *Galvez*, 2022 WL 748286, at *8 (quoting *Hicks v. Baines*, 593 F.3d 159, 167 (2d Cir. 2010).)  If anything, the evidence Defendants put forth highlights why they are unable to meet their burden of negating the inference that their time records reflect compensable hours worked.  Volper admits that he was not present most of the time in the Restaurant, that the employees policed themselves, and that there was no on-site manager watching employees during their shifts.  (12/21/23 Volper Decl. ¶ 7, 10,12.)  Accordingly, there is no evidence Defendants could present that would show "the precise amount of work performed" or "negative the reasonableness of the inference to be drawn from the employees' evidence," *Anderson*, 328 U.S. at 687-88, which, again, includes Defendants own time records.

### 3.      Failure to Clock Out After Shifts

Defendants' argument that Plaintiffs failed to clock out after their shifts ended is similarly insufficient to raise a genuine dispute as to the accuracy of Defendants' time records.  Defendants argue that their records do not accurately reflect time worked because class members – particularly Martinenko – stopped working before they clocked out.  (Def. SJ Mem. at 5.)  But those assertions are speculative and unsupported by admissible evidence. Defendants first cite Martinenko's testimony that "after the restaurant was closed, I could have stayed at the bar."  (Martinenko Dep. 31:22-25.)  That statement is a far cry from saying that she remained clocked in after finishing her shifts, and there is nothing else in her testimony to suggest that she did.  Defendants also state that Martinenko stayed at the restaurant without clocking out after her shift ended to wait for her cash tips and the accounting of her portion of the tip pool.  (Def. SJ Mem. at 5.)  Again, the only evidence they cite is Volper's declaration, which, as discussed above, is

not based on personal knowledge because Volper was not at the restaurant to observe what Martinenko did.  (*See* 12/21/23 Volper Decl. ¶ 15.)

Volper avers that "Martinenko regularly stayed in the restaurant after her shift ended" and that "a review of her time in and time out records shows that she did not clock out when her shift ended."  (*Id.*)  In support of this assertion, Volper attached to his declaration a demonstrative chart that Volper describes as reflecting the time between Martinenko's last check closing and the time Martinenko actually clocked out for a one-month period.  (*See* Dkt. 119-5.)  He states that the time amounts to over 20 hours for the month of December 2021 and that "if this analysis is extended throughout her employment, the overtime and spread of hours would be completely wiped out."  (*Id.*)  Volper's demonstrative is based in part on records that Defendants failed to produce during discovery, including a heavily redacted document purporting to show the times at which customer transactions closed during the month of December 2021 (the "closed check document").  (*See* Dkt. 119-7.)   None of that evidence, however, is admissible, both because it was not produced in discovery or identified in initial disclosures, and it is hearsay.

As the Federal Rules of Civil Procedure direct, "if a party fails to provide information … as required by Rule 26 … the party is not allowed to use that information … to supply evidence on a motion, … unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Untimely disclosures are "substantially justified" when a reasonable person could be satisfied that the "parties could differ as to whether the party was required to comply with the disclosure request, or if there exists a genuine dispute concerning compliance."  *IBM Corp. v. Micro Focus (US) Inc.*, No. 22-CV-9910,

2024 WL 2240281, at *2 (S.D.N.Y. May 17, 2024) (citing *AIG Global Asset Management Holdings v. Branch et al.*, No. 04-CV-8803, 2005 WL 425494, at *1 (S.D.N.Y. Feb. 18, 2005). Here, Defendants' failure to produce the document is neither substantially justified nor harmless. The closed check document, if it is what Volper asserts it to be, is relevant and responsive to Plaintiffs' Requests for Production served over two years ago. (*See* Plaintiffs' First Request for the Production of Documents, attached as Ex. 4 to 11/16/23 DiGiulio Decl., Dkt. 115-4).

Defendants offer no argument as to why they did not produce it. The Court previously sanctioned Defendants for failing to comply with their discovery obligations, including production of documents. (Sanctions Order.) Defendants thus are no stranger so to the consequences of failing to produce documents and, having been sanctioned, had every incentive to produce documents if they planned to rely on them. Their failure to produce the closed check document in response to Plaintiffs' document requests or at any juncture prior to summary judgment thus cannot be substantially justified and Defendants do not even make an effort to do so. And, far from being harmless, Defendants' use of the document for the first time on summary judgment is highly prejudicial because they seek to use it to create a material dispute of fact where there otherwise would not be one. *See Ritchie Risk-Linked Strategies Trading v. Coventry First LLC*, 280 F.R.D. 147, 156, 159 (S.D.N.Y. 2012) ("Harmlessness means an absence of prejudice to the [opposing party]").

Moreover, the closed check document is also inadmissible hearsay. As Plaintiffs suggest, the only conceivable hearsay exception that could apply is the business records exception. *See* Fed. R. Evid. 803(6). Yet none of the requirements of the exception are

satisfied because Volper's declaration, nor any other evidentiary source, explains what the document is, how it was created, whether it is a record kept in the course of regularly conducted activity, and whether the making of that type of record was a regular practice. *See id.*  The document is also heavily redacted, and Defendants have not explained why the redactions were made.  Moreover, Volper does not assert that the document reflects all checks from the relevant time period, and there is no basis to conclude it does. Accordingly, the assertions in Volper's declaration based on the document at Dkt. 119-7 are not admissible and are insufficient to create a genuine dispute as to whether Defendants' records reflect hours worked.

In sum, Defendants have not created a genuine dispute of fact as to whether their time records accurately reflect the hours Plaintiffs, that Plaintiffs worked in excess of 40 hours a week as reflected in those records, and that Plaintiffs performed work for which they were not paid required overtime. *See Nam*, 657 F. Supp. 3d at 414 (granting summary judgment on liability regarding overtime where Plaintiff met his burden of showing that he was not appropriately compensated for his overtime and "Defendant has not provided proof of the precise hours that Plaintiff worked or undermined the reasonableness of Plaintiff's estimates").  The Court has already deemed established that Defendants paid the regular rate for overtime hours instead of time-and-a-half, and that Defendants did not pay spread of hours premiums.  (Sanctions Order at 3.)  Because the Court now concludes that the time records reflect the compensable hours worked, summary judgment should be granted in Plaintiffs favor on their overtime and spread of hours claims.

### C.    Damages For Unpaid Wages

Having granted summary judgment as to liability on Plaintiffs' minimum wage, overtime, and spread-of-hours violations, the Court turns to Plaintiffs' damages. Summary judgment should be granted on Plaintiffs' claims for damages for unpaid wages. As discussed above, damages can be calculated using Defendants' time records because Defendants cannot rebut Plaintiffs' evidence that their records represent the compensable time Plaintiffs worked. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (when the employer fails to produce evidence rebutting plaintiff's evidence of the amount and extent of the work performed, "the court may then award damages to the employee, even though the result be only approximate") (quoting *Anderson*, 328 U.S. at 687-88).

### 1.    Applicable Damages Period and Statute

The statute of limitations is six years for claims under the NYLL, three years for claims under the FLSA if a defendant's acts are willful, and two years if they are not. 29 U.S.C. § 255(a); NYLL § 663(3).  Plaintiffs seek damages for the six-year period from January 20, 2016 through 2022, when Plaintiffs commenced this action.

Although plaintiffs may not recover under both the FLSA and the NYLL for the same injury, courts allow plaintiffs to recover under the statute that provides for the greatest relief.  *Ni v. Bat-Yam Food Services. Inc.*, No. 13-CV-7274, 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016); *Maldonado v. La Nueva Rampa*, Inc., No. 10-CV-8195, 2012 WL 1669341, at *5 (S.D.N.Y. May 14, 2012*); Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08-CV-3725, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010).  Here, the NYLL permits recovery greater than or equal to the FLSA at all relevant times during Plaintiffs'

employment. Moreover, the FLSA only applies to Huk's and Martinenko's claims as distinct from the class, as they are the only members of the FLSA collective action. Accordingly, the Court applies the NYLL for all damages calculations.

### 2.    Calculation of Unpaid Wages

To ascertain the total amount of unpaid wages, the Court uses the summary of Defendants' time records submitted with Plaintiffs' briefing papers. (See 11/16/2023 Schulman Decl., Dkt. 116, Exs. 1, 8.) The Court also uses the following wage rates, taken from the New York Hospitality Wage Order, promulgated by the Commissioner of Labor:

| Year | NY Minimum Wage | NY Tip Credit Rate | Hourly Tip Credit Taken | Overtime Premium (Half of Minimum Wage) |
|------|-----------------|--------------------|-------------------------|-----------------------------------------|
| 2016 | $9              | $7.50              | $1.50                   | $4.50                                   |
| 2017 | $11             | $7.50              | $3.50                   | $5.50                                   |
| 2018 | $13             | $8.65              | $4.35                   | $6.50                                   |
| 2019 | $15             | $10                | $5                      | $7.50                                   |
| 2020 | $15             | $10                | $5                      | $7.50                                   |
| 2021 | $15             | $10                | $5                      | $7.50                                   |
| 2022 | $15             | $10                | $5                      | $7.50                                   |

(See 12 N.Y.C.R.R. §§ 146-1.2, 146-1.3; 11/16/2023 DiGiulio Decl. Ex. 8, Dkt. 115-8.[14]) Summaries of the damages totals for each of Plaintiffs' claims are described below.

### a.  Minimum Wage Underpayments

As an initial matter, Defendants argue, in a footnote, that because Martinenko and Huk's tips combined with the wages Defendants paid them exceeded the regular New York state minimum wage, Plaintiffs are not entitled to damages for this claim, as Defendants' taking of a tip credit must be considered "a technical violation." (Def. Decert.

---

[14] In their brief, Plaintiffs appear to have mistakenly used the incorrect tip credit for the year 2016 (prior to December 31, 2016). (Pl. SJ Mem. at 16.) The Court uses the correct amount in the chart above, and the Plaintiffs have used the correct amount in their damages calculations.

Mem. at 8 n.8.)  In the same footnote, they assert that Plaintiffs do not have standing for their minimum wage claims because they did not suffer an injury-in-fact.  (*Id.*)  Defendants misunderstand New York law's minimum wage provisions.  "An employer may take a credit towards the basic minimum hourly rate … if the employee has been notified of the tip credit as required in section 146-2.2." 12 N.Y.C.R.R. § 146-1.3.  Where an employer does not notify employees that the employer is taking a tip credit, the employer must pay the full minimum wage.  *Galvez*, 2022 WL 748286, at *11 (holding that "based on the undisputed evidence, Defendants are not entitled to tip credit under either the FLSA or the NYLL when calculating whether the wages they paid the delivery worker Plaintiffs satisfied the minimum wage" because "Defendants have presented no evidence to suggest that they provided written notices of the tip credit").  As Defendants failed to provide the requisite tip credit notice to their employees, they cannot take advantage of the tip credit.  Plaintiffs therefore are entitled to receive the full minimum wage from Defendants.  Whether they received tips that would bring their total earnings above the tip credit minimum wage is irrelevant. And because Plaintiffs did not receive the full minimum wage as required, they suffered a concrete monetary harm.[15]

Unpaid tip credit/minimum wage damages are calculated by multiplying each class member's clocked in hours by the applicable hourly tip credit taken.  The total minimum wage damages for all class members are $96,608.35.

---

[15] With respect to their minimum wage claims, Plaintiffs are not alleging they were harmed by the lack of notice of the tip credit.  They are alleging they were harmed by Defendants' failure to pay them the full minimum wage they were owed under the law. That is different from the harm alleged from Defendants' failure to provide wage statements and wage notices under NYLL § 195, as discussed below.

### b.  Unpaid Overtime

Unpaid overtime hours are calculated by multiplying each class member's clocked in overtime hours by the applicable overtime premium.  Here, because the employees did not receive the minimum wage as required, the premium for all employees is 50 percent of the applicable minimum wage.  *See, e.g., Pinzon v. 168 8th Ave. Food Corp.*, No. 20-CV-06156, 2021 WL 4894678, at *6 (S.D.N.Y. July 14, 2021), R. & R. adopted, 2021 WL 4894614 (S.D.N.Y. Sept. 1, 2021) ("throughout his employment, [plaintiff] was paid an hourly rate with no overtime premium for his hours worked. Accordingly, [plaintiff] is entitled to a 50 percent premium for all hours worked after 40."); *Peralta v. M & O Iron Works, Inc.*, No. 12-CV-3179, 2014 WL 988835 at *9 (E.D.N.Y. March 12, 2014) ("The amount due to plaintiff in unpaid overtime premiums for this time period is calculated by determining half of his [regular hourly rate], which was above minimum wage. This number ... is then multiplied by ... the amount of weekly overtime worked by plaintiff ... and then multiplied by ... the number of weeks in this particular time period.") *Galicia v. 63-68 Diner Corp.*, No. 13-CV-03689, 2015 WL 1469279, at *5 (E.D.N.Y. March 30, 2015) ("because the Court has already compensated Plaintiff for his excess 21.5 hours per week at a rate of 100% in the section above regarding minimum wage, Plaintiff is now entitled to additional compensation at a rate of 50% of the minimum wage in this overtime premium section.")  The total unpaid overtime damages for all class members are $2,530.75.

### c.  Spread-Of-Hours

Unpaid spread-of-hours damages are calculated by applying one hour of the applicable New York minimum wage to each workday that spanned more than 10 hours

based on the time records.  The total unpaid spread of hours damages for all class members are $2,388.

## D.    Liquidated Damages

Plaintiffs are entitled to liquidated damages on their overtime, spread of hours, and minimum wage claims.  Both the FLSA and NYLL provide for liquidated damages.  Under the FLSA, an employer will be liable for liquidated damages equal to the amount of unpaid wages unless the employer had a good faith belief that it was complying with the law. 29 U.S.C. § 216(b).  The rules under NYLL are similar. *See Rana v. Islam*, 887 F.3d 118, 122-23 (2d Cir. 2018) ("While the wording of the FLSA and NYLL liquidated damages provisions are not identical, there are no meaningful differences, and both are designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed.") (internal quotation marks and citations omitted).  While an employee may recover liquidated damages for unpaid wages under either the FLSA or the NYLL, they are not entitled to "double recovery" for the same course of conduct.  *Rana,* 887 F.3d at 123.  The employer bears the burden to establish that liquidated damages should not be awarded.  *Reich*, 121 F.3d 71.  "'Good faith'" in this context requires more than ignorance of the prevailing law or uncertainty about its development. It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them." *Id.*

Here, Defendants fail to create a genuine dispute of fact as to whether liquidated damages should be awarded.  Defendants argue that there is at least a triable issue whether Defendants acted in good faith because Volper was an inexperienced restauranteur and "relied on his accountants to provide him with the information to comply

with the law." (Def. SJ Mem. at 18.)  But reliance on an accountant or payroll provider does not qualify as an "active step" to ascertain the dictates of the law and then act to comply with them.  *See Chichinadze v. BG Bar Inc.,* 517 F. Supp. 3d 240, 258 (S.D.N.Y. 2021) (granting summary judgment awarding liquidated damages under the NYLL where the employer "relied upon the ADP payroll company  for compliance*"); Dudley v. Hanzon Homecare Services*, Inc., No. 15-CV-8821, 2018 WL 481884, at *5 (S.D.N.Y. Jan. 17, 2018) (granting summary judgment awarding liquidated damages where the employer "claim[ed] that she acted in good faith because she used a "payroll service provider" and "believed that [the provider] would have notified Hanzon" if it were not in compliance with the FLSA or the NYLL.")

Defendants cite *Cardenas v. Edita's Bar & Restaurant Inc.*, No. 17-CV-5150, 2021 WL 4480570 (E.D.N.Y. Sept. 30, 2021) for the proposition that reliance on an accountant for compliance may create a triable issue as to Defendants' good faith.  In that case, there was evidence the employer took active steps to ascertain the law because Defendant "testified that she looked on the internet for information about how much to pay her employees and consulted with her accountant." *Id.*  Here, in contrast, Volper did not take affirmative steps to determine the requirements of the wage-and-hour laws and instead passively relied on his accountant.  (*See* Pl. 56.1 ¶ 38; Def. 56.1 ¶ 38.)  *Cardenas* thus does not help Volper.

Moreover, even after Defendants were sued for wage-and-hour violations in 2018, and again in 2020, they did not bring their practices into compliance with the law.  The unlawful payment practices continued into 2022.  Having been on notice from previous litigation that their pay practices were non-compliant, Defendants have no good faith

excuse for failing to ensure their subsequent compliance. *See Galvez*, 2022 WL 748286, at \*19 (granting summary judgment on liquidated damages for minimum wage, overtime, and spread-of-hours claims and finding that after being sued twice for wage-and-hour claims "while [Defendant] may have improved his labor practices, Defendants have provided no evidence that they attempted to comply with the specific obligations imposed by the minimum wage, overtime, and spread-of-hours laws"). Accordingly, Plaintiffs are entitled to liquidated damages in the same amount as their unpaid wages for minimum wage, overtime, and spread-of-hours.

## WAGE NOTICES AND WAGE STATEMENTS

There is no genuine dispute that Defendants failed to provide Plaintiffs with the wage statements and wage notices required under NYLL §§ 195(1) and 195(3). Defendants, however, seek dismissal of both NYLL claims with respect to the entire class for lack of standing. The Court agrees that Defendants are entitled to dismissal of Huk's claims as she has not set forth any facts showing that she incurred any cognizable injury from not receiving wage statements and wage notices. In contrast, there are genuine issues of material fact as to whether Martinenko suffered any such injury. Her claim thus should not be dismissed. As for the non-named class members, there are individualized issues pertaining to standing. Their claims should not be dismissed at this juncture but will warrant further class management.

### A.    Wage Statement and Wage Notice Violations

NYLL § 195(1) provides that employers must provide a wage statement "at the time of hiring" that is written in English and in each employee's primary language stating:

> the rate or rates of pay and basis thereof, whether paid by the
> hour, shift, day, week, salary, piece, commission, or other;

> allowances, if any, claimed as part of the minimum wage,
> including tip, meal, or lodging allowances; the regular pay day
> designated by the employer in accordance with section one
> hundred ninety-one of this article; the name of the employer;
> any "doing business as" names used by the employer; the
> physical address of the employer's main office or principal
> place of business, and a mailing address if different; [and] the
> telephone number of the employer[.]

NYLL § 195(1)(a).  It is undisputed that Defendants never provided any written notices containing the required information to any class members.   (Def. 56.1 ¶¶ 25-27.) Accordingly, Defendants violated NYLL § 195(1).

Similarly, NYLL § 195 (3) requires that employers furnish employees with written statements accompanying every payment of wages stating:

> the dates of work covered by that payment of wages; name
> of employee; name of employer; address and phone number
> of employer; rate or rates of pay and basis thereof, whether
> paid by the hour, shift, day, week, salary, piece, commission,
> or other; gross wages; deductions; allowances, if any, claimed
> as part of the minimum wage; and net wages. [. . .]

NYLL § 195 (3).  It is undisputed that prior to 2019, Defendants did not give class members wage statements that met the above criteria (Pl. 56.1 ¶¶ 29-33, 36; Def. 56.1 ¶¶ 29-33, 36.)  Even after Defendants began issuing pay stubs to Plaintiffs after 2019, they still did not comply with § 195(3) because they did not state the amount of tip credit claimed, identify overtime hours separately, or state the correct overtime rate.  (*See* Volper Dep. 103:7-20; Dkt. 121-5.)  Volper testified that Defendants had employees sign a document showing their hours, tips, and meal deductions when they received their pay (Volper Dep. 90:11-91:7), but Defendants produced no signed notices to corroborate that testimony.  And even if they had, it is undisputed that the document Volper claims to have had signed did not contain all the information required under the law, including, among

others, the employees' pay rate, overtime hours worked, the amount of tip credit Defendants took, gross wages, and net wages.  (Pl. 56.1 ¶ 36; Def. 56.1 ¶ 36.)  Accordingly, it is undisputed that Defendants violated NYLL § 195(3) as well as 195(1).  Whether Plaintiffs are entitled to damages on their § 195 claims is another matter discussed next.

## B.    Standing For § 195 Claims

Defendants argue that even though they technically failed to comply with the law, Plaintiffs cannot establish they suffered an actual injury that is traceable to Defendants' failure to provide wage notices and statements.  Defendants argue that not a single one of the members of the class, including Martinenko and Huk, suffered an injury as a result of Defendants' violations.  They assert that Plaintiffs lack standing to bring their NYLL § 195 claims in federal court, and therefore those claims must be dismissed.  (Def. SJ Mem. at 9; Def. Decert Mem. at 8.)  The Court concludes that for the purposes of seeking damages, Plaintiffs have not produced evidence to show they suffered an injury.

To establish Article III standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).  As Defendants correctly assert, plaintiffs alleging violations of the wage notice and statement provisions of the NYLL must show more than technical violations of the law, as a statutory violation alone, without a more concrete harm, does not constitute an injury that can be recognized by a federal court.  *See Chen v. Lilis 200 West 57th Corp.,* 19-CV-7654, 2023 WL 2388728, at *8 (S.D.N.Y.

March 7, 2023) ("In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation."); *Neor v. Acacia Network, Inc*., No. 22-CV-4814, 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023) (dismissing wage notice and statement claim due to failure to plead facts demonstrating employees' standing); *Beh*, 2022 WL 5039391, at *7-8 (finding that "[w]hile the deficiencies in defendants' provisions of hiring notices may amount to violations of the labor law, neither plaintiffs nor the record demonstrates how those technical violations led to either a tangible injury or something akin to a traditional cause of action, as required by the Supreme Court"); *Sevilla v. House of Salads One LLC*, 20-CV-6072, 2022 WL 954740, at *7 (E.D.N.Y. March 30, 2022) (finding that "[w]hile Defendants did not provide proper wage notice and statements to Plaintiffs, Plaintiffs lack standing to maintain these claims").

At the class certification stage, only one named plaintiff must demonstrate standing to maintain certification of the Rule 23 class. *In re AXA Equitable Life Ins. Co. COI Litigation*., No. 16-CV-740, 2023 WL 199284, at *1 (S.D.N.Y. Jan. 17, 2023) ("each member of a class need not submit evidence of personal standing to certify a class that meets Rule 23's requirements.") (internal quotation marks omitted) (collecting cases). Beyond the class certification stage, however, the Supreme Court has unequivocally stated that "[e]very class member must have Article III standing in order to recover individual damages" as "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion*, 594 U.S. 431 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016).) Therefore, for the purposes of

damages, the Court must evaluate standing for the named Plaintiffs individually as well as for the other class members.

As the party invoking federal jurisdiction, Plaintiffs bear the burden of demonstrating that they have standing for their NYLL § 195 claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Plaintiffs argue that the entire class suffered two types of "downstream injuries" stemming from the lack of wage notices and wage statements: monetary harm and informational harm. (Pl. Decert. Mem. at 20.) The Court discusses each type of harm in turn.

### 1. Monetary Harm

First, Plaintiffs argue that the harm they each suffered was a "traditional monetary harm" because Defendants' failure to provide compliant wage notices and wage statements caused them to be underpaid. (Pl. Decert. Mem. at 21.) Pointing to the NYLL's minimum wage provisions, Plaintiffs assert that an employer who fails to provide the required written notice of their taking a tip credit must pay the employee the full minimum wage without taking the tip credit. (*Id.* (citing N.Y.C.R.R. § 146-2.2.)) Plaintiffs argue that because Defendants failed to provide written notice of the tip credit, Defendants were legally required to pay Plaintiffs the full minimum wage without taking a tip credit, which they did not do. Thus, the payment Plaintiffs received was "underpayment." (*Id.*) Similarly, Plaintiffs also argue that even once Defendants began to issue pay stubs (which Defendants call "wage statements") after 2019, those statements failed to comply with the requirements of § 195(3), which caused Plaintiffs the harm of "underpayment" because checks were made out to employees based on the net amounts listed on Defendants' deficient pay stubs. (*Id.* at 22.) Accordingly, Plaintiffs

argue that because Defendants did not comply with 195(3), Plaintiffs were therefore "underpaid." (*Id.*) Plaintiffs assert that this underpayment is precisely the type of traditional monetary harm that gives rise to standing. (*Id.* (citing *Mateer v. Peloton Interactive, Inc.*, No. 22-CV-74, 2022 WL 2751871 (S.D.N.Y. July 14, 2022) (finding that a complaint alleged sufficient facts for purposes of standing because the complaint alleged that Defendant's violations "resulted in the underpayment of wages.").)

Plaintiffs' argument is not persuasive. The cause of Plaintiffs' underpayment was Defendants' failure to pay legally required wages. In other words, the underpayment Plaintiffs claim as harm is not distinct from the harm resulting from Defendants' violations of the other labor law provisions. Consistent with other courts in this Circuit to consider the question post-*TransUnion*, the Court concludes that while the "underpayment" injury Plaintiffs describe is indeed concrete, it is not fairly traceable to Defendants' alleged violation of the NYLL § 195 wage notice and wage statement requirements. *See, e.g.*, *Freeland*, 22-CV-6415, 2024 WL 2702201 (W.D.N.Y. May 24, 2024), at *4 (finding alleged monetary injury does not confer standing to bring NYLL 195(3) claim where Plaintiff's "monetary harm" was better traced as an injury flowing from Defendant's alleged violations of state and federal overtime requirements, not Defendant's inaccurate wage statements); *Jackson v. ProAmpac LLC*, No. 22-CV-03120, 2023 WL 6215324, at *4 (S.D.N.Y. Sept. 25, 2023) (dismissing plaintiffs' § 195 claim for lack of standing where plaintiffs alleged a lack of wage statements obscured Defendants' policy of underpayment by rounding up employee start times and rounding down employee end times because "Plaintiff's monetary harm is better traced as an injury flowing from [Defendant's] rounding policy, not [Defendant's] inaccurate wage notices"); *Quieju v. La Jugueria Inc.,* No. 23-

CV-264, 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023) (dismissing plaintiff's NYLL §
195(1) and (3) claims for lack of standing because "the injury that plaintiff suffered (i.e.,
defendants' failure to properly pay him) is not an injury he sustained because of a lack of
the required documents; it is an injury sustained because his employer violated its
obligation to pay minimum wage, overtime, and spread-of-hours pay under other, express
requirements of federal and state law").

In short, Plaintiffs have not established an independent monetary harm sufficient
to confer Article III standing for their NYLL § 195 claims.

## 2. Informational Harm

Plaintiffs also argue that they have suffered "informational injury." (Pl. Mem. at 22-
24.) *See Transunion* 594 U.S. at 426 (holding that "informational injury" sufficient to
establish standing requires concrete "downstream consequences" from failing to receive
information). As Plaintiffs posit, "Defendants' failure to provide Plaintiffs with the legally
required information in wage notices and in wage statements deprived them of
information to which they were legally entitled, which impaired their ability to determine
whether and how their employer was underpaying them." (Pl. SJ Mem. at 22-23.)
Defendants maintain that there is no basis for finding that either Plaintiff or any class
member suffered any type of harm, informational or otherwise.

Although the Second Circuit has not yet addressed this issue, district courts in the
Circuit have – post-*TransUnion* – found Article III standing at the motion to dismiss stage
where employees alleged they did not know they were being underpaid because they did
not receive proper wage notices and/or wage statements. *See, e.g., Lipstein v. 20X
Hospitality LLC*, No. 22-CV-04812, 2023 WL 6124048, at *9 (S.D.N.Y. Sept. 19, 2023)

(plaintiff had standing to bring § 195(1) and 195(3) wage notice and statement claims where he plausibly alleged that not receiving information about his rate of pay and accurate wage statements "hurt his ability to assess whether he was being properly paid and therefore promptly raise issues of underpayment with his employer"); *Metcalf v. TransPerfect Translations International, Inc.*, No. 19-CV-10104, 2023 WL 2674743, at *4 (S.D.N.Y. March 29, 2023) (plaintiffs sufficiently alleged standing to bring § 195(3) claim where they alleged that the defendant denied them "the information needed to determine: (1) whether they were being underpaid, (2) by what amount, and (3) whether the retroactive payments adequately covered the overtime hours they worked"); *Bueno v. Buzinover,* No. 22-CV-2216, 2023 WL 2387113, at *3 (S.D.N.Y. March 7, 2023) (standing satisfied for 195(1) and 195(3) claims where "denying an employee such notices – as alleged here – can impinge on an employee's interests not only in being paid what is owed, but also in being able to advocate for the receipt of proper pay"); *cf. Neor v. Acacia Network, Inc.*, No. 22-CV-4814, 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023) (dismissing wage notice and statement claim due to lack of standing where "Plaintiffs admit that [the defendant] furnished wage statements that would show a lower number of hours recorded than plaintiffs actually worked" and "the inaccuracies in the wage statements would immediately alert the Plaintiffs to the fact that they were not being properly compensated").

### a. Huk

Plaintiffs do not identify any record evidence that Huk incurred a concrete informational harm, and she does not mention any in her declaration or deposition. (*See*

12/21/2023 Huk Decl., Dkt. 123; Huk Dep., Dkt. 119-10.)  Having neither monetary nor informational harm, Huk's NYLL § 195 claims should be dismissed for lack of standing.

### b. Martinenko

At her deposition, Martinenko asserted that because Defendants did not provide her with any wage statements prior to 2021, and because she never received a legally sufficient wage notice, she was unable to know the number of hours she was being paid, her rate of pay, and whether she was entitled to overtime compensation. (*See* Martinenko Dep. 34:23-35:11; 36:2-14; 37:1-38:2.)  Martinenko did not complain to anyone about her wages because she did not know they were incorrect.  (Martinenko Dep. 36:5-13; 12/21/2023 Martinenko Decl. ¶ 5, 8-9.)  Had she been informed that she was entitled to overtime pay, she would have discussed it with Defendants and requested overtime pay. (12/21/2023 Martinenko Decl. ¶ 9.)

Defendants argue that Martinenko was sufficiently informed even without wage notices and wage statements that she had potential tip-credit, overtime, and other claims. Defendants cite several facts in support of that argument, including that (1) Martinenko knew that her pay included a tip credit hourly wage; (2) Martinenko was an experienced server, (3) Defendants put up posters in the restaurant advising employees of the labor laws, (4) Martinenko often helped with payroll and had access to all the employees' POS records; and (5) Martinenko had previously worked at another restaurant where employees brought the same wage-and hour claims that Plaintiffs allege here.  (*See* Def. Decert Mem. at 15 and n.14; 17 n.15.)  Receiving proper wage notices and statements, Defendants assert, would have made no difference to Martinenko because she was already aware of information she could have used to raise concerns about her

compensation.    Defendants cite Martinenko's testimony that in 2021 she asked a coworker "why we were not getting paid overtime" as evidence that she was aware of any problems with her compensation (Def. Decert. Reply at 11), and they submit the notice of a class action settlement in a separate wage-hour case involving plaintiffs who were employed at a restaurant at which Martinenko previously worked.  (Def. Mem. at 17 n.15.)

Plaintiffs challenge Defendants' evidence and the inferences or conclusions to be drawn from it.  For instance, Plaintiffs point out that there is no evidence that the labor law posters were displayed in the workplace while Plaintiffs worked there, and the tip credit minimum wage printed on the poster attached to Volper's declaration is lower than the New York tip credit minimum wage. (See Dkt. 112-13.)  In addition, while Martinenko worked at a restaurant where other employees challenged their employers' pay practices, there is no indication that Martinenko received the class settlement notice, and even if she had, it would not necessarily have placed her on notice of 212's obligations to its employees. Further, Martinenko asserts she only accessed the POS system twice to check another employee's clock-in and clock-out time at Volper's direction.  (12/21/2023 Martinenko Decl ¶¶ 10-11.)  She denies that she checked her own records and asserts that her work with payroll only involved handwriting checks for employees based on final amounts that Defendants calculated and provided to her.  (See Martinenko Dep. 54:7-55:5.)

There is competing evidence as to whether Martinenko suffered informational harm.  Dismissal or summary judgment against Martinenko based on standing thus is not warranted.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992) (explaining that, while on a motion to dismiss, the plaintiff's allegations are assumed to be true for purposes of

assessing standing, at the summary judgment stage, specific facts advanced by plaintiff as supporting standing will be taken to be true); *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) ("Summary judgment is inappropriate when the admissible materials in the record '"make it arguable"' that the claim has merit"); *Access 4 All, Inc. v. Trump International Hotel & Tower Condominiums,* 458 F. Supp.2d 160, 176 (S.D.N.Y. 2006) (denying motion for summary judgment on the basis of standing where plaintiffs presented evidence of injury from statutory violations and noting that "[w]hether discovery and trial will expose Plaintiffs' case as something less than genuine remains to be seen").

### c. Unnamed Class Members

Whether the non-named members can establish standing is, at this juncture, indeterminate.  They are not individually before the Court and have had no opportunity to submit evidence that they have standing on the § 195 claims.  As noted above in the context of decertification, the presence of this individualized issue does not undermine either commonality or predominance of the claims taken as a whole.  Just how that remining issue should be resolved for the unnamed class members is a matter of management of the class, for which the Court has considerable flexibility and options. *See generally In re Visa Check*, 280 F.3d at 141 (recognizing "a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including" bifurcation, appointment of a magistrate judge or special master to preside over individualized damages proceedings, decertification after trial, creating subclasses, and altering or amending the class.  To determine next steps with respect to the unnamed class member § 195 claims, I recommend that the Court direct the parties to meet and confer on the issue and report to the Court.  *See, e.g., In re AXA*

*Equitable Life Ins. Co. COI Litig.,* No. 16-CV-740, 2023 WL 199284 (S.D.N.Y. Jan. 17, 2023) (modifying the class and directing the parties to meet and confer about the trial plan and whether trial of the class claims should be bifurcated into liability and remedies phases); *Chen-Oster v. Goldman, Sachs & Co.,* No. 10-CV-6950, 2022 WL 3586460 (S.D.N.Y. Aug. 22, 2022 (reconsidering class decertification in the wake of *TransUnion* and redefining the class such that all members had standing).

**Individual Liability**

Defendant Volper is individually liable as an employer for Plaintiffs' FLSA and NYLL claims.  Under the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  Under the NYLL, an employer is "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." NYLL § 190(3).  Courts generally interpret the definition of employer under both statutes coextensively. *Gao v. Savour Sichuan Inc.,* No. 19-CV-2515, 2024 WL 664718, at *16 (S.D.N.Y. Feb. 16, 2024); *see also Weng v. New Shanghai Delux Corp.,* 19-CV-9596, 2022 WL 5434997, at *4 (S.D.N.Y. Oct. 7, 2022) ("courts in this district have applied the same tests to determine whether an individual constitutes an employer under the FLSA and the NYLL").

To determine whether an employment relationship exists, courts use an "economic reality" test, which is a "flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances."  *Barfield v. New York City Health & Hospitals Corp.,* 537 F.3d 132, 141-42 (2d Cir. 2008).  "Courts have identified different sets of relevant factors based on the factual challenges posed by particular cases." *Id.*  Relevant

here are the factors identified in *Carter v. Dutchess Community College*, including whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." 735 F.2d 8, 12 (2d Cir. 1984).  The Second Circuit has held that the *Carter* factors "can be sufficient to establish employer status," although they are not necessary.  *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 69 (2d Cir. 2003).

Consideration of the *Carter* factors shows that Defendant Volper was Plaintiffs' employer.  It is undisputed that Volper had operational control and authority to (1) hire and fire employees, (2) control schedules and conditions of employment, and (3) determine the rates of payment for the employees, and (4) maintained employment records (though they did not comply with the FLSA, as discussed above). (Def. 56.1 ¶¶ 6-11, 14.) Accordingly, Volper is indisputably an employer subject to individual liability. *See, e.g., Guerra v. Trece Corp.,* No. 18-CV-625, 2020 WL 7028955, at *11 (S.D.N.Y. Nov. 30, 2020) (finding Defendant individually liable for FLSA and NYLL claims where "three of the four *Carter* factors weigh significantly in favor of holding [defendant] liable"); *Fermin v. Las Delicias Peruanas Restaurant Inc.*, 93 F. Supp. 3d 19, 36 (E.D.N.Y. 2015) ("As Plaintiffs have demonstrated that the Individual Defendants satisfy three of the four Carter factors, the Individual Defendants are Plaintiffs' employers and should be held individually liable for the FLSA violations."); *Inclan*, 95 F. Supp.3d at 511 (considering the *Carter* factors and holding that Defendant was an employer because "the evidence inescapably leads to the conclusion that [Defendant] dominated, financially controlled, and exercised significant functional control over not only the general business affairs of

the Restaurant, but indeed over plaintiffs' wages. As a practical matter [Defendant] was the Restaurant's "top man").

## Prejudgment Interest

The NYLL provides for prejudgment interest on a plaintiff's compensatory damages. NYLL §198(1-a). Plaintiffs are eligible to recover prejudgment interest at the statutory rate of 9% per annum. NY CPLR §§ 5001, 5004; *see, e.g.*, *Gurung v. Malhotra*, 851 F. Supp.2d 583, 594 (S.D.N.Y. 2012) (applying pre-judgment interest rate to NYLL claims). [T]o determine when prejudgment interest begins to accrue, courts applying the NYLL in wage-and-hour cases often choose the midpoint of the plaintiff's employment within the limitations period." *Gamero*, 272 F. Supp. 3d at 515 (citing *Hengjin Sun v. China 1221*, *Inc.*, No. 12-CV-7135, 2016 WL 1587242 (S.D.N.Y. Apr. 19, 2016)) (internal quotation marks and alterations omitted). Here, the midpoint of the class members' damages is June 18, 2019. (Pl. 56.1 ¶ 37.) Total compensatory damages for overtime, spread of hours, and minimum wage claims amounts to $101,527.10 Accordingly, Plaintiffs should be awarded pre-judgment interest on $101,527.10, at a rate of 9%, starting from June 18, 2019.

## CONCLUSION

To the extent not discussed herein, the Court has considered all of the parties' arguments and determined them to be moot or without merit. For the foregoing reasons, I recommend that Defendants motion to decertify the Rule 23 class be DENIED and Plaintiffs' motion for summary judgment be GRANTED in part and DENIED in part. Specifically, I recommend that:

1. The class be awarded unpaid minimum wages under the NYLL without a tip credit allowance in the total amount of $96,608.35;

2. The class be awarded unpaid overtime wages under the NYLL without a tip credit allowance in the total amount of $2,530.75;

3. The class be awarded unpaid spread-of-hours premiums under the NYLL where applicable in the total amount of $2,388;

4. The class be awarded liquidated damages under the NYLL in the total amount of $101,527.10;

5. Defendant Volper be held individually liable for damages under the FLSA and NYLL;

6. Plaintiff Huk's NYLL § 195 wage notice and statement claims be dismissed for lack of standing;

7. Summary judgment be denied on the rest of the class members' NYLL § 195 wage notice and wage statement claims; and

8. The parties be ordered to meet and confer regarding next steps for addressing individualized injury with respect to the unnamed class member § 195 claims.

9. Prejudgment interest be awarded from June 18, 2019 at a rate of 9% on the total unpaid wages of $101,527.10.

**Deadline For Filing Objections And Preserving Appeal**

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Any party shall have fourteen (14) days to file a written response to the other party's objections.  Any such objections and responses shall

be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the

Honorable Jennifer L. Rochon, United States Courthouse, 500 Pearl Street, New York,

New York 10007, and to the Chambers of the undersigned, at United States Courthouse,

500 Pearl Street, New York, New York 10007.  Any request for an extension of time for

filing objections must be addressed to Judge Rochon.  **Failure to file timely objections

will result in a waiver of the right to object and will preclude appellate review.**

Respectfully submitted,

_____

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: August 13, 2024
        New York, New York

Copies transmitted to all counsel of record.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NINO MARTINENKO, on behalf of herself
and others similarly situated,

Plaintiffs,

-against-

212 STEAKHOUSE, INC., and NIKOLAY
VOLPER,

Defendants.

Case No. 1:22-cv-00518 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Nino Martinenko ("Martinenko" or "Plaintiff") brings this action against

Defendants 212 Steakhouse, Inc., and Nikolay Volper (together, "Defendants") for violations of

the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), including: (1)

paying employees pursuant to a tip credit without providing the notice required under New York

law; (2) failing to pay overtime premiums; (3) failing to pay spread of hours premiums; and (4)

failing to provide employees with wage notices and wage statements as required by NYLL §

195. The Court referred this matter to Magistrate Judge Robert W. Lehrburger, who issued a

Report and Recommendation on Defendants' motion to decertify and Plaintiffs' and Defendants'

cross-motions for summary judgment on August 13, 2024. ECF No. 132 ("R&R").

The Court incorporates the portion of the R&R that sets forth the factual background and

procedural history of this case and refers to the R&R for a more comprehensive background. *See*

R&R at 1-3. Essentially, Martinenko was a former server at the restaurant 212 Steakhouse, a

small restaurant in midtown Manhattan, from 2016 to December 2018, and then again from

March 2021 to December 2021. *Id.* at 2-3. Plaintiff Huk worked as a bartender at 212

Steakhouse from August 2020 to September 2021. R&R at 3. Plaintiffs Huk and Martinenko

comprise the collective FLSA class.  R&R at 5.  This Court also certified a Rule 23(b)(3) class consisting of "all tipped employees — servers, runners, bussers, and bartenders — who worked for Defendants at any time on or after January 20, 2016 at 212 Steakhouse."  R&R at 3, 6. Plaintiffs seek damages for the class for unpaid minimum wages, overtime compensation, spread of hours pay, and other violations of the NYLL.

On November 16, 2024, the parties filed competing motions.  R&R at 6.  Defendants moved to decertify the Rule 23 class, citing a reduction in class size, and for summary judgment as to Plaintiff's NYLL Section 195 claims based on a lack of standing.  R&R at 6-7.  Plaintiffs cross-filed for summary judgment as to liability and damages on each of their asserted claims. R&R at 7.

Magistrate Judge Lehrburger recommends denial of Defendant's motion to decertify the Rule 23 class.  R&R at 2.  As for Plaintiffs' motion for summary judgment, Magistrate Judge Lehrburger recommends that the motion be granted in part and denied in part.  R&R at 2. Specifically, the R&R recommends granting summary judgment in Plaintiffs' favor on Martinenko's and Huk's FLSA overtime claims and on all class members' NYLL minimum wage, overtime, and spread of hours claims.  R&R at 2.  However, with respect to Plaintiffs' NYLL wage notice and wage statement claims, Magistrate Judge Lehrburger recommends granting summary judgment against Huk, R&R at 2, and denying summary judgment as to Martinenko's and the unnamed class members' claims to allow for further fact-finding.  R&R at 2.

Both Plaintiffs and Defendants filed timely objections to the R&R.  *See* ECF Nos. 134 ("Pl. Obj.") and 135 ("D. Obj.").  For the reasons set below, the Court adopts the comprehensive and thorough R&R in its entirety.

**STANDARD OF REVIEW**

With respect to dispositive motions, a district court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3).  A district court must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  In *de novo r*eview, district courts must consider "the report, the record, applicable legal authorities, along with [p]laintiff's and [d]efendant's objections and replies."  *Diaz v. Girdich*, No. 04-cv-05061 (RJH), 2007 WL 187677, at *1 (S.D.N.Y. Jan. 23, 2007).

"To the extent, however, that the party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error."  *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 174 (S.D.N.Y. 2018).  "In addition, new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all."  *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) (citation and quotation marks omitted); *see United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (rejecting argument raised for the first time as objection to report and recommendation).  Finally, to the extent there are portions of the report and recommendation to which no party objects, the Court reviews those for clear error.  *See, e.g.*, *Goodman v. Goodman*, No. 21-cv-10902 (GHW), 2023 WL 1967577, at *1 (S.D.N.Y. Feb. 12, 2023).

**DISCUSSION**

**I.    Defendants' Objections to the R&R**

Defendants raise three objections to the R&R: (1) first, the motion to decertify should be granted in light of the class's reduced size; (2) second, summary judgment as to damages on

class members' underpayment claims should be denied because material factual disputes remain as to the number of hours that employees worked; and (3) third, there is a genuine issue of material fact, not addressed by the R&R, as to whether Defendants had actual or constructive knowledge of employees' time worked. The Court will address each objection in turn under a *de novo* review standard.

### 1. The Motion to Decertify the Rule 23 Class Is Denied

Defendants seek to decertify the Rule 23 class on the basis that numerosity, commonality, predominance, and superiority are no longer met. "[A] defendant seeking to decertify a class bears a heavy burden to prove the necessity of the drastic step of decertification." *Zimmerman v. Portfolio Recovery Assocs., LLC*, No. 09-cv-04602(PGG), 2013 WL 1245552, at *2 (S.D.N.Y. Mar. 27, 2013) (citations, quotation marks, and ellipses omitted). "[T]he Court may not disturb its prior certification findings absent some significant intervening event or a showing of compelling reasons to reexamine the question." *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 169 (S.D.N.Y. 2011) (citation and quotation marks omitted). Moreover, "courts faced with a motion to decertify must also take account of the progression of the litigation." *Id.*

Magistrate Judge Lehrburger recommends denial of Defendants' motion for decertification. For the reasons set forth below, this Court agrees.

### 1. Numerosity

Defendants' argument for decertification hinges largely on the class's reduced size — in Defendant's view, the class has at most only 24 remaining class members and therefore does not satisfy numerosity. D. Obj. at 5. Defendant's calculation, however, erroneously excludes members whose notices were returned as undeliverable and deceased class members. The Court

agrees with Magistrate Judge Lehrburger that both groups are properly counted toward a Rule 23 class.

Turning first to those members whose notices were returned as undeliverable, Rule 23 is clear: due process does not require actual notice, but only the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see also In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 132-33 (S.D.N.Y. 2008) ("Notice need not be perfect, but need only be the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as counsel acted reasonably."). Judge Lehrburger relies on *Rannis v. Recchia*, which is squarely on point. R&R at 13 (citing *Rannis v. Recchia*, 380 F. App'x 646 (9th Cir. 2010)). In *Rannis*, the Ninth Circuit found that seven class members whose notices were returned as undeliverable were properly included in the class because those members "received the best notice that is practicable under the circumstances." *Id.* at 650. The Court underscored that "due process requires reasonable effort to inform affected class members through individual notice, *not receipt of individual notice*." *Id.* (emphasis added). Defendants seek to cabin *Rannis*'s holding to the peculiarities of that case, pointing to the Ninth Circuit's characterization of the *Rannis* class as a "jurisprudential rarity" because it consisted of only twenty members. D. Obj. at 5-6 (citing *Rannis*, 380 F. App'x at 651). That fact, however, had no bearing on the Ninth Circuit's analysis of undeliverable notices, which instead relied upon the express language of Rule 23 and due process considerations.[1]

---

[1] Defendants' assertion that the R&R "essentially disregards the caselaw that supports [Defendant's] Motion" is unfounded. D. Obj. at 8. The R&R addresses each of the authorities Defendants cite and concludes that they are inapposite. *Rule v. Int'l Ass'n of Bridge, Structural and Ornamental Ironworkers* "did not analyze and was not even presented with [the] specific issue" of whether undelivered notices should be excluded. R&R at *13-14 (distinguishing *Rule*, 568 F.2d 558, 563-64 (8th Cir. 1977)). *Zimmerman v. Portfolio Recovery Assocs., LLC*, makes no finding on the issue of whether undeliverable notice should be counted toward the class. *See*

The Court likewise agrees that deceased class members are properly counted toward the class. For one, there is no requirement that the class definition expressly include legal representatives and/or estates of any deceased class members. The Court agrees with the R&R that it is sufficient that the class definition encompasses all "tipped employees" who worked for Defendants "at any time on or after January 2016," and that the deceased class members clearly fall within that definition. Defendants rely heavily on N.Y. C.P.L.R. § 210(a) to argue that deceased members should nevertheless be excluded. Pursuant to C.P.L.R. Section 210(a), when a "person entitled to commence an action dies before the expiration of the time within which the action must be commenced and the cause of action survives, an action may be commenced by his representative within one year after his death." Defendants argue that the deceased class members' claims are foreclosed because they were brought more than a year after their deaths. This misreads the objective of C.P.L.R. Section 210(a), which is "designed to extend periods of limitation that would otherwise expire shortly after a plaintiff's death" but "does not operate to reduce statutory periods that would otherwise have more than one year to run." *Gordon v. Gordon*, 110 A.D.2d 623, 624 (2d Dep't 1985). The Court agrees with Magistrate Judge Lehrburger that there is no basis for limiting this well-established principle to "cases involving causes of actions brought by an executor of a decedent's estate" but "not [cases brought by] a class representative in a class action," as Defendants argue. D. Obj. at 9. The deceased class

---

R&R at 14 (distinguishing *Zimmerman*, No. 09-cv-04602 (PGG), 2013 WL 1245552, at *3 (S.D.N.Y. Mar. 27, 2013)). And in *Benavides v. Serenity Spa N.Y. Inc.*, the court's decision to exclude three individuals for whom notices were returned as undeliverable was rendered under vastly different circumstances: the parties had jointly moved for decertification, were in an early phase of litigating their Rule 23 claims, and had not yet even mailed out notice to potential class members. R&R at 15 (distinguishing *Benavides v. Serenity Spa N.Y. Inc.*, No. 15-cv-09189, 2018 WL 2383144, at *2-3 (S.D.N.Y. May 25, 2018)).

members' claims are brought well within the six-year statute of limitations and are therefore timely.

Accounting for deceased members and members whose notices were returned as undeliverable brings the class size to 32 members. However, while Defendants fixate on the class size, the numerosity requirement does not turn on class numbers alone. Where, as here, there are fewer than 40 class members, courts should consider "all the circumstances surrounding a case," including "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, [and the] financial resources of class members." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). The Court agrees with Magistrate Judge Lehrburger that these additional factors weigh in favor of certification, *even if* Defendants' more conservative estimate of only 24 class members is used.

Consolidating employees' complaints in a single class action pertaining to the same illegal labor practices serves judicial economy by preventing a multiplicity of individual suits. *See, e.g.*, *Neff v. Flowers Foods, Inc.*, No. 5:15-cv-00254, 2019 WL 10750005, at *12 (D. Vt. May 16, 2019) (finding that "[t]hirty-three cases would represent a considerable burden to the court and to the parties to prepare and try as individual lawsuits"); *Balverde v. Lunella Ristorante, Inc.*, No. 15-cv-05518 (ER), 2017 WL 1954934, at *6 (S.D.N.Y. May 10, 2017) (finding that thirty-eight class members satisfies numerosity); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (certifying class consisting of twenty-eight individuals). Moreover, this is a wage and hour suit brought by minimum wage workers, and therefore involves a group of individuals who likely have limited resources for pursuing legal action. Defendants' efforts to suggest otherwise are unpersuasive.

Finally, the Court finds that the R&R properly considered plausible retaliation by Defendants in rendering its numerosity determination. Contrary to Defendants' assertion that any such claim of retaliation is "unfounded," D. Obj. at 11-12, every current employee opted out of the class action, and did so using nearly identical forms, sent from the same zip code, using the same envelopes. That is sufficient to at least raise the specter of retaliation. In any event, Defendants were not unfairly prejudiced by Magistrate Judge Lehrburger's suggestion of retaliation — Defendants' plausible retaliation is not outcome determinative, but merely another thumb on the scale in favor of certification.

## 2. Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Mangahas v. Eight Oranges Inc.*, No. 22-cv-04150, 2024 WL 2801922, at *6 (S.D.N.Y. 2024) (citation and quotation marks omitted). "[C]laims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 127 (S.D.N.Y. 2011).

Commonality is readily satisfied here, where Defendants engaged in unlawful wage and hour violations applicable to all class members. It is undisputed that Defendants paid all tipped employees the tip credit minimum wage, that Defendants paid class members the regular rate for overtime, and that Defendants did not pay class members a spread-of-hours premium. *See* ECF No. 93 at 3 ("Sanctions Order"); se*e also Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 371 (S.D.N.Y. Jan. 29, 2007) (commonality satisfied where it was "clear that all of the

proposed class members would rely on the same allegedly wrongful conduct of the defendants

and muster the same legal arguments in support of their New York Labor Law claims"); *Campos*

*v. Goode*, No. 10-cv-00224 (DF), 2010 WL 5508100, at *2 (S.D.N.Y. Nov. 29, 2010)

("[A]lleged wage and hour violations – involving common operative facts stemming from

corporate policies that affected the class members in the same way – are sufficient to meet Rule

23(a)'s commonality factor.").

     Defendants now assert that commonality is not satisfied with respect to the overtime and

spread of hour claims because those claims "do not appear to affect the class as a whole since

more than half the class was not subject to unlawful overtime or spread of hours policies."  D.

Obj. at 13.  However, courts certify classes "based on a theory of a common policy of unlawful

practice even if there is evidence that some of the putative class members were either not

affected or were affected to a lesser degree."  *Pichardo v. Carmine's Broadway Feast Inc.*, No.

15-cv-03312 (RA)(SN), 2016 WL 4379421, at *6 (S.D.N.Y. June 13, 2016); *see also Pichardo v.*

*Carmine's Broadway Feast Inc.*, 2016 WL 5338551, at *4 (S.D.N.Y. Sept. 23, 2016) ("If . . .

some workers were ultimately paid the proper amount because . . . they worked under forty

hours, such differences in the class members may be addressed by individualized damages, and

do not militate against class certification").

     In any event, all parties agree that there is at least a "single common question" among all

putative class members, namely, whether Defendants' payment of the tip credit minimum wage

violated the NYLL.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[F]or

purposes of Rule 23(a)(2), even a single common question will do") (citation and quotation

marks omitted); *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 690 (S.D.N.Y. 1996), *aff'd*

*sub nom*, 126 F.3d 32 (2d Cir. 1997) ("[Commonality] will be satisfied if the named plaintiffs

share at least one question of fact or law with the grievances of the prospective class."). All class members received the tip credit minimum wage, and none received notice as to Defendants' use of a tip allowance.

### 3.  Predominance

Pursuant to Federal Rule of Civil Procedure 23(b)(3), a class action may be maintained if "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual class members."  "The predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *In re U.S. Foodservice Inc. Pricing Litig.,* 729 F.3d 108, 118 (2d Cir. 2013).

According to Defendants, individual damages on the overtime and spread of hours claims predominate over the liability issues in this case.  Not so.  "[T]he Second Circuit has found that individualized calculations of damages do not defeat the predominance requirement."  *Schear v. Food Scope America, Inc*., 297 F.R.D. 114, 126 (S.D.N.Y. Jan 10, 2014) (citing *In re U.S. Foodservice Inc.*, 729 F.3d at 123 n.8); *see also Johnson v. Brennan*, 2011 WL 4357376, at *6 (S.D.N.Y. Sept. 16, 2011) ("[I]t is well-settled that individualized damages calculations do not defeat predominance.").  To the extent there are individualized damages issues in this case, they involve "straightforward, mechanical calculations" as to employees' hours worked and rate of pay.  *Schear*, 297 F.R.D. at 126 (finding predominance requirement was satisfied were individualized damages issues involved "straightforward, mechanical" calculations).  That is clear from Magistrate Judge Lehrburger's ability to readily calculate class members' damages on their underpayment claims using Defendants' timesheets.

Presumably recognizing the weakness of their damages argument, Defendants separately attempt to refashion what are straightforward damages issues — the number of hours worked by employees and employees' respective pay rates — as jurisdictional standing issues.  Defendants argue that individual issues regarding the overtime and spread of hours claims implicate "not merely a calculation of damages," but "whether each class member suffered a particular injury-in-fact and thus ha[s] standing to maintain the claim in this Court."  Obj. at 13.  Defendants miss the mark.  For the purposes of class certification, "[s]tanding is satisfied so long as at least one named plaintiff can demonstrate the requisite injury."  *Hyland v. Navient Corp.*, 48 F.4th 110, 117-18 (2d Cir. 2022); *accord In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16-cv-00740 (JMF), 2023 WL 199284, at *1 (S.D.N.Y. Jan. 17, 2023).  Class members' individual standing is relevant only for recovering individual damages, and as discussed previously, the existence of individualized damages claims does not foreclose class certification.  Here, the "class definition used . . . makes clear that all the class members were subject to the policies at issue," which is "standing sufficient to maintain the certification of the class."  *Chen-Oster v. Goldman, Sachs & Co.*, No. 10-cv-06950 (AT) (RWL), 2022 WL 814074, at *20 (S.D.N.Y. Mar. 17, 2022); *see also In re AXA Equitable Life Ins. Co. COI Litig.*, 2023 WL 199284, at *2 ("[T]he possibility that a well-defined class will nonetheless encompass some class members who have suffered no injury . . . is generally unproblematic as the non-injured parties can just be sorted out at the remedies phase of the suit.").

### 4. Superiority

Finally, because Plaintiffs bring their class action pursuant to Rule 23(b)(3), Plaintiffs must show that a "class action is superior to other available methods for fairly and effectively adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Magistrate Judge Lehrburger concluded

that the superiority standard is readily satisfied here given the common liability questions among class members. Defendants disagree, largely regurgitating their arguments that individualized standing and damages issues bar certification.

Defendants' objections fail. For the same reasons that the presence of individualized damages would not defeat the commonality or predominance requirements for class certification, they do not defeat the superiority requirement. *See, e.g.*, *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374, 385 (S.D.N.Y. 2016) ("Individualized damages determinations alone cannot preclude certification under Rule 23(b)(3)."); *Bernstein v. Cengage Learning, Inc.*, No. 19-cv-07541 (ALC) (SLC), 2023 WL 6211771, at *5 (S.D.N.Y. Sept. 25, 2023) ("Predominance does not require the absence of individual damages.").

Defendants' argument that superiority cannot be established because there are individualized standing inquiries with respect to class members' tip credit and NYLL Section 195 claims is likewise unpersuasive. There are no individualized questions of injury-in-fact with respect to class members' tip credit claims: it is undisputed that Defendants did not notify *any* of the class members of the tip credit allowance, and that all class members were paid the tip credit minimum wage. As for individualized standing inquiries for class members' NYLL Section 195 claims, "standing in a class action is satisfied so long as at least one named plaintiff can demonstrate the requisite injury." *In re AXA Equitable Life Ins. Co. COI Litig.*, 2023 WL 199284, at *1. "[E]ach member of a class need not submit evidence of personal standing to certify a class that meets Rule 23's requirements." *Id.* (citation and quotation marks omitted); *see also Chen-Oster*, 2022 WL 814074, at *19 ("[T]he test for standing . . . asks whether the class is defined in such a way as to ensure that the class members were subject to the policy [at issue].")." For the reasons explained below, the Court finds that Named Plaintiff Martinenko has

made a sufficient showing of standing with respect to her NYLL Section 195 claims to defeat summary judgment. *See infra* at II.1. Martinenko therefore satisfies the Article III standing requirement for class certification at this juncture.

Moreover, as Defendants themselves concede, there are various management tools to address individualized damages issues, to the extent such issues arise at the remedies phase. *See, e.g.*, *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001), *abrogated on other grounds by In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) (identifying a number of management tools available to a district court to address individualized damages, including: (1) bifurcating liability and damage trials; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial; (4) creating subclasses; or (5) altering or amending the class).

## 2. There is No Genuine Factual Dispute as to the Number of Compensable Hours Worked by Class Members

Defendants do not dispute that they are liable for the class's minimum wage, overtime, and spread of hours claims. They maintain, however, that the R&R erred in granting summary judgment on damages because a genuine factual dispute remains with respect to the number of hours employees worked, and in particular, whether some of the clocked-in hours on class members' time records were non-compensable meal breaks.

Defendants dispute the accuracy of their own time records, which Defendants relied upon to pay class members and which reflect the hours employees clocked in and clocked out. Those records do not show any meal breaks. By Defendants' own admission, then, they failed to meet their record-keeping obligations, and "[t]he Court must construe the gaps in Defendant[s]' employment records against Defendant[s]." *Marcelino v. 374 Food, Inc.*, No. 16-cv-06827 (KPF), 2018 WL 1517205, at *19 (S.D.N.Y. Mar. 27, 2018). Where, as here, Defendants have

failed to maintain accurate documentation of hours worked and wages paid, courts apply a burden-shifting framework to evaluate class members' claims of unpaid wages. *Gamero v. Koodo Shushi Corp.*, 272 F. Supp. 3d 481, 497 (S.D.N.Y. Sept. 28, 2017). An employee need only "submit sufficient evidence from which violations of the FLSA and the amount of an award may be reasonably inferred." *Gonzalez v. Masters Health Food Serv. Inc.*, No. 14-cv-07603 (VEC), 2017 WL 3835960, at *16 (S.D.N.Y. July 27, 2017) (citing *Reich v. Southern New England Telecommc'ns. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997)) (quotation marks omitted). The employee's burden is "not high" and can be met "through estimates based on his own recollection." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011). The burden then shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946). Under the NYLL, an employer who fails to keep accurate records shoulders the more demanding burden of coming forward with evidence of precise wages and hours. *Galvez v. 800 Ginza Sushi Inc.*, No. 19-cv-08549 (JPC), 2022 WL 748286, at *7 ("[Under NYLL], [a]n employer must demonstrate that it in fact paid its employee[']s wages, benefits, and supplements") (citation and quotation marks omitted).

The R&R properly applied this burden-shifting framework and determined that Plaintiffs met their burden of establishing, by a "reasonable inference," that Defendants treated all clocked-in time as compensable time. Defendants insist that Magistrate Judge Lehrburger erroneously conflated time paid with compensable time. D. Obj. at 18-19. To be sure, time paid does not always translate into compensable time. However, here, Plaintiffs' testimony, Defendants' own time records, and Defendants' documented practice of paying class members

for all clocked-in time at least gives rise to an inference that such time was compensable for the purposes of the FLSA and NYLL. See *Hart v. Rick's Cabaret Intern, Inc*., 60 F. Supp. 3d 447, 475 (S.D.N.Y. Nov. 14, 2014) ("[Class members] are entitled to be compensated for all hours worked between the time they logged in until the time they logged out."); *Scott v. City of New York*, 592 F. Supp. 2d 386, 408 (S.D.N.Y. Aug. 28, 2008) ("[L]ongstanding NYPD practice evinces an agreement to treat meal periods as working hours, *including payment for such hours*") (emphasis added).

Defendants, however, have offered next to no evidence in rebuttal and therefore have failed to discharge their burden. Defendants' evidence that employees took bona fide breaks is scant and speculative. Defendants cite only to (1) the restaurant's provision of a lunch meal for all employees; and (2) the fact that house employees clocked in with "ample time" to take a break prior to the restaurant's formal opening. D. Obj. at 19-20. This does not create a genuine dispute of material fact. Defendants must either "negative the reasonableness" of Plaintiffs' evidence or "come forward with evidence of the precise amount of work performed." *Anderson*, 328 U.S. 687-88. They have done neither. *See also Tambriz v. Taste and Sabor LLC*, 577 F. Supp. 3d 314, 325 (S.D.N.Y.2021) (finding that plaintiffs' workday time was compensable where plaintiffs asserted that they did not receive any meal breaks and the court "ha[d] no information before it to contradict their assertions.").

The authority cited by Defendants does not move the needle in their favor. 29 C.F.R. § 778.320 provides that "unless it appears from all the pertinent facts that the parties have treated [activities that would not be regarded as working time under the FLSA] as hours worked, payment for such time will be regarded as qualifying for exclusion from the regular rate." Here, the "pertinent facts" show that the parties in fact treated meal breaks as hours worked.

15

Defendants also cite to *Liu v. Matsuya Quality Japanese Inc.*, No. 16-cv-03624 (ERK) (VMS), 2018 WL 3213275, (E.D.N.Y. June 29, 2018).  In *Liu*, the court acknowledged that "just because an employer provides an employee with a paid lunch hour does not *necessarily* mean that hour is added to the employee's total weekly working hours for the purposes of FLSA's overtime requirements." *Id.* at *5 (emphasis in original).  But the court proceeded to state that the relevant inquiry is "whether or not it appears from all the pertinent facts that the parties have agreed to treat such time as hours worked." *Id.* (citation omitted).  Again, the totality of the evidence offered by Plaintiffs gives rise to a reasonable inference that the parties agreed to treat meal breaks as time worked.

### 3. There is No Genuine Factual Dispute as to Whether Defendants Had Actual or Constructive Knowledge of Employees' Time Worked

Defendants separately argue that the R&R's grant of summary judgment as to Plaintiffs' underpayment claims was erroneous because the R&R does not address whether Defendants had "actual or constructive" knowledge of employees' hours.

The Court agrees with Plaintiffs that Defendants' claim that they had no actual or constructive knowledge of employees' time worked is dubious.  Defendants were the custodians of class members' timesheets.  Those timesheets did not report meal breaks and are themselves sufficient to establish Defendants' actual and constructive knowledge of class members' hours. *See Rodriguez v. Avondale Care Group, LLC*, No. 16-cv-03084 (SN), 2018 WL 1582433, at *7 (S.D.N.Y. Mar. 27, 2018) ("[Defendant] has constructive knowledge that [Plaintiff] was unable to take her required breaks because she did not report that she took them."). *Gordon v. Kaleida Health*, 299 F.R.D. 380, 392 (W.D.N.Y. 2014), cited by Defendants, is inapposite. *Kaleida* involved an employer's knowledge of "unreported" and "uncompensated" time and is therefore readily distinguishable from the circumstances here, where employees reported their total hours

16

(inclusive of meal breaks) to Defendants and were compensated accordingly. *Cf. id.* at 392

("[S]ummary judgment is denied because reasonable minds could differ as to whether

[Defendant] had actual or constructive knowledge of *unreported, uncompensated time*.")

(emphasis added).

## II.   Plaintiffs' Objections to the R&R

Plaintiffs' sole exception to the R&R is directed to its analysis of standing for class

members' NYLL Section 195 claims.  Section 195(1) of the NYLL requires that employers

provide employees with notice at the time of hiring of "the rate or rates of pay, and basis thereof,

whether paid by the hour, shift, day, week, salary, piece, commission, or other; [and] allowances,

if any claimed as part of the minimum wage, including tip, meal, or lodging allowances."

N.Y.L.L. § 195(1)(a).  Section 195(3) provides that employers must give employees certain wage

statements "with every payment of wages."  *Id.* § 195(3).  While Magistrate Judge Lehrburger

determined that it was beyond dispute that Defendants violated NYLL Section 195, he concluded

that, "for the purposes of seeking damages, Plaintiffs have not produced evidence to show that

they suffered an injury."  R&R at 61.  Plaintiffs disagree.  The Court will again review this

objection *de novo*.

To establish Article III standing, a "plaintiff must show (i) that he suffered an injury in

fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused

by the defendant, and (iii) that the injury would likely be redressed by judicial relief."

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  "Every class member must have Article

III standing in order to *recover* individual damages," as "Article III does not give federal courts

the power to order relief to any uninjured plaintiff, class action or not."  *Id.* at 431 (emphasis

added) (citation and quotation marks omitted).  Moreover, plaintiffs "must demonstrate standing

for each claim that they press and for each form of relief that they seek." *Id.* "As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *Id.* at 430-31.

The Second Circuit recently opined on the issue of Article III standing for the purposes of NYLL Section 195 and 198 claims. *See, e.g.*, *Guthrie v. Rainbow Fencing Inc.*, No. 23-350, 2024 WL 3997427 (2d Cir. Aug. 30, 2024). Applying the Supreme Court's decision in *TransUnion*, the Second Circuit held that "a plaintiff cannot rely on technical violations of the Labor Law but must allege actual injuries suffered as a result of the alleged wage notice and wage statement violations." *Id.* at *305 (ellipses, quotation marks, and citations omitted). The court approved theories of "informational injury" based on the unlawful withholding of requested information but underscored that plaintiffs asserting "informational harm" need to show "some causal connection between the lack of accurate notices and [a] downstream harm." *Id.* at *308. Plaintiffs "cannot . . . rely on speculation and conjecture" to draw that causal connection. *Id.* at 309 (citation and quotation marks omitted). It is not sufficient, for example, for the plaintiff to "identif[y] potential harms that *could* result from an employer's failure to provide wage notices and wage statements." *Id.* at *310 (emphasis in original). Instead, the plaintiff must "show that he or she would have undertaken . . . advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided." *Id.* at *308-09. *Guthrie* clarifies and bolsters, but does not disturb, the R&R's standing analysis, which was premised on caselaw that is consistent with *Guthrie's* holding. *See, e.g.*, R&R at 61 (observing that "plaintiffs alleging violations of the wage notice and statement provisions of the NYLL must show more than technical violations of the law").

18

Plaintiffs proffer two independent theories of standing for Class Members' NYLL wage notice and wage statement claims: (1) the wage notice violations directly caused class members' monetary harm in the form of underpayment; and (2) deficient wage statements hindered class members' ability to identify Defendants' underpayment and therefore prevented them from taking remedial action in a timely fashion.  For the reasons set forth below, the Court agrees with Magistrate Judge Lehrburger that Plaintiffs, including unnamed class members, have not at this juncture sufficiently established standing for their NYLL Section 195 claims.

### 1.  Plaintiffs Have Not Shown Informational Injury

Plaintiffs argue that Defendants' NYLL Section 195 violations "hindered Class Members' ability to identify and remedy Defendants' wage and hour violations."  Pl. Obj. at 10. Magistrate Judge Lehrburger concluded that whether unnamed class members had suffered informational harm was "indeterminate" because absent class members have not yet submitted evidence of standing.  R&R at 69.  Moreover, Magistrate Judge Lehrburger found "competing evidence" as to whether Martinenko had suffered informational harm.  R&R at 68-69.  Finally, Judge Lehrburger determined that there was no record evidence that Opt-In Plaintiff Huk had incurred a concrete informational harm, and, finding no basis for a direct monetary harm either, recommended dismissing Huk's Section 195 claims for lack of standing.  R&R at 66-67.  The Court agrees with the R&R's findings, and therefore denies summary judgment against Martinenko and unnamed class members' Section 195 claims and dismisses Huk's Section 195 claims.

*Guthrie* supports this result.  *Guthrie* clarified that an informational harm can establish Article III standing for the purposes of a NYLL Section 195 claim so long as there are downstream consequences and plaintiffs "link the general harms an employee *might* experience

19

to any harms that [plaintiffs] *did*, in fact, experience." 2024 WL 3997427, at *7 (emphasis in original); *see also Kaur v. Natasha Accessories Ltd.*, No. 23-cv-06948 (JPO), 2024 WL 3429129, at *4 (S.D.N.Y. July 16, 2024) (finding that plaintiff "plausibly alleges" that "her wage statements showed fewer hours than what she actually worked, which prevented her from determining and seeking payment for the precise amount of her unpaid wages," thereby resulting in "tangible" financial harm) (quotation marks and brackets omitted). Plaintiffs have not established that class members "would have undertaken . . . advocacy" on their behalf or that they "plausibly would have avoided some harm or obtained some actual benefit if accurate notices had been provided." *Guthrie*, 2024 WL 3997427, at *5.

Turning first to Opt-in Plaintiff Huk — the Court agrees with the Magistrate Judge that Plaintiffs have not identified any record evidence of Huk incurring a concrete informational harm. In the absence of any such allegation, Huk does not have standing based on an informational harm. *See id.* at *7 ("Without plausible allegations that [plaintiff] suffered a concrete injury because of [defendant's] failure to provide the required notices and statements, Guthrie lacks standing to sue for that statutory violation.").

As for Named Plaintiff Martinenko, the Court agrees with the R&R's finding that, at this juncture, there are issues of fact as to whether Martinenko suffered informational harm. Martinenko has asserted that she never received a legally sufficient wage notice; that she never complained to anyone about her wages because she did not know that they were incorrect; and that if she had been informed that she was entitled to overtime pay, she would have escalated the issue to Defendants. R&R at 67-69. The parties offer competing evidence as to whether Martinenko in fact "would have undertaken such advocacy . . . if accurate notices had been provided." *Guthrie*, 2024 WL 3997427, at *5. In particular, the parties dispute the extent of

Martinenko's pre-existing knowledge as to Defendants' wage violations.  *See* R&R at 67-69.

Given the fact disputes, the Court agrees with the R&R that "[d]ismissal or summary judgment

against Martinenko based on standing . . . is not warranted."  R&R at 68.

The same conclusion necessarily follows for the unnamed class members, whom the

R&R rightfully observes have had "no opportunity to submit evidence that they have standing on

the [Section] 195 claims."  R&R at 69.  *Cf. Castillo v. Hollis Delicatessen Corp.*, No. 22-cv-

05476 (AMD) (PK), 2024 WL 4107258, at *1, n.1 (E.D.N.Y. Sept. 6, 2024) (plaintiff established

Article III standing where plaintiff specifically alleged that "defendants were able to hide their

violations of wage and hour laws and take advantage of Plaintiff's relative lack of sophistication

by failing to provide her with wage information") (quotation marks and citations omitted); *Rosas*

*v. M and M LA Solucion Flat Fixed Inc.*, No. 23-cv-01212 (DG)(MMH), 2024 WL 4131905, at

*12 (E.D.N.Y. Sept. 10, 2024) (plaintiffs sufficiently established Article III standing where they

"aver[ed] that Defendants' alleged failure to provide wage notices and statements caused [them]

to endure uncertainty regarding [their] wages and prevented [them] from taking action to correct

Defendants' wage and hour violations") (citation and quotation marks omitted)*; Reyes et al. v.*

*Crystal Window & Door Sys., Ltd.*, No. 23-cv-02578 (RPK) (JRC), 2024 WL 4028308, at *4

(E.D.N.Y. Sept. 3, 2024) (plaintiffs adequately pleaded concrete injuries where they "allege[d]

that defendant's failure to provide the notices resulted in Plaintiffs working for years without

knowledge of their correct pay frequency and overtime rate").

Plaintiffs' citation to this Court's prior decisions, including *Lipstein v. 20X Hospitality*

*LLC*, does not change the result.  *Lipstein* involved a different procedural posture — a motion to

dismiss — wherein the Court was obliged to draw all reasonable inferences in favor of the

plaintiff-employee.  *Lipstein v. 20X Hospitality LLC*, No. 22-cv-04812, 2023 WL 6124048, at

*9, 11 (S.D.N.Y. Sept. 19, 2023) (Rochon, J.).  Unlike at the motion to dismiss stage, where a

plaintiff need only "alleg[e] facts that affirmatively and plausibly suggest they have standing,"

*Metcalf v. TransPerfect Translations Int'l, Inc*., No. 19-cv-10104 (ER) (KHP), 2023 WL

2674743, at *4 (S.D.N.Y. Mar. 29, 2023) (citation and quotation marks omitted), Plaintiffs must

proffer "specific facts" in support of standing to prevail on their motion for summary judgment.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Indeed, this Court expressly

acknowledged in *Lipstein* that its standing analysis might change with the benefit of additional

discovery and fact-finding: "Discovery may ultimately bear out that the allegedly insufficient

wage statements and notices did not actually hinder Plaintiff and others from raising issues

regarding underpayment."  *Lipstein*, 2023 WL 6124048, at 11; *see also Lubinski v. Johnson

Controls, Inc.*, 2024 U.S. Dist. LEXIS 119705, at *3-4 (S.D.N.Y. July 9, 2024) (Rochon, J.)

(plaintiffs sufficiently pleaded an injury-in-fact where, at the motion to dismiss stage, they

alleged that defendant's failure to provide required wage statements and notices harmed them by

denying them information necessary to determine whether they were being paid lawful wages).

### 2.  Plaintiffs Have Not Shown Monetary Harm

Presumably recognizing the difficulties of establishing informational injury on behalf of

unnamed class members at this juncture, Plaintiffs separately endeavor to articulate a direct

monetary harm.  According to Plaintiffs, Defendants' failure to provide legally sufficient wage

notices and wage statements "directly caused" class members to be underpaid.  Pl. Obj. at 6.

With respect to the NYLL Section 195(1) violations, Plaintiffs contend that "[d]efendants'

failure to provide wage notices plainly caused all Class Members to be underpaid because it was

this lack of notice that made Defendants' use of the tip credit an unlawful underpayment."  *Id.*

But for Defendants' deficient wage notices, Plaintiffs argue, Defendants' payment of the tip

credit minimum wage would not have been unlawful and class members therefore would not have been paid less than their due. *Id.* As for the NYLL Section 198 violations, Plaintiffs argue that Defendants' deficient wage statements "resulted in the actual underpayment of overtime to Class Members" because employees' checks were issued based on those wage statements. *Id.*

Magistrate Judge Lehrburger properly concluded that Plaintiffs' theory of monetary harm fails not for a lack of concrete injury, but because Plaintiffs cannot directly trace Class Members' underpayment to Defendants' deficient wage notices and wage statements. R&R at 64. That is, Plaintiffs cannot show that they or other class members were underpaid *because* Defendants issued deficient documentation. The underpayment of employees' wages is more appropriately attributed to Defendants' illegal pay practices, including Defendants' failure to pay overtime and Defendants' failure to notify employees of the tip credit. *See, e.g.*, *Freeland v. Findlay's Tall Timbers Distrib. Center, LLC*, No. 22-cv-6415 (FPG), 2024 WL 2702201, at *4 (W.D.N.Y. May 24, 2024), *abrogated on other grounds by Guthrie*, 113 F.4th 300 ("Although the allegedly inaccurate wage statements may have made it more difficult for plaintiff to calculate his proper overtime rate, it is not apparent — short of legal action — how an accurate statement would have dissuaded Defendant from underpaying Plaintiff and thus prevented his monetary harm.") (quotation marks, citation, and parentheticals omitted); *Quieju v. La Jugueria Inc.*, 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023) ("The injury that plaintiff suffered (*i.e.*, defendants' failure to pay him) is not an injury he sustained because of a lack of the required documents; it is an injury he sustained because his employer violated its obligation to pay the minimum wage, overtime, and spread-of-hours pay under other, express requirements of federal and state law.").

Plaintiffs are also wrong to assert that "if Defendants provided Plaintiffs and the Class Members with NYLL [Section] 195(1)-compliant wage notices, their use of the tip credit would

have been lawful." Pl. Obj. at 9. NYLL imposes stringent requirements for the tip credit, including that employers obtain employees' signed acknowledgment of the tip credit, 12 N.Y.C.R.R. § 146-2.2(a), and explain that tips are being credited against their minimum wages. *See, e.g.*, *Gamero*, 272 F. Supp. 3d at 501; *Galvez* 2022 WL 748286, at *10 ("Employers must state the intent to take a tip credit *specifically*, and not just, for example, inform employees that they will receive wages augmented by tips.") (emphasis added); *Hristova v. 3321 Astoria Inc.*, No. 17-cv-01633 (RER), 2018 WL 4006880, at *4 (E.D.N.Y. June 27, 2018) ("Defendants have not produced evidence to support their claim that the tip-credit notice was proper" where manager "testified that he had [plaintiff] sign the WTPA wage notice, but there is no evidence that he ever explained the tip credit statute to the [p]laintiff."). Therefore, even if Defendants had issued legally sufficient wage notices, that would not have been sufficient to satisfy their obligation to inform employees of the tip credit or to pay wages based on the tip credit.

*Guthrie* in no way abrogates the traceability requirement for Article III standing. To the extent *Guthrie* distinguishes cases cited in the R&R, including *Freeland v. Findlay's Tall Timbers Dist. Center*, 2024 WL 2702201 (W.D.N.Y.), and *Jackson v. ProAmpac LLC*, 694 F. Supp. 3d 352, 363 (S.D.N.Y. 2023*), abrogated on other grounds by Guthrie*, 113 F.4th 300, it does so out of a concern that those cases misapply Second Circuit precedent to foreclose standing based on theories of *informational* harm. Specifically, the Second Circuit determined that *Freeland* and *Jackson* have misapplied its holding in *Harty*, a case involving a plaintiff-tester who failed to receive statutorily required disclosures. *Guthrie*, 113 F.4th at 309-10 (citing *Harty v. West Point Realty, Inc.*, 28 F.4th 435 (2d Cir. 2022)). *Guthrie* observes that these and other courts have subverted *Harty*'s reasoning to require plaintiffs asserting NYLL Section 195 violations to "show an interest in using the [withheld] information *beyond bringing [their]*

*lawsuit*." *Id.* (emphasis added).  *Guthrie* emphasizes that "an employee who has actually lost wages is not analogous to a plaintiff-tester" who "seeks to promote compliance with statutory disclosure requirements through lawsuits" and who therefore "must show some concrete interest in each lawsuit to have standing." *Id.*

    *Guthrie* does not disturb, however, the well-established principle that, where a plaintiff alleges *monetary* harm, that harm must still be "fairly traceable to Defendant's alleged violation of the NYLL wage statement requirement." *Freeland*, 2024 WL 2702201, at *4.  The traceability requirement for Article III standing is separate and distinct from the concreteness requirement that *Guthrie* analyzes.  Here, as in *Jackson* and *Freeland*, Plaintiffs' "monetary harm is . . . better traced as injury flowing from Defendant's alleged violations of state and federal overtime requirements, not Defendant's inaccurate wage statements." *Id*. at 4 (citation and quotation marks omitted); *see also Jackson*, 694 F. Supp. 3d at 363 ("Plaintiff's monetary harm is better traced as an injury flowing from [defendant-employer's] rounding policy, not [defendant-employer's] inaccurate wage notices.").

    The Court is unpersuaded by the cases cited by Plaintiffs, which are once more in different procedural postures.  *See, e.g.*, *Isayeva v. Diamond Braces*, No. 22-cv-04575 (KPF), 2024 WL 1053349, at *17 (S.D.N.Y. Mar. 11, 2024) (at motion to dismiss stage, plaintiff-employees "plausibly establish[ed]" that defendants' deficient wage statements "not only hindered Plaintiffs from realizing their rights at the time of payment, but also injured Plaintiffs by enabling the actual underpayment of their wages"); *Mateer v. Peloton Interactive, Inc*., No. 22-cv-00740 (LGS), 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022) (at motion to dismiss stage, construing "all reasonable inferences in [plaintiff's] favor" to find Article III standing).  In response to a summary judgment motion, however, the plaintiff "can no longer rest on . . .

allegations," but "must set forth by affidavit or other evidence specific facts" in support of
standing. *Lujan*, 504 U.S. at 561 (citations and quotation marks omitted). Plaintiffs have not
met this burden.

## III. Uncontested R&R Findings

The parties do not contest the R&R's recommendations with respect to the calculation of
damages for Plaintiffs' unpaid wages, Defendant Volper's individual liability, or Plaintiffs'
entitlement to pre-judgment interest. The Court has reviewed those portions of the R&R for
clear error and finds that they are comprehensive and well-reasoned, and therefore adopts them
in their entirety. *See, e.g.*, *Gomez v. Brown*, 655 F. Supp. 2d 332, 341 (S.D.N.Y. 2009) ("[W]ith
respect to the uncontested portions of a report and recommendation, a district court need only
satisfy itself that there is no clear error on the face of the record.") (citations and quotation marks
omitted).

## CONCLUSION

For the foregoing reasons, the Court adopts the R&R in its entirety. Defendants' motion
to decertify the Rule 23 class is DENIED. Plaintiffs' motion for summary judgment is
GRANTED in part and DENIED in part. Defendants' cross-motion for summary judgment is
GRANTED in part and DENIED in part. Specifically, the Court orders that:

1. The class be awarded unpaid minimum wages under the NYLL without a tip
   credit allowance in the total amount of $96,608.35;

2. The class be awarded unpaid overtime wages under the NYLL without a tip credit
   allowance in the total amount of $2,530.75;

3. The class be awarded unpaid spread-of-hours premiums under the NYLL where
   applicable in the total amount of $2,388;

4.  The class be awarded liquidated damages under the NYLL in the total amount of $101,527.10;

5.  Defendant Volper be held individually liable for damages under the FLSA and NYLL;

6.  Plaintiff Huk's NYLL Section 195 wage notice and statement claims be dismissed for lack of standing;

7.  Summary judgment be denied on the rest of the class members' NYLL Section 195 wage notice and wage statement claims;

8.  The parties be ordered to meet and confer regarding next steps for addressing individualized injury with respect to the unnamed class member Section 195 claims; and

9.  Prejudgment interest be awarded from June 18, 2019, at a rate of 9% on the total unpaid wages of $101,527.10.

Dated:  September 24, 2024
        New York, New York

SO ORDERED.

_Jennifer Rochon_
JENNIFER L. ROCHON
United States District Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
NINO MARTINENKO, on behalf of herself
and others similarly situated,

                          Plaintiffs,                    22 **CIVIL** 0518 (JLR)

              -against-                                  **JUDGMENT**

212 STEAKHOUSE, INC., and NIKOLAY
VOLPER,

                          Defendants.
------------------------------------------------------------------------X

    It is hereby **ORDERED, ADJUDGED AND DECREED:**  That for the reasons stated in the Court's Opinion and Order dated September 24, 2024, the Court adopts the R&R in its entirety. Defendants' motion to decertify the Rule 23 class is DENIED. Plaintiffs' motion for summary judgment is GRANTED in part and DENIED in part. Defendants cross-motion for summary judgment is GRANTED in part and DENIED in part. Specifically, the Court orders that: 1. The class is awarded unpaid minimum wages under the NYLL without a tip credit allowance in the total amount of $96,608.35; 2. The class is awarded unpaid overtime wages under the NYLL without a tip credit allowance in the total amount of $2,530.75; 3. The class is awarded unpaid spread-of-hours premiums under the NYLL where applicable in the total amount of $2,388; 4. The class is awarded liquidated damages under the NYLL in the total amount of $101,527.10; 5. Defendant Volper is held individually liable for damages under the FLSA and NYLL; 6. Plaintiff Huk's NYLL Section 195 wage notice and statement claims be dismissed for lack of standing; 7. Summary judgment is denied on the rest of the class members' NYLL Section 195 wage notice and wage statement claims; 8. The parties is ordered to meet and confer

regarding next steps for addressing individualized injury with respect to the unnamed class

member Section 195 claims; and 9. Prejudgment interest awarded from June 18, 2019, at a rate

of 9% on the total unpaid wages of $101,527.10 to the entry of the judgment in the amount of

$48,215.64.

**Dated:**  New York, New York
             September 25, 2024


                                         **DANIEL ORTIZ**
                                 _____
                                     **Acting Clerk of Court**


             **BY:**      _____
                              **Deputy Clerk**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NINO MARTINENKO, on behalf of herself
and others similarly situated, and DAGMARA
MAJA HUK,

                              Plaintiffs,

              -against-

212 STEAKHOUSE, INC., and NIKOLAY
VOLPER,

                              Defendants.

Case No. 1:22-cv-00518 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

Named Plaintiff Nino Martinenko, individually and on behalf of others similarly situated,

brings this wage-and-hour action against 212 Steakhouse, Inc., and Nikolay Volper (together,

"Defendants").  Dkt. 1.  Plaintiff Dagmara Maja Huk ("Opt-in Plaintiff Huk" and, together with

Named Plaintiff Martinenko, "Plaintiffs") opted in to the suit on May 16, 2022.  Dkt. 32.  On

August 13, 2024, Magistrate Judge Robert W. Lehrburger issued a Report and Recommendation

on Defendants' motion to decertify, and on Plaintiffs' and Defendants' cross-motions for

summary judgment.  Dkt. 132.  On September 24, 2024, this Court adopted Magistrate Judge

Lehrburger's Report and Recommendation in its entirety.  Dkt. 141 ("Order").  As a result, the

Court denied Defendants' motion to decertify and granted summary judgment in Plaintiffs' favor

on Named Plaintiff Martinenko's and Opt-in Plaintiff Huk's Fair Labor Standards Act ("FLSA")

overtime claims, and on all Class Members' NYLL minimum-wage, overtime, and spread-of-

hours claims.  *Id.* at 2.  However, the Court dismissed Opt-in Plaintiff Huk's New York Labor

Law ("NYLL") Section 195 claims for lack of standing.  *Id.*  The only remaining claims are

therefore Named Plaintiff Martinenko's and the unnamed Class Members' NYLL Section 195

wage-notice and wage-statement claims, which the Court allowed to proceed for further fact finding on standing. *Id.*

Plaintiffs now move to voluntarily dismiss the remaining NYLL Section 195 claims without prejudice. Dkt. 145 ("Mot."); Dkt. 149 ("Reply"). Defendants in turn seek to have the NYLL Section 195 claims dismissed with prejudice and move once more to decertify the Class. Dkt. 147 ("Opp."). For the reasons set forth below, Plaintiffs' motion to dismiss the NYLL Section 195 claims without prejudice is GRANTED, and Defendants' motion to decertify the class is DENIED.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 41(a) provides that "the plaintiff may dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A). "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." *Seidman v. Chobani, LLC*, No. 14-cv-04050 (PGG), 2016 WL 1271066, at *1 (S.D.N.Y. Mar. 29, 2016) (quoting Fed. R. Civ. P. 41(a)(2)). Moreover, under Rule 23(e), the claims of a certified class may be voluntarily dismissed "only with the court's approval." Fed. R. Civ. P. 23(e).

"'The Second Circuit has not resolved the issue of whether the proper vehicle' for a plaintiff's voluntary dismissal of *some* claims, instead of the entire action, 'is Rule 15 or Rule 41(a).'" *Thorpe v. City of New York*, No. 19-cv-05995 (CM) (RWL), 2022 WL 3112125, at *1 (S.D.N.Y. Aug. 4, 2022) (quoting *Seidman*, 2016 WL 1271066, at *2). However, the Second Circuit has stated that the "district court may permit withdrawal of a claim under Rule

15 . . . subject to the same standard of review as a withdrawal under Rule 41(a)." *Id.* (quoting *Wakefield v. N. Telecom, Inc.*, 769 F.2d 109, 114 n.4 (2d Cir. 1985)); *see also* G-I Holdings, Inc. *v. Baron & Budd*, No. 01-cv-00216 (RWS), 2004 WL 374453, at *1 (S.D.N.Y. Feb. 27, 2004) ("The same considerations are relevant to dropping a claim regardless of which rule [41(a) or 15(a)] is invoked." (alterations omitted)). "Accordingly, 'although a motion to eliminate only certain claims may actually be a motion to amend the complaint (under Rule 15) rather than one for dismissal, there is no substantive difference between the two.'" *Seidman*, 2016 WL 1271066, at *2 (alterations omitted) (quoting *Machne Menachem, Inc. v. Hershkop*, No. 97-cv-02550 (ILG), 2003 WL 1193528, at *2 (E.D.N.Y. Jan. 31, 2003).

Whether the motion to withdraw a claim is fashioned as a motion to amend under Rule 15 or a voluntary dismissal under Rule 41, the Court has "considerable discretion in deciding whether to allow withdrawal of a claim without prejudice." *Wakefield*, 762 F.2d at 114. "In general, the court may allow such a dismissal if the defendant will not be prejudiced thereby," *id.*, and "there is a general presumption that motions to dismiss claims without prejudice should be granted," *Benitez v. Hitachi Metals Am., Ltd.*, No. 11-cv-06816 (NRB), 2012 WL 3249417, at *1 (S.D.N.Y. Aug. 6, 2012).

"The Second Circuit has identified 'two lines of authority' to guide district courts" when considering contested motions to withdraw a claim without prejudice. *SEC. v. Compania Internacional Financiera S.A.*, No. 11-cv-04904 (JPO), 2012 WL 1856491, at *2 (S.D.N.Y. May 22, 2012) (quoting *Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006)); *accord Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*, No. 16-cv-05393 (KMW), 2018 WL 1115517, at *2 (S.D.N.Y. Feb. 26, 2018). Under one test, courts weigh five factors, which the Court will refer to as the *Zagano* factors: (1) "the plaintiff's diligence in bringing the motion";

(2) "any 'undue vexatiousness' on plaintiff's part"; (3) the stage of the litigation, including

whether defendant has expended effort and expense to prepare for trial; (4) "the duplicative

expense of relitigation"; and (5) "the adequacy of plaintiff's explanation for the need to dismiss."

*Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990).  Other courts permit withdrawal of

claims without prejudice unless "the defendant would suffer some plain legal prejudice other

than the mere prospect of a second lawsuit."  *Compania Internacional*, 2012 WL 1856491, at *2

(quoting *Camilli*, 436 F.3d at 123).

### DISCUSSION

### I.    Dismissal of the Remaining NYLL Section 195 Claims

Plaintiffs move to dismiss the remaining NYLL Section 195 claims without prejudice,

pursuant to Rule 41(a)(2) and Rule 23(e).  The Court finds that under either the *Zagano* factors

or the legal-prejudice test, dismissal of Plaintiffs' NYLL Section 195 claims without prejudice is

warranted.

First, Plaintiffs were not dilatory in bringing their motion, instead moving promptly after

the Court's entry of its summary judgment Order.  The Court's Order made clear that, post-

*Guthrie*, the NYLL Section 195 claims would require individualized evidence of standing.

Order at 18; *see, e.g.*, *Guthrie v. Rainbow Fencing, Inc*., 113 F.4th 300, 309 (2d Cir. 2024)

(addressing standing for NYLL Section 195 claims and holding that plaintiff-employee cannot

"assume" harm "without analysis" or "rely on 'speculation and conjecture'" (quoting *Quieju v.

La Jugueria Inc.*, No. 23-cv-00264 (BMC), 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25,

2023))).  The *Guthrie* decision – which was the first time that the Second Circuit squarely

addressed the informational harm necessary to establish standing for a NYLL Section 195 claim,

113 F.4th at 305 – was rendered only after Magistrate Judge Lehrburger's Report and

Recommendation.  Plaintiffs therefore moved for dismissal shortly after this Court's Order was

issued discussing *Guthrie*.  *C.f., e.g.*, *Kwan v. Schlein*, 634 F.3d 224, 231-32 (2d Cir. 2011)

(granting voluntary dismissal of counterclaims without prejudice even though defendants moved

for dismissal after the completion of discovery and the denial of their motions for summary

judgment).[1]

      Second, there is no evidence of undue vexatiousness on Plaintiffs' behalf in bringing their

motion to voluntarily dismiss the NYLL claims.  "Courts define 'undue vexatiousness' to mean

'that the plaintiff acted with "ill motive" in bringing or maintaining its claims.'"  *Compania*

*Internacional*, 2012 WL 1856491, at *5 (quoting *SEC v. Chakrapani*, Nos. 09-cv-00325 (RJS)

and 09-cv-1043 (RJS), 2010 WL 2605819, at *3 (S.D.N.Y. June 29, 2010)).  There is no

suggestion in the record that Plaintiffs either have brought, or are moving to, dismiss the

outstanding NYLL Section 195 claims for any improper purpose.  Rather, Plaintiffs appear to be

acting out of the best interests of the Class following the Court's Order, which relied upon the

Second Circuit's recent decision in *Guthrie*.  Realizing that trial on the NYLL Section 195

claims may be "extremely time consuming," Mot. at 1, Plaintiffs seek "the most efficient path to

adjudication of these claims on the merits"  that is, through litigation in state court, *id.* at 2.

      With respect to the procedural posture of the case, the parties have moved past discovery

and summary judgment, which would ordinarily weigh against granting dismissal without

---

[1] Without reaching the issue of whether Rule 15 or Rule 41 is the appropriate procedural vehicle
for voluntarily dismissing Plaintiffs' NYLL claims, the Court finds that, for the same reasons,
there is "good cause" under Rule 16(b) to allow amendment of the Complaint after the pleading
deadline.  Plaintiffs moved diligently after the Court's summary judgment Order holding that
Class Members would need to submit individualized proof of standing.  *See Kassner v. 2nd*
*Avenue Delicatessen, Inc*., 496 F.3d 229, 243 (2d Cir. 2007) ("[W]ith respect to the Rule 16(b)
standard, '"good cause" depends on the diligence of the moving party.'" (quoting *Parker v.*
*Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000))).

prejudice. *See Am. Fed'n of State, Cty. & Mun. Emps. Dist. Council 37 Health & Sec. Plan v. Pfizer, Inc.*, No. 12-cv-02237 (JPO), 2013 WL 2391713, at *4 (S.D.N.Y. June 3, 2013) ("The standard for concluding that a suit has progressed far enough to weigh against dismissal . . . is usually satisfied only where substantial discovery, summary judgment motion practice, or trial preparation has occurred."). However, as Plaintiffs note, Defendants only objected to standing for the NYLL claims after class-wide discovery and class certification motion practice were complete. *See* Dkt. 97 (August 2023 letter raising standing issue for the first time). It would make little sense for this Court to require dismissal with prejudice when, if the NYLL claims were to proceed to trial and *then* be dismissed for a lack of Article III standing, the Court would necessarily dismiss them without prejudice. *See Katz v. Donna Karan Co.*, 872 F.3d 114, 121 (2d Cir. 2017) ("[W]here a case is dismissed for lack of Article III standing . . . that disposition cannot be entered with prejudice, and instead must be dismissed *without prejudice*.").

For the same reason, the fourth factor – the potential for the duplicative expense of relitigating – likewise weighs in favor of granting Plaintiffs' motion. As noted above, if these claims were to proceed to trial and thereafter be dismissed without prejudice for a lack of standing, the Class Members would be entitled to reassert those claims in state court, *after* the parties had already incurred the time and expense of trial preparation and trial. Plaintiffs' motion therefore lessens the prospect of duplicative expenses and efforts by both parties.

Finally, the Court credits Plaintiffs' explanation for moving to voluntarily dismiss their NYLL Section 195 claims. Plaintiffs assert that they seek to withdraw these claims in the interest of expediency and to allow the Class Members to proceed in state court where Article III standing will not pose a barrier to recovery. Plaintiffs argue that this will in turn allow immediate entry of an enforceable judgment in this matter, which is important given that there

are various state court actions pending against Defendants, and therefore "any delay in entry of judgment creates serious risks to the Class's ability to enforce their judgment." Reply at 3. The Court deems these sufficient justifications for granting dismissal without prejudice.

Given the balance of the *Zagano* factors, Defendants have not demonstrated legal prejudice sufficient to bar Plaintiff's motion for a voluntary dismissal of the Section 195 claims. Defendants' only theory of prejudice is that they have already "expended significant resources defending the claims, including the class assertions." Opp. at 2. That does not translate to sufficient legal prejudice. *See, e.g., Pelaez*, 2018 WL 1115517, at *3 ("[T]he prospect of starting an entirely new litigation, along with the attendant additional expense, does not translate to legal prejudice sufficient to deny a motion to voluntarily withdraw." (quoting *Brown v. Nat'l R.R. Passenger Corp.*, 293 F.R.D. 128 (E.D.N.Y. 2013))); S*tinson v. City Univ. of N.Y.*, No. 18-cv-05963 (RA), 2020 WL 2133368, at *2 (S.D.N.Y. May 4, 2020) ("The mere prospect of a second lawsuit or some tactical disadvantage is not sufficient legal prejudice to prevent a Rule 41(a)(2) dismissal." (quoting *Jaskot v. Brown*, 167 F.R.D. 372, 373 (S.D.N.Y. 1996))).

The Court therefore finds that the *Zagano* factors and the legal-prejudice test both favor dismissal without prejudice of Plaintiffs' NYLL Section 195 claims.

## II.  Decertification of the Class

Separately, Defendants seek to construe Plaintiffs' voluntary dismissal of their NYLL Section 195 claims as an intervening event warranting decertification of the Class. Opp. at 2. The court disagrees.

As noted in the Court's summary judgment Order, a "defendant seeking to decertify a class bears a heavy burden to prove the necessity of the drastic step of decertification." Order at 4 (quoting *Zimmerman v. Portfolio Recovery Assocs., LLC*, No. 09-cv-04602 (PGG), 2013 WL

1245552, at *2 (S.D.N.Y. Mar. 27, 2013)). "[T]he Court may not disturb its prior [certification] findings absent 'some significant intervening event,' or 'a showing of compelling reasons to reexamine the question.'" *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 169 (S.D.N.Y. 2011) (second alteration in original) (quoting *Doe v. Karadzic*, 192 F.R.D. 133, 136-37 (S.D.N.Y. 2000)).

The Court declines to revisit its decision on Defendants' decertification motion and finds that nothing about Plaintiffs' request for a dismissal of the NYLL Section 195 claims alters the Court's determination as to the propriety of the Class. Defendants argue that a class action is no longer the appropriate vehicle for bringing this case because that there is a "conflict between the class representative and the absent class members" and a question as to "whether the representative party is fairly and adequately representing the class." Opp. at 2. The Court disagrees, and finds, for the reasons noted above, that the class representative and class counsel are seeking a resolution that would allow efficient resolution of the Class Members' NYLL claims on the merits. Moreover, for the reasons set forth in its summary judgment Order, the Court finds that the Class still satisfies the numerosity, commonality, predominance, and superiority requirements for its minimum-wage, overtime, and spread-of-hours claims. Fed. R. Civ. P. 23(a)(2); *see* Order at 4-13. Any individualized-damages issues as to those claims are readily resolved through straightforward and mechanical calculations and therefore do not predominate over the Class's commonalities. *Compare Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 126 (S.D.N.Y. 2014) (finding predominance requirement satisfied where individualized-damages issues involved "straightforward, mechanical" calculations), *with* Dkt. 145 at 2 (proposing proportional allocation of damages among class members). Allowing Class Members to bring their NYLL Section 195 claims in state court does not in any way disturb the

Court's prior holding on class certification, which did not depend on the NYLL claims to find that common issues predominated across the Class.  Therefore, having already entered judgment in favor of Plaintiffs and Class Members on their underpayment claims, the Court declines to disturb its previous Order by now decertifying the Class.

The Court therefore DENIES Defendants' motion for decertification and enters final judgment in favor of Plaintiffs on the minimum-wage, overtime, and spread-of-hours claims, consistent with the Court's summary judgment Order and Plaintiffs' proposed per–Class Member breakdown.  Dkt. 145-2.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to voluntarily dismiss the remaining NYLL Section 195 claims without prejudice is GRANTED, and Defendants' motion to decertify the class is DENIED.  The Court will enter the proposed judgment at Dkt. 145-2 that includes the allocation among Class Members, and Plaintiffs are ordered to issue the notice to Class Members set forth at Dkt. 145-1.

Dated:  November 13, 2024
        New York, New York

SO ORDERED.

_Jennifer Rochon_
JENNIFER L. ROCHON
United States District Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x

**NINO MARTINENKO, on behalf of**          **CASE NO. 22 CV 518 (JLR)**
**herself and others similarly situated,**

       **Plaintiff,**

    v.

**212 STEAKHOUSE, INC., and**
**NIKOLAY VOLPER,**

       **Defendants.**
-------------------------------------------------------x

## [proposed] JUDGMENT

It is hereby **ORDERED, ADJUDGED, AND DECREED**, that the Clerk of Court shall enter judgment as follows:

1.     Pursuant to the Court's Opinion and Order dated September 24, 2024, judgment shall be entered against Defendants 212 Steakhouse, Inc. and Nikolay Volper, jointly and severally, and in favor of the class in the total amount of $251,269.84 as follows: i. The class is awarded unpaid minimum wages under the NYLL without a tip credit allowance in the total amount of $96,608.35; ii. The class is awarded unpaid overtime wages under the NYLL without a tip credit allowance in the total amount of $2,530.75; iii. The class is awarded unpaid spread-of-hours premiums under the NYLL where applicable in the total amount of $2,388; iv. The class is awarded liquidated damages under the NYLL in the total amount of $101,527.10; v. Prejudgment interest is awarded from June 18, 2019 to September 25, 2024, at a rate of 9% on the total unpaid wages of $101,527.10 in the amount of $48,215.64. The judgment of $251,269.84 shall be allocated among the Class Members as set forth in Exhibit A to this Judgment.

2.     If the judgment is not entirely paid within 90 days of judgment, or 90 days after the expiration of time to appeal and no appeal is then pending, whichever is later, the total amount of

1

judgment shall automatically increase by 15 percent. The Court also awards post-judgment interest pursuant to 28 U.S.C. § 1961.

3.    For the reasons stated in the Court's Opinion and Order dated September 24, 2024, Plaintiff Huk's NYLL Section 195 wage notice and statement claims are dismissed without prejudice for lack of standing.

4.    The Court grants Plaintiffs' request to dismiss Plaintiff Martinenko's and all remaining class members' NYLL Section 195 wage notice and statement claims without prejudice. The Clerk of Court is respectfully requested to close the case.

Dated: November 14, 2024
    New York, New York

By: _Jennifer Rochon_
    Hon. Jennifer L. Rochon, U.S.D.J.

## Judgement Allocation Among Class Members

| Class Member | Share of Judgment |
|---|---|
| Angel Hernandez | $13,941.55 |
| Benny Torres | $150.87 |
| Charles Gabriel | $3,214.97 |
| Cora Bethea | $4,989.41 |
| Dagmara Huk | $20,651.32 |
| Damian Zabrodin | $3,396.33 |
| Danny Biriandeau | $4,613.97 |
| Gisely Rosa | $536.31 |
| Haley Melendez | $1,321.35 |
| Hector Conoz | $7,987.01 |
| Iroel Vazquez | $1,343.39 |
| Jake Willis | $2,515.20 |
| Jamie Tovar | $10,448.24 |
| Jose Garcia | $64.59 |
| Jose Pena | $528.98 |
| Juan Aguilar | $11,342.60 |
| Juan Deluna | $3,731.74 |
| Kelsey Foley | $6,081.58 |
| Keya Rocaverte | $608.35 |
| Lytchez Lazarov | $28,566.20 |
| Mark Smith | $10,509.59 |
| Michelle Marquez | $456.73 |
| Miguel Torress | $7,489.40 |
| Nino Martinenko | $54,149.63 |
| Noel Lora | $19,862.55 |
| Radzivon Babaniyazav | $8,126.97 |
| Raul Romero | $3,827.93 |
| Shonda Williams | $220.03 |
| Stefana Marzano | $4,327.97 |
| Tela Wittig | $3,344.59 |
| Tristian Collazzo | $9,935.74 |
| Vivian Peng | $2,984.75 |
| **Total:** | **$251,269.84** |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
In re:                          :
                                          Docket #22cv518
MARTINENKO, et al.,             :

                Plaintiffs,     :

  - against -                   :

212 STEAKHOUSE, INC., et al.    :  New York, New York
                                   April 4, 2023
                Defendants.      :

------------------------------------ :
```

PROCEEDINGS BEFORE
THE HONORABLE ROBERT W. LEHRBURGER,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          JOSEPH & KIRSCHENBAUM LLP
                        BY:  MICHAEL DIGIULIO, ESQ.
                             DENISE SCHULMAN, ESQ.
                        32 Broadway, Suite 601
                        New York, New York 10004

For Defendants:         LAW OFFICE OF MITCHELL S. SEGAL P.C.
                        BY:  MITCHELL SEGAL, ESQ.
                        1129 Northern Boulevard, Suite 404
                        Manhasset, New York 11030

Transcription Service:  Carole Ludwig, *Transcription Services*
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

2

## INDEX

## E X A M I N A T I O N S

| Witness | Direct | Cross |
|---------|--------|-------|
| Nikolay Volper | 16 (by the Court) | 23 (by Schulman_ |

## E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None | | | | |

```
 1                         PROCEEDINGS                      3

 2            THE COURT:  So apologies, folks, we are here

 3   for Martinenko v. 212 Steakhouse and Nikolay Volper,

 4   22cv518.  Again, apologies for the prior proceeding

 5   running long and thank you for being flexible in terms

 6   of pushing this time back.

 7            So we are here because really for the motion

 8   for sanctions which certainly is something that deserves

 9   a hearing and an opportunity to appear and say

10   something, and I actually have a few questions.  And

11   then I also have the correspondence about the

12   allegations made by the defense that the plaintiffs have

13   improperly contacted the potential members of the

14   collective.

15            I want to start there, but why don't you put in

16   your appearances first please.

17            MR. DIGIULIO:  Good afternoon, Your Honor,

18   Michael Digiulio for the plaintiff.

19            MS. DENISE SCHULMAN:  Deni Schulman for the

20   plaintiff.

21            MR. MITCHELL SEGAL:  Good afternoon, Your

22   Honor, Mitchell Segal for the defendants.

23            THE COURT:  All right, good afternoon.  So, Mr.

24   Segal, when I got your, you know, these allegations, I

25   read them, I looked at the texts, and I immediate
```

1                          PROCEEDINGS                    4

2   thought was, well, this is just sending the notice

3   that's authorized by the collective order just as the

4   plaintiffs have pointed out.  Am I missing something?

5            MR. SEGAL:  Well, yes, Your Honor, in my

6   opinion.  So the order did authorize a text message of

7   the notice.  However, the preface of that text message

8   with the quotes of employees' attorney I think skews the

9   notice and gives more credence to the fact that was not

10  in the notice.  It provides an intimation that there are

11  more than, you know, more narrative than what the notice

12  was required to have and what the Court ordered.  So

13  that is employees' attorneys, it leaves an inference

14  that it's for all employees and you need to join this

15  action because we represent everybody, and that was not

16  allowed or ordered pursuant to the notice, the court-

17  ordered notice.

18            Additionally, I have a problem with, you know,

19  the phone call to Dag Maja Huk, the second plaintiff,

20  and that came out during her deposition, and that was

21  not authorized by the notice.  In fact, I think that

22  occurred prior to the notice being sent out.  And I

23  probably should've called the Court at that point in

24  time during the deposition to get some more leeway and

25  some more questions.  Their counsel stymied that, and I

2  left it alone at that point.  But I think that's also a

3  violation of the rules, and that's the second plaintiff

4  that came into the action.

5         THE COURT:  Yeah, okay.  Plaintiff want to

6  respond?  Ms. Schulman.

7         MS. SCHULMAN:  Yes.  So Judge Liman granted our

8  motion for, our 216(b) motion including notice by text

9  message.  Our motion included a proposed text message

10 notice.  He did not make any alterations to that.  He

11 only altered the mailing notice.  So the proposed text

12 message notice was exactly what you have before you now,

13 and it had a link to the full notice because, of course,

14 you can't possibly put a multipage notice into a text

15 message.

16        As for the opt-in plaintiff, Dag Maja Huk, I

17 never called her.  She said she was contacted by

18 plaintiff's counsel which she was because we sent the

19 court-authorized notice.

20        THE COURT:  And I just want to make sure I

21 understand something.  Are you saying that the actual

22 text of the text, apart from the link to the notice, was

23 that language that was approved by Judge Liman?

24        MS. SCHULMAN:  This is our proposed text notice

25 in our motion.

```
 1                       PROCEEDINGS                    6

 2            THE COURT:  All right, well, that doesn't that

 3    take care of it, Mr. Segal?

 4            MR. SEGAL:  I don't believe that I ever saw

 5    that text message notice.  I'd have to review that.  I

 6    don't believe employees' attorneys was approved by the

 7    Court.

 8            THE COURT:  Did you submit it with your request

 9    --

10            MS. SCHULMAN:  Yes, it's on the docket.

11            THE COURT:  Yeah.  And Judge Liman didn't, he

12    did make changes to the attachment but he didn't make

13    changes to the other part.  So I find, based on the

14    order that has been previously issued in regard to the

15    notice to be given to the collective, that there was no

16    violation or impropriety on the part of the plaintiffs

17    and that they were simply adhering to what Judge Liman

18    had permitted.  So I'm denying the relief that it

19    requested in defendants' letter application at docket

20    84.

21            So I want to go on to the sanctions motion,

22    and, again, I have a number of questions.  So I'm going

23    to dive in there.  If you all have things you want to

24    say after I get some answers to these questions, I have

25    no problem with hearing from you.
```

```
 1                        PROCEEDINGS                    7

 2            So, first, and apologies for the order.

 3   There's no particular order that make rhyme or reason

 4   necessarily but there is a reason for it.  The

 5   Department of Labor issue I recall Mr. Segal saying

 6   that, in representing to the Court, that that was no a

 7   wage and hour issue, it was an insurance issue, so

 8   really there was nothing there to produce.  Do I have

 9   that right, Mr. Segal?

10            MR. SEGAL:  Yes, I was told from my client that

11   it was a worker's compensation insurance issue and had

12   nothing to do with the labor law.

13            THE COURT:  Okay, so it seems like there's

14   nothing else to do there, and that really is not a part

15   of the sanctions motion.  Do I have that right, do I

16   have that wrong?

17            MR. JULIO:  That's correct.

18            THE COURT:  Okay, great.  I just wanted to

19   confirm.  All right, and then I'm going to actually ask

20   a question of plaintiff first because it's just a

21   question I think I might know the answer to but I don't

22   know because it's your doing.  With respect to the – let

23   me make sure I describe this – with respect to the pay

24   records and such, you asked for the Court to make a

25   finding based on the failure to comply, but with respect
```

|   |   |   |
|---|---|---|
| 1 | PROCEEDINGS | 8 |

2  to the hours and the tip records, you asked for coercive

3  sanctions as opposed to asking for the same relief as

4  requested for the pay records.  Is there a particular

5  reason for that?

6            MR. JULIO:  Yes, Your Honor, in terms of the

7  time records, it's really important when you're doing

8  damage calculation of class-wide to see how much the

9  class members worked.  And so without those records

10 we're really guessing.  The tip records also can show

11 just in a general sense how much people are working, so

12 that's why we seek those.

13           THE COURT:  Okay, that's what I surmised

14 essentially which is that the, for the documents that

15 essentially establish policies, since it's a policy-wide

16 point, you were asking for the findings to be made.  But

17 for the time and tip records, that those are more

18 individualized and, as you said, go to damages.

19           All right, so then, Mr. Segal, well, actually

20 one more question for the plaintiff.  Since, at any time

21 since the filing of this motion for sanctions have you

22 received any additional documents from the defense?

23           MR. JULIO:  No.

24           THE COURT:  Okay.  All right, and what's the

25 status of discovery?

```
 1                    PROCEEDINGS                      9

 2          MR. JULIO:  It closed in January, Your Honor.

 3          THE COURT:  Okay, thank you.  This year?

 4          MR. JULIO:  Yes.

 5          THE COURT:  Thank you.  All right, so, Mr.

 6  Segal, let me ask you a few things.  So the revenue and

 7  ownership documents, and, by the way, we have your

 8  client back there?

 9          MR. SEGAL:  Yes, that's Nikolai Volper.

10          THE COURT:  So we have the named defendant.

11          MR. SEGAL:  Yeah.

12          THE COURT:  Okay.  All right, and depending on

13  what is said, I may ask Mr. Volper to come up and answer

14  under oath.  So, Mr. Segal, with respect to the revenue

15  and ownership documents, the issue joined essentially

16  was on the 2021 and 2022 records, and I understand that

17  there were no tax returns prepared at that time, which

18  could be understandable, particularly for 2022 but even

19  for 2021, but that doesn't necessarily obviate the

20  obligation to produce other records that provide that

21  information.  And so you were on due notice certainly

22  with the filing of this motion and earlier that those

23  records should be produced.

24          Has any effort been made to go back and find,

25  locate, and produce any revenue and ownership records
```

```
 1                          PROCEEDINGS                    10

 2   for 2021 or 2022?

 3           MR. SEGAL:  We have not provided any additional

 4   records.  However, we are on the record I believe in

 5   some of this paperwork that gross sales exceeded

 6   $500,000 in 2021 or '22 --

 7           THE COURT:  Correct, and so that particular

 8   issue is off the table because you're agreed to it, off

 9   the table in terms of being somewhat mooted.

10           MR. SEGAL:  As well as ownership.

11           THE COURT:  Oh, so you are now agreeing to

12   that?

13           MR. SEGAL:  Yeah, I think I agreed to that --

14           THE COURT:  You did not --

15           MR. SEGAL:  I stated that in the --

16           THE COURT:  -- you did not stipulate to that

17   part of it.  Are you stipulating to that now, that is,

18   that the, that Mr. Volper is the sole owner of the

19   business in 2021 and 2022?

20           MR. SEGAL:  I would have to let Mr. Volper

21   answer that, but I believe the answer to that is yes.

22           THE COURT:  Well, I'm asking if you're

23   stipulating to it.  You said you were going to look more

24   into it, so now is not the time really to be --

25           MR. SEGAL:  Right, well, I don't have those tax
```

1                          PROCEEDINGS                    11

2  returns, and I've never received any additional

3  documents as to --

4          THE COURT:  Did you file - when was the last

5  time you followed up to inquire whether there was any

6  documentation with respect to 2021 and 2022 in terms of

7  ownership?

8          MR. SEGAL:  I always ask Mr. Volper about that

9  and when the tax returns are going to be filed.

10          THE COURT:  Well, but as I said, the obligation

11  goes beyond tax returns.  It doesn't ask for tax

12  returns.  The order was based on a request for

13  information showing ownership; it was not specifically

14  and only to be tax returns.  So if there weren't tax

15  returns, there were to be other records.

16          MR. SEGAL:  I don't believe there's any other

17  paperwork that indicates that ownership for '21 and '22.

18          THE COURT:  Have you made an attempt to search

19  for and look for any such documents?

20          MR. SEGAL:  I've requested, but there is no

21  other paperwork.

22          THE COURT:  So your position is the only place

23  there'd be information in documentation on ownership

24  would be in a tax return?

25          MR. SEGAL:  Correct.

```
 1                          PROCEEDINGS                       12

 2              THE COURT:  As opposed to ownership documents

 3    or something of that nature?

 4              MR. SEGAL:  They don't exist.

 5              THE COURT:  Plaintiff want to say anything

 6    abouts this?

 7              MR. JULIO:  I mean during Mr. Volper's

 8    deposition we asked him who owns it.  He said he didn't

 9    know.

10              THE COURT:  Right.

11              MR. JULIO:  So we're at an impasse I guess.

12              THE COURT:  Okay.

13              MS. SCHULMAN:  Can I add one thing?

14              THE COURT:  Yeah.

15              MS. SCHULMAN:  If the information would be in

16    the tax returns, it has to come from somewhere else.

17    The tax returns don't pull it out of the air.

18              THE COURT:  Arguably.  I mean to represent that

19    you're a hundred percent owner, you could just represent

20    that in some way.  But surely there's, it's, you know,

21    well, I don't know if it's documented somewhere.  But in

22    any event, to the point that he was asked at deposition

23    and he didn't know, I recall that being the case.

24              (pause in proceeding)

25              THE COURT:  The problem is, Mr. Segal, going to
```

1              PROCEEDINGS                    13

2  the point about the deposition, either he could answer

3  that question or he couldn't.  And if there's no

4  additional information, then what is he basing, you

5  know, on one hand – you're going to have to give that

6  answer or provide that information in some way in the

7  tax return.  He says at the deposition I don't know

8  essentially if he's the hundred percent owner, and if

9  it's not in any documentation and he doesn't know, where

10 else is it going to come from?

11         MR. SEGAL:  It can't come from me if he doesn't

12 have it.  All I'll say is this, Your Honor, you know,

13 during the deposition my client might've been a little

14 confused, a little nervous, and some of the comments

15 that came out I don't think were a hundred percent

16 correct.  But as far as, you know, where that answer

17 came from, I can't respond to that.  I don't know why

18 that answer came out, so to speak.  According to my

19 knowledge and my investigation and my files, he's the

20 owner of the entity a hundred percent.

21         THE COURT:  Okay, are you stipulating to that?

22         MR. SEGAL:  I can't stipulate to that.

23         THE COURT:  Okay.  All right.  All right, then

24 let's see.  So with respect to pay records, what effort,

25 Mr. Segal, has been made to retrieve and produce any pay

| 1 | PROCEEDINGS | 14 |

2 documents following the July 22, 2022 conference order?

3      MR. SEGAL:  Again, Your Honor, during that

4 deposition my client said, well, there might be --

5      THE COURT:  No, my question is what effort has

6 been made, if any, since July 22, 2022 to search for and

7 produce pay records?

8      MR. SEGAL:  My client did search, and there's

9 no additional pay records.  We do have bank records now

10 that we didn't have which we could provide that he just

11 showed me today which I didn't know that was obtained.

12 But as far as my knowledge, I have no knowledge of any

13 additional pay records being found after search.

14      THE COURT:  Even though --

15      MR. SEGAL:  And tip records.

16      THE COURT:  All right, so at his deposition I

17 believe defendant did say he was aware of some pay

18 records and that that included confirmations by

19 employees of having received their money and to some

20 other payroll information.

21      MR. SEGAL:  I've not received any documentation

22 to support that, and, once again, I think Mr. Volper was

23 a little nervous during the deposition, and some of the

24 responses were not a hundred percent correct in that

25 light because I have not received any additional

| | PROCEEDINGS | 15 |
|---|---|---|

1

2  documentation to that effect, and I know he's looked for

3  that.

4       THE COURT:  And when was the last time you

5  asked him for that?

6       MR. SEGAL:  A week ago.

7       THE COURT:  All right, what effort has been

8  made at all, and I know you mentioned this, but I want

9  to get an answer, to search for tip sheets, what efforts

10 have been made since July 22, 2022 to locate and produce

11 tip sheets?

12      MR. SEGAL:  I believe the same efforts that

13 were, as related, same efforts as to the payroll

14 records, you know, no other tip sheets that have been

15 produced and I know he has looked for them.

16      THE COURT:  All right, I'm going to need him to

17 take the stand.

18      MR. SEGAL:  Sure.

19      THE COURT:  Mr. Volper, hi, can you please

20 raise your right hand.  Do you swear or affirm that

21 everything you testify to today will be the truth, the

22 whole truth, and nothing but the truth?

23      MR. VOLPER:  (no audible response)

24      THE COURT:  Yes?

25      MR. VOLPER:  Yes.

```
 1                    PROCEEDINGS                    16

 2          THE COURT:  You need to speak up for the

 3   recording.  Thank you.  Please be seated.

 4          MR. VOLPER:  Thanks.

 5          THE COURT:  I'm going to ask you some

 6   questions, and then I'll give the opportunity to attys

 7   for both sides to ask follow-up questions if they have

 8   any.

 9   EXAMINATION BY THE COURT:

10          THE COURT:  So on July 22, 2022 Judge Liman I

11   think, yes, Judge Liman at the time was the one who

12   ordered certain documentation be produced and also gave

13   permission to the plaintiffs to bring a sanctions motion

14   if certain orders were not complied with.  So I'm just

15   trying to find out what was done or not done.

16          So let me ask you, since July 22 of last year,

17   so July 22, 2022, have you made any efforts to look for

18   additional documents responsive to the requests in this

19   litigation?

20          MR. VOLPER:  Yes, Your Honor.

21          THE COURT:  And when was the first time after

22   July 22, 2022 that you did that roughly?

23          MR. VOLPER:  First time?

24          THE COURT:  Yeah.

25          MR. VOLPER:  Well, I looked for this documents,
```

```
 1                    VOLPER (by the Court)              17
 2   most of the documents were in the restaurants were -
 3   during my testimony I specified specifically that was
 4   (indiscernible) especially during the COVID I have a lot
 5   of --
 6           THE COURT:  Let me cut you off, I'm sorry.  The
 7   question is when was the first time that you, after July
 8   22, that you looked for additional documents?
 9           MR. VOLPER:  Probably much immediately after
10   (indiscernible).
11           THE COURT:  Pretty much immediately, okay.  And
12   what did you do to look for the additional documents?
13           MR. VOLPER:  So I went to the office, I look
14   around.  I ask the employees what's going on with all
15   the tip sheets, the rest of the documents.  They say we
16   put them in the garbage because they were staying there
17   for years and years and years because I was often very
18   much out of the restaurant pretty much the last three
19   years.  I went like maybe three, four times due to my
20   health issues.  Basically, I can't locate any additional
21   documents, Your Honor.
22           THE COURT:  And you say you asked the
23   employees.  Do you know, did you look personally in
24   places where you would expect to find documents?
25           MR. VOLPER:  Yes, Your Honor, that's in the
```

```
1                    VOLPER (by the Court)              18

2   office, in the basement.  I went pretty much all the

3   shelves, tried to look at everything requested by the

4   Court.  Absolutely, it was not there.  I suspect the

5   reason is they put it in the garbage because there was

6   pile, pile, pile from documents, tip sheets, tip

7   records, whatever they have, schedule.  Because during

8   that time basically all the employees run the business.

9   I was not very involved, I don't write any payroll,

10  checks.  I have recently suffer, still suffering

11  depression, anxiety which is – that's why some documents

12  was like very late to provide because I was not able

13  basically to function for five, six months to severity

14  of depression and anxiety.

15          I'm still on medications, Your Honor, but I

16  display that very well in the position.  My lawyer also

17  mentioned that.  So I have very limited interaction with

18  the business, probably my mistake, but --

19          THE COURT:  So one thing – I'm sorry to cut you

20  off, but I think you're getting off topic.  One thing

21  you said in there that I heard you refer to was that

22  employees maybe discarded documents, didn't keep them,

23  etc.

24          MR. VOLPER:  Yes.

25          THE COURT:  Do you know if that, in fact,
```

```
 1                     VOLPER (by the Court)              19
 2  happened?
 3          MR. VOLPER:  I'm sure a hundred percent that's
 4  happened.
 5          THE COURT:  And did you have any particular
 6  policy or practice with respect to how long documents
 7  like that would be kept?
 8          MR. VOLPER:  No, we don't.
 9          THE COURT:  Okay.
10          MR. VOLPER:  We don't.  But basically they said
11  (indiscernible) to destroy these documents because it
12  was piled in the office.  Our office is very small.
13  Basically they just discard these documents which is
14  they thought is not necessary to keep anymore because
15  there was like for years and years and years.
16          THE COURT:  All right, so at your deposition –
17  do you recall being deposed, by the way?
18          MR. VOLPER:  I'm sorry?
19          THE COURT:  Do you recall being deposed where
20  you were asked questions under oath by plaintiffs'
21  attys?
22          MR. VOLPER:  Yes.
23          THE COURT:  Okay, so at your deposition I
24  understand that you testified that the restaurant
25  maintains certain pay records particularly of employees
```

```
 1                      VOLPER (by the Court)              20

 2   confirming that they received their payments and then

 3   some related payroll information.  Did you go back and

 4   look for any of that?

 5          MR. VOLPER:  Yes, Your Honor, we provide

 6   (indiscernible) this which is (indiscernible) checks for

 7   Dag Maja Huk as well as Nino Martinenko.  The rest --

 8          THE COURT:  Right, but what about pay records

 9   related to --

10          MR. VOLPER:  Yes, we issue pay records --

11          THE COURT:  -- all the other front of house

12   employees?

13          MR. VOLPER:  Yes, we – no, that we provide and

14   then we ask for the bank records to show the checks with

15   images, they don't appear.

16          THE COURT:  So did you look, when you looked

17   for the records of Ms. Martinenko and Huk, did you also

18   look for the pay records for the other front of house

19   employees?

20          MR. VOLPER:  No, I don't.

21          THE COURT:  But you testified that you have

22   those records available, right?

23          MR. VOLPER:  I have at a certain point but I

24   don't know where they are.

25          THE COURT:  And did you look at those since –
```

```
 1                      VOLPER (by the Court)              21

 2  since July 22, 2022 did you look for those additional

 3  pay records?

 4          MR. VOLPER:  Yes, (indiscernible) pay records,

 5  I can't find anything, any pay records.  Multiple times

 6  I went to the basement, I went to the office, I can't

 7  find (indiscernible) records.

 8          THE COURT:  Okay, what about time records?  I

 9  remember that or recall from the papers that there was a

10  so-called point of sale keeping system and that that

11  clocked, that would have the times that employees

12  clocked in and clocked out, is that right?

13          MR. VOLPER:  Correct, Your Honor.

14          THE COURT:  And since July 22, 2022, did you go

15  back to that system to see if you could pull information

16  for all front of house employees?

17          MR. VOLPER:  After July 22, 2022?

18          THE COURT:  Yes.

19          MR. VOLPER:  We provide Nino Martinenko --

20          THE COURT:  Right, but my question is whether

21  you went back to then look for and obtain the time

22  records, same type of time records for all other front

23  of house employees, not just Martinenko and Huk.

24          MR. VOLPER:  No, I did not.

25          THE COURT:  Okay.  Did anyone ask you to go get
```

```
 1                    VOLPER (by the Court)              22

 2   that?

 3            MR. VOLPER:  Was somebody else --

 4            THE COURT:  Yeah, were you asked, did anyone

 5   ask you to your knowledge to go and see if you could get

 6   those time records from the POS system?

 7            MR. VOLPER:  Did everything else --

 8            THE COURT:  Yeah, did anyone direct, ask you to

 9   go, to look for them?

10            MR. VOLPER:  No, no, no.  All I know, Your

11   Honor, all the employees current and former employees

12   are against any personal information to be released.  I

13   spoke with many of them --

14            THE COURT:  But that's not an issue about

15   whether personal information can be released, sir --

16            MR. VOLPER:  Well --

17            THE COURT:  That can be dealt with by

18   protective order.  There was material that was required

19   to be directed to be produced, and there are obligations

20   to do that.

21            MR. VOLPER:  Yes, Your Honor.

22            THE COURT:  Let me just make a note here of

23   something.

24            (pause in proceeding)

25            THE COURT:  All right, is there - I'll turn it
```

```
 1                    VOLPER (by the Court)              23
 2  over to counsel.  Plaintiffs, do you have questions for
 3  the, for Mr. Volper?
 4          MS. SCHULMAN:  Just a couple.
 5  CROSS-EXAMINATION
 6  BY MS. SCHULMAN:
 7      Q:  Mr. Volper, you produced paystubs for Ms.
 8  Martinenko and Ms. Huk, correct?
 9      A:   Correct.
10      Q:  And that's different from the checks you were
11  talking about that are in the bank statements?
12      A:   Well, paystub or the checks, we produced
13  documents, paystub is (indiscernible) proof of payments
14  where everything, taxes has been deducted, the payroll
15  records are associated with this particular payroll,
16  different check.
17          MS. SCHULMAN:  May I approach and show a
18  paystub?
19          THE COURT:  Sure.
20      Q:  So I'm showing the document Bates stamped DA87.
21  It was part of exhibit 11.  Is that a paystub?
22      A:   That's a paystub, correct.
23          MR. SEGAL:  I'm familiar with the record
24  basically.  I just want to see - okay, this is for Maja
25  Huk, okay.
```

```
 1                    VOLPER - CROSS (by Schulman)              24

 2       A:   So maybe --

 3            THE COURT:  Wait until she asks a question.

 4       Q:   Isn't it true that you have paystubs for other

 5   employees at the restaurants besides --

 6       A:   Sure.

 7       Q:   Besides Ms. Martinenko and Ms. Huk.

 8       A:   Yes.

 9       Q:   Okay, and you have not produced those, correct?

10       A:   We produced these two documents, correct.

11       Q:   Right.  You have not produced any paystubs for

12   any other employees.

13       A:   As I mentioned, they don't want to be, any of

14   employees, this personal information to be distributed.

15   They don't want to be represent by you, by any cross-

16   action suit.  Yes, correct.  We have affidavits from

17   everybody, former, former and current employees that

18   don't want to get represented by you in (indiscernible).

19       Q:   Yes, I have seen the affidavits.

20       A:   Yes.

21       Q:   But you have --

22       A:   You should follow --

23            THE COURT:  One at a time.  And you need to

24   focus on the question that she's asking, and your lawyer

25   can ask you question after -
```

```
 1                 VOLPER - CROSS (by Schulman)          25

 2          THE WITNESS:  No, but I just explain why it's

 3   not produced.

 4          THE COURT:  I think you've explained it, but if

 5   there's more to it, go ahead.

 6          THE WITNESS:  Correct.

 7       A:  So I have to obey privacy rules and laws.  You

 8   don't have a right to provide these documents if

 9   somebody doesn't want to admit it, doesn't want to be

10   part of this lawsuit, he doesn't participate, he don't

11   want to be represented by you, you don't have that

12   right.

13       Q:  Okay, so if I understand you correctly, you

14   have the paystubs for --

15       A:  Correct --

16       Q:  Let me finish my question.

17       A:  Please finish your question.

18       Q:  You have the paystubs for those other employees

19   and you're refusing to turn them over to us.

20       A:  I don't refuse.  They refuse.  I was very

21   clear.  This is their refusal, privacy laws apply here.

22   They don't want any financial representation to be

23   distributed to your law firm, especially they're not

24   represented by you, they don't have any intention to be

25   represented by you.  Correct.
```

```
 1                        PROCEEDING                      26

 2            MS. SCHULMAN:  Nothing else.

 3            THE WITNESS:  Or you can ask me much more

 4   questions if you like.

 5            THE COURT:  I think she's done.  Anything you

 6   wanted to ask, Mr. Segal?

 7            MR. SEGAL:  No, thank you, Your Honor.

 8            THE COURT:  All right.  All right, you may step

 9   off.

10            MR. VOLPER:  Thank you so much, Your Honor.

11            THE COURT:  Thank you.  And what I'm going to -

12   is there anything else that counsel wants to say in

13   regard to the sanctions motion?  Plaintiff.

14            MR. JULIO:  Your Honor, you didn't touch on the

15   numerosity issue in terms of the class list and the

16   deficiencies there.  I just wanted to make sure that the

17   Court is aware of that.

18            THE COURT:  I am aware.

19            MR. JULIO:  Okay, thank you, Your Honor.

20            THE COURT:  Anything else from you, Mr. Segal?

21            MR. SEGAL:  Yes, Your Honor, thank you.  All

22   I'll say is this, at no time willfully or with gross

23   negligence or even negligence has defendants tried to

24   thwart the lawsuit, thwart discovery, and prevent

25   plaintiffs from getting what they wanted.  To be honest
```

1                        PROCEEDING                        27

2   with you, the case isn't, it's a '22 case.  I have a lot

3   of cases that are several years.  We've had three or

4   four motions to compel and sanctions --

5              THE COURT:  Which the Court granted, so

6   obviously there was grounds there.

7              MR. SEGAL:  The deposition that was missed was

8   a one-time deposition that was missed.  I never got a

9   confirmation.  You know, that's never happened in my 35

10  years of practice.

11             So, you know, plaintiff's been aggressive,

12  that's fine.  That's okay.  That's their position in

13  this case.  But I don't think sanctions are really

14  warranted in this case.  We've also, as my client told

15  you, he had, he has a condition, and that condition has

16  lasted, and that definitely slowed down the discovery

17  process in the beginning.  We also went through COVID

18  and I also had a, you know, my father passed away.

19             THE COURT:  I'm sorry about that.

20             MR. SEGAL:  Thank you.  And, you know, I guess

21  plaintiff's counsel, you know, provided condolences for

22  48 hours, but then I got a letter thereafter, you know,

23  that we should respond.

24             So, you know, we've never consciously tried to

25  stop or thwart the lawsuit, and I don't think sanctions

```
 1                          PROCEEDING                    28

 2   are warranted in this instance.

 3            THE COURT:  All right.  All right, thank you.

 4   I think we're done with that.  We'll close the hearing.

 5   I do have a question for counsel.

 6            (Whereupon, the matter is adjourned.)

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                                                          29

 2

 3                   C E R T I F I C A T E

 4

 5          I, Carole Ludwig, certify that the foregoing

 6  transcript of proceedings in the case of MARTINENKO v.

 7  212 STEAKHOUSE, Docket #22cv518, was prepared using

 8  digital transcription software and is a true and

 9  accurate record of the proceedings.

10

11

12

13  Signature_____

14                    Carole Ludwig

15  Date:    June 5, 2023

16

17

18

19

20

21

22

23

24

25
```

*ADDENDUM B*
**TO CIVIL APPEAL PRE-ARGUMENTSTATEMENT (FORM C)**

<u>List of Proposed Issues And Applicable Standards Of Review</u>

**Issue 1:**  Did the District Court err in granting partial summary judgment to Plaintiffs on the tip credit minimum wage claims, the overtime claim and the spread of hours claim.

    a.  Whether the employee's meal break time was non compensable to render the summary judgment damages award incorrect.

    b.  Whether it was permissible to impose a minimum wage violation under New York Law when employees were paid the applicable minimum wage considering the employees overall wages were in excess of the applicable minimum wage.

    c.  Whether the court failed to consider evidence related to named Plaintiff Martinenko's failure to clock out and her wrongful remote entry of the Point of Sale System after her employment ended.

    d.  Any and all other issues related to the grant of summary judgment in terms of liability and damages for Plaintiff.

**Standard of Review:**  The standard of review for the grant of summary judgment is de novo.

**Issue 2:**  Did the district court err in denying Defendants' Motions to Decertify the Rule 23 Class through final judgment.

    a.  Were each of the applicable Rule 23 standards met to sustain a Rule 23 class through final judgment.

    b.  Did the court improperly draw inferences with no evidentiary basis causing Defendants prejudice in its denial of the disqualification motions.

**Standard of Review:** Appellate review of a District Court's denial of motions to decertify a class action are reviewed under the abuse of discretion standard.

**Issue 3:** Whether the District Court can approve the voluntary dismissal of a claim but not the entire action under Federal Rule of Civil Procedure 41(a)(1)(A).

**Standard of Review:** The standard is abuse of discretion as to the approval, de novo as to the legal question.

**Issue 4:** Whether the Class Representatives were acting in the Class's best interest in dismissing their NYLL Section 195 claims in federal court.

**Standard of Review:** Abuse of discretion.

**Issue 5:** Whether a conflict arose between the Class Representatives and the Class to warrant decertification of the Class.

**Standard of Review:** Abuse of discretion.

**Issue 6:** Whether the district court had subject matter jurisdiction to render a Judgment on New York State Claims only in a federal question (non-diversity) case.

**Standard of Review:** De Novo (legal question).

**Issue 7:** Was there finality since there is no federal claim set forth in the judgments.

**Standard of Review:** De Novo Review

**Issue 8:** Whether the district court erred in denying Defendants' Motion to Disqualify Plaintiffs' attorneys and/or for sanctions in contacting purported collective action class members by telephone prior to the dissemination of notice.

**Standard of Review:** Abuse of discretion.

Defendants reserve the right by amendment to add to or subtract from these proposed issues.