# 24-3262-cv(L), 24-3263-cv(XAP)

## United States Court of Appeals

### for the

### Second Circuit

───────────────◆───────────────

NINO MARTINENKO, on behalf of herself and others similarly situated,

*Plaintiff-Counter-Defendant-Appellee,*

DAGMARA MAJA HUK,

*Plaintiff-Appellee-Cross-Appellant,*

– v. –

212 STEAKHOUSE, INC. and NIKOLAY VOLPER,

*Defendants-Counter-Claimants-Appellants-Cross-Appellees.*

───────────────────────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**APPENDIX**
**Volume 2 of 2 (Pages A-288 to A-557)**

JEFFREY M. BENJAMIN
LINDEN LAW GROUP, P.C.
*Attorneys for Defendants-Counter-
    Claimants-Appellants-Cross-
    Appellees*
250 Park Avenue, 7th Floor
New York, New York 10017
(212) 537-6612

CP COUNSEL PRESS    (800) 4-APPEAL • (376605)

i

# TABLE OF CONTENTS

**Page**

District Court Docket Entries ..................................... A-1

Motion by Defendants to Decertify Rule 23 Class
and Motion for Judgment as to Plaintiff's Count
5 of the Complaint ("Motion to Decertify"), filed
November 16, 2023, with Proposed Order
Attached thereto........................................................ A-27

Declaration of Jonathan W. Greenbaum, for
Defendants, in Support of Motion to Decertify,
filed November 16, 2023 ...................................... A-31

Exhibit 1 to Greenbaum Declaration -
212 Steakhouse Class List (Annotated)................. A-34

Exhibit 2 to Greenbaum Declaration -
List of Recorded Hours........................................... A-37

Exhibit 3 to Greenbaum Declaration -
Deposition Transcript of Nino Martinenko,
Plaintiff, dated December 20, 2022 ....................... A-39

Exhibit 4 to Greenbaum Declaration -
Notice of Proposed Class Action Settlement in
*Mustafa Fteja v. Nusret New York LLC, et al.*,
S.D.N.Y., 19-cv-429................................................ A-128

Exhibit 5 to Greenbaum Declaration -
Deposition Transcript of Dagmara Huk, Non-
Party Witness, dated December 20, 2022 .............. A-140

Declaration of Nikolay Volper, Defendant, in
Support of Motion to Decertify, dated
November 14, 2023 ................................................ A-185

ii

**Page**

Exhibit 1 to Volper Declaration -
Class List ............................................................... A-190

Exhibit 2 to Volper Declaration -
212 Steakhouse Class List (Annotated)
(Reproduced herein at pp. A-35 – A-36)

Exhibit 3 to Volper Declaration -
Copies of Pay Stubs for Nino Martinenko for
Period of April 18, 2021 to December 19, 2021 .... A-196

Exhibit 4 to Volper Declaration -
List of Security Level Access ................................ A-223

Exhibit 5 to Volper Declaration -
List of Nino Martinenko's Access of the System
After Termination of Employment ........................ A-225

Exhibit 6 to Volper Declaration -
Copy of Labor Law Poster.................................... A-227

Declaration of Nikolay Volper, Defendant, in
   Opposition to Motion for Summary Judgment,
   dated December 20, 2023 ...................................... A-228.1

Declaration of Michael DiGiulio, for Plaintiff, in
   Opposition to Motion to Decertify, dated
   December 21, 2023 ................................................. A-229

Exhibit 1 to DiGiulio Declaration -
Deposition Transcript of Nikolay Volper,
Defendant, dated October 6, 2022 ........................ A-233

Exhibit 2 to DiGiulio Declaration -
Defendants' Responses and Objections to the
Plaintiff's First Request for the Production of
Documents to All Defendants, dated
July 12, 2022........................................................... A-288

iii

| | Page |
|---|---|
| Exhibit 3 to DiGiulio Declaration - Eight Opt-Out Letters | A-301 |
| Exhibit 4 to DiGiulio Declaration - Copies of Envelopes | A-310 |
| Exhibit 5 to DiGiulio Declaration - Copies of Pay Stubs for Dagmara Huk and Nino Martinenko Silva | A-318 |
| Exhibit 6 to DiGiulio Declaration - W-2 Form for Nino Martinenko Silva for Year 2021 | A-322 |
| Declaration of Nino Matinenko, Plaintiff, in Opposition to Motion to Decertify, dated December 21, 2023 | A-324 |
| Declaration of Dagmara Huk, Opt-In Plaintiff, in Support of Plaintiff's Motion for Class Certification, dated December 9, 2022 | A-326 |
| Notice of Motion by Plaintiff and the Class for Attorneys' Fees and Costs ("Motion for Attorneys' Fees"), dated November 8, 2024 | A-328 |
| Declaration of Michael DiGiulio, for Plaintiffs, in Support of Motion for Attorneys' Fees, dated November 8, 2024 | A-329 |
| Exhibit 1 to DiGiulio Declaration - Class Counsel's Time Records | A-336 |
| Exhibit 2 to DiGiulio Declaration - Copies of Invoices and Receipts | A-363 |

iv

**Page**

Exhibit 3 to DiGiulio Declaration -
Transcript of Fairness Hearing Teleconference in
*Orlando v. Liberty Ashes, Inc.*, No. 15 Civ. 9434
(S.D.N.Y. Sept. 4, 2020) ......................................... A-376

Exhibit 4 to DiGiulio Declaration -
Transcript of *Lola v. Skadden, Arps, Meagher,
Slate & Flom LLP*, No. 13-cv-5008 (S.D.N.Y.
Dec. 21, 2015)......................................................... A-392

Exhibit 5 to DiGiulio Declaration -
Transcript of *Zivkovic v. Laura Christy LLC*,
No. 17 Civ. 553 (S.D.N.Y. June 15, 2022).............. A-414

Exhibit 6 to DiGiulio Declaration -
Excerpts from the Wolters Kluwer 2021 Real
Estate Report............................................................ A-452

Opposition by Defendants to Motion for Attorneys'
Fees, filed November 22, 2024 ............................... A-479

Declaration of Denise A. Schulman, for Plaintiffs,
in Support of Motion for Attorneys' Fees, dated
December 5, 2024 .................................................... A-490

Exhibit 1 to Schulman Declaration -
Time Entries............................................................ A-494

Exhibit 2 to Schulman Declaration -
Supplemental Joseph Kirschenbaum LLP's
Time Entries............................................................ A-495

Opinion and Order of the Honorable Jennifer L
Rochon, dated September 24, 2024, Appealed
From......................................................................... A-496

Judgment of the United States District Court for the
Southern District of New York, dated September
25, 2024, Appealed From........................................ A-523

v

**Page**

Opinion and Order of the Honorable Jennifer L.
Rochon, dated November 13, 2024, Appealed
From....................................................... A-525

Judgment of the United States District Court for the
Southern District of New York, dated November
14, 2024, Appealed From...................................... A-534

Opinion and Order of the Honorable Jennifer L.
Rochon, dated December 23, 2024, Appealed
From....................................................... A-537

Notice of Appeal by Defendants, dated
December 11, 2024 ................................. A-553

Notice of Cross-Appeal by Opt-In Plaintiff, dated
December 12, 2024 ................................. A-555

Amended Notice of Appeal by Defendants, dated
December 30, 2024 ................................. A-556

A-288

# Exhibit 2

A-289

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------x
**NINO MARTINENKO, on behalf of**                        **CASE NO. 22 CV 518 (LJL)**
**herself and others similarly situated,**

          **Plaintiff,**

     **v.**

**212 STEAKHOUSE, INC., and**
**NIKOLAY VOLPER,**

          **Defendants.**

-----------------------------------------------------x

**DEFENDANTS' RESPONSES & OBJECTIONS TO THE PLAINTIFF'S**
**FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTSTO ALL**
**DEFENDANTS**

**TO:  PLAINTIFF NINO MARTINENKO**:

    **PLEASE TAKE NOTICE,** that the Defendants' 212 STEAKHOUSE, INC., and NIKOLAY

VOLPER ("Defendants"), by and through the undersigned counsel, hereby respond to Plaintiff (the

"Plaintiff") First Request for the Production of Documents ("Request") in accordance with the numbered

Responses and Objections below ("Responses").

    The Responses herein reflect the knowledge of the Defendants as of the date of the Responses, and

Defendants' Responses involve an ongoing investigation into the Plaintiff's Requests. Defendants'

responses are made subject to each of the General Objections, Comments and Qualifications listed below,

and such other objections as may be stated in the individual responses. Defendants reserve their right to

amend or supplement these Responses pursuant to Federal Rule 26(e)(1) as becomes necessary and

appropriate.

**REQUESTS FOR PRODUCTION**

**Request for Production 1:**

    Each Plaintiff's complete employment/personnel file, including but not limited to
applications for employment, hire forms, payroll reports, payroll information, paystubs, clock-in

1

reports and/or chits, complaints, comments, write-ups, reprimands, disciplinary action (whether formal or informal), employee handbooks, employment contracts, and/or training materials.

Please see attached.  More to follow.

**Request for Production 2:**

All documents, including but not limited to weekly schedules, concerning when and/or for how much time each Plaintiff was scheduled to work at the Restaurants.

None.  Schedule were communicated orally daily.

**Request for Production 3:**

All documents concerning or reflecting each Plaintiff's actual hours worked at the Restaurant.

Please see attached.  Additional documents forthcoming.

**Request for Production 4:**

All documents concerning Plaintiff's job duties at the Restaurant, including but not limited to documents concerning the nature of Plaintiff's duties and the amount of time she spent performing each duty.

No documents.  This was communicated orally.

**Request for Production 5:**

All documents concerning sidework performed by Plaintiff, including but not limited to documents concerning the type of sidework Plaintiff performed and the amount of time she spent performing sidework.

None.  No restaurant would have documentation as to sidework.

**Request for Production 6:**

All wage notices that Defendants contend they provided to each Plaintiff.

None.

**Request for Production 7:**

All wage statements that Defendants contend they provided to each Plaintiff.

Please see attached.  Additional documents forthcoming.

A-291

**Request for Production 8:**

For each Plaintiff, all payroll records, paychecks, and/or paystubs, including but not limited to records sufficient to show the number of hours for which each Plaintiff was paid each week and the rate(s) that Defendants paid Plaintiff in the Liability Period.

Please see attached. Additional documents forthcoming.

**Request for Production 9:**

For each Plaintiff, all W-2 and/or 1099 forms issued by Defendants.

This information if forthcoming from a third party accountant.

**Request for Production 10:**

All documents, including but not limited to weekly schedules, concerning when and/or for how much time each Class Member was scheduled to work at the Restaurants.

None. Schedules were communicated orally daily.

**Request for Production 11:**

All documents concerning or reflecting Class Members' actual hours worked at the Restaurants.

This is forthcoming.

**Request for Production 12:**

All documents concerning the job duties of Class Members who were paid pursuant to a tip credit, including but not limited to documents concerning the nature of their duties and the amount of time they spent performing each duty.

None. This was communicated orally.

**Request for Production 13:**

All documents concerning sidework performed by Class Members who were paid pursuant to a tip credit, including but not limited to documents concerning the type of sidework they performed and the amount of time she spent performing sidework.

None. This was communicated orally.

**Request for Production 14:**

All wage notices that Defendants contend they provided to Class Members.

None.

**Request for Production 15:**

All wage statements that Defendants contend they provided to Class Members.

This information if forthcoming from a third party accountant.

**Request for Production 16:**

For each Class Member, all payroll records, paychecks, and/or paystubs, including but not limited to records sufficient to show the number of hours for which each Class Member was paid each week in the Liability Period.

This information is attached and additional information is forthcoming.

**Request for Production 17:**

Documents sufficient to show the total number of Class Members.

This information has already been provided.

**Request for Production 18:**

Documents sufficient to show the Individual Defendant's ownership interest in 212 Steakhouse Inc.

See attached tax returns.

**Request for Production 19:**

All documents concerning the Individual Defendant's duties and/or responsibilities with respect to 212 Steakhouse Inc. and/or the Restaurant, including but not limited to his duties and/or responsibilities with respect to hiring, firing, disciplining, and paying employees of 212 Steakhouse Inc. and/or the Restaurants; establishing policies and/or procedures for 212 Steakhouse Inc. and/or the Restaurants; budgeting and purchasing; and general management.

None.

**Request for Production 20:**

All documents concerning policies, practices, and/or procedures regarding employee

4

scheduling at the Restaurants.

None.


**Request for Production 21:**

All documents concerning the operation of Defendants' employee timekeeping system(s) that were used at the Restaurants at any time during the Liability Period.

A POS system was used where employees had to clock in and out.

**Request for Production 22:**

All instruction manuals and settings for any timekeeping and/or POS systems that were used at the Restaurants during the Liability Period.

None.

**Request for Production 23:**

For each timekeeping system that was used at the Restaurant during the Liability Period, documents sufficient to show when such timekeeping system was used.

Please see attached and additional documentation to follow.

**Request for Production 24:**

All documents concerning or reflecting 212 Steakhouse Inc. and/or the Restaurant's gross annual sales for the entire Liability Period, including but not limited to receipts, ledgers, and tax returns.

Please see attached tax returns.


**Request for Production 25:**

All bank statements from all banks used by 212 Steakhouse, Inc. and/or the Restaurant during the Liability Period.

Please see attached payroll and check information.

**Request for Production 26:**

All records of cash payments made to 212 Steakhouse, Inc. and/or the Restaurant during the Liability Period.

None.

**Request for Production 27:**

All documents reflecting the prices of goods sold and/or services rendered by 212 Steakhouse, Inc. and/or the Restaurant during the Liability Period.

Please see tax returns attached.

**Request for Production 28:**

All documents concerning goods sold and/or services rendered by 212 Steakhouse, Inc. and/or the Restaurant during the Liability Period.

Please see tax returns attached.

**Request for Production 29:**

All documents reflecting the amount of tips paid by the Restaurant's customers during the Liability Period.

The third party accountant will be providing this information shortly.

**Request for Production 30:**

All documents concerning the annual expenses of 212 Steakhouse, Inc. and/or the Restaurant for the entire Liability Period, including but not limited to rent; utilities; employee, independent contractor, executive, and consultant compensation; taxes; professional services; and other goods and/or services.

Please see tax returns attached.

**Request for Production 31:**

All documents concerning or reflecting the COVID-19 vaccination status of all of Defendants' employees, contractors, and/or owners who entered the Restaurant on or after August 16, 2021.

Plaintiff is in possession of this information and has refused to supply this information to the Defendants.

**Request for Production 32:**

All documents concerning Defendants' allegation that Plaintiff refused to wear a mask at the Restaurant.

None.

**Request for Production 33:**

All documents concerning Defendants' allegation that Plaintiff violated Restaurant protocols.

Please see attached N.Y.S./N.Y.C.- Covid-Hospitality Related Orders NYC laws requiring vaccination for hospitality employees.

**Request for Production 34:**

All documents concerning Defendants' allegation that Plaintiff lied about her COVID-19 vaccination status.

None.

**Request for Production 35:**

All documents concerning Defendants' allegation in paragraph 85 of the Answer that "[a]s a result of [Plaintiff's] negligent and intentional fraudulent actions, several employees came down with the Covid virus[,]" including but not limited to documents identifying the employees who had COVID-19, when those employees contracted COVID-19, and how those employees contracted COVID-19.

None.

**Request for Production 36:**

All documents concerning the negligent actions Defendants contend Plaintiff engaged in.

None.  Negligently not obtaining a vaccine in violation of the attached N.Y.S./N.Y.C.-

Covid-Hospitality Related Orders.

**Request for Production 37:**

All documents concerning the fraudulent actions Defendants contend Plaintiff engaged in.

None.

**Request for Production 38:**

For each individual identified in response to Interrogatory No. 4, all documents concerning their activities in the two weeks prior to testing positive for COVID-19.

None.

**Request for Production 39:**

All customer receipts from the two weeks prior to when each individual identified in response to Interrogatory No. 4 contracted and/or tested positive for COVID-19.

This information is being compiled and will be provided shortly.

**Request for Production 40:**

All documents concerning or reflecting the Restaurant's reservations during the two weeks prior to when each individual identified in response to Interrogatory No. 4 contracted and/or tested positive for COVID-19.

This information is being complied and will be provided shortly.

**Request for Production 41:**

All employee schedules for the two weeks prior to when each individual identified in response to Interrogatory No. 4 contracted and/or tested positive for COVID-19.

None. Defendants are compiling the information and will provide time sheets shortly.

**Request for Production 42:**

All records of employees' hours worked for the two weeks prior to when each individual identified in response to Interrogatory No. 4 contracted and/or tested positive for COVID-19.

Defendants are compiling the information and will provide time sheets shortly.

**Request for Production 43:**

All documents concerning or reflecting Defendants' actions taken in response to employees contracting and/or testing positive for COVID-19 at any time in 2021.

None.

**Request for Production 44:**

All documents concerning the Restaurant's COVID-19-related protocols, policies, and procedures in place from August 2021 to January 2022.

Please see attached N.Y.S./N.Y.C.- Covid-Hospitality Related Orders.

**Request for Production 45:**

All documents concerning Defendants' allegation that as a result of Plaintiff's actions, the Restaurant had to close over a holiday weekend.

Please see POS Sales Report which will be provided shortly.

**Request for Production 46:**

All documents concerning Defendants' allegation that as a result of the Restaurant closure referenced in paragraph 86 of the Answer, Defendants lost over $50,000 in revenue, including but not limited to documents reflecting the revenue that Defendants received for the corresponding time period in 2020.

_    Please see POS Sales Report which will be provided shortly.

**Request for Production 47:**

All documents concerning the termination of Plaintiff's employment with Defendants.

None.

**Request for Production 48:**

All governmental laws, statutes, rules, regulations, orders, or other mandates that Defendants contend Plaintiff violated.

Please see attached N.Y.S./N.Y.C.- Covid-Hospitality Related Orders.

_____

**Request for Production 49:**

All settlement agreements that Defendants contend released wage and hour claims for each Class Member identified in response to Interrogatory No. 2.

Please see NYS Dept of Labor case and settlement.

**Request for Production 50:**

All deposition transcripts from actions in which an employee of Defendants alleged that Defendants failed to pay required minimum wage, overtime, or spread of hours compensation; failed to provide required wage notices and/or wage statements; or improperly paid an employee pursuant to a tip credit.

None.

**Request for Production 51:**

All insurance policies applicable to this litigation.

None.

**Request for Production 52:**

All written or recorded statements, either under oath or otherwise, concerning the subject matter of this litigation.

None.

**Request for Production 53:**

All non-privileged statements or admissions concerning the allegations in the Complaint and/or Answer in this Action.

None.

**Request for Production 54:**

All documents concerning any affirmative defenses raised in Defendants' Answer in this Action.

This has already been provided in prior statements.

**Request for Production 55:**

All documents and communications concerning Defendants' policies, practices, procedures, systems, or criteria concerning the creation, amendment, revision, retention, or destruction of documents.

None.

**Request for Production 56:**

All documents identified in Defendants' Initial Disclosures in this Action.

N/A.

**Request for Production 57:**

All documents concerning wage and hour investigations and or audits of Defendants or any other entity in which any Defendant has an ownership interest by the United States or New York Department of Labor, including but not limited to correspondence, notes, complaints, letters, memoranda, settlement offers, settlement agreements, checks offered to and/or accepted by Plaintiff and/or Class Members, and checks offered to and/or accepted by the United States or New

York Departments of Labor on Plaintiff's or Class Members' behalf. This Request is not limited to documents from the Liability Period but rather seeks all responsive documents from any time period.

Please see attached.

**Request for Production 58:**

All documents concerning rulings, decisions, or opinions rendered by any federal or state court or administrative or governmental agency regarding whether Defendants' wage and hour policies conform to the requirements of federal and/or New York law. This Request is not limited to documents from the Liability Period but rather seeks all responsive documents from any time period.

Please see attached.

**Request for Production 59:**

All documents concerning or reflecting all actions Defendants took prior to the filing of the Action to determine whether its compensation policies and practices, including but not limited to policies and practices relating to the payment of overtime and spread of hour compensation and the use of the tip credit complied with federal and/or New York law. This Request is not limited to documents from the Liability Period but rather seeks all responsive documents from any time period.

None.

**Request for Production 60:**

All documents upon which Defendants relied in determining the legality of its compensation policies, practices, and procedures, including but not limited to policies and practices relating to the payment of overtime and spread of hour compensation and the use of the tip credit complied with the federal and/or New York law. This Request is not limited to documents from the Liability Period but rather seeks all responsive documents from any time period.

Please see attached document.

**Request for Production 61:**

All non-privileged documents concerning wage and hour claims asserted against any Defendant by any current or former employee.

Already provided and public information.

**Request for Production 62:**

All documents not otherwise requested that relate to the claims, counterclaims, and

defenses in this Action.

    None.

    Dated:  Manhasset, New York
            July 12, 2022

                      LAW OFFICE OF MITCHELL S. SEGAL, P.C.

                            s/   Mitchell Segal

                      _____
                      By: Mitchell Segal, Esq.
                      Attorney for Defendants
                      1129 Northern Boulevard, Suite 404
                      Manhasset, N.Y. 11030
                      Telephone: (516) 415-0100
                      Facsimile:  (516) 706-6631

A-301

# Exhibit 3

A-302

Samuel Garcia Velez

███████████████

██████ 10454

Dear Ms. Schulman, Esq,

Please, exclude me from the Class action lawsuit against 212Steakhouse.

Sincerely,

Samuel Garcia Velez

06/30/2023

A-303

Luis Fernandez

███████████

███████  07093

Dear Ms. Schulman, Esq,

Please, exclude me from the Class action lawsuit against 212Steakhouse.

Sincerely,

Luis Fernandez

06/30/2023

Alexander Rynkovsky



11235

Dear Ms. Schulman, Esq,

Please, exclude me from the Class action lawsuit against 212Steakhouse.

Sincerely,

Alexander Rynkovsky

06/30/2023

Bonifacio J. Ramos



10027

Dear Ms. Schulman, Esq,

Please, exclude me from the Class action lawsuit against 212Steakhouse.

Sincerely,

Bonifacio J. Ramos

06/30/2023

Everardo Perez



Everardo Perez

1377

Dear Ms. Schulman, Esq,

Please, exclude me from the Class action lawsuit against 212Steakhouse.

Sincerely,

Everardo Perez

06/30/2023

Javier Clemente



10039

Dear Ms. Schulman, Esq,

Please, exclude me from the Class action lawsuit against 212Steakhouse.

Sincerely,

Javier Clemente

06/30/2023

Jose Raul Roque Blass

█████████████
██████ 11368

Dear Ms. Schulman, Esq,

Please, exclude me from the Class action lawsuit against 212Steakhouse.

Sincerely,

Jose Raul Roque Blas

06/30/2023

Oscar Morales

███████████████

███████████████11368

Dear Ms. Schulman, Esq,

Please, exclude me from the Class action lawsuit against 212Steakhouse.

Sincerely,

Oscar Morales

06/30/2023

# Exhibit 4



U.S. POSTAGE PAID
FCM LG ENV
NEW YORK, NY 10022
JUL 12, 2023
$9.49
R2304N11774-118

TO:
Denise A. Dichura esp
Joseph L Hischler Bru, ut LP
32 Broadway Suite 601
NY NY 10004

FROM:
Bonifacio J R Owens
10027

Utility Mailer
10 1/2" x 16"



U.S. POSTAGE PAID
FCM LG ENV
NEW YORK, NY 10022
JUL 12, 2023
**$9.49**
R2304N11774-18

10004

RDC 99

CERTIFIED MAIL

7021 2720 0000 2884 8090

**FROM:**
Everardo Perez
11377

**TO:**
Denise A Schulman, esq
Joseph & Kirschenbaum
32 Broadway Suite 601
NY NY 10004

Ready Post

**Utility Mailer**
**10 1/2" x 16"**





Case 1:22-cv-00518-JLR-RM ···· Document 133-5 ···· Filed 12/21/23 ···· Page 5 of 8

U.S. POSTAGE PAID
FCM LG ENV
NEW YORK, NY 10022
JUL 17, 2023
$9.49
R2305M143686-18

Retail

RDC 99

ReadyPost

CERTIFIED MAIL

9589 0710 5270 0455 5746 10

TO:
Denise A. Schuman, Esq
Joseph Hirschabaum
32 Broadway, Suite 601
New York, NY 10004

FROM:
Samuel Garcia Veliz
10054

Utility Mailer
10 1/2" x 16"



Case 1:22-cv-00518-JLR-RWL Document 121 Filed 12/12/23 Page 6 of 8

U.S. POSTAGE PAID
FCM LG ENV
NEW YORK, NY 10022
JUL 17, 2023
**$9.49**
R2305M14356B-18

Retail
RDC 99

ReadyPost

Utility Mailer
10 1/2" x 16"

USPS CERTIFIED MAIL

9589 0710 5270 0455 5745 97

TO:
Denise A. Shulman, esq
Joseph Kirschenbaum
32 broadway, Suite 601
New York, NY 10004

FROM:
Oscar Morales
11368





U.S. POSTAGE PAID
FCM LG ENV
BROOKLYN, NY 1123
JUL 10, 2023

$9.49
R2304H10877C-15

10004

Retail

RDC 99

CERTIFIED MAIL

7021 2720 0000 2864 2676

**TO:**
Denise A. Shulman, Esq.
Joseph & Kirschenbaum LLD
32 Broadway, suite 601
New York, NY 10004

**FROM:**
Alexander Piukovsky
11235

Read

**Utility Mailer**
**10 1/2" x 16"**

# Exhibit 5

212 STEAKHOUSE INC
316 E 53RD STREET
NY 10022



EXHIBIT
7
10/6/20 22

DAMGMARA M HUK

| Employee Pay Stub | | Check number: | | | Pay Period: 08/24/2020 - 08/30/2020 | Pay Date: 08/30/2020 |
|---|---|---|---|---|---|---|

| Employee | | | | | SSN | |
|---|---|---|---|---|---|---|
| DAMGMARA M HUK | | | | | | |

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly | 32:00 | 15.00 | 480.00 | 480.00 |

| Taxes | | | Current | YTD Amount |
|---|---|---|---|---|
| NY - City Resident | | | -10.40 | -10.40 |
| Federal Withholding | | | -25.00 | -25.00 |
| Social Security Employee | | | -29.76 | -29.76 |
| Medicare Employee | | | -6.96 | -6.96 |
| NY - Withholding | | | -13.41 | -13.41 |
| NY - Disability | | | -0.60 | -0.60 |
| | | | -86.13 | -86.13 |

| Net Pay | | | 393.87 | 393.87 |
|---|---|---|---|---|

212 STEAKHOUSE INC
316 E 53RD STREET
NY 10022

DAMGMARA M HUK





| **Employee Pay Stub** | | Check number: | | | Pay Period: 03/08/2021 - 03/14/2021 | | Pay Date: 03/14/2021 |
|---|---|---|---|---|---|---|---|

| **Employee** | | | | | **SSN** | | |
|---|---|---|---|---|---|---|---|
| DAMGMARA M HUK | | | | | | | |

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly | 47:57 | 10.00 | 479.50 | 3,151.50 |
| Reported Cash Tips | | | 1,524.48 | 9,172.57 |
| | 47:57 | | 2,003.98 | 12,324.07 |
| **Taxes** | | | **Current** | **YTD Amount** |
| NY - City Resident | | | -77.15 | -438.65 |
| Medicare Employee Addl Tax | | | 0.00 | 0.00 |
| NY - Paid Family Leave | | | -10.24 | -20.99 |
| Federal Withholding | | | -308.00 | -1,544.00 |
| Social Security Employee | | | -124.24 | -764.09 |
| Medicare Employee | | | -29.06 | -178.70 |
| NY - Withholding | | | -106.88 | -605.26 |
| NY - Disability | | | -0.60 | -5.75 |
| | | | -656.17 | -3,557.44 |
| **Adjustments to Net Pay** | | | **Current** | **YTD Amount** |
| meals contribution | | | -21.00 | -141.00 |
| **Net Pay** | | | **1,326.81** | **8,625.63** |

A-321

212 STEAKHOUSE INC
316 E 53RD STREET
NY 10022

NINO  MARTINENKO SILVA


---

**Employee Pay Stub**         Check number:                    Pay Period: 09/27/2021 - 10/03/2021          Pay Date: 10/03/2021

**Employee**                                                  **SSN**

NINO  MARTINENKO SILVA, ███████████████

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly | 45:29 | 10.00 | 454.83 | 4,643.83 |
| Reported Cash Tips | | | 1,070.11 | 17,171.60 |
| | 45:29 | | 1,524.94 | 21,815.43 |

| Taxes | Current | YTD Amount |
|---|---|---|
| NY - City Resident | -55.83 | -791.24 |
| NY - Paid Family Leave | -7.79 | -111.47 |
| Medicare Employee Addl Tax | 0.00 | 0.00 |
| Federal Withholding | -146.00 | -2,114.00 |
| Social Security Employee | -94.55 | -1,352.56 |
| Medicare Employee | -22.11 | -316.32 |
| NY - Withholding | -75.72 | -1,085.81 |
| NY - Disability | -0.60 | -9.00 |
| | -402.60 | -5,780.40 |

| Adjustments to Net Pay | Current | YTD Amount |
|---|---|---|
| meals contribution | -15.00 | -189.00 |

| **Net Pay** | **1,107.34** | **15,846.03** |

212 STEAKHOUSE INC, 316 E 53RD STREET, NY 10022

D0948

# Exhibit 6

A-323

| 22222 | Void ☐ | a Employee's social security number | For Official Use Only ▶ OMB No. 1545-0008 | | |
|---|---|---|---|---|---|
| **b** Employer identification number (EIN) | | | **1** Wages, tips, other compensation 44504.34 | **2** Federal income tax withheld 5071.00 | |
| **c** Employer's name, address, and ZIP code 212 STEAKHOUSE INC 316 E 53RD STREET NEW YORK       NY  10022 | | | **3** Social security wages 9473.33 | **4** Social security tax withheld 2759.27 | |
| | | | **5** Medicare wages and tips 44504.34 | **6** Medicare tax withheld 645.31 | |
| | | | **7** Social security tips 35031.01 | **8** Allocated tips | |
| **d** Control number | | | **9** | **10** Dependent care benefits | |
| **e** Employee's first name and initial   Last name   Suff NINO  MARTINENK   SILVA | | | **11** Nonqualified plans | **12a** See instructions for box 12 | |
| | | | **13** Statutory employee ☐  Retirement plan ☐  Third-party sick pay ☐ | **12b** | |
| | | | **14** Other NY-SDI       15.60 NY-FLI      227.42 | **12c** | |
| | | | | **12d** | |
| **f** Employee's address and ZIP code | | | | | |

| **15** State NY | Employer's state ID number | **16** State wages, tips, etc. 44504.34 | **17** State income tax 2317.88 | **18** Local wages, tips, etc. 44504.34 | **19** Local income tax 1668.59 | **20** Locality name Medicar |
|---|---|---|---|---|---|---|

Form **W-2**  **Wage and Tax Statement**       **2021**
                                          0000/ 1030D

Copy A For Social Security Administration - Send this entire page with
Form W-3 to the Social Security Administration; photocopies are **not** acceptable.

Department of the Treasury - Internal Revenue Service
**For Privacy Act and Paperwork Reduction
Act Notice, see the separate instructions.**

Do Not Cut, Fold, or Staple Forms on This Page

REV 01/14/22 CR

DocuSign Envelope ID: 4C948A44-B97E-4E56-BA52-6302D5E25246

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
**NINO MARTINENKO, on behalf of**                     **CASE NO. 22 CV 518 (LJL)**
**herself and others similarly situated,**

          **Plaintiff,**

     **v.**

**212 STEAKHOUSE, INC., and**
**NIKOLAY VOLPER,**

          **Defendants.**
-------------------------------------------------------x

### DECLARATION OF NINO MARTINENKO

I, Nino Martinenko, under penalty of perjury, affirm as follows:

1. I am the Named Plaintiff in this action. I am familiar with the facts and circumstances set forth herein.

2. I submit this declaration in support of Plaintiff's opposition to Defendants motion to decertify the Class and to dismiss pursuant to Rule 12(c).

3. I worked at 212 Steakhouse (the "Restaurant") as a server from 2016 through 2018, and then again from early 2021 through December 2021.

4. During my first period of employment from 2016 to 2018, the Restaurant did not give me pay stubs or other wage statements with my pay.

5. Because I did not receive a pay stub with my pay, I did not know the basis for my pay or whether I was being paid for the correct number of hours, at the correct rates of pay, or with the correct tax withholdings.

6. The Restaurant paid employees by handwritten checks. Sometimes I wrote out the checks.

7. In 2021, when I wrote the checks for payroll, I was given completed wage statements and

then wrote the checks based on the net amount shown on the wage statements.

8. Defendants never presented me with, nor did I sign, a written wage notice.

9. Defendants never told me I was entitled to overtime pay. If they told me that I was entitled to overtime, when I received pay stubs in 2021 that I was not receiving overtime pay, I would have discussed this was Defendant Volper and requested to be paid overtime.

10. At Defendant Volper's direction, Defendants granted me access to their time keeping system in October 2021. He asked me to check the clock in and out times for a back of house employee who he suspected was not clocking out.

11. I only accessed the time system twice, and both times for the purpose of checking this other employee's clock in and out time. I did not access the system to check my own clock in and out time. I never accessed this system after my employment with Defendants ended. I could only access the system from the office at 212 Steakhouse.

I declare under penalty of perjury of the law of the United States that the foregoing is true and correct.

Dated: _12/21/2023_____        By: _____
                                            Nino Martinenko

2

A-326

DocuSign Envelope ID: A6B381E8-24DE-4D13-97CB-BBBAE75E977D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
**NINO MARTINENKO, on behalf of**                    **CASE NO. 22 CV 518**
**herself and others similarly situated,**

               **Plaintiff,**

     **v.**

**212 STEAKHOUSE, INC., and**
**NIKOLAY VOLPER,**

               **Defendants.**
-------------------------------------------------------x

### DECLARATION OF DAGMARA HUK

I, Dagmara Huk, under penalty of perjury, affirm as follows:

1. I joined this action as an Opt-In Plaintiff. I am familiar with the facts and circumstances set forth herein.

2. I submit this declaration in support of Plaintiff's motion for class certification pursuant to Fed. R. Civ. P. 23.

3. I worked at 212 Steakhouse (the "Restaurant") as a bartender from 2020 through 2021.

4. Defendants did not present me with, nor did I sign, a written wage notice.

5. Attached as **Exhibit 1** are true and correct copies of pay stubs for the Restaurant's front of house employees. I received these documents from Imran Sajid so that I could write out employees' paychecks. The pay stubs in this Exhibit are for the following pay periods: February 22-28, 2021; June 7-13, 2021; and September 13-19, 202.

6. Mr. Sajid did not have a formal title at the Restaurant. However, among other things he assisted with the payroll process.

1

DocuSign Envelope ID: A6B361E8-240E-4D13-97CB-BBBAE75E977D

7. I am familiar with the payroll practices at the Restaurant as well as the claims in this lawsuit.

8. I am prepared to act as a class representative in this action.

9. As a class representative, I am prepared to vigorously pursue the claims of my coworkers.

10. I do not have any conflicts of interest with any of the other employees who work or worked at the Restaurant.


I declare under penalty of perjury of the law of the United States that the foregoing is true and correct.


Dated: 12/9/2022

New York, New York

By: _____
Dagmara Huk

2

A-328

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
**NINO MARTINENKO, on behalf of herself and others**              Civil Action No.: 22 CV 518
**similarly situated,**

                                        **Plaintiff,**

              **-against-**

**212 STEAKHOUSE, INC., and NIKOLAY VOLPER**

                                        **Defendants.**

-----------------------------------------------------------------------X

<u>**NOTICE OF MOTION**</u>

    **PLEASE TAKE NOTICE** that upon the accompanying Memorandum of Law and

Declaration of Michael DiGiulio and exhibits thereto, Plaintiffs hereby move the Court pursuant

to 29 U.S.C. § 216(b) and N.Y. Lab. Law §§ 198(1-a), 663(1), for attorneys' fees and costs in the

amounts detailed in the accompanying submissions.


Dated: New York, NY
       November 8, 2024

                By: */s/ Michael DiGiulio*
                D. Maimon Kirschenbaum
                Denise A. Schulman
                Michael DiGiulio
                **JOSEPH & KIRSCHENBAUM LLP**
                32 Broadway, Suite 601
                New York, NY 10004
                (212) 688-5640 Phone
                (212) 981-9587 Fax

                *Attorneys for Plaintiffs and the Class*

1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------x
**NINO MARTINENKO, on behalf of**          **CASE NO. 22 CV 518**
**herself and others similarly situated,**

        **Plaintiff,**

   **v.**

**212 STEAKHOUSE, INC., and**
**NIKOLAY VOLPER,**

        **Defendants.**
-----------------------------------------------------x

## DECLARATION OF MICHAEL DIGIULIO

I, Michael DiGiulio, under penalty of perjury, affirm as follows:

1.      My name is Michael DiGiulio, and I am an associate attorney with Joseph & Kirschenbaum LLP ("JK"), Plaintiffs' counsel in the above-captioned matter. I am familiar with the facts and circumstances set forth herein.

2.      I am admitted to practice law in the State of New York.

3.      I submit this declaration in support of Plaintiffs' motion for attorneys' fees and costs.

4.      JK is a law firm dealing almost exclusively with employee rights.  Specifically, the firm represents employees in wage/hour and employment discrimination matters.

5.      JK has done substantial work identifying, investigating, prosecuting, and litigating Plaintiffs and the Class's claims. Among other things, JK has successfully obtained summary judgment in this action on a class wide basis.

6.      D. Maimon Kirschenbaum is the managing partner of the firm. Since graduating Fordham University School of Law in 2005, Mr. Kirschenbaum has worked at JK. As a result of

his accomplishments representing food service workers throughout New York City, Mr. Kirschenbaum became a member/partner of the firm in May of 2007.

7.    Ms. Schulman received her J.D. from NYU School of Law, *cum laude*, in 2008 and joined JK in January 2009.  She was an associate at JK until February 2017, when she became a partner.  Her practice at JK has consisted almost entirely of representing employees in their claims against employers.  She has litigated dozens of wage and hour cases against restaurants or other hospitality employers.  Many of these cases have been certified as collective and/or class actions.  Ms. Schulman has also spoken on several panels about substantive and procedural wage and hour matters.

8.    I graduated from Vermont Law School in 2014 and joined JK in 2020. Prior to joining JK, I clerked on the United States Court of Appeals for the Second Circuit and practiced as an associate attorney for Super Law Group.  Since joining JK, I have exclusively represented employees with wage and hour, discrimination, and retaliation claims

9.    I have served with Mr. Kirschenbaum and Ms. Schulman as co-lead counsel on many cases that have been certified as collective and/or class actions.

10.    Ileana Gomez Albuquerque was a paralegal at JK from approximately February 2022 to January 2023.  She had approximately five years of paralegal experience before joining JK, and she was a JD student at Elisabeth Haub School of Law at Pace University while employed by JK.

11.    Evelyn Velesaca joined JK as an administrative assistant in February 2022 and became a paralegal at the firm in January 2023.  She received her B.A. from Hunter College in 2022.  Before joining JK, Ms. Velesaca interned at Kramer Levin Naftalis & Frankel, the New York City Department of Social Services, and Volunteers of Legal Service.

2

12.      Jorge Aguirre was an administrative assistant at JK from approximately February 2023 to November 2023.  Before joining JK, Mr. Aguirre had over four years of experience working for the Maricopa County Superior Court, including as a judicial clerk, courtroom bailiff, and judicial assistant.

13.      Mariela Lini has been a paralegal at JK since January 2024.  She received her B.A. from John Jay College of Criminal Justice in 2019.  Before joining JK, she had nearly five years of experience as a legal assistant/paralegal.

14.      Andy Pichardo has been an administrative assistant at JK since December 2023. He received his BA from The City College of New York in June 2023.

15.      JK has been appointed lead or co-lead class counsel (or counsel for representative plaintiffs in FLSA collective actions) in actions in numerous federal and state courts.  *E.g.*, *Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234 (2d Cir. 2011) (affirming district court's certification of Rule 23 class of restaurant servers with JK as class counsel); *Jodie Lomeli v. Falkirk Management Corp.*, Index No. EF001580-2016, at 1 (N.Y. Supr. Ct. Cty. Orange, Oct. 13, 2021); *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 74 (S.D.N.Y. 2018) ("…the attorneys of Joseph & Kirschenbaum have substantial experience as lead or co-lead class counsel in wage and hour actions in this District."); *Argudo v. Parea Grp. LLC,* No. 18 CV 0678, U.S. Dist. LEXIS 163249 at *17 (S.D.N.Y. Sept. 24, 2019); *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61 (S.D.N.Y. 2018); *Murphy v. Lajaunie*, No. 13 CV 6503, 2015 U.S. Dist. LEXIS 97531 (S.D.N.Y. July 24, 2015); *Megason v. Starjem Rest. Corp.*, No. 12 Civ. 1299, 2014 U.S. Dist. LEXIS 3910 (S.D.N.Y. Jan. 13, 2014); *Schear v. Food Scope Am, Inc.*, 297 F.R.D. 114 (S.D.N.Y. 2014); *In re Milos Litig.*, No. 08 Civ. 6666, 2011 U.S. Dist. LEXIS 138473 (S.D.N.Y. Sept. 8, 2011); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010); *Kato v. Masa NY, LLC*, Index No. 09-104578 (S. Ct., N.Y.

County Jan. 28, 2010);*Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55 (S.D.N.Y. 2009); *Agofonova v. Nobu Corp.*, No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009); *Williams v. Twenty Ones, Inc.*, No. 07-Civ-3978, 2008 WL 2690734 (S.D.N.Y. June 30, 2008); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. Oct. 5, 2007).

16.    As a result of these lawsuits, JK has recovered over a hundred million dollars for thousands of workers.  *E.g.*, *Gordon v. Bluetriton Brands, Inc.*, No. 616877/2022 (N.Y. Sup. Ct. Nassau County Oct. 24, 2023) (granting final approval of $8.4 million settlement); *Capsolas v. Pasta Resources, Inc.*, No. 10 Civ. 5595, 2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) (granting final approval of $5,250,000 settlement); *Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240, 2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept. 14, 2012) (granting final approval of $8.5 million settlement); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 0520, 2012 U.S. Dist. LEXIS 25060 (S.D.N.Y. Feb. 24, 2012) (granting final approval of $4,750,000 settlement); *Alderman v. 21 Club Inc.*, No. 09 Civ. 2418 (S.D.N.Y. Jan. 27, 2012) (granting final approval of $2,000,000 settlement); *In re Milos Litig.*, No. 08 Civ. 6666, 2011 U.S. Dist. LEXIS 138473 (S.D.N.Y. Sept. 8, 2011) (granting final approval of $1,975,000 settlement); *Braunstein v. Hudson Hall LLC*, No. 19 Civ. 7983 (S.D.N.Y. May 14, 2021) (approving $950,000 settlement); *Ahad v. BLT Steak LLC*, No. 08 Civ. 5528 (S.D.N.Y. Aug. 13, 2010) (approving $925,000 settlement); *Brinker v. Planet Hollywood N.Y., L.P.*, No. 08 Civ. 443, 2009 U.S. Dist. LEXIS 76613 (S.D.N.Y. Aug. 13, 2009) (granting final approval of $900,000 settlement); *Agofonova v. Nobu Corp.*, No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009) (granting final approval of $2,500,000 settlement).

17.    Several of JK's cases have changed the landscape of wage and hour class and collective litigation in general, and such litigation in the food service industry specifically. *See*, *e.g.*, *Shahriar*, 659 F.3d 234 (affirming class certification and holding that in FLSA actions

4

pursued on a collective basis under 29 U.S.C. § 216(b), courts may exercise supplemental jurisdiction over state law claims pursued on a class basis under Fed. R. Civ. P. 23); *Spicer*, 249 F.R.D. 321 (holding that the New York Court of Appeals' decision in *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008), finding that mandatory charges can be gratuities applies retroactively and issuing first denial of a defendant's summary judgment motion on *World Yacht* claim).

18.    The hours reported are reasonable for a case of this complexity and magnitude and were compiled from contemporaneous time records maintained by each attorney and paralegal participating in the case.

19.    Attached hereto as **Exhibit 1** is a true and correct copy of Plaintiffs' counsel's contemporaneous time records for which it seeks attorneys' fees on this fee application. Plaintiffs' counsel exercised billing judgment to exclude over 50 hours of entries that were duplicative, vague, or otherwise excludable or solely related to Plaintiffs' and the Class's NYLL § 195 claims.

20.    In addition, **Exhibit 1** does not include time entries for which the Court previously awarded fee in connection with the sanctions motion in this action.

21.    In **Exhibit 1**, Plaintiffs' counsel applied a half rate for all attorney time for travel or waiting. This half rate is incorporated in the chart below.

22.    Below is a chart summarizing Class Counsel's specific attorneys' hourly rates, and their time worked on this matter, including total paralegal time and rates, to date. On reply, we will submit updated totals that accounts for Plaintiffs' counsel's time responding to Defendants' opposition to this motion.

| Individual | Rate | Total Hours | Total |
|---|---|---|---|
| D. Maimon Kirschenbaum | $500 | 17.0 | $8,500 |
| Denise Schulman | $500 | 241 | $120,500 |
| Denise Schulman (travel and waiting time) | $250 | 2 | $500 |
| Michael DiGiulio | $350 | 193.9 | $67,865 |

5

| | | | |
|---|---|---|---|
| Paralegals/administrative assistants | $125 | 112.4 | $14,050 |
| | **Total:** | **566.3** | **$211,415** |

23.    As indicated by the time records in **Exhibit 1**, among other things, in this litigation, Plaintiffs' Counsel took or defended 3 depositions; fully briefed a successful motion for FLSA collective certification; fully briefed a successful motion for Rule 23 class certification; obtained an FLSA collective and Rule 23 class; completed discovery on a class wide basis; attended a settlement conference, and engaged in additional settlement efforts; reviewed hundreds of pages of documents produced by Defendants; successfully opposed Defendants' motion to decertify the class; fully briefed a motion for summary judgment; and obtained a class wide judgment for minimum wage, overtime, and spread of hours violations.

24.    Attached hereto as **Exhibit 2** are copies of the invoices and receipts for the costs that Plaintiffs' counsel incurred and for which they are seeking reimbursement in this case.[1] Plaintiffs' Counsel incurred the following costs in litigating this case[2]:

| **Description of cost** | **Total costs** |
|---|---|
| Filing Fee | $402.00 |
| Service of Process | $155.50 |
| Court Transcripts | $216.48 |
| Deposition Fees | $3,284.40 |
| Mailing Expenses | $92.40 |
| **Total:** | **$4,150.78** |

25.    Attached hereto as **Exhibit 3** is a true and correct copy of the transcript of

*Orlando v. Liberty Ashes, Inc.*, No. 15 CV 9434 (S.D.N.Y. Sept. 4, 2020).

---

[1] Plaintiffs' Counsel is only seeking $25.20 of the costs reflected on the June 13, 2023 postage receipt because this amount reflects the cost of postage for mailing the notice of the Class's certification while the other costs on the receipt are for postage for Plaintiffs' Counsel's general office use. *See* **Exhibit 2** at 12.

[2] These costs do not include the $313 fee for Defendants' no-show deposition, for which the Court awarded costs on the sanctions motion.

26.    Attached hereto as **Exhibit 4** is a true and correct copy of the transcript of *Lola v.*

*Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13 CV 5008 (S.D.N.Y. Dec. 22, 2015).

27.    Attached hereto as **Exhibit 5** is a true and correct copy of the transcript of

*Zivkovic v. Laura Christy LLC*, No. 17 Civ. 553 (S.D.N.Y. June 15, 2022).

28.    Attached hereto as **Exhibit 6** is a true and correct copy of excerpts from the

Wolters Kluwer 2021 Real Rate Report.


Dated: New York, New York
      November 8, 2024                  /s/ Michael DiGiulio
                                      Michael DiGiulio

A-336

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|------|--------|------|------|------|-------|-------------|
| 212 Steakhouse | D. Maimon Kirschenbaum | 1/12/2022 | 2.2 | $500.00 | $1,100.00 | Intake Meeting, work on complaint |
| 212 Steakhouse | D. Maimon Kirschenbaum | 1/18/2022 | 0.4 | $500.00 | $200.00 | Finalize complaint |
| 212 Steakhouse | D. Maimon Kirschenbaum | 1/19/2022 | 0.2 | $500.00 | $100.00 | Communicate with client |
| 212 Steakhouse | Denise Schulman | 1/19/2022 | 0.2 | $500.00 | $100.00 | Edit complaint |
| 212 Steakhouse | Denise Schulman | 1/19/2022 | 0.1 | $500.00 | $50.00 | Email Koby re: filing |
| 212 Steakhouse | Denise Schulman | 1/21/2022 | 0.1 | $500.00 | $50.00 | Discuss filing with Koby |
| 212 Steakhouse | Denise Schulman | 1/21/2022 | 0.2 | $500.00 | $100.00 | Review filing |
| 212 Steakhouse | Denise Schulman | 1/21/2022 | 0.1 | $500.00 | $50.00 | Email Koby re: corrected filing |
| 212 Steakhouse | Denise Schulman | 2/1/2022 | 0.1 | $500.00 | $50.00 | Review affidavits of service/email Serving by Irving |
| 212 Steakhouse | Denise Schulman | 2/2/2022 | 0.1 | $500.00 | $50.00 | File affidavits of service |
| 212 Steakhouse | Denise Schulman | 2/22/2022 | 0.1 | $500.00 | $50.00 | Call with defense |
| 212 Steakhouse | D. Maimon Kirschenbaum | 2/25/2022 | 0.5 | $500.00 | $250.00 | Damages calculation, discussion w client |
| 212 Steakhouse | Denise Schulman | 2/25/2022 | 0.2 | $500.00 | $100.00 | Update damage calc |
| 212 Steakhouse | D. Maimon Kirschenbaum | 3/4/2022 | 0.2 | $500.00 | $100.00 | Email Demand to defense |
| 212 Steakhouse | Denise Schulman | 3/18/2022 | 0.1 | $500.00 | $50.00 | Email defense re: initial conference order |
| 212 Steakhouse | Denise Schulman | 3/23/2022 | 0.2 | $500.00 | $100.00 | Prepare default papers |
| 212 Steakhouse | Denise Schulman | 3/24/2022 | 0.1 | $500.00 | $50.00 | Email client re: discovery |
| 212 Steakhouse | Denise Schulman | 3/24/2022 | 0.1 | $500.00 | $50.00 | Email client re: discovery |
| 212 Steakhouse | Denise Schulman | 3/24/2022 | 0.1 | $500.00 | $50.00 | Review complaint |
| 212 Steakhouse | Denise Schulman | 3/28/2022 | 0.5 | $500.00 | $250.00 | Draft discovery requests |
| 212 Steakhouse | Denise Schulman | 3/28/2022 | 0.2 | $500.00 | $100.00 | Review client docs/prep for client call |
| 212 Steakhouse | D. Maimon Kirschenbaum | 3/29/2022 | 0.2 | $500.00 | $100.00 | Discussion re: MTD |
| 212 Steakhouse | Denise Schulman | 3/29/2022 | 0.7 | $500.00 | $350.00 | Research mtd/discuss same with Maimon |
| 212 Steakhouse | Denise Schulman | 3/29/2022 | 0.5 | $500.00 | $250.00 | Draft discovery requests |
| 212 Steakhouse | Denise Schulman | 3/29/2022 | 0.7 | $500.00 | $350.00 | Research mtd/listen to client recording |
| 212 Steakhouse | Denise Schulman | 3/29/2022 | 0.6 | $500.00 | $300.00 | Review documents for 216(b) |
| 212 Steakhouse | Denise Schulman | 3/29/2022 | 0.1 | $500.00 | $50.00 | Review pleadings from other 212 lawsuit |
| 212 Steakhouse | Denise Schulman | 3/29/2022 | 0.1 | $500.00 | $50.00 | Email defense re: CMP |
| 212 Steakhouse | Denise Schulman | 3/29/2022 | 0.4 | $500.00 | $200.00 | Research mtd |
| 212 Steakhouse | Denise Schulman | 3/29/2022 | 1 | $500.00 | $500.00 | Research mtd/discuss same with Maimon |
| 212 Steakhouse | Denise Schulman | 3/29/2022 | 0.3 | $500.00 | $150.00 | Work on CMP/review client docs |
| 212 Steakhouse | Denise Schulman | 3/29/2022 | 0.5 | $500.00 | $250.00 | Prep for client call/review answer |
| 212 Steakhouse | Denise Schulman | 3/29/2022 | 0.7 | $500.00 | $350.00 | Client call |

A-337

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|------|--------|------|------|------|-------|-------------|
| 212 Steakhouse | Denise Schulman | 3/30/2022 | 0.1 | $500.00 | $50.00 | Finalize/file CMP |
| 212 Steakhouse | Denise Schulman | 3/30/2022 | 0.2 | $500.00 | $100.00 | Review docs fro 216(b) motion/email client |
| 212 Steakhouse | Denise Schulman | 3/30/2022 | 0.3 | $500.00 | $150.00 | Draft 216(b) motion |
| 212 Steakhouse | Denise Schulman | 3/30/2022 | 0.4 | $500.00 | $200.00 | Research for 216(b) motion |
| 212 Steakhouse | Denise Schulman | 3/30/2022 | 0.1 | $500.00 | $50.00 | Update CMP/email defense re: same |
| 212 Steakhouse | Denise Schulman | 3/30/2022 | 0.8 | $500.00 | $400.00 | Draft 216(b) motion |
| 212 Steakhouse | Denise Schulman | 3/31/2022 | 1 | $500.00 | $500.00 | Mtd research |
| 212 Steakhouse | Denise Schulman | 3/31/2022 | 1.7 | $500.00 | $850.00 | Research mtd |
| 212 Steakhouse | Denise Schulman | 3/31/2022 | 0.4 | $500.00 | $200.00 | Draft 216(b) motion |
| 212 Steakhouse | Denise Schulman | 3/31/2022 | 0.6 | $500.00 | $300.00 | Draft client decl for 216(b) |
| 212 Steakhouse | Denise Schulman | 3/31/2022 | 0.1 | $500.00 | $50.00 | Review client email |
| 212 Steakhouse | Denise Schulman | 4/1/2022 | 0.7 | $500.00 | $350.00 | Draft 216(b) notice |
| 212 Steakhouse | Denise Schulman | 4/1/2022 | 0.1 | $500.00 | $50.00 | Email client re: decl |
| 212 Steakhouse | Denise Schulman | 4/1/2022 | 0.1 | $500.00 | $50.00 | Email client re: 216(b) |
| 212 Steakhouse | Denise Schulman | 4/3/2022 | 0.4 | $500.00 | $200.00 | Draft 216(b) motion |
| 212 Steakhouse | Denise Schulman | 4/4/2022 | 1.3 | $500.00 | $650.00 | Research mtd |
| 212 Steakhouse | Denise Schulman | 4/4/2022 | 0.2 | $500.00 | $100.00 | Draft mtd |
| 212 Steakhouse | Denise Schulman | 4/4/2022 | 1.6 | $500.00 | $800.00 | Draft mtd opp |
| 212 Steakhouse | Denise Schulman | 4/4/2022 | 0.7 | $500.00 | $350.00 | Research and draft mtd |
| 212 Steakhouse | Denise Schulman | 4/4/2022 | 0.3 | $500.00 | $150.00 | Finalize/file 216(b) motion |
| 212 Steakhouse | Denise Schulman | 4/5/2022 | 0.4 | $500.00 | $200.00 | Mtd research |
| 212 Steakhouse | Denise Schulman | 4/5/2022 | 0.1 | $500.00 | $50.00 | Prep for initial conference |
| 212 Steakhouse | Denise Schulman | 4/5/2022 | 0.6 | $500.00 | $300.00 | Draft mtd |
| 212 Steakhouse | Denise Schulman | 4/6/2022 | 0.5 | $500.00 | $250.00 | Draft discovery requests |
| 212 Steakhouse | Denise Schulman | 4/6/2022 | 0.3 | $500.00 | $150.00 | Prep for initial conference |
| 212 Steakhouse | Denise Schulman | 4/6/2022 | 0.4 | $500.00 | $200.00 | Initial conference |
| 212 Steakhouse | Denise Schulman | 4/6/2022 | 0.6 | $500.00 | $300.00 | Draft mtd |
| 212 Steakhouse | Denise Schulman | 4/7/2022 | 0.6 | $500.00 | $300.00 | Draft discovery requests |
| 212 Steakhouse | Denise Schulman | 4/8/2022 | 2.5 | $500.00 | $1,250.00 | Draft motion to dismiss |
| 212 Steakhouse | D. Maimon Kirschenbaum | 4/11/2022 | 0.1 | $500.00 | $50.00 | Discussion re: MTD |
| 212 Steakhouse | Denise Schulman | 4/11/2022 | 0.5 | $500.00 | $250.00 | Draft motion to dismiss |
| 212 Steakhouse | Denise Schulman | 4/11/2022 | 0.1 | $500.00 | $50.00 | Discuss mtd with Maimon |
| 212 Steakhouse | Denise Schulman | 4/11/2022 | 0.3 | $500.00 | $150.00 | Draft letter to court re: briefing schedule |

A-338

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|------|--------|------|------|------|-------|-------------|
| 212 Steakhouse | Denise Schulman | 4/12/2022 | 0.1 | $500.00 | $50.00 | Draft letter to court re: briefing schedule |
| 212 Steakhouse | Denise Schulman | 4/19/2022 | 3.2 | $500.00 | $1,600.00 | Draft 216(b) reply |
| 212 Steakhouse | Denise Schulman | 4/19/2022 | 0.5 | $500.00 | $250.00 | Review 216(b) opp/draft reply |
| 212 Steakhouse | Denise Schulman | 4/20/2022 | 3.5 | $500.00 | $1,750.00 | Draft 216(b) reply |
| 212 Steakhouse | Denise Schulman | 4/21/2022 | 0.1 | $500.00 | $50.00 | Finalize/file 216(b) reply |
| 212 Steakhouse | Denise Schulman | 4/21/2022 | 0.1 | $500.00 | $50.00 | Prepare reply exhibits |
| 212 Steakhouse | Denise Schulman | 4/21/2022 | 0.4 | $500.00 | $200.00 | Draft reply brief |
| 212 Steakhouse | Denise Schulman | 4/26/2022 | 0.2 | $500.00 | $100.00 | Review 216(b) order/email client |
| 212 Steakhouse | Denise Schulman | 4/27/2022 | 0.7 | $500.00 | $350.00 | Draft mtd |
| 212 Steakhouse | Denise Schulman | 4/27/2022 | 0.1 | $500.00 | $50.00 | Email Ileana and Evelyn re: mailing |
| 212 Steakhouse | Denise Schulman | 4/27/2022 | 0.1 | $500.00 | $50.00 | Planning for notice mailing |
| 212 Steakhouse | Denise Schulman | 4/27/2022 | 0.2 | $500.00 | $100.00 | Update notice |
| 212 Steakhouse | Denise Schulman | 4/28/2022 | 0.2 | $500.00 | $100.00 | Discuss 216(b) mailing with Ileana and Evelyn |
| 212 Steakhouse | Evelyn Velesaca | 4/29/2022 | 0.6 | $125.00 | $75.00 | Assemble mailing envelopes |
| 212 Steakhouse | Denise Schulman | 5/2/2022 | 0.1 | $500.00 | $50.00 | Review discovery requests |
| 212 Steakhouse | D. Maimon Kirschenbaum | 5/3/2022 | 0.2 | $500.00 | $100.00 | Discuss next steps, discovery |
| 212 Steakhouse | Denise Schulman | 5/3/2022 | 0.1 | $500.00 | $50.00 | Email Evelyn re: mailing |
| 212 Steakhouse | Denise Schulman | 5/3/2022 | 0.1 | $500.00 | $50.00 | Email Ruth re: 216(b) text message |
| 212 Steakhouse | Denise Schulman | 5/3/2022 | 0.1 | $500.00 | $50.00 | Email defense |
| 212 Steakhouse | Denise Schulman | 5/3/2022 | 0.1 | $500.00 | $50.00 | Email client re: settlement |
| 212 Steakhouse | Denise Schulman | 5/3/2022 | 0.1 | $500.00 | $50.00 | Email defense re: counterclaims |
| 212 Steakhouse | Evelyn Velesaca | 5/3/2022 | 0.6 | $125.00 | $75.00 | Finish assembling mailing envelopes |
| 212 Steakhouse | Denise Schulman | 5/9/2022 | 0.1 | $500.00 | $50.00 | Email Ruth re: 216(b) text message |
| 212 Steakhouse | Denise Schulman | 5/10/2022 | 0.1 | $500.00 | $50.00 | Call with potential opt-in (Dagmara) |
| 212 Steakhouse | Denise Schulman | 5/10/2022 | 0.2 | $500.00 | $100.00 | Email potential opt-in |
| 212 Steakhouse | Denise Schulman | 5/10/2022 | 0.3 | $500.00 | $150.00 | Call with potential opt-in (Damon) |
| 212 Steakhouse | Denise Schulman | 5/10/2022 | 0.1 | $500.00 | $50.00 | Call with potential opt-in |
| 212 Steakhouse | Evelyn Velesaca | 5/10/2022 | 0.1 | $125.00 | $12.50 | Mail notices |
| 212 Steakhouse | D. Maimon Kirschenbaum | 5/11/2022 | 0.1 | $500.00 | $100.00 | Review discovery emails |
| 212 Steakhouse | Denise Schulman | 5/11/2022 | 0.1 | $500.00 | $50.00 | Email defense re: discovery |
| 212 Steakhouse | Denise Schulman | 5/16/2022 | 0.1 | $500.00 | $50.00 | Email defense re: discovery |
| 212 Steakhouse | Denise Schulman | 5/19/2022 | 0.1 | $500.00 | $50.00 | Email defense re: meet and confer |
| 212 Steakhouse | Denise Schulman | 5/24/2022 | 0.1 | $500.00 | $50.00 | Discuss discovery with Maimon |

Case 1:22-cv-00518-JLR-RWL    Document 152-1    Filed 11/08/24    Page 4 of 27
Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|------|--------|------|------|------|-------|-------------|
| 212 Steakhouse | D. Maimon Kirschenbaum | 5/26/2022 | 0.2 | $500.00 | $100.00 | Discussion re: discovery |
| 212 Steakhouse | Denise Schulman | 5/26/2022 | 0.3 | $500.00 | $150.00 | Draft letter to court re: discovery extension |
| 212 Steakhouse | Denise Schulman | 5/26/2022 | 0.1 | $500.00 | $50.00 | Revise CMP |
| 212 Steakhouse | Denise Schulman | 5/26/2022 | 0.1 | $500.00 | $50.00 | File letter to court |
| 212 Steakhouse | Denise Schulman | 5/27/2022 | 0.1 | $500.00 | $50.00 | Email Ileana re: contacting opt--in |
| 212 Steakhouse | D. Maimon Kirschenbaum | 6/10/2022 | 0.1 | $500.00 | $50.00 | Discussion w DAS re: discovery |
| 212 Steakhouse | Denise Schulman | 6/10/2022 | 0.1 | $500.00 | $50.00 | Discuss discovery with Maimon |
| 212 Steakhouse | D. Maimon Kirschenbaum | 6/14/2022 | 0.2 | $500.00 | $100.00 | Discuss discovery and opt-ins with Denise |
| 212 Steakhouse | Denise Schulman | 6/23/2022 | 0.1 | $500.00 | $50.00 | Email potential opt-in |
| 212 Steakhouse | Denise Schulman | 6/23/2022 | 0.1 | $500.00 | $50.00 | Email client |
| 212 Steakhouse | D. Maimon Kirschenbaum | 7/12/2022 | 0.2 | $500.00 | $100.00 | Meeting re: class cert/discovery |
| 212 Steakhouse | Denise Schulman | 7/12/2022 | 0.1 | $500.00 | $50.00 | Email defense re: discovery |
| 212 Steakhouse | Denise Schulman | 7/15/2022 | 0.2 | $500.00 | $100.00 | Call with defense re: discovery/discuss same with Mike |
| 212 Steakhouse | Denise Schulman | 7/17/2022 | 0.9 | $500.00 | $450.00 | Review defendants' production |
| 212 Steakhouse | Denise Schulman | 7/18/2022 | 0.4 | $500.00 | $200.00 | Review status update with Mike |
| 212 Steakhouse | Denise Schulman | 7/18/2022 | 0.1 | $500.00 | $50.00 | review fee application |
| 212 Steakhouse | Denise Schulman | 7/18/2022 | 0.1 | $500.00 | $50.00 | Email Ileana |
| 212 Steakhouse | Ileana Gomez Alburquerque | 7/18/2022 | 0.2 | $125.00 | $25.00 | Filed NOA for MD |
| 212 Steakhouse | Denise Schulman | 7/19/2022 | 0.1 | $500.00 | $50.00 | Email Mike re: conference |
| 212 Steakhouse | Denise Schulman | 7/19/2022 | 0.2 | $500.00 | $100.00 | Review defendants' production |
| 212 Steakhouse | Mike DiGiulio | 7/19/2022 | 0.2 | $350.00 | $70.00 | Review supplemental production |
| 212 Steakhouse | Denise Schulman | 7/20/2022 | 0.4 | $500.00 | $200.00 | Draft decl/email defense re: same |
| 212 Steakhouse | Denise Schulman | 7/20/2022 | 0.3 | $500.00 | $150.00 | Discuss discovery with Mike |
| 212 Steakhouse | Denise Schulman | 7/21/2022 | 0.1 | $500.00 | $50.00 | Email Dagmara re: paystubs |
| 212 Steakhouse | Denise Schulman | 7/21/2022 | 0.1 | $500.00 | $50.00 | Email Mike re: conference |
| 212 Steakhouse | Denise Schulman | 7/22/2022 | 0.2 | $500.00 | $100.00 | Review defendants' production |
| 212 Steakhouse | Denise Schulman | 7/22/2022 | 0.2 | $500.00 | $100.00 | Discuss next steps with Mike |
| 212 Steakhouse | Denise Schulman | 7/22/2022 | 0.2 | $500.00 | $100.00 | Draft motion to amend complaint |
| 212 Steakhouse | Ileana Gomez Alburquerque | 7/22/2022 | 0.2 | $125.00 | $25.00 | Ordered transcript for court conference |
| 212 Steakhouse | Denise Schulman | 7/25/2022 | 0.1 | $500.00 | $50.00 | Discuss class cert with Maimon |
| 212 Steakhouse | Denise Schulman | 7/25/2022 | 0.1 | $500.00 | $50.00 | Email Dagmara re: court conference |
| 212 Steakhouse | Denise Schulman | 7/28/2022 | 0.1 | $500.00 | $50.00 | Call with defense re: settlement/email co-counsel re: same |
| 212 Steakhouse | Denise Schulman | 8/3/2022 | 0.1 | $500.00 | $50.00 | Email defense re: transcript |

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|------|--------|------|------|------|-------|-------------|
| 212 Steakhouse | Denise Schulman | 8/5/2022 | 0.3 | $500.00 | $150.00 | Review tip sheets and collective list |
| 212 Steakhouse | Denise Schulman | 8/5/2022 | 0.1 | $500.00 | $50.00 | Review pleadings |
| 212 Steakhouse | Denise Schulman | 8/5/2022 | 0.9 | $500.00 | $450.00 | Review defendants' production |
| 212 Steakhouse | Mike DiGiulio | 8/5/2022 | 1.3 | $350.00 | $455.00 | Review discovery hearing transcript for production, review defendants' supplemental production |
| 212 Steakhouse | Denise Schulman | 8/8/2022 | 0.2 | $500.00 | $100.00 | Client call (Nino) re: pay records |
| 212 Steakhouse | Denise Schulman | 8/8/2022 | 0.1 | $500.00 | $50.00 | Review questions for Nino |
| 212 Steakhouse | Denise Schulman | 8/8/2022 | 0.2 | $500.00 | $100.00 | Discuss discovery with Mike |
| 212 Steakhouse | Mike DiGiulio | 8/8/2022 | 2 | $350.00 | $700.00 | Review supplemental document production, analyze discovery deficiencies, strategize on sanction requests |
| 212 Steakhouse | D. Maimon Kirschenbaum | 8/9/2022 | 0.2 | $500.00 | $100.00 | Discuss outstanding discovery/30b6 w team |
| 212 Steakhouse | Denise Schulman | 8/10/2022 | 0.1 | $500.00 | $50.00 | Discuss discovery with Mike |
| 212 Steakhouse | Denise Schulman | 8/10/2022 | 0.1 | $500.00 | $50.00 | Discuss dep with Mike |
| 212 Steakhouse | Denise Schulman | 8/10/2022 | 0.3 | $500.00 | $150.00 | Edit 30(b)(6) notice |
| 212 Steakhouse | Denise Schulman | 8/10/2022 | 0.1 | $500.00 | $50.00 | Email Mike re: dep notice |
| 212 Steakhouse | Denise Schulman | 8/10/2022 | 0.1 | $500.00 | $50.00 | Review Nino docs |
| 212 Steakhouse | Mike DiGiulio | 8/10/2022 | 1.2 | $350.00 | $420.00 | Draft 30(b)(6) notice, draft deficiency email to defense re: August 5th production |
| 212 Steakhouse | Mike DiGiulio | 8/19/2022 | 1 | $350.00 | $350.00 | Review classwide production |
| 212 Steakhouse | Denise Schulman | 8/23/2022 | 0.5 | $500.00 | $250.00 | Review defendants' production |
| 212 Steakhouse | D. Maimon Kirschenbaum | 8/24/2022 | 0.6 | $500.00 | $300.00 | Discuss discovery production, next steps with Denise |
| 212 Steakhouse | Denise Schulman | 8/24/2022 | 0.6 | $500.00 | $300.00 | Review defendants' production/draft email to defense re: deficiencies |
| 212 Steakhouse | Denise Schulman | 8/24/2022 | 0.1 | $500.00 | $50.00 | Review defendants' production |
| 212 Steakhouse | Denise Schulman | 8/24/2022 | 0.3 | $500.00 | $150.00 | Discuss discovery and sanctions with Maimon |
| 212 Steakhouse | Denise Schulman | 8/29/2022 | 0.2 | $500.00 | $100.00 | Call with Mike re: discovery |
| 212 Steakhouse | Denise Schulman | 8/29/2022 | 0.1 | $500.00 | $50.00 | Review outstanding discovery issues |
| 212 Steakhouse | Mike DiGiulio | 8/29/2022 | 0.5 | $350.00 | $175.00 | Review August 19 classwide production, correspond with partner re: next steps |
| 212 Steakhouse | Mike DiGiulio | 8/29/2022 | 0.4 | $350.00 | $140.00 | Call with partner re: strategy |
| 212 Steakhouse | Mike DiGiulio | 9/2/2022 | 0.2 | $350.00 | $70.00 | Review letter and order |
| 212 Steakhouse | D. Maimon Kirschenbaum | 9/13/2022 | 0.2 | $500.00 | $100.00 | Discuss depos with team |
| 212 Steakhouse | Evelyn Velesaca | 9/16/2022 | 1.1 | $125.00 | $137.50 | Bates stamp documents |

A-341

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|------|--------|------|------|------|-------|-------------|
| 212 Steakhouse | Denise Schulman | 9/19/2022 | 0.3 | $500.00 | $150.00 | Discuss dep with Mike |
| 212 Steakhouse | Denise Schulman | 9/19/2022 | 0.2 | $500.00 | $100.00 | Research other cases with 212 Steakhouse |
| 212 Steakhouse | Denise Schulman | 9/20/2022 | 3.9 | $500.00 | $1,950.00 | Review/edit dep outline |
| 212 Steakhouse | Evelyn Velesaca | 9/20/2022 | 2.4 | $125.00 | $300.00 | Print Exhibits for Deposition |
| 212 Steakhouse | Denise Schulman | 9/21/2022 | 0.2 | $500.00 | $100.00 | Dep prep |
| 212 Steakhouse | Denise Schulman | 9/21/2022 | 0.2 | $500.00 | $100.00 | Discuss enterprise coverage with Mike |
| 212 Steakhouse | Denise Schulman | 9/21/2022 | 1 | $500.00 | $500.00 | Prepare damage calc |
| 212 Steakhouse | Evelyn Velesaca | 9/21/2022 | 2.2 | $125.00 | $275.00 | Print Exhibits for Deposition |
| 212 Steakhouse | Evelyn Velesaca | 9/21/2022 | 1.3 | $125.00 | $162.50 | Bates stamp and re-arrange documents for deposition |
| 212 Steakhouse | Denise Schulman | 9/22/2022 | 1.2 | $500.00 | $600.00 | Prepare damage calc |
| 212 Steakhouse | Denise Schulman | 9/23/2022 | 0.1 | $500.00 | $50.00 | Discuss doc review with Evelyn |
| 212 Steakhouse | Denise Schulman | 9/23/2022 | 0.4 | $500.00 | $200.00 | Discuss next steps with Mike |
| 212 Steakhouse | Denise Schulman | 9/23/2022 | 0.8 | $500.00 | $400.00 | Review defendants' production |
| 212 Steakhouse | Evelyn Velesaca | 9/23/2022 | 1.1 | $125.00 | $137.50 | Complete D's document log (bates stamped) |
| 212 Steakhouse | Denise Schulman | 9/28/2022 | 4.7 | $500.00 | $2,350.00 | Edit dep outline |
| 212 Steakhouse | Evelyn Velesaca | 9/28/2022 | 1.6 | $125.00 | $200.00 | Complete D's document log (bates stamped) |
| 212 Steakhouse | Mike DiGiulio | 9/28/2022 | 0.8 | $350.00 | $280.00 | Review 30(b)(6) outline edits from partner, contact client re: emails |
| 212 Steakhouse | Denise Schulman | 9/29/2022 | 0.1 | $500.00 | $50.00 | Email Mike re: dep |
| 212 Steakhouse | Evelyn Velesaca | 9/29/2022 | 0.4 | $125.00 | $50.00 | Combine Nino's paychecks into one PDF |
| 212 Steakhouse | D. Maimon Kirschenbaum | 9/30/2022 | 0.5 | $500.00 | $250.00 | Discussion re: deposition |
| 212 Steakhouse | Denise Schulman | 9/30/2022 | 0.2 | $500.00 | $100.00 | Discuss deposition with Maimon |
| 212 Steakhouse | Denise Schulman | 10/3/2022 | 0.1 | $500.00 | $50.00 | Review client texts |
| 212 Steakhouse | Mike DiGiulio | 10/3/2022 | 1 | $350.00 | $350.00 | Review outline, edit, incorporate exhibits |
| 212 Steakhouse | Denise Schulman | 10/4/2022 | 0.6 | $500.00 | $300.00 | Discuss dep with Mike |
| 212 Steakhouse | Denise Schulman | 10/4/2022 | 0.1 | $500.00 | $50.00 | Dep prep |
| 212 Steakhouse | Evelyn Velesaca | 10/4/2022 | 3.3 | $125.00 | $412.50 | Print and bates stamp docs for deposition |
| 212 Steakhouse | Mike DiGiulio | 10/4/2022 | 1 | $350.00 | $350.00 | Edit 30(b)(6) outline |
| 212 Steakhouse | Mike DiGiulio | 10/4/2022 | 2.9 | $350.00 | $1,015.00 | Draft outline |
| 212 Steakhouse | Mike DiGiulio | 10/4/2022 | 0.8 | $350.00 | $280.00 | Meeting with partner re: deposition |
| 212 Steakhouse | Denise Schulman | 10/6/2022 | 0.3 | $500.00 | $150.00 | Dep prep |
| 212 Steakhouse | Denise Schulman | 10/6/2022 | 6.1 | $500.00 | $3,050.00 | Attend deposition |
| 212 Steakhouse | Denise Schulman | 10/6/2022 | 0.2 | $500.00 | $100.00 | Discuss next steps with Mike |

A-342

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|------|--------|------|------|------|-------|-------------|
| 212 Steakhouse | Denise Schulman | 10/6/2022 | 0.1 | $500.00 | $50.00 | Call with defense re: dep |
| 212 Steakhouse | Evelyn Velesaca | 10/6/2022 | 0.4 | $125.00 | $50.00 | Print outline and bates stamp docs for depo |
| 212 Steakhouse | Mike DiGiulio | 10/6/2022 | 7 | $350.00 | $2,450.00 | Conduct 30(b)(6) depo |
| 212 Steakhouse | Denise Schulman | 10/7/2022 | 0.4 | $500.00 | $200.00 | Edit status report |
| 212 Steakhouse | Denise Schulman | 10/7/2022 | 0.1 | $500.00 | $50.00 | Discuss next steps with Mike |
| 212 Steakhouse | Mike DiGiulio | 10/7/2022 | 1.5 | $350.00 | $525.00 | Draft status report and send to defense |
| 212 Steakhouse | Mike DiGiulio | 10/11/2022 | 0.3 | $350.00 | $105.00 | Confer with defense re: status report, file report |
| 212 Steakhouse | Evelyn Velesaca | 10/12/2022 | 1.2 | $125.00 | $150.00 | Scan and save depo exhibits |
| 212 Steakhouse | Mike DiGiulio | 10/12/2022 | 0.2 | $350.00 | $70.00 | Confer with client re: depo and sanctions call |
| 212 Steakhouse | Mike DiGiulio | 10/13/2022 | 0.1 | $350.00 | $35.00 | File transcript from depo |
| 212 Steakhouse | D. Maimon Kirschenbaum | 10/20/2022 | 0.5 | $500.00 | $250.00 | Discussion re: possible settlement |
| 212 Steakhouse | Mike DiGiulio | 10/24/2022 | 0.3 | $350.00 | $105.00 | Resarch Lehrburger cases |
| 212 Steakhouse | Mike DiGiulio | 10/24/2022 | 0.5 | $350.00 | $175.00 | Draft and file pre-motion letter to Lehrburger |
| 212 Steakhouse | Mike DiGiulio | 10/27/2022 | 0.5 | $350.00 | $175.00 | Amend initial disclsoures |
| 212 Steakhouse | D. Maimon Kirschenbaum | 10/28/2022 | 0.2 | $500.00 | $100.00 | meeting re: sanctions brief |
| 212 Steakhouse | Denise Schulman | 10/28/2022 | 0.4 | $500.00 | $200.00 | Edit initial disclosures |
| 212 Steakhouse | Mike DiGiulio | 10/28/2022 | 0.3 | $350.00 | $105.00 | Finalize initial disclosure amendments, send to defense with defense depo transcript |
| 212 Steakhouse | Denise Schulman | 11/3/2022 | 0.1 | $500.00 | $50.00 | Discuss class cert with Mike |
| 212 Steakhouse | Denise Schulman | 11/4/2022 | 0.2 | $500.00 | $100.00 | Discuss class cert with Mike |
| 212 Steakhouse | Mike DiGiulio | 11/4/2022 | 2.1 | $350.00 | $735.00 | Draft class cert motion |
| 212 Steakhouse | Mike DiGiulio | 11/8/2022 | 0.5 | $350.00 | $175.00 | Confer with clients re: deposition dates |
| 212 Steakhouse | Mike DiGiulio | 11/9/2022 | 0.6 | $350.00 | $210.00 | Coordinate with clients re: date of depositions |
| 212 Steakhouse | Mike DiGiulio | 11/9/2022 | 1.9 | $350.00 | $665.00 | Draft class cert motion |
| 212 Steakhouse | Mike DiGiulio | 11/9/2022 | 0.6 | $350.00 | $210.00 | Coordinate with clients re: date of depositions |
| 212 Steakhouse | Mike DiGiulio | 11/14/2022 | 2.5 | $350.00 | $875.00 | Finish draft of class cert motion |
| 212 Steakhouse | Denise Schulman | 11/15/2022 | 0.1 | $500.00 | $50.00 | Discuss class cert with Mike |
| 212 Steakhouse | Denise Schulman | 11/15/2022 | 0.7 | $500.00 | $350.00 | Edit class cert brief |
| 212 Steakhouse | Mike DiGiulio | 11/15/2022 | 1.8 | $350.00 | $630.00 | Review class cert brief edits, call with partner, re-draft brief |
| 212 Steakhouse | D. Maimon Kirschenbaum | 11/18/2022 | 0.2 | $500.00 | $100.00 | Work on Settlement discussions |
| 212 Steakhouse | Mike DiGiulio | 11/20/2022 | 0.2 | $500.00 | $100.00 | Email Settlement Demand to Defendants |
| 212 Steakhouse | Mike DiGiulio | 11/21/2022 | 0.6 | $350.00 | $210.00 | Finish draft of reply brief |
| 212 Steakhouse | Mike DiGiulio | 11/21/2022 | 2.5 | $350.00 | $875.00 | Draft reply brief, incorporate edits from partner |

Case 1:22-cv-00518-JLR-RWL    Document 152-1    Filed 11/08/24    Page 8 of 27
Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|------|--------|------|------|------|-------|-------------|
| 212 Steakhouse | Mike DiGiulio | 11/22/2022 | 1.5 | $350.00 | $525.00 | Finalize reply brief |
| 212 Steakhouse | Mike DiGiulio | 11/22/2022 | 1 | $350.00 | $350.00 | Client Nino depo prep |
| 212 Steakhouse | Mike DiGiulio | 11/22/2022 | 1 | $350.00 | $350.00 | Client Dagmara depo prep |
| 212 Steakhouse | Mike DiGiulio | 11/22/2022 | 1 | $350.00 | $350.00 | Finalize reply brief and file on docket |
| 212 Steakhouse | Denise Schulman | 11/29/2022 | 0.1 | $500.00 | $50.00 | Discuss class cert with Mike |
| 212 Steakhouse | Mike DiGiulio | 11/29/2022 | 3.9 | $350.00 | $1,365.00 | Draft class certification motion |
| 212 Steakhouse | Mike DiGiulio | 11/30/2022 | 2 | $350.00 | $700.00 | Finalize class cert brief and declarations, send to partner for review |
| 212 Steakhouse | Denise Schulman | 12/1/2022 | 0.7 | $500.00 | $350.00 | Edit class cert motion |
| 212 Steakhouse | Denise Schulman | 12/2/2022 | 0.2 | $500.00 | $100.00 | Review cases re: adding opt-in as named plaintiff |
| 212 Steakhouse | Denise Schulman | 12/2/2022 | 2.4 | $500.00 | $1,200.00 | Edit class cert motion |
| 212 Steakhouse | Denise Schulman | 12/2/2022 | 0.1 | $500.00 | $50.00 | Discuss class cert with Mike |
| 212 Steakhouse | Mike DiGiulio | 12/2/2022 | 1 | $350.00 | $350.00 | Caselaw research opt-in plaintiff and amending complaint |
| 212 Steakhouse | Mike DiGiulio | 12/2/2022 | 0.1 | $350.00 | $35.00 | Confirm plaintiffs' depositions with defense counsel |
| 212 Steakhouse | Denise Schulman | 12/5/2022 | 0.2 | $500.00 | $100.00 | Review class cert brief |
| 212 Steakhouse | Denise Schulman | 12/5/2022 | 0.1 | $500.00 | $50.00 | Discuss class cert with Mike |
| 212 Steakhouse | Denise Schulman | 12/5/2022 | 3.4 | $500.00 | $1,700.00 | Edit class cert motion |
| 212 Steakhouse | Mike DiGiulio | 12/5/2022 | 0.1 | $350.00 | $35.00 | Confirm deposition with client Martinenko |
| 212 Steakhouse | Mike DiGiulio | 12/5/2022 | 0.9 | $350.00 | $315.00 | Review class cert motion, find record cites, discuss with partner, send back to partner for final review |
| 212 Steakhouse | Mike DiGiulio | 12/5/2022 | 0.1 | $350.00 | $35.00 | Confirm deposition with client Huk |
| 212 Steakhouse | Mike DiGiulio | 12/6/2022 | 0.1 | $350.00 | $35.00 | Confirm new depo date |
| 212 Steakhouse | Mike DiGiulio | 12/6/2022 | 0.6 | $350.00 | $210.00 | Calls with clients and defense counsel re: depositions |
| 212 Steakhouse | Denise Schulman | 12/7/2022 | 1.2 | $500.00 | $600.00 | Edit class cert motion |
| 212 Steakhouse | Mike DiGiulio | 12/7/2022 | 0.5 | $350.00 | $175.00 | Update declarations for class cert brief |
| 212 Steakhouse | D. Maimon Kirschenbaum | 12/8/2022 | 0.2 | $500.00 | $100.00 | Meeting re: class cert |
| 212 Steakhouse | Denise Schulman | 12/8/2022 | 1.1 | $500.00 | $550.00 | Review class cert brief |
| 212 Steakhouse | Denise Schulman | 12/8/2022 | 0.1 | $500.00 | $50.00 | Discuss class cert with Mike |
| 212 Steakhouse | Mike DiGiulio | 12/8/2022 | 0.3 | $350.00 | $105.00 | Send decls to clients for review |
| 212 Steakhouse | Mike DiGiulio | 12/8/2022 | 1.6 | $350.00 | $560.00 | Input record citations into class cert motion, amend declarations |
| 212 Steakhouse | Denise Schulman | 12/9/2022 | 0.2 | $500.00 | $100.00 | Edit class cert notice of motion |
| 212 Steakhouse | Mike DiGiulio | 12/9/2022 | 0.9 | $350.00 | $315.00 | Finalize class cert motion and file |

A-344

| Case | Biller | Date | Time | Rate | Total | Description |
|---|---|---|---|---|---|---|
| 212 Steakhouse | Mike DiGiulio | 12/9/2022 | 1.2 | $350.00 | $420.00 | Finalize decs, exhibits, and memo for class cert motion |
| 212 Steakhouse | Mike DiGiulio | 12/9/2022 | 0.2 | $350.00 | $70.00 | Confer with clients re: declarations for class cert motion, obtain signatures on decs. |
| 212 Steakhouse | Denise Schulman | 12/12/2022 | 0.1 | $500.00 | $50.00 | Check judge's rules re: courtesy copies |
| 212 Steakhouse | Mike DiGiulio | 12/16/2022 | 0.1 | $350.00 | $35.00 | Confirm timing of depos with defense counsel |
| 212 Steakhouse | Mike DiGiulio | 12/19/2022 | 0.4 | $350.00 | $140.00 | Confirm client depositions |
| 212 Steakhouse | D. Maimon Kirschenbaum | 12/20/2022 | 0.2 | $500.00 | $100.00 | Discussion re: deposition |
| 212 Steakhouse | Denise Schulman | 12/20/2022 | 0.4 | $500.00 | $200.00 | Discuss depositions and settlement with Mike and Maimon |
| 212 Steakhouse | Denise Schulman | 12/20/2022 | 0.1 | $500.00 | $50.00 | Email Mike re: dep questions about immigration status |
| 212 Steakhouse | Mike DiGiulio | 12/20/2022 | 0.2 | $350.00 | $70.00 | Confer with clients and partners re: settlement offer |
| 212 Steakhouse | Mike DiGiulio | 12/20/2022 | 7 | $350.00 | $2,450.00 | Defend client depositions |
| 212 Steakhouse | Mike DiGiulio | 12/21/2022 | 0.5 | $350.00 | $175.00 | Confer with clients re: settlement demand issues |
| 212 Steakhouse | Mike DiGiulio | 12/21/2022 | 0.6 | $350.00 | $210.00 | Send counter offer to defense |
| 212 Steakhouse | Denise Schulman | 12/27/2022 | 0.3 | $500.00 | $150.00 | Review Ds class cert opp |
| 212 Steakhouse | Denise Schulman | 12/27/2022 | 0.1 | $500.00 | $50.00 | Finalize/file letter to court re: extension of time |
| 212 Steakhouse | Denise Schulman | 12/27/2022 | 0.1 | $500.00 | $50.00 | Draft letter to court re: extension of time for class cert reply |
| 212 Steakhouse | Denise Schulman | 12/27/2022 | 0.1 | $500.00 | $50.00 | Email defense re: extension of time for class cert reply |
| 212 Steakhouse | Denise Schulman | 12/28/2022 | 0.1 | $500.00 | $50.00 | Review deadlines |
| 212 Steakhouse | Denise Schulman | 12/28/2022 | 0.1 | $500.00 | $50.00 | Email Mike re: class cert reply |
| 212 Steakhouse | Denise Schulman | 12/28/2022 | 0.7 | $500.00 | $350.00 | Draft class cert reply |
| 212 Steakhouse | Denise Schulman | 1/3/2023 | 0.1 | $500.00 | $50.00 | Discuss class cert with Mike |
| 212 Steakhouse | Mike DiGiulio | 1/3/2023 | 1.2 | $350.00 | $420.00 | Edit and include citations for reply brief to class cert motion |
| 212 Steakhouse | Mike DiGiulio | 1/3/2023 | 0.4 | $350.00 | $140.00 | Review MOL Opp. to class cert motion |
| 212 Steakhouse | Denise Schulman | 1/4/2023 | 0.1 | $500.00 | $50.00 | Discuss next steps with Mike |
| 212 Steakhouse | Denise Schulman | 1/4/2023 | 0.3 | $500.00 | $150.00 | Edit class cert reply brief |
| 212 Steakhouse | Mike DiGiulio | 1/4/2023 | 0.1 | $350.00 | $35.00 | File reply brief |
| 212 Steakhouse | Mike DiGiulio | 1/4/2023 | 0.4 | $350.00 | $140.00 | Finalize reply brief and file |
| 212 Steakhouse | Mike DiGiulio | 1/4/2023 | 0.9 | $350.00 | $315.00 | Input cites and finalize reply brief to class cert motion |
| 212 Steakhouse | Mike DiGiulio | 1/9/2023 | 0.1 | $350.00 | $35.00 | Confer with defense re: exchanging client depositions |
| 212 Steakhouse | Mike DiGiulio | 1/11/2023 | 0.3 | $350.00 | $105.00 | Follow up re: depo transcripts and settlement |
| 212 Steakhouse | D. Maimon Kirschenbaum | 1/16/2023 | 0.1 | $500.00 | $50.00 | Email Defendants re: Settlement |
| 212 Steakhouse | D. Maimon Kirschenbaum | 1/24/2023 | 0.1 | $500.00 | $50.00 | Email Defendants re: Settlement |
| 212 Steakhouse | Mike DiGiulio | 1/25/2023 | 0.4 | $350.00 | $140.00 | Correspond with client re: settlement and case update |

**A-345**

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|---|---|---|---|---|---|---|
| 212 Steakhouse | D. Maimon Kirschenbaum | 2/1/2023 | 0.1 | $500.00 | $50.00 | Discussion w Team re: Settlement |
| 212 Steakhouse | Denise Schulman | 2/1/2023 | 0.1 | $500.00 | $50.00 | Discuss settlement with Maimon |
| 212 Steakhouse | Mike DiGiulio | 2/2/2023 | 0.1 | $350.00 | $35.00 | Correspond with defense re: depo transcripts |
| 212 Steakhouse | D. Maimon Kirschenbaum | 2/16/2023 | 0.1 | $500.00 | $50.00 | Email Mitch |
| 212 Steakhouse | Denise Schulman | 3/16/2023 | 0.1 | $500.00 | $50.00 | Call with Maimon re: hearing |
| 212 Steakhouse | D. Maimon Kirschenbaum | 3/27/2023 | 0.2 | $500.00 | $100.00 | Review Ds letter to Court |
| 212 Steakhouse | Denise Schulman | 3/27/2023 | 0.1 | $500.00 | $50.00 | Review defendants' letter to court |
| 212 Steakhouse | Jorge Aguirre | 3/27/2023 | 2.2 | $125.00 | $275.00 | Put together motion for sanctions binder |
| 212 Steakhouse | Jorge Aguirre | 3/27/2023 | 0.6 | $125.00 | $75.00 | Printing motion for sanctions |
| 212 Steakhouse | Mike DiGiulio | 3/27/2023 | 0.3 | $350.00 | $105.00 | Review defense letter filing |
| 212 Steakhouse | Mike DiGiulio | 3/27/2023 | 0.8 | $350.00 | $280.00 | Review sanctions motions and papers re: arguement |
| 212 Steakhouse | Mike DiGiulio | 3/27/2023 | 0.2 | $350.00 | $70.00 | Organize oral arugment docs |
| 212 Steakhouse | D. Maimon Kirschenbaum | 3/29/2023 | 0.2 | $500.00 | $100.00 | Discussion re: Ds disqualificationbrief |
| 212 Steakhouse | Denise Schulman | 3/29/2023 | 0.1 | $500.00 | $50.00 | Review sanctions motion |
| 212 Steakhouse | Denise Schulman | 3/29/2023 | 0.2 | $500.00 | $100.00 | Discuss sanctions hearing with Mike |
| 212 Steakhouse | Denise Schulman | 3/29/2023 | 0.2 | $500.00 | $100.00 | Discuss Mitch's disqualification motion with Maimon and Mike |
| 212 Steakhouse | Denise Schulman | 3/30/2023 | 0.5 | $500.00 | $250.00 | Discuss sanctions hearing with Mike |
| 212 Steakhouse | Jorge Aguirre | 3/30/2023 | 1 | $125.00 | $125.00 | Put together motion for sanctions binder |
| 212 Steakhouse | Mike DiGiulio | 3/30/2023 | 0.5 | $350.00 | $175.00 | Confer with partner re: sanctions motion |
| 212 Steakhouse | D. Maimon Kirschenbaum | 4/3/2023 | 0.2 | $500.00 | $100.00 | Discussion w team re: hearing |
| 212 Steakhouse | Denise Schulman | 4/3/2023 | 0.3 | $500.00 | $150.00 | Prep for hearing |
| 212 Steakhouse | Denise Schulman | 4/3/2023 | 0.3 | $500.00 | $150.00 | Finalize and file letter to court |
| 212 Steakhouse | Denise Schulman | 4/3/2023 | 0.5 | $500.00 | $250.00 | Research/draft letter to court re: disqualification |
| 212 Steakhouse | Denise Schulman | 4/3/2023 | 0.1 | $500.00 | $50.00 | Review defendants' letter |
| 212 Steakhouse | Denise Schulman | 4/3/2023 | 0.2 | $500.00 | $100.00 | Review emails in preparation for court conference |
| 212 Steakhouse | Mike DiGiulio | 4/3/2023 | 0.5 | $350.00 | $175.00 | Draft timeline and cover sheet for sanctions hearing |
| 212 Steakhouse | Mike DiGiulio | 4/3/2023 | 0.5 | $350.00 | $175.00 | Call client re: opt in process, review defendant pre-motion letter, confer with co-counsel |
| 212 Steakhouse | Denise Schulman | 4/4/2023 | 0.2 | $500.00 | $100.00 | Discuss hearing with Mike |
| 212 Steakhouse | Denise Schulman | 4/4/2023 | 0.9 | $500.00 | $450.00 | Prep for hearing |
| 212 Steakhouse | Denise Schulman | 4/4/2023 | 0.3 | $500.00 | $150.00 | Discuss hearing with Mike |
| 212 Steakhouse | Denise Schulman | 4/4/2023 | 2 | $250.00 | $500.00 | Travel/waiting time |

A-346

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|---|---|---|---|---|---|---|
| 212 Steakhouse | Denise Schulman | 4/4/2023 | 0.5 | $500.00 | $250.00 | Hearing |
| 212 Steakhouse | Mike DiGiulio | 4/4/2023 | 0.9 | $350.00 | $315.00 | Review motion papers for hearing |
| 212 Steakhouse | Mike DiGiulio | 4/4/2023 | 2.5 | $350.00 | $875.00 | Attend sanctions motion hearing |
| 212 Steakhouse | Denise Schulman | 4/5/2023 | 0.2 | $500.00 | $100.00 | Discuss hearing with Mike |
| 212 Steakhouse | Denise Schulman | 4/9/2023 | 0.2 | $500.00 | $100.00 | Calculate interest/update damage calc |
| 212 Steakhouse | Denise Schulman | 4/9/2023 | 0.1 | $500.00 | $50.00 | Email team re: settlement conference |
| 212 Steakhouse | Denise Schulman | 4/9/2023 | 0.1 | $500.00 | $50.00 | Review time records |
| 212 Steakhouse | Denise Schulman | 4/10/2023 | 0.2 | $500.00 | $100.00 | Email Maimon and Mike re: settlement |
| 212 Steakhouse | Denise Schulman | 4/10/2023 | 0.1 | $500.00 | $50.00 | Email Mitch re: settlement conference and demand |
| 212 Steakhouse | Denise Schulman | 4/10/2023 | 0.1 | $500.00 | $50.00 | Email Mike re: authority for demand |
| 212 Steakhouse | Denise Schulman | 4/10/2023 | 0.1 | $500.00 | $50.00 | Discuss settlement conference with Maimon |
| 212 Steakhouse | Denise Schulman | 4/11/2023 | 0.1 | $500.00 | $50.00 | Email defense re: settlement |
| 212 Steakhouse | Denise Schulman | 4/14/2023 | 0.1 | $500.00 | $50.00 | Review R&Rs |
| 212 Steakhouse | D. Maimon Kirschenbaum | 4/17/2023 | 0.4 | $500.00 | $200.00 | Review R & R |
| 212 Steakhouse | Denise Schulman | 4/17/2023 | 0.1 | $500.00 | $50.00 | Discuss sanctions decision with Mike |
| 212 Steakhouse | Denise Schulman | 4/17/2023 | 0.2 | $500.00 | $100.00 | Discuss settlement with Maimon and Mike |
| 212 Steakhouse | Mike DiGiulio | 4/17/2023 | 0.5 | $350.00 | $175.00 | Review class cert order and sanctions order |
| 212 Steakhouse | Mike DiGiulio | 4/17/2023 | 0.5 | $350.00 | $175.00 | Confer with clients re: authorization for demand, confer with partners re: settlement |
| 212 Steakhouse | D. Maimon Kirschenbaum | 4/18/2023 | 0.2 | $500.00 | $100.00 | Settlement Discussions |
| 212 Steakhouse | D. Maimon Kirschenbaum | 4/18/2023 | 0.5 | $500.00 | $250.00 | Settlement Discussions-Email Defendants |
| 212 Steakhouse | Denise Schulman | 4/18/2023 | 0.2 | $500.00 | $100.00 | Discuss settlement with Mike and Maimon |
| 212 Steakhouse | Mike DiGiulio | 4/18/2023 | 0.4 | $350.00 | $140.00 | Confer with partners, confer with clients re: authorization for counter offers, remit to partners |
| 212 Steakhouse | D. Maimon Kirschenbaum | 4/19/2023 | 0.2 | $500.00 | $100.00 | Discussions re: Settlement |
| 212 Steakhouse | D. Maimon Kirschenbaum | 4/24/2023 | 0.4 | $500.00 | $200.00 | Discussions re: Settlement |
| 212 Steakhouse | Denise Schulman | 4/24/2023 | 0.1 | $500.00 | $50.00 | Email Mike and Maimon re: settlement |
| 212 Steakhouse | D. Maimon Kirschenbaum | 4/25/2023 | 0.2 | $500.00 | $100.00 | Discussions re: Settlement |
| 212 Steakhouse | Denise Schulman | 4/25/2023 | 0.1 | $500.00 | $50.00 | Call with John Greenbaum |
| 212 Steakhouse | D. Maimon Kirschenbaum | 4/26/2023 | 1 | $500.00 | $500.00 | Discussions w New Defense re: Settlement |
| 212 Steakhouse | Denise Schulman | 4/26/2023 | 0.1 | $500.00 | $50.00 | Discuss settlement prospects with Maimon |
| 212 Steakhouse | Mike DiGiulio | 4/26/2023 | 0.2 | $350.00 | $70.00 | Confer with clients re: new attorney |
| 212 Steakhouse | Denise Schulman | 4/28/2023 | 0.2 | $500.00 | $100.00 | Discuss orders with Mike |

A-347

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|------|--------|------|------|------|-------|-------------|
| 212 Steakhouse | Mike DiGiulio | 5/4/2023 | 0.2 | $350.00 | $70.00 | Confer with clients re: case update |
| 212 Steakhouse | D. Maimon Kirschenbaum | 5/10/2023 | 0.2 | $500.00 | $100.00 | Call with Greenbaum |
| 212 Steakhouse | Denise Schulman | 5/11/2023 | 0.1 | $500.00 | $50.00 | Email Evelyn re: sanctions payment |
| 212 Steakhouse | Evelyn Velesaca | 5/12/2023 | 0.3 | $125.00 | $37.50 | Add closing folder; draft disbursement forms |
| 212 Steakhouse | Denise Schulman | 5/15/2023 | 0.1 | $500.00 | $50.00 | Prepare class notice |
| 212 Steakhouse | Denise Schulman | 5/15/2023 | 0.3 | $500.00 | $150.00 | Review deadlines/email Mike and Maimon re: same/discuss with Mike |
| 212 Steakhouse | D. Maimon Kirschenbaum | 5/18/2023 | 0.3 | $500.00 | $150.00 | Email Ds re: outstanding discovery |
| 212 Steakhouse | Denise Schulman | 5/18/2023 | 0.2 | $500.00 | $100.00 | Email Maimon and Mike re: outstanding discovery/payment |
| 212 Steakhouse | Denise Schulman | 5/19/2023 | 0.1 | $500.00 | $50.00 | Discuss outstanding discovery/check with Mike |
| 212 Steakhouse | Denise Schulman | 5/23/2023 | 0.1 | $500.00 | $50.00 | Order hearing transcript |
| 212 Steakhouse | Denise Schulman | 5/23/2023 | 0.1 | $500.00 | $50.00 | Email defense re: class list |
| 212 Steakhouse | Denise Schulman | 5/23/2023 | 0.2 | $500.00 | $100.00 | Call with Mike re: outstanding discovery/class list |
| 212 Steakhouse | Denise Schulman | 5/23/2023 | 0.1 | $500.00 | $50.00 | Email defense re: class list |
| 212 Steakhouse | Denise Schulman | 5/23/2023 | 1.8 | $500.00 | $900.00 | Review defendants' production |
| 212 Steakhouse | Evelyn Velesaca | 5/23/2023 | 0.1 | $125.00 | $12.50 | Draft disbursement form |
| 212 Steakhouse | Evelyn Velesaca | 5/23/2023 | 0.1 | $125.00 | $12.50 | Scan check and save to file |
| 212 Steakhouse | Denise Schulman | 5/24/2023 | 0.1 | $500.00 | $50.00 | Review email from defense re: class list |
| 212 Steakhouse | Evelyn Velesaca | 5/24/2023 | 0.1 | $125.00 | $12.50 | Send disbursement form to Ruth |
| 212 Steakhouse | Denise Schulman | 5/30/2023 | 0.1 | $500.00 | $50.00 | Review defendants' production/email defense re: same |
| 212 Steakhouse | Denise Schulman | 5/30/2023 | 0.1 | $500.00 | $50.00 | Discuss data entry project with Jorge |
| 212 Steakhouse | Denise Schulman | 5/30/2023 | 0.6 | $500.00 | $300.00 | Review defendants' production |
| 212 Steakhouse | Jorge Aguirre | 5/30/2023 | 3.2 | $125.00 | $400.00 | Data entry time sheets |
| 212 Steakhouse | Mike DiGiulio | 5/30/2023 | 0.5 | $350.00 | $175.00 | Review 212 rolling production |
| 212 Steakhouse | Mike DiGiulio | 5/30/2023 | 0.2 | $350.00 | $70.00 | Review time record production |
| 212 Steakhouse | Denise Schulman | 5/31/2023 | 0.8 | $500.00 | $400.00 | Review defendants' production |
| 212 Steakhouse | Jorge Aguirre | 5/31/2023 | 4.4 | $125.00 | $550.00 | Data entry time sheets |
| 212 Steakhouse | Denise Schulman | 6/1/2023 | 0.8 | $500.00 | $400.00 | Review defendants' production |
| 212 Steakhouse | Denise Schulman | 6/1/2023 | 0.3 | $500.00 | $150.00 | Draft email to defense re: outstanding discovery |
| 212 Steakhouse | Denise Schulman | 6/1/2023 | 0.1 | $500.00 | $50.00 | Discuss outstanding discovery with Mike |
| 212 Steakhouse | Evelyn Velesaca | 6/1/2023 | 0.2 | $125.00 | $25.00 | Help Jorge reformat time entries |
| 212 Steakhouse | Jorge Aguirre | 6/1/2023 | 2.6 | $125.00 | $325.00 | Data entry time sheets |
| 212 Steakhouse | Mike DiGiulio | 6/1/2023 | 0.1 | $350.00 | $35.00 | Confer with partner re: document production response |

A-348

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|------|--------|------|------|------|-------|-------------|
| 212 Steakhouse | Jorge Aguirre | 6/2/2023 | 2.9 | $125.00 | $362.50 | Data entry time sheets |
| 212 Steakhouse | Mike DiGiulio | 6/2/2023 | 0.2 | $350.00 | $70.00 | Review docs and doc correspondence |
| 212 Steakhouse | Denise Schulman | 6/5/2023 | 0.2 | $500.00 | $100.00 | Review defendants' production |
| 212 Steakhouse | Jorge Aguirre | 6/5/2023 | 3.9 | $125.00 | $487.50 | Data entry time sheets |
| 212 Steakhouse | Mike DiGiulio | 6/5/2023 | 0.2 | $350.00 | $70.00 | Review class list and tip sheets |
| 212 Steakhouse | Denise Schulman | 6/6/2023 | 0.5 | $500.00 | $250.00 | Review defendants' production/work on damage calc |
| 212 Steakhouse | Denise Schulman | 6/6/2023 | 0.2 | $500.00 | $100.00 | Review tip sheets |
| 212 Steakhouse | Denise Schulman | 6/6/2023 | 0.2 | $500.00 | $100.00 | Email defense re: class notice |
| 212 Steakhouse | Denise Schulman | 6/6/2023 | 0.6 | $500.00 | $300.00 | Convert class list to Excel/research unknown addresses |
| 212 Steakhouse | Denise Schulman | 6/6/2023 | 0.1 | $500.00 | $50.00 | Email transcriber |
| 212 Steakhouse | Evelyn Velesaca | 6/6/2023 | 1.5 | $125.00 | $187.50 | Time records data entry |
| 212 Steakhouse | Jorge Aguirre | 6/6/2023 | 3.1 | $125.00 | $387.50 | Data entry time sheets |
| 212 Steakhouse | Denise Schulman | 6/7/2023 | 0.8 | $500.00 | $400.00 | Review defendants' production/work on damage calc |
| 212 Steakhouse | Denise Schulman | 6/7/2023 | 0.7 | $500.00 | $350.00 | Review defendants' production |
| 212 Steakhouse | Evelyn Velesaca | 6/7/2023 | 4.3 | $125.00 | $537.50 | Time records data entry |
| 212 Steakhouse | Jorge Aguirre | 6/7/2023 | 5.9 | $125.00 | $737.50 | Data entry time sheets |
| 212 Steakhouse | Denise Schulman | 6/8/2023 | 1.8 | $500.00 | $900.00 | Review defendants' production/work on damage calc |
| 212 Steakhouse | Evelyn Velesaca | 6/8/2023 | 5.1 | $125.00 | $637.50 | Time records data entry |
| 212 Steakhouse | Jorge Aguirre | 6/8/2023 | 5 | $125.00 | $625.00 | Data entry time sheets |
| 212 Steakhouse | Denise Schulman | 6/9/2023 | 1.3 | $500.00 | $650.00 | Work on damage calc/email defense re: class notice |
| 212 Steakhouse | Denise Schulman | 6/9/2023 | 2.5 | $500.00 | $1,250.00 | Work on damage calc |
| 212 Steakhouse | Evelyn Velesaca | 6/9/2023 | 4.9 | $125.00 | $612.50 | Time records data entry |
| 212 Steakhouse | Denise Schulman | 6/11/2023 | 0.4 | $500.00 | $200.00 | Work on damage calc |
| 212 Steakhouse | Denise Schulman | 6/12/2023 | 0.1 | $500.00 | $50.00 | Discuss letter to court with Mike |
| 212 Steakhouse | Denise Schulman | 6/12/2023 | 0.8 | $500.00 | $400.00 | Draft letter to court re: mailing notice |
| 212 Steakhouse | Denise Schulman | 6/12/2023 | 0.2 | $500.00 | $100.00 | Discuss next steps for class notice with Mike |
| 212 Steakhouse | Denise Schulman | 6/12/2023 | 0.6 | $500.00 | $300.00 | Work on damage calc |
| 212 Steakhouse | Evelyn Velesaca | 6/12/2023 | 5.4 | $125.00 | $675.00 | Time records data entry |
| 212 Steakhouse | Jorge Aguirre | 6/12/2023 | 5.3 | $125.00 | $662.50 | Data entry time sheets |
| 212 Steakhouse | Mike DiGiulio | 6/12/2023 | 0.2 | $350.00 | $70.00 | Call client, confer re: class list issues |
| 212 Steakhouse | Mike DiGiulio | 6/12/2023 | 0.1 | $350.00 | $35.00 | Review letter, give feedback to partner |
| 212 Steakhouse | Mike DiGiulio | 6/12/2023 | 0.2 | $350.00 | $70.00 | Discuss 212 letter to judge with partner |
| 212 Steakhouse | Denise Schulman | 6/13/2023 | 0.2 | $500.00 | $100.00 | Email defense re: class notice |

**A-349**

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|------|--------|------|------|------|-------|-------------|
| 212 Steakhouse | Denise Schulman | 6/13/2023 | 0.1 | $500.00 | $50.00 | Email Ruth and Evelyn re: transcriber invoice |
| 212 Steakhouse | Denise Schulman | 6/13/2023 | 0.1 | $500.00 | $50.00 | Discuss class mailing with Evelyn and Jorge |
| 212 Steakhouse | Denise Schulman | 6/13/2023 | 0.1 | $500.00 | $50.00 | Call with Mike re: class notice |
| 212 Steakhouse | Evelyn Velesaca | 6/13/2023 | 4 | $125.00 | $500.00 | Time records data entry |
| 212 Steakhouse | Jorge Aguirre | 6/13/2023 | 3.8 | $125.00 | $475.00 | Data entry time sheets |
| 212 Steakhouse | Jorge Aguirre | 6/13/2023 | 0.3 | $125.00 | $37.50 | Data entry time sheets |
| 212 Steakhouse | Jorge Aguirre | 6/13/2023 | 0.2 | $125.00 | $25.00 | Creating return labels for mailing |
| 212 Steakhouse | Mike DiGiulio | 6/13/2023 | 0.1 | $350.00 | $35.00 | Confer on position on notice issues with co-counsel |
| 212 Steakhouse | Mike DiGiulio | 6/13/2023 | 0.1 | $350.00 | $35.00 | Confer with partner re: class list issues and letter |
| 212 Steakhouse | Evelyn Velesaca | 6/14/2023 | 1.3 | $125.00 | $162.50 | Time records data entry |
| 212 Steakhouse | Jorge Aguirre | 6/14/2023 | 0.5 | $125.00 | $62.50 | Data entry time sheets |
| 212 Steakhouse | Jorge Aguirre | 6/14/2023 | 5 | $125.00 | $625.00 | Data entry time sheets |
| 212 Steakhouse | D. Maimon Kirschenbaum | 6/15/2023 | 0.1 | $500.00 | $50.00 | Discussion re: discovery/SMJ |
| 212 Steakhouse | Denise Schulman | 6/15/2023 | 0.9 | $500.00 | $450.00 | Review time records |
| 212 Steakhouse | Denise Schulman | 6/15/2023 | 0.1 | $500.00 | $50.00 | Discuss discovery and SJ with Maimon |
| 212 Steakhouse | Denise Schulman | 6/15/2023 | 0.1 | $500.00 | $50.00 | Discuss class notice with Mike |
| 212 Steakhouse | Denise Schulman | 6/15/2023 | 0.3 | $500.00 | $150.00 | Work on class notice mailing stuff |
| 212 Steakhouse | Jorge Aguirre | 6/15/2023 | 5.4 | $125.00 | $675.00 | Data entry time sheets |
| 212 Steakhouse | Jorge Aguirre | 6/15/2023 | 0.7 | $125.00 | $87.50 | preparing address labels for mailing |
| 212 Steakhouse | Denise Schulman | 6/16/2023 | 1.9 | $500.00 | $950.00 | Review time records |
| 212 Steakhouse | Denise Schulman | 6/16/2023 | 0.2 | $500.00 | $100.00 | Call with Mike re: class notice/email defense re: class list |
| 212 Steakhouse | Denise Schulman | 6/16/2023 | 0.1 | $500.00 | $50.00 | Email Mike re: class notice |
| 212 Steakhouse | Evelyn Velesaca | 6/16/2023 | 0.4 | $125.00 | $50.00 | Update expenses spreadsheet and save invoice to file |
| 212 Steakhouse | Jorge Aguirre | 6/16/2023 | 3.4 | $125.00 | $425.00 | Data entry time sheets |
| 212 Steakhouse | Denise Schulman | 6/20/2023 | 2.8 | $500.00 | $1,400.00 | Work on damage calc |
| 212 Steakhouse | Denise Schulman | 6/20/2023 | 1.7 | $500.00 | $850.00 | Review time records |
| 212 Steakhouse | Denise Schulman | 6/20/2023 | 0.1 | $500.00 | $50.00 | Edit class notice/email Jorge re: same |
| 212 Steakhouse | Denise Schulman | 6/20/2023 | 0.1 | $500.00 | $50.00 | Email Jorge re: notice mailing |
| 212 Steakhouse | Denise Schulman | 6/20/2023 | 0.3 | $500.00 | $150.00 | Research Daniel Biridaeanu/discuss class notice mailing with Mike |
| 212 Steakhouse | Evelyn Velesaca | 6/20/2023 | 0.1 | $125.00 | $12.50 | Save scanned check to file |
| 212 Steakhouse | Jorge Aguirre | 6/20/2023 | 1.5 | $125.00 | $187.50 | Putting together notices for mailing |
| 212 Steakhouse | Jorge Aguirre | 6/20/2023 | 0.2 | $125.00 | $25.00 | Printing address label for mailing |

A-350

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|------|--------|------|------|------|-------|-------------|
| 212 Steakhouse | Mike DiGiulio | 6/20/2023 | 0.2 | $350.00 | $70.00 | Confer with partner re: class mailing |
| 212 Steakhouse | Denise Schulman | 6/21/2023 | 2.4 | $500.00 | $1,200.00 | Work on damage calc |
| 212 Steakhouse | Denise Schulman | 6/21/2023 | 0.1 | $500.00 | $50.00 | Email Jorge and Evelyn re: class notice procedures |
| 212 Steakhouse | Denise Schulman | 6/21/2023 | 1 | $500.00 | $500.00 | Work on damage calc |
| 212 Steakhouse | Jorge Aguirre | 6/21/2023 | 0.2 | $125.00 | $25.00 | Mailing notices |
| 212 Steakhouse | Denise Schulman | 6/22/2023 | 0.2 | $500.00 | $100.00 | Discuss damage calc with Mike |
| 212 Steakhouse | Denise Schulman | 6/22/2023 | 0.1 | $500.00 | $50.00 | Work on damage calc |
| 212 Steakhouse | Denise Schulman | 6/22/2023 | 0.6 | $500.00 | $300.00 | Work on damage calc |
| 212 Steakhouse | Denise Schulman | 6/22/2023 | 0.4 | $500.00 | $200.00 | Work on damage calc |
| 212 Steakhouse | Denise Schulman | 6/22/2023 | 0.6 | $500.00 | $300.00 | Work on damage calc |
| 212 Steakhouse | Denise Schulman | 6/22/2023 | 0.2 | $500.00 | $100.00 | Work on damage calc/email defense re: notice mailing |
| 212 Steakhouse | Denise Schulman | 6/23/2023 | 0.1 | $500.00 | $50.00 | Call with Dimitry Zarobin |
| 212 Steakhouse | Jorge Aguirre | 6/23/2023 | 0.2 | $125.00 | $25.00 | Sent client info to Denise re Dimitry Zarodin |
| 212 Steakhouse | Denise Schulman | 6/26/2023 | 0.1 | $500.00 | $50.00 | Email Maimon re: outstanding check |
| 212 Steakhouse | Evelyn Velesaca | 6/29/2023 | 0.2 | $125.00 | $25.00 | Scan check and send disbursement form to ruth |
| 212 Steakhouse | Denise Schulman | 7/6/2023 | 0.3 | $500.00 | $150.00 | Call with class member/review defendants' production |
| 212 Steakhouse | Denise Schulman | 7/6/2023 | 0.3 | $500.00 | $150.00 | Look up addresses for returned notices |
| 212 Steakhouse | Denise Schulman | 7/6/2023 | 0.2 | $500.00 | $100.00 | Review opt out/discuss with Mike |
| 212 Steakhouse | Jorge Aguirre | 7/6/2023 | 0.7 | $125.00 | $87.50 | Remailing notices for clients Romero and Lazarov |
| 212 Steakhouse | Mike DiGiulio | 7/12/2023 | 0.3 | $350.00 | $105.00 | Confer with client re: case status update |
| 212 Steakhouse | Denise Schulman | 7/13/2023 | 0.4 | $500.00 | $200.00 | Review time records for completeness |
| 212 Steakhouse | Denise Schulman | 7/13/2023 | 0.3 | $500.00 | $150.00 | Call with Mike re: Nikolay affidavit and opt outs |
| 212 Steakhouse | Denise Schulman | 7/13/2023 | 0.1 | $500.00 | $50.00 | Review Rynkovsky damages |
| 212 Steakhouse | Denise Schulman | 7/13/2023 | 0.1 | $500.00 | $50.00 | Discuss opt-outs with Evelyn |
| 212 Steakhouse | Evelyn Velesaca | 7/13/2023 | 0.1 | $125.00 | $12.50 | Discuss opt outs w/ Denise |
| 212 Steakhouse | Evelyn Velesaca | 7/13/2023 | 0.3 | $125.00 | $37.50 | Scan opt outs and send to Denise and Mike |
| 212 Steakhouse | Mike DiGiulio | 7/13/2023 | 0.2 | $350.00 | $70.00 | Confer with partner re: affidavit and opt outs |
| 212 Steakhouse | Denise Schulman | 7/14/2023 | 0.8 | $500.00 | $400.00 | Review outstanding discovery issues |
| 212 Steakhouse | Denise Schulman | 7/14/2023 | 0.2 | $500.00 | $100.00 | Research soliciting opt outs |
| 212 Steakhouse | Denise Schulman | 7/14/2023 | 0.1 | $500.00 | $50.00 | Review opt outs |
| 212 Steakhouse | Denise Schulman | 7/14/2023 | 0.1 | $500.00 | $50.00 | Review possible missing time records |
| 212 Steakhouse | Evelyn Velesaca | 7/14/2023 | 0.1 | $125.00 | $12.50 | Scan opt outs and send to Denise and Mike |
| 212 Steakhouse | Denise Schulman | 7/17/2023 | 0.1 | $500.00 | $50.00 | Email Mike re: client texts |

A-351

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|------|--------|------|------|------|-------|-------------|
| 212 Steakhouse | Denise Schulman | 7/17/2023 | 0.1 | $500.00 | $50.00 | Discuss opt outs with Mike |
| 212 Steakhouse | Evelyn Velesaca | 7/17/2023 | 0.2 | $125.00 | $25.00 | Scan and save opt out to file |
| 212 Steakhouse | Mike DiGiulio | 7/17/2023 | 0.6 | $350.00 | $210.00 | Confer with client re: opt out issues |
| 212 Steakhouse | Denise Schulman | 7/18/2023 | 0.1 | $500.00 | $50.00 | Email defense re: opt out |
| 212 Steakhouse | Denise Schulman | 7/18/2023 | 0.2 | $500.00 | $100.00 | Discuss opt outs with Mike |
| 212 Steakhouse | Mike DiGiulio | 7/18/2023 | 0.1 | $350.00 | $35.00 | Correspond with opt out re: mailing opt out form |
| 212 Steakhouse | Mike DiGiulio | 7/18/2023 | 0.2 | $350.00 | $70.00 | Discuss opt out issues with partner |
| 212 Steakhouse | Mike DiGiulio | 7/18/2023 | 0.1 | $350.00 | $35.00 | Review emailed opt out |
| 212 Steakhouse | Denise Schulman | 7/19/2023 | 0.1 | $500.00 | $50.00 | Email Mike re: opt out |
| 212 Steakhouse | Jorge Aguirre | 7/19/2023 | 0.3 | $125.00 | $37.50 | Preparing envelope to remail notice to Nadia Paputnikava per Mike |
| 212 Steakhouse | Mike DiGiulio | 7/19/2023 | 0.2 | $350.00 | $70.00 | Class member - nadia - issue re: address and email |
| 212 Steakhouse | Evelyn Velesaca | 7/20/2023 | 0.2 | $125.00 | $25.00 | Scan opt out and send to Denise and Mike |
| 212 Steakhouse | Denise Schulman | 7/21/2023 | 0.1 | $500.00 | $50.00 | Email defense re: opt outs |
| 212 Steakhouse | Denise Schulman | 7/21/2023 | 0.1 | $500.00 | $50.00 | Review opt-out |
| 212 Steakhouse | Evelyn Velesaca | 7/21/2023 | 0.1 | $125.00 | $12.50 | Scan opt out and send to Denise and Mike |
| 212 Steakhouse | Denise Schulman | 7/24/2023 | 0.2 | $500.00 | $100.00 | Review opt outs |
| 212 Steakhouse | Evelyn Velesaca | 7/24/2023 | 0.2 | $125.00 | $25.00 | Scan opt outs and save to file |
| 212 Steakhouse | Denise Schulman | 7/25/2023 | 0.1 | $500.00 | $50.00 | Email defense re: opt outs |
| 212 Steakhouse | Denise Schulman | 7/27/2023 | 0.1 | $500.00 | $50.00 | Prepare disbursement form for sanctions payment |
| 212 Steakhouse | Jorge Aguirre | 7/27/2023 | 0.3 | $125.00 | $37.50 | Depositing check |
| 212 Steakhouse | Mike DiGiulio | 7/27/2023 | 0.2 | $350.00 | $70.00 | Opt out issue with class member, re-send notice follow up |
| 212 Steakhouse | Denise Schulman | 7/28/2023 | 0.1 | $500.00 | $50.00 | Discuss outstanding issues with Mike |
| 212 Steakhouse | Denise Schulman | 7/28/2023 | 0.2 | $500.00 | $100.00 | Review outstanding discovery issues/email Mike and Maimon re: same |
| 212 Steakhouse | Denise Schulman | 7/28/2023 | 0.5 | $500.00 | $250.00 | Review opt outs and damages |
| 212 Steakhouse | Mike DiGiulio | 7/28/2023 | 0.1 | $350.00 | $35.00 | Call with partner re: next steps |
| 212 Steakhouse | Mike DiGiulio | 7/28/2023 | 0.2 | $350.00 | $70.00 | Review revised damages calcuation |
| 212 Steakhouse | Mike DiGiulio | 7/28/2023 | 0.1 | $350.00 | $35.00 | Review client notes re: class member issues |
| 212 Steakhouse | Mike DiGiulio | 7/31/2023 | 0.1 | $350.00 | $35.00 | Send opt out - Nadia - to defense |
| 212 Steakhouse | Denise Schulman | 8/1/2023 | 0.1 | $500.00 | $50.00 | Update damage calc |
| 212 Steakhouse | Denise Schulman | 8/7/2023 | 0.3 | $500.00 | $150.00 | Draft email to defense re: outstanding issues |
| 212 Steakhouse | Denise Schulman | 8/7/2023 | 0.1 | $500.00 | $50.00 | Review damages |

A-352

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|------|--------|------|------|------|-------|-------------|
| 212 Steakhouse | Denise Schulman | 8/7/2023 | 0.2 | $500.00 | $100.00 | Review opt outs/update damage calc |
| 212 Steakhouse | Evelyn Velesaca | 8/7/2023 | 0.2 | $125.00 | $25.00 | Scan opt outs and send to Denise and Mike |
| 212 Steakhouse | Denise Schulman | 8/8/2023 | 0.2 | $500.00 | $100.00 | Call with Mike re: Laluz |
| 212 Steakhouse | Denise Schulman | 8/8/2023 | 0.2 | $500.00 | $100.00 | Call with Mike re: class issues |
| 212 Steakhouse | Denise Schulman | 8/8/2023 | 0.1 | $500.00 | $50.00 | Email defense re: class and discovery issues |
| 212 Steakhouse | Mike DiGiulio | 8/8/2023 | 0.2 | $350.00 | $70.00 | Correspond with defense re: additional class member |
| 212 Steakhouse | Mike DiGiulio | 8/8/2023 | 0.2 | $350.00 | $70.00 | Review email to defense, send edit to partner |
| 212 Steakhouse | D. Maimon Kirschenbaum | 8/22/2023 | 0.1 | $500.00 | $50.00 | Review corr. To Court re: premotion |
| 212 Steakhouse | Denise Schulman | 8/22/2023 | 1.4 | $500.00 | $700.00 | Draft response to premotion letter |
| 212 Steakhouse | Denise Schulman | 8/22/2023 | 0.4 | $500.00 | $200.00 | Discuss defendants' premotion letter with Mike |
| 212 Steakhouse | Denise Schulman | 8/22/2023 | 0.2 | $500.00 | $100.00 | Review returned mail and opt outs/email defense re: same |
| 212 Steakhouse | Denise Schulman | 8/22/2023 | 0.1 | $500.00 | $50.00 | Email Jorge re: undeliverable class notices |
| 212 Steakhouse | Jorge Aguirre | 8/22/2023 | 0.5 | $125.00 | $62.50 | Scanning return envelopes to Denise |
| 212 Steakhouse | Mike DiGiulio | 8/22/2023 | 0.4 | $350.00 | $140.00 | Review pre-motion letter, call with partner |
| 212 Steakhouse | D. Maimon Kirschenbaum | 8/23/2023 | 0.3 | $500.00 | $150.00 | Review corr. To Court re: premotion |
| 212 Steakhouse | Denise Schulman | 8/23/2023 | 0.1 | $500.00 | $50.00 | Email Mike re: Laluz issue |
| 212 Steakhouse | Denise Schulman | 8/23/2023 | 0.2 | $500.00 | $100.00 | Draft response to premotion letter |
| 212 Steakhouse | Denise Schulman | 8/23/2023 | 0.1 | $500.00 | $50.00 | Email defense re: discovery and Laluz |
| 212 Steakhouse | Denise Schulman | 8/23/2023 | 0.2 | $500.00 | $100.00 | Call with Barbara Laluz |
| 212 Steakhouse | Denise Schulman | 8/23/2023 | 0.2 | $500.00 | $100.00 | Draft response to premotion letter |
| 212 Steakhouse | Denise Schulman | 8/23/2023 | 0.1 | $500.00 | $50.00 | Discuss court order with Mike |
| 212 Steakhouse | Denise Schulman | 8/23/2023 | 0.8 | $500.00 | $400.00 | Draft response to premotion letter |
| 212 Steakhouse | Denise Schulman | 8/23/2023 | 0.6 | $500.00 | $300.00 | Draft response to premotion letter |
| 212 Steakhouse | Denise Schulman | 8/23/2023 | 0.5 | $500.00 | $250.00 | Draft response to premotion letter |
| 212 Steakhouse | Denise Schulman | 8/23/2023 | 0.1 | $500.00 | $50.00 | Email Barbara Laluz re: scheduling call |
| 212 Steakhouse | Denise Schulman | 8/23/2023 | 0.1 | $500.00 | $50.00 | Discuss premotion letter with Mike |
| 212 Steakhouse | Mike DiGiulio | 8/24/2023 | 0.4 | $350.00 | $140.00 | Edit pre motion letter, send to partners |
| 212 Steakhouse | Mike DiGiulio | 8/24/2023 | 0.2 | $350.00 | $70.00 | Review correspondence with defense counsel re: discovery |
| 212 Steakhouse | Denise Schulman | 8/25/2023 | 0.2 | $500.00 | $100.00 | Finalize and file response to premotion letter |
| 212 Steakhouse | Denise Schulman | 8/25/2023 | 1.3 | $500.00 | $650.00 | Edit response to premotion letter |
| 212 Steakhouse | Denise Schulman | 8/25/2023 | 0.1 | $500.00 | $50.00 | Edit response to premotion letter |
| 212 Steakhouse | Denise Schulman | 8/29/2023 | 0.2 | $500.00 | $100.00 | Draft SJ premotion letter |
| 212 Steakhouse | D. Maimon Kirschenbaum | 8/30/2023 | 0.1 | $500.00 | $50.00 | Review corr. W court |

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|---|---|---|---|---|---|---|
| 212 Steakhouse | Denise Schulman | 8/30/2023 | 0.4 | $500.00 | $200.00 | Work on damage calc for defense |
| 212 Steakhouse | Denise Schulman | 8/30/2023 | 0.1 | $500.00 | $50.00 | Review letter to court |
| 212 Steakhouse | Denise Schulman | 8/30/2023 | 0.9 | $500.00 | $450.00 | Draft SJ premotion letter |
| 212 Steakhouse | Denise Schulman | 9/1/2023 | 0.7 | $500.00 | $350.00 | Finalize/file SJ premotion letter |
| 212 Steakhouse | Denise Schulman | 9/5/2023 | 0.2 | $500.00 | $100.00 | Discuss upcoming motions with Mike |
| 212 Steakhouse | Mike DiGiulio | 9/5/2023 | 0.3 | $350.00 | $105.00 | Review pre-motion letters, responses, calendar pre-motion conference |
| 212 Steakhouse | Denise Schulman | 9/7/2023 | 0.3 | $500.00 | $150.00 | Research meal break issue |
| 212 Steakhouse | Denise Schulman | 9/7/2023 | 0.2 | $500.00 | $100.00 | Update damage calc for defense |
| 212 Steakhouse | Denise Schulman | 9/7/2023 | 0.3 | $500.00 | $150.00 | Review Ds response to SJ premotion letter/research same |
| 212 Steakhouse | Mike DiGiulio | 9/7/2023 | 0.3 | $350.00 | $105.00 | Review opp. letter to msj letter |
| 212 Steakhouse | D. Maimon Kirschenbaum | 9/11/2023 | 0.4 | $500.00 | $200.00 | Email Ds re: Settlement |
| 212 Steakhouse | Denise Schulman | 9/11/2023 | 0.7 | $500.00 | $350.00 | Prep for premotion conference |
| 212 Steakhouse | Denise Schulman | 9/12/2023 | 0.5 | $500.00 | $250.00 | Discuss premotion conference with Mike |
| 212 Steakhouse | Denise Schulman | 9/12/2023 | 0.1 | $500.00 | $50.00 | Research class member addresses |
| 212 Steakhouse | Denise Schulman | 9/12/2023 | 2.5 | $500.00 | $1,250.00 | Prep for premotion conference |
| 212 Steakhouse | Mike DiGiulio | 9/12/2023 | 0.5 | $350.00 | $175.00 | Call with co-counsel re: pre motion conferences |
| 212 Steakhouse | Denise Schulman | 9/14/2023 | 0.1 | $500.00 | $50.00 | Discuss scheduling settlement conference with Mike |
| 212 Steakhouse | Denise Schulman | 9/14/2023 | 0.1 | $500.00 | $50.00 | Review timing of defendants' production |
| 212 Steakhouse | Denise Schulman | 9/14/2023 | 0.8 | $500.00 | $400.00 | Premotion conference |
| 212 Steakhouse | Denise Schulman | 9/14/2023 | 0.3 | $500.00 | $150.00 | Prep for premotion conference |
| 212 Steakhouse | Evelyn Velesaca | 9/14/2023 | 0.1 | $125.00 | $12.50 | Print docs for Mike |
| 212 Steakhouse | Mike DiGiulio | 9/14/2023 | 0.1 | $350.00 | $35.00 | Review d's production to calculate updated sanctions request |
| 212 Steakhouse | Mike DiGiulio | 9/14/2023 | 0.2 | $350.00 | $70.00 | Confer with clients re: settlement conference |
| 212 Steakhouse | Mike DiGiulio | 9/14/2023 | 1 | $350.00 | $350.00 | Prepare for and attend pre-motion conference |
| 212 Steakhouse | Mike DiGiulio | 9/15/2023 | 0.2 | $350.00 | $70.00 | Call with Dagmara Huk re: settlement conference |
| 212 Steakhouse | Mike DiGiulio | 9/18/2023 | 0.1 | $350.00 | $35.00 | Confer with court re: SC dates |
| 212 Steakhouse | Denise Schulman | 9/19/2023 | 0.3 | $500.00 | $150.00 | Research numerosity and subclasses |
| 212 Steakhouse | Denise Schulman | 9/19/2023 | 1.4 | $500.00 | $700.00 | Research meal break issues |
| 212 Steakhouse | Denise Schulman | 9/19/2023 | 1.1 | $500.00 | $550.00 | Research/draft settlement conference position statement |
| 212 Steakhouse | Denise Schulman | 9/19/2023 | 0.3 | $500.00 | $150.00 | Draft settlement conference position statement |
| 212 Steakhouse | Denise Schulman | 9/19/2023 | 0.1 | $500.00 | $50.00 | Email Mike re: settlement conference scheduling |
| 212 Steakhouse | Mike DiGiulio | 9/19/2023 | 0.1 | $350.00 | $35.00 | Respond to defense re: sanctions |

A-354

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|---|---|---|---|---|---|---|
| 212 Steakhouse | Mike DiGiulio | 9/19/2023 | 0.1 | $350.00 | $35.00 | Confer with clients re: SC dates and June 4th date |
| 212 Steakhouse | Denise Schulman | 9/21/2023 | 0.9 | $500.00 | $450.00 | Draft settlement position statement |
| 212 Steakhouse | Denise Schulman | 9/21/2023 | 0.8 | $500.00 | $400.00 | Draft settlement position statement |
| 212 Steakhouse | Denise Schulman | 9/22/2023 | 1.9 | $500.00 | $950.00 | Draft settlement conference position statement |
| 212 Steakhouse | Mike DiGiulio | 9/22/2023 | 0.3 | $350.00 | $105.00 | Obtain authorization for classwide demand, discuss with clients |
| 212 Steakhouse | Denise Schulman | 9/24/2023 | 1.5 | $500.00 | $750.00 | Draft settlement conference position statement |
| 212 Steakhouse | Mike DiGiulio | 9/26/2023 | 0.5 | $350.00 | $175.00 | Edit settlement conference statement |
| 212 Steakhouse | Mike DiGiulio | 9/26/2023 | 0.2 | $350.00 | $70.00 | Organize client meeting with opt in and client, send invite |
| 212 Steakhouse | Denise Schulman | 9/27/2023 | 0.4 | $500.00 | $200.00 | Edit settlement conference position statement |
| 212 Steakhouse | Denise Schulman | 9/28/2023 | 0.1 | $500.00 | $50.00 | Draft email to court re: position statement |
| 212 Steakhouse | Denise Schulman | 9/28/2023 | 0.6 | $500.00 | $300.00 | Edit settlement conference position statement |
| 212 Steakhouse | Denise Schulman | 9/29/2023 | 0.1 | $500.00 | $50.00 | Email Lehrburger clerk re: settlement conference submissions |
| 212 Steakhouse | Denise Schulman | 9/29/2023 | 0.5 | $500.00 | $250.00 | Client call re: settlement conference prep |
| 212 Steakhouse | Denise Schulman | 9/29/2023 | 0.1 | $500.00 | $50.00 | Review damages |
| 212 Steakhouse | Mike DiGiulio | 9/29/2023 | 0.5 | $350.00 | $175.00 | Call with clients re: settlement conference |
| 212 Steakhouse | Denise Schulman | 10/1/2023 | 0.2 | $500.00 | $100.00 | Research using NCOA |
| 212 Steakhouse | Denise Schulman | 10/1/2023 | 0.6 | $500.00 | $300.00 | Review damages |
| 212 Steakhouse | Denise Schulman | 10/4/2023 | 0.8 | $500.00 | $400.00 | Prep for settlement conference |
| 212 Steakhouse | Denise Schulman | 10/4/2023 | 0.3 | $500.00 | $150.00 | Discuss settlement conference with Mike |
| 212 Steakhouse | Denise Schulman | 10/4/2023 | 0.1 | $500.00 | $50.00 | Research class members |
| 212 Steakhouse | Denise Schulman | 10/5/2023 | 0.1 | $500.00 | $50.00 | Discuss settlement conference with Mike |
| 212 Steakhouse | Denise Schulman | 10/5/2023 | 1.9 | $500.00 | $950.00 | Settlement conference |
| 212 Steakhouse | Denise Schulman | 10/9/2023 | 0.3 | $500.00 | $150.00 | Draft list of financial documents we want from defense |
| 212 Steakhouse | D. Maimon Kirschenbaum | 10/10/2023 | 0.1 | $500.00 | $50.00 | Review corr. Re: financial disclosures from Ds |
| 212 Steakhouse | Mike DiGiulio | 10/10/2023 | 0.2 | $350.00 | $70.00 | Review financial requests and suggest other docs |
| 212 Steakhouse | Denise Schulman | 10/13/2023 | 0.1 | $500.00 | $50.00 | Email defense re: documents re: finances |
| 212 Steakhouse | Denise Schulman | 11/2/2023 | 1 | $500.00 | $500.00 | Work on damages for SJ |
| 212 Steakhouse | Denise Schulman | 11/2/2023 | 0.2 | $500.00 | $100.00 | Discuss SJ motion with Mike |
| 212 Steakhouse | Mike DiGiulio | 11/2/2023 | 0.2 | $350.00 | $70.00 | Call with partner re: discuss SMJ briefing, damages calculation |
| 212 Steakhouse | Denise Schulman | 11/3/2023 | 1.3 | $500.00 | $650.00 | Work on damages for SJ/draft decl re: same |

A-355

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|------|--------|------|------|------|-------|-------------|
| 212 Steakhouse | Denise Schulman | 11/5/2023 | 0.3 | $500.00 | $150.00 | Update damage calc and SJ decl |
| 212 Steakhouse | Mike DiGiulio | 11/7/2023 | 1.1 | $350.00 | $385.00 | Draft SMJ brief |
| 212 Steakhouse | Denise Schulman | 11/9/2023 | 0.3 | $500.00 | $150.00 | Work on damages and decl for SJ |
| 212 Steakhouse | Denise Schulman | 11/9/2023 | 0.1 | $500.00 | $50.00 | Draft SJ decl |
| 212 Steakhouse | Denise Schulman | 11/9/2023 | 0.8 | $500.00 | $400.00 | Work on damage calc for SJ |
| 212 Steakhouse | Mike DiGiulio | 11/9/2023 | 1.3 | $350.00 | $455.00 | Draft SMJ brief |
| 212 Steakhouse | Denise Schulman | 11/10/2023 | 0.4 | $500.00 | $200.00 | Call with Mike re: SJ/research same |
| 212 Steakhouse | Mike DiGiulio | 11/10/2023 | 3.5 | $350.00 | $1,225.00 | Draft SMJ brief |
| 212 Steakhouse | Mike DiGiulio | 11/11/2023 | 6.5 | $350.00 | $2,275.00 | Draft SMJ brief |
| 212 Steakhouse | Denise Schulman | 11/12/2023 | 0.1 | $500.00 | $50.00 | Email Mike re: partial judgment |
| 212 Steakhouse | Denise Schulman | 11/12/2023 | 1.5 | $500.00 | $750.00 | Review/edit SJ brief |
| 212 Steakhouse | Denise Schulman | 11/12/2023 | 0.1 | $500.00 | $50.00 | Fix formatting on brief |
| 212 Steakhouse | Mike DiGiulio | 11/12/2023 | 1.2 | $350.00 | $420.00 | Incorporate partner edits to MOL, continue drafting MOL |
| 212 Steakhouse | Mike DiGiulio | 11/12/2023 | 1.5 | $350.00 | $525.00 | Draft 56.1 statement |
| 212 Steakhouse | Mike DiGiulio | 11/13/2023 | 2.1 | $350.00 | $735.00 | Draft 56.1 statement |
| 212 Steakhouse | Mike DiGiulio | 11/13/2023 | 1.4 | $350.00 | $490.00 | Draft SMJ brief |
| 212 Steakhouse | Mike DiGiulio | 11/14/2023 | 3.5 | $350.00 | $1,225.00 | Draft SMJ brief |
| 212 Steakhouse | D. Maimon Kirschenbaum | 11/15/2023 | 0.9 | $500.00 | $450.00 | Review SMJ docs |
| 212 Steakhouse | Denise Schulman | 11/15/2023 | 2.5 | $500.00 | $1,250.00 | Prepare number of employees exhibit |
| 212 Steakhouse | Denise Schulman | 11/15/2023 | 0.8 | $500.00 | $400.00 | Work on number of employees for SJ motion |
| 212 Steakhouse | Denise Schulman | 11/15/2023 | 0.4 | $500.00 | $200.00 | Discuss SJ with Mike |
| 212 Steakhouse | Denise Schulman | 11/15/2023 | 0.9 | $500.00 | $450.00 | Edit SJ brief |
| 212 Steakhouse | Mike DiGiulio | 11/15/2023 | 1.5 | $350.00 | $525.00 | Edit MOL re: class definition issue |
| 212 Steakhouse | Mike DiGiulio | 11/15/2023 | 0.3 | $350.00 | $105.00 | Call with partners re: class definition issue |
| 212 Steakhouse | Mike DiGiulio | 11/15/2023 | 0.8 | $350.00 | $280.00 | Draft SMJ brief |
| 212 Steakhouse | Mike DiGiulio | 11/15/2023 | 4.5 | $350.00 | $1,575.00 | Draft 56.1 statement and exhibits and DiGiulio declaration |
| 212 Steakhouse | D. Maimon Kirschenbaum | 11/16/2023 | 0.4 | $500.00 | $200.00 | Review SMJ docs |
| 212 Steakhouse | Denise Schulman | 11/16/2023 | 2.3 | $500.00 | $1,150.00 | Edit SJ papers |
| 212 Steakhouse | Denise Schulman | 11/16/2023 | 0.2 | $500.00 | $100.00 | Review mtd |
| 212 Steakhouse | Denise Schulman | 11/16/2023 | 1.8 | $500.00 | $900.00 | Work on 56.1/edit brief |
| 212 Steakhouse | Evelyn Velesaca | 11/16/2023 | 0.1 | $125.00 | $12.50 | Send signed declaration to Mike |
| 212 Steakhouse | Evelyn Velesaca | 11/16/2023 | 0.1 | $125.00 | $12.50 | Send declaration to client via docusign |
| 212 Steakhouse | Evelyn Velesaca | 11/16/2023 | 0.2 | $125.00 | $25.00 | Scan and print docs |

A-356

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|---|---|---|---|---|---|---|
| 212 Steakhouse | Mike DiGiulio | 11/16/2023 | 7.8 | $350.00 | $2,730.00 | Draft MOL, 56.1, exhibits, file SMJ brief |
| 212 Steakhouse | Mike DiGiulio | 11/16/2023 | 0.3 | $350.00 | $105.00 | Confer with partner re: brief and 56.1 |
| 212 Steakhouse | Denise Schulman | 11/17/2023 | 0.2 | $500.00 | $100.00 | Review motion to dismiss/decertify |
| 212 Steakhouse | Denise Schulman | 11/17/2023 | 0.4 | $500.00 | $200.00 | Discuss mtd/decert with Mike/review same |
| 212 Steakhouse | Jorge Aguirre | 11/17/2023 | 0.8 | $125.00 | $100.00 | Downloading docs for Mike |
| 212 Steakhouse | Mike DiGiulio | 11/17/2023 | 1.3 | $350.00 | $455.00 | Review defendants' motion for de-cert and standing |
| 212 Steakhouse | Mike DiGiulio | 12/6/2023 | 3.8 | $350.00 | $1,330.00 | Draft opp. decert motion |
| 212 Steakhouse | Denise Schulman | 12/15/2023 | 0.1 | $500.00 | $50.00 | Review defendants' motion papers |
| 212 Steakhouse | Mike DiGiulio | 12/15/2023 | 5.7 | $350.00 | $1,995.00 | Draft opp. decert motion |
| 212 Steakhouse | Denise Schulman | 12/17/2023 | 0.1 | $500.00 | $50.00 | Email Mike re: numerosity and recordkeeping requirements |
| 212 Steakhouse | Denise Schulman | 12/17/2023 | 0.7 | $500.00 | $350.00 | Discuss decert opp with Mike |
| 212 Steakhouse | Denise Schulman | 12/17/2023 | 0.6 | $500.00 | $300.00 | Review mtd opp brief |
| 212 Steakhouse | Mike DiGiulio | 12/17/2023 | 0.8 | $350.00 | $280.00 | Call with partner re: brief |
| 212 Steakhouse | Mike DiGiulio | 12/18/2023 | 6.3 | $350.00 | $2,205.00 | Draft opp. decert motion |
| 212 Steakhouse | D. Maimon Kirschenbaum | 12/19/2023 | 0.8 | $500.00 | $400.00 | Review decert docs |
| 212 Steakhouse | Denise Schulman | 12/19/2023 | 1.6 | $500.00 | $800.00 | Research/edit decert opp |
| 212 Steakhouse | Denise Schulman | 12/19/2023 | 0.1 | $500.00 | $50.00 | Discuss number of class members with Mike |
| 212 Steakhouse | Denise Schulman | 12/19/2023 | 0.1 | $500.00 | $50.00 | Discuss decert opp with Mike |
| 212 Steakhouse | Denise Schulman | 12/19/2023 | 0.2 | $500.00 | $100.00 | Research decert opp |
| 212 Steakhouse | Denise Schulman | 12/19/2023 | 0.7 | $500.00 | $350.00 | Edit decert opp/discuss same with Mike |
| 212 Steakhouse | Denise Schulman | 12/19/2023 | 1 | $500.00 | $500.00 | Edit decert opp |
| 212 Steakhouse | Mike DiGiulio | 12/19/2023 | 4 | $350.00 | $1,400.00 | Draft opp. brief to standing and decertify |
| 212 Steakhouse | Denise Schulman | 12/20/2023 | 0.2 | $500.00 | $100.00 | Discuss decert opp with Mike |
| 212 Steakhouse | Denise Schulman | 12/20/2023 | 0.5 | $500.00 | $250.00 | Research decert opp |
| 212 Steakhouse | Denise Schulman | 12/20/2023 | 3.2 | $500.00 | $1,600.00 | Edit decert opp |
| 212 Steakhouse | Denise Schulman | 12/20/2023 | 0.5 | $500.00 | $250.00 | Research/edit decert opp |
| 212 Steakhouse | Denise Schulman | 12/20/2023 | 0.7 | $500.00 | $350.00 | Edit decert opp |
| 212 Steakhouse | Mike DiGiulio | 12/20/2023 | 3.5 | $350.00 | $1,225.00 | Draft opp. brief, send to co-counsel for review |
| 212 Steakhouse | Mike DiGiulio | 12/20/2023 | 0.3 | $350.00 | $105.00 | Call with client re: declaration and facts |
| 212 Steakhouse | Mike DiGiulio | 12/20/2023 | 2.7 | $350.00 | $945.00 | Caselaw research for decert. opp. brief |
| 212 Steakhouse | Denise Schulman | 12/21/2023 | 0.1 | $500.00 | $50.00 | Finalize decert opp brief |
| 212 Steakhouse | Denise Schulman | 12/21/2023 | 1.2 | $500.00 | $600.00 | Research decert opp/prepare TOA/discuss brief with Mike |
| 212 Steakhouse | Denise Schulman | 12/21/2023 | 0.7 | $500.00 | $350.00 | Discuss decert opp with Mike |

A-357

**Exhibit 1 - Class Counsel's time records**

| Case | Biller | Date | Time | Rate | Total | Description |
|------|--------|------|------|------|-------|-------------|
| 212 Steakhouse | Denise Schulman | 12/21/2023 | 4.1 | $500.00 | $2,050.00 | Edit decert opp |
| 212 Steakhouse | Evelyn Velesaca | 12/21/2023 | 0.1 | $125.00 | $12.50 | Resend declaration to Nino |
| 212 Steakhouse | Evelyn Velesaca | 12/21/2023 | 0.2 | $125.00 | $25.00 | Send declaration to Nino |
| 212 Steakhouse | Mike DiGiulio | 12/21/2023 | 2.9 | $350.00 | $1,015.00 | Finalize brief and file |
| 212 Steakhouse | Mike DiGiulio | 12/21/2023 | 1.3 | $350.00 | $455.00 | Draft DiGiulio and Martinenko declarations |
| 212 Steakhouse | Andy Pichardo | 12/22/2023 | 0.4 | $125.00 | $50.00 | Downloaded documents from docket and saved to file |
| 212 Steakhouse | Denise Schulman | 12/22/2023 | 0.2 | $500.00 | $100.00 | Call with Mike re: SJ reply |
| 212 Steakhouse | Mike DiGiulio | 12/22/2023 | 0.2 | $350.00 | $70.00 | Confer with partner re: SMJ reply brief |
| 212 Steakhouse | Denise Schulman | 12/27/2023 | 3.9 | $500.00 | $1,950.00 | Work on SJ reply |
| 212 Steakhouse | Denise Schulman | 12/27/2023 | 0.5 | $500.00 | $250.00 | Review SJ opp |
| 212 Steakhouse | Denise Schulman | 12/28/2023 | 3.6 | $500.00 | $1,800.00 | Draft SJ reply |
| 212 Steakhouse | Denise Schulman | 12/28/2023 | 1 | $500.00 | $500.00 | Research/draft SJ reply |
| 212 Steakhouse | Denise Schulman | 12/28/2023 | 1.4 | $500.00 | $700.00 | Research SJ reply |
| 212 Steakhouse | Denise Schulman | 12/31/2023 | 1.9 | $500.00 | $950.00 | Draft SJ reply |
| 212 Steakhouse | Denise Schulman | 1/2/2024 | 0.3 | $500.00 | $150.00 | Discuss SJ reply with Mike |
| 212 Steakhouse | Denise Schulman | 1/2/2024 | 0.1 | $500.00 | $50.00 | Email Mike re: SJ reply |
| 212 Steakhouse | Mike DiGiulio | 1/2/2024 | 0.2 | $350.00 | $70.00 | Review case research and brief notes |
| 212 Steakhouse | Mike DiGiulio | 1/2/2024 | 0.3 | $350.00 | $105.00 | Discuss brief and opp for SMJ with partner |
| 212 Steakhouse | Andy Pichardo | 1/5/2024 | 0.4 | $125.00 | $50.00 | Printing out documents for Mike |
| 212 Steakhouse | Denise Schulman | 1/5/2024 | 0.3 | $500.00 | $150.00 | Discuss SJ reply with Mike |
| 212 Steakhouse | Mike DiGiulio | 1/5/2024 | 1.1 | $350.00 | $385.00 | Draft SMJ reply brief |
| 212 Steakhouse | Mike DiGiulio | 1/7/2024 | 3.2 | $350.00 | $1,120.00 | Draft SMJ reply brief |
| 212 Steakhouse | Denise Schulman | 1/8/2024 | 0.4 | $500.00 | $200.00 | Discuss SJ reply with Mike |
| 212 Steakhouse | Denise Schulman | 1/8/2024 | 0.2 | $500.00 | $100.00 | Review SJ reply |
| 212 Steakhouse | Mike DiGiulio | 1/8/2024 | 2.7 | $350.00 | $945.00 | Draft SMJ reply brief |
| 212 Steakhouse | Mike DiGiulio | 1/9/2024 | 0.9 | $350.00 | $315.00 | Draft SMJ reply brief |
| 212 Steakhouse | Denise Schulman | 1/10/2024 | 1 | $500.00 | $500.00 | Edit SJ reply |
| 212 Steakhouse | Denise Schulman | 1/10/2024 | 0.6 | $500.00 | $300.00 | Review SJ reply |
| 212 Steakhouse | Denise Schulman | 1/10/2024 | 0.1 | $500.00 | $50.00 | Edit letter to court re: extra pages |
| 212 Steakhouse | Denise Schulman | 1/10/2024 | 0.1 | $500.00 | $50.00 | Email defense re: page length extension |
| 212 Steakhouse | Mike DiGiulio | 1/10/2024 | 3.6 | $350.00 | $1,260.00 | Draft SMJ reply brief |
| 212 Steakhouse | Denise Schulman | 1/11/2024 | 1.1 | $500.00 | $550.00 | Edit SJ reply |
| 212 Steakhouse | Denise Schulman | 1/11/2024 | 0.5 | $500.00 | $250.00 | Prepare SJ reply TOA |

A-358

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|------|--------|------|------|------|-------|-------------|
| 212 Steakhouse | Denise Schulman | 1/11/2024 | 0.5 | $500.00 | $250.00 | Discuss SJ reply with Mike |
| 212 Steakhouse | Denise Schulman | 1/11/2024 | 0.1 | $500.00 | $50.00 | Email Mike re: SJ reply |
| 212 Steakhouse | Mike DiGiulio | 1/11/2024 | 0.3 | $350.00 | $105.00 | Review reply brief edits |
| 212 Steakhouse | Mike DiGiulio | 1/11/2024 | 2.2 | $350.00 | $770.00 | Draft SMJ reply brief |
| 212 Steakhouse | D. Maimon Kirschenbaum | 1/12/2024 | 0.2 | $500.00 | $100.00 | Review SMJ reply |
| 212 Steakhouse | Denise Schulman | 1/12/2024 | 0.5 | $500.00 | $250.00 | Research SOL for dead class members |
| 212 Steakhouse | Denise Schulman | 1/12/2024 | 0.2 | $500.00 | $100.00 | Prepare TOA |
| 212 Steakhouse | Denise Schulman | 1/12/2024 | 0.5 | $500.00 | $250.00 | Edit SJ reply/prepare TOA |
| 212 Steakhouse | Denise Schulman | 1/12/2024 | 0.6 | $500.00 | $300.00 | Edit SJ reply and Mike decl |
| 212 Steakhouse | Denise Schulman | 1/12/2024 | 0.2 | $500.00 | $100.00 | Edit SJ reply |
| 212 Steakhouse | Denise Schulman | 1/12/2024 | 0.2 | $500.00 | $100.00 | Discuss SJ reply with Mike |
| 212 Steakhouse | Mike DiGiulio | 1/12/2024 | 0.4 | $350.00 | $140.00 | Review reply brief de-cert |
| 212 Steakhouse | Mike DiGiulio | 1/12/2024 | 3.5 | $350.00 | $1,225.00 | Finalize reply brief SMJ |
| 212 Steakhouse | Denise Schulman | 1/15/2024 | 0.5 | $500.00 | $250.00 | Draft decert surreply |
| 212 Steakhouse | Denise Schulman | 1/16/2024 | 0.2 | $500.00 | $100.00 | Finalize/file request for sur-reply |
| 212 Steakhouse | Andy Pichardo | 1/24/2024 | 0.2 | $125.00 | $25.00 | Took call form Barbara Laluz asking for an update on case, informed Denise |
| 212 Steakhouse | Denise Schulman | 1/24/2024 | 0.1 | $500.00 | $50.00 | Email Barbara Laluz |
| 212 Steakhouse | Denise Schulman | 1/24/2024 | 0.2 | $500.00 | $100.00 | Draft email to Barbara Laluz |
| 212 Steakhouse | Denise Schulman | 1/24/2024 | 0.1 | $500.00 | $50.00 | Email Mike and Maimon re: Barbara Laluz |
| 212 Steakhouse | Denise Schulman | 1/25/2024 | 0.1 | $500.00 | $50.00 | Email Barbara Laluz |
| 212 Steakhouse | Mike DiGiulio | 2/13/2024 | 0.1 | $350.00 | $35.00 | Confirm with client re: status of case |
| 212 Steakhouse | Mike DiGiulio | 2/21/2024 | 0.1 | $350.00 | $35.00 | Confer with client re: case update |
| 212 Steakhouse | Andy Pichardo | 3/14/2024 | 0.2 | $125.00 | $25.00 | Took call from Vivian Peng, informed Denise |
| 212 Steakhouse | Denise Schulman | 3/14/2024 | 0.2 | $500.00 | $100.00 | Call with Vivian Peng |
| 212 Steakhouse | Denise Schulman | 4/17/2024 | 0.1 | $500.00 | $50.00 | Discuss settlement with Maimon |
| 212 Steakhouse | Mike DiGiulio | 8/13/2024 | 1.3 | $350.00 | $455.00 | Review SJ opinion and confer with partners re: analysis and strategy |
| 212 Steakhouse | Mike DiGiulio | 8/14/2024 | 0.4 | $350.00 | $140.00 | Confer with client re: SJ order |
| 212 Steakhouse | Mike DiGiulio | 8/15/2024 | 0.2 | $350.00 | $70.00 | Call with client Nino re: SJ order |
| 212 Steakhouse | Mike DiGiulio | 8/15/2024 | 0.1 | $350.00 | $35.00 | Review and calendar deadlines and order re: r&R objections |
| 212 Steakhouse | Mike DiGiulio | 8/15/2024 | 0.3 | $350.00 | $105.00 | Confer with client Hukre: SJ order |
| 212 Steakhouse | Mike DiGiulio | 8/16/2024 | 0.1 | $350.00 | $35.00 | Confer with client Hukre: SJ order |

A-359

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|------|--------|------|------|------|-------|-------------|
| 212 Steakhouse | Mike DiGiulio | 8/19/2024 | 0.2 | $350.00 | $70.00 | Call with Huk re: SJ order update |
| 212 Steakhouse | Denise Schulman | 8/20/2024 | 0.4 | $500.00 | $200.00 | Review R&R |
| 212 Steakhouse | Denise Schulman | 8/30/2024 | 0.2 | $500.00 | $100.00 | Draft response to R&R objections |
| 212 Steakhouse | Denise Schulman | 8/30/2024 | 0.1 | $500.00 | $50.00 | Review defendants' R&R objections |
| 212 Steakhouse | Mike DiGiulio | 8/30/2024 | 0.3 | $350.00 | $105.00 | Review D's R&R objections |
| 212 Steakhouse | Denise Schulman | 9/3/2024 | 1.8 | $500.00 | $900.00 | Draft response to R&R objections |
| 212 Steakhouse | Denise Schulman | 9/3/2024 | 0.4 | $500.00 | $200.00 | Discuss R&R objections response with Mike |
| 212 Steakhouse | Mike DiGiulio | 9/3/2024 | 0.3 | $350.00 | $105.00 | Confer with partner re: response to objections |
| 212 Steakhouse | Denise Schulman | 9/4/2024 | 2.7 | $500.00 | $1,350.00 | Draft response to R&R objections |
| 212 Steakhouse | Denise Schulman | 9/6/2024 | 4.1 | $500.00 | $2,050.00 | Draft response to R&R objections |
| 212 Steakhouse | Denise Schulman | 9/6/2024 | 0.2 | $500.00 | $100.00 | Discuss negotiations with team |
| 212 Steakhouse | Mike DiGiulio | 9/6/2024 | 3.2 | $350.00 | $1,120.00 | Draft objections to damages portion to R&R response |
| 212 Steakhouse | Mike DiGiulio | 9/6/2024 | 1.7 | $350.00 | $595.00 | Draft R&R sections |
| 212 Steakhouse | Denise Schulman | 9/8/2024 | 3 | $500.00 | $1,500.00 | Edit response to R&R objections |
| 212 Steakhouse | Denise Schulman | 9/9/2024 | 0.9 | $500.00 | $450.00 | Edit responses to R&R objections |
| 212 Steakhouse | Denise Schulman | 9/9/2024 | 0.8 | $500.00 | $400.00 | Edit responses to R&R objections/prepare TOA |
| 212 Steakhouse | Denise Schulman | 9/10/2024 | 0.2 | $500.00 | $100.00 | File response to R&R objections/email Mariela re: courtesy copies |
| 212 Steakhouse | Denise Schulman | 9/10/2024 | 0.6 | $500.00 | $300.00 | Finalize response to R&R objections |
| 212 Steakhouse | Denise Schulman | 9/10/2024 | 0.3 | $500.00 | $150.00 | Prepare TOA |
| 212 Steakhouse | Mariela Lini | 9/10/2024 | 0.2 | $125.00 | $25.00 | Preparing mailings |
| 212 Steakhouse | Mike DiGiulio | 9/10/2024 | 0.1 | $350.00 | $35.00 | Review supp letter |
| 212 Steakhouse | Denise Schulman | 9/24/2024 | 0.2 | $500.00 | $100.00 | Review SJ decision |
| 212 Steakhouse | Denise Schulman | 9/25/2024 | 0.2 | $500.00 | $100.00 | Discuss next steps with Maimon |
| 212 Steakhouse | Denise Schulman | 9/25/2024 | 0.5 | $500.00 | $250.00 | Discuss SJ decision with Mike |
| 212 Steakhouse | Mike DiGiulio | 9/25/2024 | 0.3 | $350.00 | $105.00 | Review judgment, deadlines for fee requests, entry of judgment |
| 212 Steakhouse | Mike DiGiulio | 9/25/2024 | 0.5 | $350.00 | $175.00 | Review SJ order affirming R&R, discuss potential appeal with partner |
| 212 Steakhouse | Denise Schulman | 9/26/2024 | 0.3 | $500.00 | $150.00 | Compile time for fee application |
| 212 Steakhouse | Denise Schulman | 9/26/2024 | 0.5 | $500.00 | $250.00 | Compile time for fee application |
| 212 Steakhouse | Denise Schulman | 9/26/2024 | 0.8 | $500.00 | $400.00 | Compile time for fee application |
| 212 Steakhouse | Mike DiGiulio | 9/26/2024 | 0.3 | $350.00 | $105.00 | Confer with clients re: case update, appeal, and next steps |

A-360

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|------|--------|------|------|------|-------|-------------|
| 212 Steakhouse | D. Maimon Kirschenbaum | 9/27/2024 | 0.9 | $500.00 | $450.00 | Review order, research next steps |
| 212 Steakhouse | Denise Schulman | 9/27/2024 | 0.3 | $500.00 | $150.00 | Call with team re: next steps |
| 212 Steakhouse | Denise Schulman | 9/27/2024 | 0.2 | $500.00 | $100.00 | Call with defense re: next steps |
| 212 Steakhouse | Denise Schulman | 9/27/2024 | 0.7 | $500.00 | $350.00 | Team call re: appeal and next steps |
| 212 Steakhouse | Denise Schulman | 9/27/2024 | 0.1 | $500.00 | $50.00 | Review expenses |
| 212 Steakhouse | Denise Schulman | 9/27/2024 | 0.2 | $500.00 | $100.00 | Review email from defense/call with Maimon re: next steps |
| 212 Steakhouse | Denise Schulman | 9/27/2024 | 0.1 | $500.00 | $50.00 | Email defense re: next steps |
| 212 Steakhouse | Denise Schulman | 9/27/2024 | 0.2 | $500.00 | $100.00 | Compile time for fee application |
| 212 Steakhouse | Denise Schulman | 9/27/2024 | 0.1 | $500.00 | $50.00 | Draft email to defense re: next steps |
| 212 Steakhouse | Mike DiGiulio | 9/27/2024 | 1 | $350.00 | $350.00 | Confer with partners re: meet and confer and appeal |
| 212 Steakhouse | D. Maimon Kirschenbaum | 9/30/2024 | 0.3 | $500.00 | $150.00 | Discussion w team re: settlement |
| 212 Steakhouse | Denise Schulman | 9/30/2024 | 0.1 | $500.00 | $50.00 | Discuss next steps with legal team |
| 212 Steakhouse | Denise Schulman | 9/30/2024 | 0.1 | $500.00 | $50.00 | Email defense re: next steps |
| 212 Steakhouse | Denise Schulman | 9/30/2024 | 0.2 | $500.00 | $100.00 | Discuss next steps with Mike |
| 212 Steakhouse | Mike DiGiulio | 9/30/2024 | 0.3 | $350.00 | $105.00 | Confer with partners re: next steps and confer with clients |
| 212 Steakhouse | Mike DiGiulio | 9/30/2024 | 0.2 | $350.00 | $70.00 | confer with partner re: next steps |
| 212 Steakhouse | Denise Schulman | 10/1/2024 | 0.1 | $500.00 | $50.00 | File letter to court re: fee application deadline |
| 212 Steakhouse | Denise Schulman | 10/1/2024 | 0.3 | $500.00 | $150.00 | Edit letter to court re: dismissal of NYLL 195 claims |
| 212 Steakhouse | Denise Schulman | 10/1/2024 | 0.3 | $500.00 | $150.00 | Draft letter to court re: adjournment of fee application deadline |
| 212 Steakhouse | Denise Schulman | 10/1/2024 | 0.1 | $500.00 | $50.00 | Email defense re: extension of deadline for fee application |
| 212 Steakhouse | Denise Schulman | 10/1/2024 | 0.2 | $500.00 | $100.00 | Discuss judgment with Mike and Maimon |
| 212 Steakhouse | Denise Schulman | 10/1/2024 | 1.3 | $500.00 | $650.00 | Draft letter to court re: dismissal of NYLL 195 claims |
| 212 Steakhouse | Mike DiGiulio | 10/1/2024 | 0.8 | $350.00 | $280.00 | Draft fee motion |
| 212 Steakhouse | Mike DiGiulio | 10/1/2024 | 0.4 | $350.00 | $140.00 | Confer with plaintiff Dagmara re: next steps, appeal and case update |
| 212 Steakhouse | Mike DiGiulio | 10/1/2024 | 0.4 | $350.00 | $140.00 | Call with client - Martinenko, case update, obtain authorization for next steps |
| 212 Steakhouse | Mike DiGiulio | 10/1/2024 | 0.3 | $350.00 | $105.00 | Call with partners re: stip letter, dismissal issues, extension of time for fee application |
| 212 Steakhouse | Mike DiGiulio | 10/2/2024 | 0.6 | $350.00 | $210.00 | Draft fee motion |
| 212 Steakhouse | D. Maimon Kirschenbaum | 10/8/2024 | 0.1 | $500.00 | $50.00 | Email Defendant re: settlement |
| 212 Steakhouse | Denise Schulman | 10/8/2024 | 0.1 | $500.00 | $50.00 | Email defense re: scheduling call |

A-361

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|------|--------|------|------|------|-------|-------------|
| 212 Steakhouse | Denise Schulman | 10/8/2024 | 0.1 | $500.00 | $50.00 | Email defense re: NYLL 195 claims |
| 212 Steakhouse | Denise Schulman | 10/10/2024 | 0.3 | $500.00 | $150.00 | Prepare individual allocation of judgment |
| 212 Steakhouse | Denise Schulman | 10/10/2024 | 0.8 | $500.00 | $400.00 | Edit letter to court re: dismissing NYLL 195 claims |
| 212 Steakhouse | Denise Schulman | 10/10/2024 | 0.1 | $500.00 | $50.00 | Discuss next steps with Mike |
| 212 Steakhouse | Denise Schulman | 10/10/2024 | 0.1 | $500.00 | $50.00 | Call with defense re: next steps for NYLL 195 |
| 212 Steakhouse | Mike DiGiulio | 10/10/2024 | 0.2 | $350.00 | $70.00 | Edit letter to court re: dismissal 195 |
| 212 Steakhouse | Denise Schulman | 10/14/2024 | 0.1 | $500.00 | $50.00 | Email Maimon re: letter to court |
| 212 Steakhouse | Denise Schulman | 10/15/2024 | 0.2 | $500.00 | $100.00 | Finalize/file letter to court re: dismissal of NYLL 195 claims |
| 212 Steakhouse | Denise Schulman | 10/15/2024 | 0.4 | $500.00 | $200.00 | Draft notice to class of dismissal of NYLL 195 claims |
| 212 Steakhouse | Denise Schulman | 10/15/2024 | 0.1 | $500.00 | $50.00 | Call with Mike re: letter to court re: dismissal of NYLL 195 claims |
| 212 Steakhouse | Denise Schulman | 10/15/2024 | 0.4 | $500.00 | $200.00 | Edit letter to court re: dismissing NYLL 195 claims |
| 212 Steakhouse | Mike DiGiulio | 10/15/2024 | 0.1 | $350.00 | $35.00 | Discuss notice of dismissal for class, review proposed notice |
| 212 Steakhouse | Mike DiGiulio | 10/16/2024 | 0.1 | $350.00 | $35.00 | Review final 212 letter, and filing re: dismissal and notice to class |
| 212 Steakhouse | Denise Schulman | 10/21/2024 | 0.1 | $500.00 | $50.00 | Review defendants' letter to court |
| 212 Steakhouse | Mike DiGiulio | 10/21/2024 | 0.2 | $350.00 | $70.00 | Review letter response to dismissal letter |
| 212 Steakhouse | Denise Schulman | 10/23/2024 | 0.5 | $500.00 | $250.00 | Research letter re: court re: NYLL 195 dismissal |
| 212 Steakhouse | Denise Schulman | 10/23/2024 | 0.1 | $500.00 | $50.00 | Discuss letter to court with Maimon |
| 212 Steakhouse | Denise Schulman | 10/23/2024 | 0.9 | $500.00 | $450.00 | Research/draft letter to court re: NYLL 195 dismissal |
| 212 Steakhouse | Mike DiGiulio | 10/23/2024 | 0.2 | $350.00 | $70.00 | Review reply letter re: dismissal |
| 212 Steakhouse | Denise Schulman | 10/27/2024 | 0.2 | $500.00 | $100.00 | Call with Maimon re: letter to court |
| 212 Steakhouse | Denise Schulman | 10/27/2024 | 1.5 | $500.00 | $750.00 | Research/draft letter to court re: NYLL 195 dismissal |
| 212 Steakhouse | Denise Schulman | 10/28/2024 | 0.2 | $500.00 | $100.00 | Finalize/file letter to court |
| 212 Steakhouse | Denise Schulman | 10/28/2024 | 0.1 | $500.00 | $50.00 | Research final judgment |
| 212 Steakhouse | Denise Schulman | 10/28/2024 | 1.1 | $500.00 | $550.00 | Edit letter to court re: NYLL 195 dismissal |
| 212 Steakhouse | Mike DiGiulio | 10/28/2024 | 0.2 | $350.00 | $70.00 | Review reply letter to dismissal without prejudice request |
| 212 Steakhouse | Denise Schulman | 11/1/2024 | 0.6 | $500.00 | $300.00 | Review/edit fee application |
| 212 Steakhouse | Mike DiGiulio | 11/1/2024 | 2.5 | $350.00 | $875.00 | Draft fee motion, circulate with partners |
| 212 Steakhouse | Denise Schulman | 11/4/2024 | 0.2 | $500.00 | $100.00 | Review time records for fee application |
| 212 Steakhouse | Denise Schulman | 11/4/2024 | 0.1 | $500.00 | $50.00 | Email Mike re: fee application |
| 212 Steakhouse | Denise Schulman | 11/6/2024 | 0.1 | $500.00 | $50.00 | Discuss fee application with Mike |
| 212 Steakhouse | Denise Schulman | 11/6/2024 | 0.1 | $500.00 | $50.00 | Email Mike re: fee application |

Exhibit 1 - Class Counsel's time records

| Case | Biller | Date | Time | Rate | Total | Description |
|------|--------|------|------|------|-------|-------------|
| 212 Steakhouse | Mike DiGiulio | 11/6/2024 | 1.1 | $350.00 | $385.00 | Draft MOL fee motion, pull exhibits, draft declaration |
| 212 Steakhouse | Mike DiGiulio | 11/6/2024 | 0.8 | $350.00 | $280.00 | Draft MOL fee motion |
| | | Total: | 566.3 | | $211,415.00 | |

A-363

# EXHIBIT  2

## FW: Pay.gov Payment Confirmation: NEW YORK SOUTHERN DISTRICT COURT

Maimon Kirschenbaum <maimon@jk-llp.com>
Thu 1/20/2022 6:54 PM
To: Koby Wood <koby@jk-llp.com>

D. Maimon Kirschenbaum
Joseph & Kirschenbaum LLP
32 Broadway
Suite 601
New York, NY 10004
Tel: 212-688-5639
Cell: 917-842-3180
Fax: 212-981-9587

This e-mail and any attachments are confidential and are intended solely for the use of the addressee(s). This communication may contain material that is protected by the attorney-client privilege or other privileges or doctrines. If you are not the addressee or an addressee's agent, you may not use, disseminate, forward, print, or copy this e-mail; doing so may violate the addressee's rights. If you have received this e-mail in error, please notify us immediately.

IRS Circular 230 disclosure: Any tax advice contained in this communication (including any attachments or enclosures) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication. (The foregoing disclaimer has been affixed pursuant to U.S. Treasury regulations governing tax practitioners.)

-----Original Message-----
From: do_not_reply@psc.uscourts.gov <do_not_reply@psc.uscourts.gov>
Sent: Thursday, January 20, 2022 11:11 AM
To: Maimon Kirschenbaum <maimon@jk-llp.com>
Subject: Pay.gov Payment Confirmation: NEW YORK SOUTHERN DISTRICT COURT

Your payment has been successfully processed and the details are below. If you have any questions or you wish to cancel this payment, please contact: Helpdesk at 212-805-0800.

    Account Number: 4380746
    Court: NEW YORK SOUTHERN DISTRICT COURT
    Amount: $402.00
    Tracking Id: ANYSDC-25610557
    Approval Code: 186672
    Card Number: ************1143
    Date/Time: 01/20/2022 11:11:15 ET

NOTE: This is an automated message. Please do not reply

A-365

Irving Botwinick, Founder
New York State Professional Process Servers
Association

Founding Member National Association
of Professional Process Servers

Associate Member of the following
State Process Servers Association:
Arizona, California, Colorado, Florida, Georgia,
New Jersey, Oregon, Tennessee, Washington

Society of Professional Investigators
Chairman of the Board

Associated Licensed Detectives of
New York State, Inc.
National Council of Investigation
and Security Services
Society of Professional Investigators
World Investigators Network Inc.



**SERVING**
by **IRVING INC.** ®

*"Serving the Legal Community Since 1977."*
February 1, 2022

ATTN: KOBY WOOD

JOSEPH & KIRSCHENBAUM LLP
32 BROADWAY, SUITE 601
NEW YORK, NEW YORK 10004

INVOICE # SD-9009

| PLAINTIFF | DEFENDANT | SERVICE | CHARGE |
|-----------|-----------|---------|--------|
| Nino Martinenko, on behalf of herself and others similarly situated | 212 Steakhouse, Inc., and Nikolay Volper, | Sum. & Compl. On 212 Steakhouse Inc. | $ 95.00 |
| | | Nikolay Volper | $ 50.00 |
| | | Printing Fees | $ 10.50 |
| | | TOTAL BILL: | $155.50 |

*PLEASE SUBMIT INVOICE TO ACCOUNTING UPON RECEIPT*          *DUE WITHIN 30 DAYS*

*WE ARE PRIVATE INVESTIGATORS LICENSED BY THE NEW YORK STATE DEPARTMENT OF STATE • LICENSE #11000079635*
18 EAST 41ST STREET, SUITE 1600 • NEW YORK, NEW YORK 10017
(212) 233-3346 • Fax (212) 349-0338
e-mail: info@servingbyirving.com • website: www.servingbyirving.com • Federal Tax I.D. # 13-3074123

A-366

# Invoice

**Carole Ludwig**

155 East 4th Street, #3C
New York, New York 10009
(212) 420-0771
transcription420@aol.com

| Date: | 06/13/2023 |
| Invoice No.: | 3630 |
| Due Date: | 07/13/2023 |

**Bill To:**
JOSEPH & KIRSCHENBAUM
LLP
32 Broadway, Suite 601
New York, New York 10004
ATTENTION:  DENISE
SCHULMAN

| Pages | Rate Per Page | Description | Unit Price | Total |
|-------|---------------|-------------|-----------:|------:|
| 28 | 60-SDNY-14 days | TRANSCRIPT | $4.68 | $131.04 |
| | | | | |

| | |
|---:|---:|
| **Total** | $131.04 |
| **Balance Due** | $131.04 |

**Docket #22cv518**
**MARTINENKO, et al. v. 212 STEAKHOUSE, INC., et al.**
**April 4, 2023**
**PROCEEDINGS BEFORE THE HONORABLE ROBERT W. LEHRBURGER**
**TRANSCRIPT TURNAROUND: 14 DAYS**

**Thank you for your business.**

A-367

# Invoice

**SOUTHERN DISTRICT REPORTERS PC**

**Tax ID No. 13-2775946**

INVOICE NO.: 0544580-IN
INVOICE DATE: 08/03/22

500 Pearl St.
Room 330
New York, NY 10007
Tel No. (212) 805-0300

CUSTOMER NO.: 1020478
WORK ORDER NO.: 230421

SALESPERSON: MICH

Joseph & Kirschenbaum LLP
32 Broadway
Suite 601
New York, NY 10004
Attention:Ileana Gomez Alburquerque

**\*PAYMENT IS DUE UPON RECEIPT\***

| JOB DATE | | | | | |
|----------|--|--|--|--|--|
| | Nino Martinenko v 212 Steakhouse Inc. | | | | |
| | CASE NO. | **22CV00518** | | | |

| 7/22/2022 | Original | | 16.00 | Pages at | $5.34 | 85.44 |
|-----------|----------|--|-------|----------|-------|-------|

| | |
|--|--|
| Net Invoice: | 85.44 |
| Less Discount: | 0.00 |
| Freight: | 0.00 |
| Sales Tax: | 0.00 |
| **Invoice Total:** | 85.44 |

**FOR CREDIT CARD PAYMENT, PLEASE CALL (212)805-0324**
**WE ACCEPT VISA, MASTERCARD, AMERICAN EXPRESS AND DISCOVER**
**PLEASE MAKE CHECK PAYABLE TO SOUTHERN DISTRICT REPORTERS PC**

A-368





*Cut on dotted line.*

## Instructions

1. **Each Click-N-Ship® label is unique. Labels are to be used as printed and used only once. DO NOT PHOTO COPY OR ALTER LABEL.**

2. Place your label so it does not wrap around the edge of the package.

3. Adhere your label to the package. A self-adhesive label is recommended. If tape or glue is used, DO NOT TAPE OVER BARCODE. Be sure all edges are secure.

4. To mail your package with PC Postage®, you may schedule a Package Pickup online, hand to your letter carrier, take to a Post Office™, or drop in a USPS collection box.

5. Mail your package on the "Ship Date" you selected when creating this label.

## Click-N-Ship® Label Record

**USPS TRACKING # :**
**9405 5036 9930 0709 5338 46**

| | | |
|---|---|---|
| Trans. #: | 604755957 | Priority Mail® Postage: **$9.85** |
| Print Date: | 08/30/2024 | Total: **$9.85** |
| Ship Date: | 08/30/2024 | |
| Expected Delivery Date: | 08/31/2024 | |

**From:** RUTH KIRSCHENBAUM      Ref#: ML
JOSEPH & KIRSCHENBAUM LLP
STE 601
32 BROADWAY
NEW YORK NY 10004-1689

**To:** CHAMBERS OF THE HONORABLE ROBERT W.
LEHRBURGER UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
500 PEARL ST RM 1960
NEW YORK NY 10007-1316

* Retail Pricing Priority Mail rates apply. There is no fee for USPS Tracking® service on Priority Mail service with use of this electronic rate shipping label. Refunds for unused postage paid labels can be requested online 30 days from the print date.

**UNITED STATES POSTAL SERVICE®** *Thank you for shipping with the United States Postal Service!*
*Check the status of your shipment on the USPS Tracking® page at usps.com*



Cut on dotted line.

## Instructions

1. **Each Click-N-Ship label is unique. Labels are to be used as printed and used only once. DO NOT PHOTO COPY OR ALTER LABEL.**

2. Place your label so it does not wrap around the edge of the package.

3. Adhere your label to the package. A self-adhesive label is recommended. If tape or glue is used, DO NOT TAPE OVER BARCODE. Be sure all edges are secure.

4. To mail your package with PC Postage®, you may schedule a Package Pickup online, hand to your letter carrier, take to a Post Office™, or drop in a USPS collection box.

5. Mail your package on the "Ship Date" you selected when creating this label.

## Click-N-Ship® Label Record

**USPS TRACKING # :**
**9405 5036 9930 0709 5338 53**

| | | |
|---|---|---|
| Trans. #: | 604755957 | Priority Mail® Postage: **$9.85** |
| Print Date: | 08/30/2024 | Total: **$9.85** |
| Ship Date: | 08/30/2024 | |
| Expected Delivery Date: | 08/31/2024 | |

**From:** RUTH KIRSCHENBAUM       Ref#: ML
JOSEPH & KIRSCHENBAUM LLP
STE 601
32 BROADWAY
NEW YORK NY 10004-1689

**To:** CHAMBERS OF THE HONORABLE JENNIFER L.
ROCHON UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
500 PEARL ST RM 1920
NEW YORK NY 10007-1316

\* Retail Pricing Priority Mail rates apply. There is no fee for USPS Tracking® service on Priority Mail service with use of this electronic rate shipping label. Refunds for unused postage paid labels can be requested online 30 days from the print date.

**UNITED STATES POSTAL SERVICE®** *Thank you for shipping with the United States Postal Service!*
*Check the status of your shipment on the USPS Tracking® page at usps.com*

**A-370**





*Cut on dotted line.*

## Instructions

1. **Each Click-N-Ship label is unique. Labels are to be used as printed and used only once. DO NOT PHOTO COPY OR ALTER LABEL.**

2. Place your label so it does not wrap around the edge of the package.

3. Adhere your label to the package. A self-adhesive label is recommended. If tape or glue is used, DO NOT TAPE OVER BARCODE. Be sure all edges are secure.

4. To mail your package with PC Postage®, you may schedule a Package Pickup online, hand to your letter carrier, take to a Post Office™, or drop in a USPS collection box.

5. Mail your package on the "Ship Date" you selected when creating this label.

## Click-N-Ship® Label Record

**USPS TRACKING # :**
**9405 5036 9930 0711 3798 14**

| | |
|---|---|
| Trans. #: 604946686 | Priority Mail® Postage: **$9.85** |
| Print Date: 09/10/2024 | Total: **$9.85** |
| Ship Date: 09/10/2024 | |
| Expected Delivery Date: 09/11/2024 | |

**From:** RUTH KIRSCHENBAUM      Ref#: ML
JOSEPH & KIRSCHENBAUM LLP
STE 601
32 BROADWAY
NEW YORK NY 10004-1689

**To:** HON. ROBERT W LEHRBURGER
UNITED STATES COURTHOUSE
500 PEARL ST
NEW YORK NY 10007-1316

* Retail Pricing Priority Mail rates apply. There is no fee for USPS Tracking® service on Priority Mail service with use of this electronic rate shipping label. Refunds for unused postage paid labels can be requested online 30 days from the print date.

*Thank you for shipping with the United States Postal Service!*
*Check the status of your shipment on the USPS Tracking® page at usps.com*

A-371





*Cut on dotted line.*

## Instructions

1. **Each Click-N-Ship label is unique. Labels are to be used as printed and used only once. DO NOT PHOTO COPY OR ALTER LABEL.**

2. Place your label so it does not wrap around the edge of the package.

3. Adhere your label to the package. A self-adhesive label is recommended. If tape or glue is used, DO NOT TAPE OVER BARCODE. Be sure all edges are secure.

4. To mail your package with PC Postage®, you may schedule a Package Pickup online, hand to your letter carrier, take to a Post Office™, or drop in a USPS collection box.

5. Mail your package on the "Ship Date" you selected when creating this label.

## Click-N-Ship® Label Record

**USPS TRACKING # :**
**9405 5036 9930 0711 3798 21**

| | | |
|---|---|---|
| Trans. #: | 604946686 | Priority Mail® Postage: **$9.85** |
| Print Date: | 09/10/2024 | Total: **$9.85** |
| Ship Date: | 09/10/2024 | |
| Expected Delivery Date: | 09/11/2024 | |

**From:** RUTH KIRSCHENBAUM     Ref#: ML
JOSEPH & KIRSCHENBAUM LLP
STE 601
32 BROADWAY
NEW YORK NY 10004-1689

**To:** HON. JENNIFER L. ROCHON
UNITED STATES COURTHOUSE
500 PEARL ST
NEW YORK NY 10007-1316

* Retail Pricing Priority Mail rates apply. There is no fee for USPS Tracking® service on Priority Mail service with use of this electronic rate shipping label. Refunds for unused postage paid labels can be requested online 30 days from the print date.

*Thank you for shipping with the United States Postal Service!*
*Check the status of your shipment on the USPS Tracking® page at usps.com*

A-372

## Veritext, LLC - New York Region

Tel. (516) 608-2400 Email: billing-li@veritext.com
Fed. Tax ID: 20-3132569



| Bill To: | Michael DiGiulio | | |
|---|---|---|---|
| | Joseph & Kirschenbaum LLP | **Invoice #:** | **6060361** |
| | 32 Broadway | **Invoice Date:** | **9/26/2022** |
| | Ste 601 | **Balance Due:** | **$313.00** |
| | New York, NY, 10004 | | |

| Case: Nino Martinenko v. 212 Steakhouse, Inc. And Nikolay Volper (22cv518) | Proceeding Type: Depositions |
|---|---|

Job #: 5489852    |    Job Date: 9/22/2022    |    Delivery: Normal

| Location: | New York, NY |
|---|---|
| Billing Atty: | Michael DiGiulio |
| Scheduling Atty: | Michael DiGiulio | Joseph & Kirschenbaum LLP |

| Witness: Statement | Quantity | Amount |
|---|---|---|
| Minimum Charge for Services Rendered | 1.00 | $285.00 |
| Hosting & Delivery of Encrypted Files | 1.00 | $28.00 |

| Notes: | **Invoice Total:** | **$313.00** |
|---|---|---|
| | **Payment:** | **$0.00** |
| | **Credit:** | **$0.00** |
| | **Interest:** | **$0.00** |
| | **Balance Due:** | **$313.00** |

TERMS:   Payable upon receipt.  Accounts 30 days past due will bear a finance charge of 1.5% per month. Accounts unpaid after 90 days agree to pay all collection costs, including reasonable attorney's fees. Contact us to correct payment errors.  No adjustments will be made after 90 days. For more information on charges related to our services please consult http://www.veritext.com/services/all-services/services-information

---

| **Pay by Check - Remit to:** | **Pay By ACH (Include invoice numbers):** | |
|---|---|---|
| Veritext | **A/C Name:** Veritext | **Invoice #:  6060361** |
| P.O. Box 71303 | **Bank Name:** BMO Harris Bank | **Invoice Date: 9/26/2022** |
| Chicago IL 60694-1303 | **Bank Addr:** 311 W. Monroe Chicago, IL 60606 | **Balance Due: $313.00** |
| Fed. Tax ID: 20-3132569 | **Account No:** 4353454 **ABA:** 071000288 | |
| | **Swift:** HATRUS44 | |

Pay by Credit Card: www.veritext.com

82023

A-373

## Veritext, LLC - New York Region

Tel. (516) 608-2400 Email: billing-li@veritext.com
Fed. Tax ID: 20-3132569



| | |
|---|---|
| Bill To: Michael DiGiulio | |
| Joseph & Kirschenbaum LLP | |
| 32 Broadway | |
| Ste 601 | |
| New York, NY, 10004 | |

| | |
|---|---|
| **Invoice #:** | **6093087** |
| **Invoice Date:** | **10/12/2022** |
| **Balance Due:** | **$3,284.40** |

| **Case: Martinenko v. 212 Steakhouse, Inc. (22CV518)** | **Proceeding Type: Depositions** |
|---|---|

Job #: 5499027   |   Job Date: 10/6/2022   |   Delivery: Expedited

Location:            New York, NY

Billing Atty:        Michael DiGiulio

Scheduling Atty:  Michael DiGiulio | Joseph & Kirschenbaum LLP

| Witness: Nikolay Volper | Quantity | Amount |
|---|---|---|
| Original with 1 Certified Transcript | 256.00 | $1,267.20 |
| Transcript Services - Priority Request | 256.00 | $1,267.20 |
| Attendance | 2.00 | $260.00 |
| Surcharge - Expert/Medical/Technical | 256.00 | $192.00 |
| Litigation Package-Secure File Suite | 1.00 | $75.00 |
| In Person Coverage Fee | 1.00 | $195.00 |
| Hosting & Delivery of Encrypted Files | 1.00 | $28.00 |

| Notes: | **Invoice Total:** | **$3,284.40** |
|---|---|---|
| | **Payment:** | **$0.00** |
| | **Credit:** | **$0.00** |
| | **Interest:** | **$0.00** |
| | **Balance Due:** | **$3,284.40** |

TERMS:   Payable upon receipt. Accounts 30 days past due will bear a finance charge of 1.5% per month. Accounts unpaid after 90 days agree to pay all collection costs, including reasonable attorney's fees. Contact us to correct payment errors.  No adjustments will be made after 90 days. For more information on charges related to our services please consult http://www.veritext.com/services/all-services/services-information

---

**Pay by Check - Remit to:**
Veritext
P.O. Box 71303
Chicago IL 60694-1303
Fed. Tax ID: 20-3132569

**Pay By ACH (Include invoice numbers):**
**A/C Name:**Veritext
**Bank Name:**BMO Harris Bank
**Bank Addr:**311 W. Monroe Chicago, IL 60606
**Account No:**4353454 **ABA:**071000288
**Swift:** HATRUS44

**Invoice #: 6093087**
**Invoice Date: 10/12/2022**
**Balance Due: $3,284.40**

Pay by Credit Card: www.veritext.com

82023



**UNITED STATES POSTAL SERVICE.**

WHITEHALL
1 WHITEHALL ST FRNT 2
NEW YORK, NY 10004-9992
(800)275-8777

05/03/2022                                    02:10 PM

| Product | Qty | Unit Price | Price |
|---------|-----|------------|-------|
| Forever® Postage Stamp | 20 | $0.58 | $11.60 |

Grand Total:                                    $11.60

Credit Card Remitted                            $11.60
    Card Name: AMEX
    Account #: XXX-XXXXX/XX2018
    Approval #: 863014
    Transaction #: 431
    Receipt #: 000431
    AID: A000000025010801                        Chip
    AL: AMERICAN EXPRESS
    PIN: Not Required

************************************
Every household in the U.S. is now
eligible to receive a second set
of 4 free test kits.
Go to www.covidtests.gov
************************************

Preview your Mail
Track your Packages
Sign up for FREE @
https://informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

Tell us about your experience.
Go to: https://postalexperience.com/ssk
or scan this code with your mobile device,



UFN: 359668-9553
Receipt #: 840-11000231-1-1372814-1
Clerk: 00



**UNITED STATES POSTAL SERVICE.**

WHITEHALL
1 WHITEHALL ST FRNT 2
NEW YORK, NY 10004-9992
(800)275-8777

05/03/2022                                    02:19 PM

| Product | Qty | Unit Price | Price |
|---------|-----|------------|-------|
| Brush Rabbit | 23 | $0.20 | $4.60 |
| US Flags Bklt/20 | 1 | $11.60 | $11.60 |

Grand Total:                                    $16.20

Credit Card Remitted                            $16.20
    Card Name: AMEX
    Account #: XXXXXXXXXX2018
    Approval #: 859548
    Transaction #: 501
    AID: A000000025010801                        Chip
    AL: AMERICAN EXPRESS
    PIN: Not Required

************************************
Every household in the U.S. is now
eligible to receive a second set
of 4 free test kits.
Go to www.covidtests.gov
************************************

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

Preview your Mail
Track your Packages
Sign up for FREE @
https://informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

Tell us about your experience.
Go to: https://postalexperience.com/Pos
or scan this code with your mobile device,



or call 1-800-410-7420.

UFN: 359668-0068
Receipt #: 840-51000159-3-5064108-1
Clerk: 10



**UNITED STATES POSTAL SERVICE.**

WHITEHALL
1 WHITEHALL ST FRNT 2
NEW YORK, NY 10004-9992
(800)275-8777

06/13/2023                    12:51 PM

| Product | Qty | Unit Price | Price |
|---------|-----|------------|-------|
| US Flag Bklt/20 | 3 | $12.60 | $37.80 |
| Tulip Blossoms | 1 | $12.60 | $12.60 |

Grand Total:                  $50.40

Credit Card Remit             $50.40
    Card Name: AMEX
    Account #: XXXXXXXXXX1143
    Approval #: 884329
    Transaction #: 490
    AID: A000000025010801 Contactless
    AL: AMERICAN EXPRESS
    PIN: Not Required

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
        Associate can show you how.

        Preview your Mail
        Track your Packages
        Sign up for FREE @
https://informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
    Thank you for your business.

    Tell us about your experience.
Go to: https://postalexperience.com/Pos
or scan this code with your mobile device,



    or call 1-800-410-7420.

UFN: 359668-0068
Receipt #: 840-51000159-2-4483244-1
Clerk: 14

# EXHIBIT 3

A-377

K94LORLH

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  CARL ORLANDO, *et al*,

4              Plaintiffs,

5         v.                          15 Civ. 9434 (RJS)

6

7  LIBERTY ASHES, INC., *ET AL*,      **Fairness Hearing Teleconference**

8              Defendant.

9  ------------------------------x
                                  New York, N.Y.
10                                September 4, 2020
                                  10:00 a.m.
11

12 Before:

13             HON. RICHARD J. SULLIVAN,

                                  District Judge
14

15                   APPEARANCES

16 JOSEPH & KIRSCHENBAUM LLP
        Attorney for Plaintiffs
17 BY:  DENISE ANDREA SCHULMAN

18 LAW OFFICE OF FINN W. DUSENBERY
        Attorney for Plaintiffs
19 BY:  FINN WALTER DUSENBERY

20 TRIVELLA & FORTE LLP
        Attorneys for Defendants
21 BY:  CHRISTOPHER A. SMITH
        SCOTT PAUL TRIVELLA
22

23

24

25

                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

K94LORLH

1              THE COURT:  Good morning.

2              All right.  So I think we have a lot of people on.  If

3       I can ask attorneys to mute themselves unless they are asked to

4       speak; okay?  Let me just make sure the lawyers are here.

5              For the plaintiffs, counsel, can you just state your

6       name for the record?

7              MS. SCHULMAN:  Denise Schulman, of Joseph

8       Kirschenbaum.

9              THE COURT:  Okay.  Ms. Schulman, good morning.

10             MS. SCHULMAN:  Good morning, your Honor.

11             THE COURT:  Anybody else from your firm?

12             MS. SCHULMAN:  No.  Mr. Dusenbery is on as well.

13             THE COURT:  Yes.  Okay.

14             Mr. Dusenbery, you're at a separate firm but cocounsel

15       on this case?  You're here?

16             MR. DUSENBERY:  Yes.

17             THE COURT:  I'm sorry.  I didn't hear what you said,

18       Mr. Dusenbery.  You're here?

19             MS. SCHULMAN:  He's on by phone.  So I don't know if

20       he can unmute himself.

21             THE COURT:  Oh, okay.  Do we know what phone number he

22       is?

23             DEPUTY CLERK:  Yes.  It's the 607 number.

24             THE COURT:  Okay.  Let's unmute that.

25             Okay.  Mr. Dusenbery, you there?  Because we may need

K94LORLH

1    to hear from you.

2            All right.  I don't know what the problem is there.

3            Mr. Dusenbery?

4            DEPUTY CLERK:  He said he's trying to unmute his phone

5    but it's not working.

6            THE COURT:  Did he just mute his own phone?

7            DEPUTY CLERK:  Try clicking star six.

8            MR. DUSENBERY:  Can you hear me now?

9            THE COURT:  Yes.

10           MR. DUSENBERY:  Okay.  Great.

11           THE COURT:  All right.  You're here.

12           All right.  Any other lawyers for plaintiffs?

13           MS. SCHULMAN:  No.

14           THE COURT:  No.  All right.

15           And for the defendants, Liberty Ashes?

16           MR. SMITH:  Yes.  Good morning, your Honor.

17           Christopher Smith here.  And I've got my colleague,

18   Scott Trivella, in the background, from the firm of Trivella &

19   Forte, for defendants.

20           MR. TRIVELLA:  Good morning, your Honor.

21           THE COURT:  Good morning to each of you.

22           Mr. Trivella, are you on the docket sheet?

23           MR. TRIVELLA:  I believe so, your Honor.  Yes.

24           THE COURT:  I don't see it.

25           Mr. Smith has been on the docket sheet for some time,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

K94LORLH

1   but I don't see Mr. Trivella.  Or maybe it's worth filing a

2   notice of appearance just so the record is clear.  But this is

3   what is likely to be the final conference in this matter.

4             So we're here for a fairness hearing.  This case has a

5   long history, which I'll get into in a minute.  But let me just

6   make sure that each of the plaintiffs who are subject to this

7   settlement are here today.

8             So is Mr. Orlando here?  And counsel can tell me.  I

9   don't need to necessarily unmute everybody, because that gets

10  complicated.

11            But is Mr. Orlando here?

12            MS. SCHULMAN:  Yes, he is.

13            THE COURT:  And Mr. Menna is here?

14            PLAINTIFF MENNA:  Yes, I'm here.

15            THE COURT:  Okay.  Mr. Acevedo?

16            PLAINTIFF ACEVEDO:  Yes, I'm here.

17            THE COURT:  Good.  Do we have Quamaine Powell?

18            MS. SCHULMAN:  Quamaine, you can also press star six

19  to unmute yourself.

20            I see his phone number there.

21            THE COURT:  All right.

22            PLAINTIFF POWELL:  Yes.  I'm here.

23            THE COURT:  Okay.  Mr. Powell, good morning.

24            And then finally, Ramedeo Persad.

25            MS. SCHULMAN:  Ramedeo, press star six and then let us

K94LORLH

1    know you're here.

2            PLAINTIFF PERSAD:  I'm here, your Honor.

3            THE COURT:  Great.  Good morning to you.

4            PLAINTIFF PERSAD:  Good morning.

5            THE COURT:  Let me explain to each of the plaintiffs

6    why we're here.  So let me ask everybody to mute themselves in

7    the interim.

8            So ordinarily, when there's a case -- a civil case, a

9    plaintiff files --

10           Can everybody mute themselves again.

11           Okay.  That sounds better.  This is tricky.  We're

12   doing this -- I'm still getting a lot of feedback.

13           We're doing this because of COVID remotely.

14   Technology has been very good, but it does have its side

15   effects and drawbacks.  When you have this many people on a

16   call -- some appearing by video, some by phone -- it does lead

17   sometimes to background noise, which can be very distracting.

18   It also can sometimes lead to people getting frozen out.  So

19   hopefully we can manage it.

20           But this is a case, as I said, that was started in

21   2015.  Ordinarily a civil case involving private litigants can

22   resolve itself whenever the parties think that they want to

23   settle it.  They don't have to go forward.  There's a small

24   number of cases where courts have to get involved to make sure

25   that the settlement is fair or appropriate.  Any case involving

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

K94LORLH

1    a child or someone who is incapacitated mentally would require

2    the Court to make sure that the person representing that child

3    or that incapacitated person is looking out for the best

4    interests of that person.  Sometimes a class action which might

5    involve thousands or tens of thousands of plaintiffs who will

6    be affected by a settlement, the judge will have to pass on the

7    fairness of that settlement.  In cases like this one, involving

8    allegations of overtime or nonpayments of minimum wage, courts

9    get involved to assess the fairness.  There is a concern that

10   employees might be at a disadvantage and might be inclined to

11   settle for less than what they're entitled to under the law.  I

12   think one could argue that this is not necessary, that this is

13   maybe treating people like children when adults should be able

14   to manage their own affairs.  But that's the state of the law,

15   and that's why we're here today.

16          So I'm here to make sure that the plaintiffs

17   understand this settlement and that they agree to it, that they

18   believe it is fair.  And then I will make sure that I

19   understand the settlement and that I think it's fair as well.

20   So that's the purpose of this proceeding.

21          For the defendants, are their clients here, Mr. Smith?

22          MR. SMITH:  No, your Honor.

23          THE COURT:  No.  And they don't have to be.

24          But the bottom line is this:  The prospective of a

25   fairness hearing is from the plaintiff's perspective.  It's

K94LORLH

1    making sure that this is a fair settlement for the plaintiff.

2    The defendant, who's presumed to be an adult and is presumed to

3    be able to look out for its own interest, which in some ways I

4    think probably ought to apply across the board.  But in any

5    event, that's why we're here.

6            So I have received a proposed settlement agreement and

7    a letter from plaintiffs' counsel that summarizes what -- I

8    guess Ms. Schulman on behalf of all the plaintiffs.  And it

9    summarizes what this settlement entails.  And so I want to just

10   make sure that everyone knows what it entails.

11           So according to the settlement, this case will settle

12   for a total of $425,000.  Now, of that total, a third -- or

13   actually a little more than a third will go to the attorneys in

14   the form of fees and the costs that it took to litigate this

15   case.  The rest will be divided among the plaintiffs in

16   different amounts pending in part on the different hours that

17   they worked with the different periods of time in which they

18   worked.  So that is what the basics of this settlement are.

19           Now, according to the settlement agreement, Mr.

20   Orlando is to receive $66,636.70; Mr. Menna is to receive

21   $79,450.48; Mr. Acevedo is to receive $27,214.22; Mr. Powell is

22   to receive $35,117.20; and Mr. Persad is to receive $66,784.42.

23   So that is what the breakdown is for the amounts going to the

24   plaintiffs.

25           So I know the plaintiffs are all on mute.  Stay on

A-384

K94LORLH

1    mute unless you don't understand that or you have some concerns

2    or problems with the numbers that I just read.  If you think

3    that's okay, then you can stay silent, but if these numbers

4    don't reflect what you understand, then you should tell me

5    that.

6          So I didn't hear anything.  I'm assuming that

7    everybody understands that these are the terms.

8          So when I assess the fairness of a settlement, I'm

9    required to look at a number of factors.  One of those factors

10   is the range of possible recoveries:  If this thing went to

11   trial, what's the best outcome that could have been achieved?

12   I have to consider that.  I also have to consider, of course,

13   the costs and the burdens that would come with taking this case

14   to a trial.  I also have to consider the risks of losing a

15   case.  There are no guarantees that anybody will win a trial;

16   sometimes people lose.  And so that would mean a lot of time, a

17   lot of expense, and no recovery.  So I have to consider the

18   risks.  I also have to consider this settlement and the nature

19   of it.  Was it negotiated arm's length by counsel?  Was there

20   any suggestion or width of there being fraud or collusion

21   between the plaintiffs and the defendants or their lawyers?  So

22   those are the things that I'm looking at.  Okay?  And then I

23   have to assess the fairness of the fees going to the attorneys

24   here.  So I have Ms. Schulman's letter.

25          Ms. Schulman, the one thing I wasn't sure about was

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    what you thought the sort of best case scenario was.  If this

2    case went to trial, what do you think the recovery would be if

3    you won across the board?

4         MS. SCHULMAN:  The best case scenario as far as

5    compensatory damages, liquidated damages, would be about

6    $550,000.

7         THE COURT:  All right.  So 550,000 would be the best

8    case scenario, and then attorney's fees on top of that if you

9    won.

10         MS. SCHULMAN:  Correct.

11         THE COURT:  So this settlement then is, you know,

12    basically after attorney's fees, clocked in at about a little

13    more than half to two-thirds.  Is that right?

14         MS. SCHULMAN:  Yes.

15         THE COURT:  Okay.  So I will say that I think that

16    that's not a bad percentage.  I mean, it is not unusual for

17    people to settle, you know, for less than a hundred cents on

18    the dollar of what the best scenario would be, because the best

19    scenario doesn't always come to pass.  Certainly a trial would

20    be expensive and would take longer.  Certainly there are

21    litigation risks in this case.  That was true from the

22    beginning.  That was identified as whether or not these

23    plaintiffs are exempt under the motor carrier exemption.  That

24    motion was made and then sort of withdrawn so that we could

25    pursue different arguments on a motion to compel arbitration,

K94LORLH

1    and then renewed.  It's still pending.  It was always -- I

2    thought frankly -- a close call.  Even if it was denied by me,

3    I think it might have required just additional discovery or

4    might have required a trial.  But I don't think that it was a

5    slam dunk.  Some of these cases are slam dunks.  They involve

6    people who have worked and there's no record of what they

7    worked, and there is really no dispute that they worked the

8    hours.  There is no argument of Mr. Persad.  In this case there

9    is a legal argument that is not frivolous.  It is certainly a

10   live issue I think.  So the litigation risk I think is real.

11        In terms of the arm's length quality of the

12   negotiation, I can say that these lawyers have been involved in

13   this case -- most of them -- for some lengthy period of time.

14   I also can say that these lawyers -- plaintiff's lawyers in

15   particular, who I see in a lot of these cases are very highly

16   regarded for these kinds of cases.  So Ms. Schulman is now a

17   partner at the firm of Joseph and Kirschenbaum.  She began this

18   case as an associate there.  But in my entire experience with

19   her in this case, and a lot of others, she's always been among

20   the very best lawyers in this case.  So I have no doubt that

21   this firm and these plaintiffs' lawyers are zealous advocates

22   for their clients.

23        I have no reason to doubt that of the defendants as

24   well.  I think I've had some other cases with Mr. Smith.  But

25   certainly, these are very reputable law firms, very responsible

K94LORLH

1    law firms.  There's no reason to think there was any collusion

2    or fraud going on here.  This was an arm's length negotiation

3    for an amount that strikes me as fair and reasonable in light

4    of the litigation risks.

5         So does anybody disagree with that?  Is anybody

6    concerned?

7         Let me ask the plaintiffs.  Are any of you concerned

8    about the amount of money that will be going the attorneys?

9    One-third is not unusual.  That's the agreement I think that

10   you negotiated with the lawyers, and it's fairly customary to

11   negotiate a one-third arrangement with attorneys in the event

12   of a settlement or a win, successful outcome.

13        All right.  So I'm not hearing anything from the

14   plaintiffs.

15        I will say that the one difference in a case like this

16   is that if you were to win at trial, then the attorney's fees

17   would be covered by the defendants.  They would not come out of

18   any award to the plaintiffs.  So that is -- that is a big

19   difference.  It means that if everything went well, as Ms.

20   Schulman said, and the recovery was 500,000, or 550,000, that

21   would be divided up by the plaintiffs without attorney's fees.

22   Attorney's fees would be separate and that would be on the

23   defendant.  But in a case like this where the settlement fees

24   are going to come out of the 425,000-dollar settlement.

25        All right.  So it seems to me that these are fair --

A-388

K94LORLH

1    this settlement and breakdown is fair.

2           But does anybody disagree?  Because now is the time.

3    If you don't speak up now and I accept this settlement, that

4    means that your claims will be released.  So the plaintiffs

5    will have given up the claims in this complaint and any other

6    claims that are existing at this time.

7           Now, in terms of the attorney's fees, Ms. Schulman has

8    also attached to her letter a schedule, or time sheet, that

9    indicates the records kept by plaintiff's counsel during the

10   course of this litigation.  It's not incredibly in depth, but

11   it gives enough indication of the types of things that were

12   done for the hours and the amounts.  It seems to me that the

13   hourly rates are reasonable, they're in line with what lawyers

14   get paid for in cases of this sort.  And it seems to me that

15   the hours expended were reasonable, that there was no padding

16   here, that this was very vigorously litigated.  There were

17   hours expended and costs expended to pursue the case on behalf

18   of plaintiffs and that they were reasonably done.  So I'm

19   prepared to find that the attorney's fees are also reasonable.

20   So I'm prepared to approve this settlement as presented by

21   counsel.

22          Is there anything else that I should know about?

23   Anything else that should be put on the record before I approve

24   this settlement?

25          Ms. Schulman?

K94LORLH

1          MS. SCHULMAN:  I don't believe so, your Honor.

2          THE COURT:  Okay.  Mr. Smith?

3          MR. SMITH:  No, your Honor.

4          THE COURT:  All right.  And, Mr. Dusenbery, I didn't

5     mean to skip you.

6          Star six.

7          MR. DUSENBERY:  No, Judge.  Nothing.

8          THE COURT:  Okay.  All right.  So for one last time --

9     well, maybe I'm going to just want to hear from each of the

10    plaintiffs again.

11         So, Mr. Orlando, if you could star six and just tell

12    me you're okay with this settlement and you understand that

13    this will resolve the case and your claims against these

14    defendants.

15         Do you understand that?

16         PLAINTIFF ORLANDO:  Yes, I do.  I understand

17    everything that you said.

18         THE COURT:  All right.  Okay.

19         Mr. Menna, same question?

20         PLAINTIFF MENNA:  Yes, sir, I understand.

21         THE COURT:  Okay.  Great.

22         Mr. Acevedo, same question:  Do you understand this?

23    Do you understand that if I approve it, this is over and all

24    your claims are resolved?

25         PLAINTIFF ACEVEDO:  Plaintiff Acevedo: yes, your

K94LORLH

1    Honor.

2                THE COURT:  Great.  Okay.

3                Mr. Powell, same question:  Do you understand the

4    terms of this settlement?  Do you understand the effects of

5    this approve of the settlement?

6                PLAINTIFF POWELL:  Yes, I understand, your Honor.

7                THE COURT:  All right.  And, Mr. Persad?

8                PLAINTIFF PERSAD:  Yes, your Honor, I understand.

9                THE COURT:  Okay.  Great.

10               So that will resolve this case.  I will issue an order

11    indicating that I have approved the settlement, indicating that

12    the case is closed.  I will retain jurisdiction over this case

13    for the purposes of enforcing the settlement.  So if somebody

14    doesn't live up to the terms of this settlement, you get to

15    come back to me and have to start a whole new case.  You get to

16    come back to me and say, whoa, they're not living up to the

17    terms of this settlement.  And then it's a contract dispute

18    over this settlement agreement.  Okay?

19               So with that then, I will issue an order on the docket

20    that reflects that this case has been closed and the settlement

21    approved with the limited retention of the case for purposes of

22    resolving any breaches or disputes over the settlement

23    agreement.

24               Okay.  So let me thank the court reporter.  Let me

25    thank the plaintiffs for being here today.  I didn't mean to

A-391

K94LORLH

1   burden you, but I did think it's important that you to be here

2   for this proceeding.

3            I thank the lawyers as well.

4            Good luck, everybody.  Have a good weekend.  And good

5   luck with all your endeavors going forward.

6            MS. SCHULMAN:  Thank you, your Honor.

7            MR. SMITH:  Thank you, your Honor.

8            MR. DUSENBERY:  Thank you, your Honor.

9            MR. TRIVELLA:  Thank you, your Honor.

10           THE COURT:  Have a good day.

11                        * * * * * *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

A-392

# EXHIBIT  4

1

FCLALOLHps

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    DAVID LOLA, GERALD RUSH, and
      LISA LEWIS,
 4
                      Plaintiffs,
 5
                 v.                           13-cv-5008 (RJS)
 6
      SKADDEN, ARPS, MEAGHER, SLATE &
 7    FLOM LLP, et al.,

 8                    Defendants.

 9    ------------------------------x

10                                            New York, N.Y.
                                              December 21, 2015
11                                            2:30 p.m.

12
      Before:
13
                      HON. RICHARD J. SULLIVAN
14
                                              District Judge
15

16                        APPEARANCES

17    JOSEPH, HERZFELD, HESTER & KIRSCHENBAUM
          Attorneys for Plaintiffs
18    BY:  DANIEL M. KIRSCHENBAUM, ESQ.
          DENISE A. SCHULMAN, ESQ. (via speakerphone)
19
      OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
20        Attorneys for Defendants
      BY:  BRIAN J. GERSHENGORN, ESQ.
21        STEPHANIE L. ARANYOS, ESQ.

22
      Also Present (via speakerphone): David Lola
23                                     Gerald Rush
                                       Lisa Lewis
24

25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2

FCLALOLHps

```
1                (In open court)
2                THE CLERK:  13 Civil 5008, Lola v. Skadden, Arps,
3    Meagher, Slate & Flom, et al.
4                THE COURT:  Have a seat.  Let me take appearances.
5    For the plaintiffs?
6                MR. KIRSCHENBAUM:  Good afternoon, your Honor.  Marvin
7    Kirschenbaum for the plaintiffs.
8                THE COURT:  Ms. Kirschenbaum and Mrs. Schulman, good
9    afternoon.  The plaintiffs are on the phone; is that right?
10               MR. KIRSCHENBAUM:  Yes.
11               THE COURT:  We've got them muted for now, but let me
12   just make sure they're on the line.
13               OK.  So Mr. Lola, are you on the line?
14               Mr. Lola?
15               MR. LOLA:  David Lola, your Honor?
16               THE COURT:  Yes.  Can you hear me OK?
17               MR. LOLA:  Yes, your Honor.
18               THE COURT:  Good.  OK.  And then Mr. Rush, are you on
19   the line?
20               MR. RUSH:  I am on the phone.  Thank you, your Honor.
21               THE COURT:  Good.  And you can hear me all right also?
22               MR. RUSH:  Yes, I can.
23               THE COURT:  Good.  And then finally, Ms. Lewis?
24               MS. LEWIS:  Yes.  I'm on the line as well, your Honor.
25               THE COURT:  And you can hear me OK.  Is that right?
```

3

FCLALOLHps

1          MS. LEWIS:  Yes.

2          THE COURT:  Good.  So hopefully the technology will

3    hold out.  We're here for a fairness hearing, which I'll

4    explain in a moment.  If at any point you have difficulty

5    understanding or hearing what's going on, let me know.

6          Right now what I'm going to do is also take the

7    appearances of the defendant, or the defendant's counsel.  So

8    if you could state your name for the record.

9          MR. GERSHENGORN:  Good afternoon, your Honor.  Brian

10   Gershengorn and Stephanie Aranyos from Ogletree Deakins for the

11   defendants.

12         THE COURT:  Good.  Mr. Gershengorn, good afternoon,

13   and Ms. Aranyos, good afternoon to you.

14         So as I said, we are here for a fairness hearing.  In

15   cases involving the Fair Labor Standards Act, courts are

16   required before approving a settlement to make sure that it's a

17   fair and reasonable settlement.  And that's because there's a

18   concern that employees might be at a disadvantage relative to

19   employers, and so that lack of leverage might induce them to

20   take less than what they're entitled to under the law.  And so

21   a body of law has developed which indicates that judges like me

22   should inquire and ascertain whether or not this is a fair and

23   reasonable settlement, in light of all the considerations,

24   which I'll talk about in a moment.

25         The focus is really on its fairness from the

A-396

4

FCLALOLHps

1    perspective of the plaintiffs.  The law doesn't really care

2    much about the defendants.  I don't mean it to sound callous.

3    It's just that the presumption is that the employers if

4    anything have more leverage and therefore we trust that they

5    will be able to do what's in their own interest.  We're a

6    little more solicitous towards plaintiffs.

7         Most cases, I should note, involving settlements,

8    don't get courts involved.  Relatively few cases have court

9    involvement in ascertaining the fairness of a settlement.  So

10   this is a narrow range of cases where courts get so involved.

11        Let me hear from Mr. Kirschenbaum the terms of the

12   settlement.  I received a letter from the parties, a joint

13   letter, and a copy of the settlement agreement.  But it doesn't

14   specify all the details of the settlement.  And so, as I

15   mentioned during settlement conference, I want to put that on

16   the record now.  I want to make sure that the plaintiffs know

17   what the settlement terms are and that they are comfortable

18   with it.  OK.  Mr. Kirschenbaum?

19        MR. KIRSCHENBAUM:  I think the most important term of

20   the settlement is not actually set forth in the settlement

21   except that, in the settlement agreement, it is clear that

22   defendants will agree to pay the total $75,000 amount as

23   recited at this hearing and consistent with previous

24   correspondence between me and defendants' counsel.  And these

25   numbers have been reviewed by plaintiffs prior to the hearing.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

FCLALOLHps

1          THE COURT:  Right.

2          MR. KIRSCHENBAUM:  Essentially Mr. Lola will receive

3   $7,689.25 on a W-2 and $7,310.75 on a 1099.  Ms. Lewis will

4   receive $7,527.13 on a W-2 and $2,483.95 on a 1099.  Mr. Rush

5   will receive $8,725.88 on a W-2, $2,879.54 on a 1099.

6          The attorney's fees, payable directly to my firm,

7   would be $38,383.50.

8          The nature of the breakdown as discussed with your

9   Honor but slightly tinkered with since the settlement

10  conference was, for Mr. Rush, Mr. Rush and Ms. Lewis will each

11  be receiving the full amount of overtime that they would be

12  paid, they would be owed had they prevailed on their claims in

13  this lawsuit, plus 33 percent of the full liquidated damages

14  amount that they would recover if they were able to prevail on

15  a claim for liquidated damages.

16         Mr. Lola will be receiving also the full amount of

17  money that he would have received if he had prevailed on all

18  the claims of this lawsuit.  But he will be getting more than

19  33 percent of the liquidated, the differential between what

20  he's actually getting and, say, 133 percent of his base damages

21  are attributed to the fact that he was the pioneer, if you

22  will, of this lawsuit, who got an extra, a little less than

23  $5,000.

24         THE COURT:  Right.  But I thought the plan was to

25  treat liquidated damages the same across all three and then to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

FCLALOLHps

1    have in essence a litigation bonus for Mr. Lola since he is the

2    one who initiated the case and did the heavy lifting early on.

3    And that's not unusual in cases of this sort.

4             MR. KIRSCHENBAUM:  And that's what it is, your Honor.

5             THE COURT:  OK.  So each is getting the full

6    compensatory damages that they would be owed if they prevailed

7    across the board on their wage and hour claims, the

8    compensatory, and plus 33 percent of the liquidated damages

9    amount, which is 33 percent of the compensatory.

10            MR. KIRSCHENBAUM:  Right.

11            THE COURT:  And then Mr. Lola is getting an additional

12   kicker, so to speak, of how much?

13            MR. KIRSCHENBAUM:  It's close to $5,000.  Essentially

14   it just breaks his number up to $15,000 from like 10 and

15   change.  I didn't break it out completely separately because

16   all of that money is being paid to him on a 1099.

17            THE COURT:  And what's the significance of that?

18            MR. KIRSCHENBAUM:  Well, any money that's not

19   compensatory damages are payable on a 1099.  So his base

20   overtime amount is $7,689.25.  33 percent of the liquidated

21   is -- I could do the math here -- it's about 2500 plus 63 --

22   about $2563 and about 8 cents, if my -- which would get him up

23   to about $10,200.  So the added 4800, if you will, is the bonus

24   for being the named plaintiff.

25            THE COURT:  All right.  And the attorney's fees, as

7

FCLALOLHps

1    you said, were $38,383.50.  In your letter you indicated that's

2    below, it's approximately 50 percent, or a little more than 50

3    percent of the attorney's fees on an hourly basis.

4            MR. KIRSCHENBAUM:  That's right, your Honor.

5            THE COURT:  And what's the rate that you and

6    Ms. Schulman and others charge?

7            MR. KIRSCHENBAUM:  That would be using the two primary

8    timekeepers, I would say, that account for 99 percent or more

9    of the time were me and Ms. Schulman.  The rate for me is $450

10   and the rate for Ms. Schulman is 300, which is previously

11   approved in this district.

12           THE COURT:  Yes.  I think that's fair.

13           All right.  So let me just start with each of -- I'm

14   going to start with each of the plaintiffs.  So you've heard

15   the numbers that Mr. Kirschenbaum just recited.  Let me make

16   sure you did hear that.  Mr. Lola, you heard what

17   Mr. Kirschenbaum said?

18           Are we on mute?

19           Mr. Lola?

20           MR. KIRSCHENBAUM:  It sounds like we're on mute,

21   because Mr. Lola had some background noise.

22           THE CLERK:  No, you're not.

23           MR. LOLA:  Yes, your Honor.

24           THE COURT:  That's not the first time you're hearing

25   the numbers.

8

FCLALOLHps

1          MR. LOLA:  I heard the numbers, your Honor.  I muted
2     my phone.
3          THE COURT:  All right.  Fair enough.
4          Mr. Rush, you heard the breakdown as it pertains to
5     you; is that correct?
6          MR. RUSH:  Yes, I did, your Honor.  That is correct.
7          THE COURT:  And you've discussed this before with
8     Ms. Kirschenbaum or Ms. Schulman, correct?
9          MR. RUSH:  Yes, I did.
10          THE COURT:  All right.  And then finally with respect
11     to Ms. Lewis, you've also heard the numbers that were recited
12     by Mr. Kirschenbaum?
13          MS. LEWIS:  Yes.  And we -- he and I reviewed them
14     prior to this hearing as well, your Honor.
15          THE COURT:  OK, good.  So I want to make sure it's not
16     news to you.  And you also heard the number of attorney's fees,
17     right?  And you're all comfortable with that.
18          MS. LEWIS:  Yes.
19          MR. RUSH:  Yes, your Honor.
20          THE COURT:  All right.  So in order to determine
21     whether this is a fair settlement, I have to consider several
22     things, the first of which, I guess, is whether or not this
23     settlement is the result of an arm's-length negotiation, which
24     I think clearly it is.  This is a case that's lasted a while.
25     It went all the way up to the circuit before coming back to me.

9

FCLALOLHps

1  Both sets of lawyers are very good at what they do, and I have
2  no reason to think that they did anything other than really
3  fight this case zealously.  And I use the word "fight" in a
4  positive sense.  They each represented their clients zealously
5  and hard and tried to get the best resolution that they thought
6  they could get.  So I certainly think it's been the result of
7  an arm's-length negotiation.
8       Another consideration is whether this is fair
9  substantively, as opposed to procedurally.  In other words, is
10  this a fair settlement?  That's a hard thing to say sort of in
11  the abstract.  Every settlement turns on the specifics.  And so
12  I have to consider how this settlement relates to what the case
13  would look like, what the resolution would be if the case had
14  gone completely the plaintiffs' way at trial.  I have to then
15  consider the potential for litigation risk, in other words, the
16  potential that the plaintiffs could lose this case, which I
17  guess they kind of did in front of me the first time, before it
18  came back down.
19       I have to consider the effect of the time value of the
20  money involved.  A litigation can take a long time.  It can be
21  costly.  It can require some up-front costs.  There can be a
22  lot of delay involved for people who perhaps want to get paid
23  sooner rather than later.
24       I have to consider the solvency of defendants, which I
25  don't think is really an issue here, though sometimes it is and

10

FCLALOLHps

1  has to be considered.  The prospect of a settlement now as

2  opposed to a victory but little ability to collect later, these

3  are all legitimate considerations.

4          And so let's, I guess sort of considering those

5  things, let me ask each of the plaintiffs, are they comfortable

6  with this settlement?  Do you think this is a fair settlement?

7  Mr. Lola, I'll start with you.

8          MR. LOLA:  Yes, your Honor.  I believe it's a fair

9  settlement.

10          THE COURT:  And you've thought about all these factors

11  that I just mentioned?

12          MR. LOLA:  Yes, your Honor.

13          THE COURT:  All right.

14          Mr. Rush, I'll ask you the same question.  Again, a

15  fair settlement is not necessarily the best possible settlement

16  but a fair settlement in light of all the different

17  considerations.  What do you think?

18          MR. RUSH:  I think it's fair, your Honor, yeah.

19          THE COURT:  All right.  And then finally, Ms. Lewis,

20  do you have any thoughts with respect to the fairness of the

21  settlement?

22          MS. LEWIS:  I think it's a fair settlement, all things

23  considered, your Honor.  Thank you.

24          THE COURT:  OK.  In terms of the money, I agree, I

25  think that this is a case that I had originally dismissed.  I

11

FCLALOLHps

1    think there is a least a significant risk that after discovery

2    and either summary judgment motions or a trial, that there is

3    at least a potential that there would be no recovery.  And

4    that's not an insubstantial risk.  I think it was a very real

5    risk.

6            In terms of the best possible settlement, according to

7    the lawyers and what's been represented to me, this is a

8    hundred cents on the dollar in terms of the overtime wages.

9            Now, if the plaintiffs could demonstrate that the

10   violations were willful, this was a willful violation of the

11   federal Fair Labor Standards Act, then there would be an

12   entitlement to liquidated damages that would double those

13   compensatory damages, but I think willfulness here, as

14   suggested in the letter from counsel, was certainly not a

15   slam-dunk.  I think it was really an issue of first impression.

16   No court in this district has resolved an issue involving

17   lawyers like this one.  I guess there is a case kicking in

18   front of Judge Abrams, but she hasn't ruled yet on summary

19   judgment.  So I think this is one where there might have been

20   good arguments as to why, even if the reliability liquidated

21   damages might not be appropriate.

22           So it seems to me an award that includes a hundred

23   cents on the dollar for the overtime, in terms of compensatory,

24   and 33 cents on the dollar for liquidated damages, is a pretty

25   good settlement, dollar-wise.

12

FCLALOLHps

1        Often court are approving settlements in which the

2    attorney's fees are coming out of the plaintiff's share of the

3    settlement.  That's not the case here.  Plaintiffs are getting

4    their money clear before the lawyers collect a nickel.  So that

5    strikes me as fair in terms of the dollars.

6        One issue that I think we should discuss is that the

7    settlement agreement has two provisions which have been not

8    uniformly accepted in this district.  And that relates to two

9    things.  One is a requirement of confidentiality, in essence a

10   sort of a gag order that prohibits the parties, particularly

11   the plaintiffs, from really discussing this case, other than to

12   say that the case was resolved.  It's a very broad

13   confidentiality provision of the sort that other judges in this

14   court have rejected.

15       In addition, there is a very broad waiver of rights

16   provision that basically says that plaintiffs agree to forgo

17   and resolve any and all claims that they may have against the

18   defendants, including claims known or unknown, which is very

19   broad and some courts have certainly balked at that.  So I may

20   ask the lawyers, or maybe Mr. Kirschenbaum or Ms. Schulman, to

21   talk about that.  We discussed this a little bit at the

22   settlement conference.  But there is certainly some case law

23   that goes the other way on this.  And I'm not aware of any

24   written opinions that have approved a settlement including

25   terms like this, which is not to say that courts haven't

A-405

FCLALOLHps

13

1    approved broad confidentiality and waiver provisions.  But

2    there has been no written opinion expressly addressing this

3    that I'm aware of in this district.

4            So, Mr. Kirschenbaum, first of all, are you aware of

5    any other cases that sort of affirm or approve a settlement

6    that includes such broad waiver and confidentiality provisions?

7            MR. KIRSCHENBAUM:  There is a decision recently by

8    Judge Cott --

9            THE COURT:  You're right.  Judge Cott declined to

10   approve the broad waiver provision but accepted the -- no, vice

11   versa -- accepted the broad waiver provision on the facts

12   before him but didn't accept the broad confidentiality

13   provision.  The other cases, other than the Judge Pauley, seems

14   to be in these otherwise.  But he's not alone.  Judge Kaplan

15   has one and I guess there are a couple of others.  So I don't

16   care which order you take them, but do you have a preference?

17           MR. KIRSCHENBAUM:  Yes.  I will start with the waiver

18   issue.  I don't know specifically of a case that rejects

19   general release where the general release is mutual, in other

20   words, where the plaintiffs are releasing all claims against

21   the defendants and the defendants in turn release any claims

22   against the plaintiffs.

23           THE COURT:  Are there any claims against the

24   plaintiffs?  There are no counterclaims in this case, right?

25           MR. KIRSCHENBAUM:  There are no counterclaims, and the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

FCLALOLHps

1   same way that there are no other claims asserted by the

2   plaintiffs against the defendants, there are no claims

3   asserted -- there are no other live claims, in either

4   direction.  The nature of the release is simply very clearly a

5   quid pro quo release of claims from one side to the other.

6          I will note that the release is typically something

7   that is more of a sticking point for the defendants in exchange

8   for the favorable settlement.  Here the plaintiffs were willing

9   to agree to it.  My understanding of the law is that this is

10  acceptable, in light of its mutual nature, especially in light

11  of Judge Cott's opinion.  I am not aware of any court that

12  deals specifically with the issue of a release that is mutual

13  and rejected.

14          I think that that might be called added consideration

15  too.

16          With respect to the nondisclosure, your Honor refers

17  to it as a broad nondisclosure.  I think it's at least a little

18  less broad than many of the confidentiality agreements that I

19  have seen rejected.  The first and foremost and primary

20  confidentiality terms are a restriction on plaintiffs' counsel

21  as opposed to plaintiffs themselves.  The plaintiffs

22  themselves, it seems to me that the main restriction on them is

23  contacting media or using social media regarding this

24  settlement.

25          Now, again, your Honor, I don't have a strong feeling

15

FCLALOLHps

1    about how this should go, other than this is what defendants

2    wanted as part of the settlement and my clients agreed to it in

3    exchange for consideration.  I think that I'll defer to

4    whatever defendants' position is with respect to the

5    public-policy ramifications of it.  We did have some sort of

6    session prior to -- during the settlement conference to try and

7    get a sense of what your Honor's position was on it, though

8    admittedly your Honor certainly preferred this fairness hearing

9    to make the ultimate decision.

10          I don't think it's that broad, and, unlike the

11   specific examples mentioned in the Cheeks decision in the

12   Second Circuit, does not contain a liquidated damages provision

13   if it's violated.  So it's not particularly troublesome to me

14   as plaintiff's counsel.  But, again, I would defer to

15   defendants' arguments with respect to the public-policy

16   ramifications of it.

17          THE COURT:  Do defendants wish to speak to the

18   public-policy arguments?

19          MR. GERSHENGORN:  I think, your Honor, we would agree

20   certainly on the waiver issue.  Magistrate Judge Francis has a

21   recent, November 5, 2015 decision in the Suarez matter going to

22   the mutuality of the release, and since it is mutual release

23   based upon mutuality, at least in that very short opinion,

24   Magistrate Judge Francis says he agreed with the settlement

25   based upon mutuality of release.

16

FCLALOLHps

1           In regards to the confidentiality provision, we do
2     think that it's certainly different than the case law that's
3     put forward.  We think Cheeks is distinguishable because the
4     other factors that are also encompassed within Cheeks are not
5     present here, plaintiffs' counsel getting between 43 and 43.6
6     percent of the total settlement payment.  We don't have the
7     broad language of the confidentiality provisions that were
8     spoken about in Cheeks.
9           We also think, like Mr. Kirschenbaum said, the vast
10    majority of limitations are on plaintiffs' counsel here, less
11    so on plaintiffs themselves.  Plus, from a policy perspective,
12    these are licensed attorneys that are represented by the
13    certainly capable counsel, Mr. Kirschenbaum here.  And we don't
14    deem this to be a particularly offensive provision within the
15    settlement agreement.
16          THE COURT:  All right.  Thanks.
17          Let me just make sure that the plaintiffs understand
18    what we're talking about.  Do each of you understand that there
19    is a provision -- it's a nonmonetary provision in this
20    settlement agreement -- that says that there are restrictions
21    on what you and your lawyers can say about this settlement and
22    how you can say it?  And then there also is a broad waiver of
23    other claims; you waive any claims against the defendants,
24    including claims you may not know about right now, and they
25    waive any claims they may have against you, against also

A-409

17

FCLALOLHps

1    including unknown causes of action or causes of action unknown

2    as of this time.  So pretty broad going both ways.  So that's

3    what the lawyers are talking about when they say it was a

4    mutual or is a mutual waiver provision.

5            So each of you understand that?  Mr. Lola?

6            MR. LOLA:  Yes, your Honor.  I understand that.

7            THE COURT:  And you are comfortable with it?

8            You're comfortable with that, Mr. Lola?

9            Mr. Lola, are you comfortable with those provisions in

10   the agreement?  I just want to make sure you're aware of them

11   and you're OK with them.

12           MR. LOLA:  Sorry, your Honor.  Could you repeat the

13   question for me?

14           THE COURT:  Sure.  You told me you're aware of those

15   provisions.  And you're comfortable with them, as being fair

16   and consistent with a fair settlement?

17           MR. LOLA:  Yes, your Honor.

18           THE COURT:  OK.

19           Mr. Rush, same question to you.

20           MR. RUSH:  Yes.  I'm aware of the provisions and it's

21   fair enough.

22           THE COURT:  OK.  You're comfortable with it.

23           MR. RUSH:  Yeah.

24           THE COURT:  All right.  And then finally, Ms. Lewis?

25           MS. LEWIS:  Yes, your Honor, I'm aware of the

18

FCLALOLHps

1    provision, and in light of the full settlement I am comfortable

2    with them.

3         THE COURT:  All right.  I'm comfortable with them too.

4    I will say, I'm not aware of anything in the Fair Labor

5    Standards Act or in the case law surrounding it that would

6    suggest that there should be a per se prohibition on a broad

7    waiver provision, mutual or even nonmutual, or of a

8    confidentiality provision or a gag provision.  It seems to me

9    that the Court should be assessing every settlement on its own

10   terms and assessing whether it's fair.  And just as plaintiffs

11   are free and courts are frequently known to approve settlements

12   that are for less than a hundred cents on the dollar, in light

13   of various considerations including risk, it seems to me that

14   plaintiffs should also be free to negotiate other nonmonetary

15   interests in pursuit of the final settlement.  And so I think

16   that -- I guess that's a starting point for me.

17        In terms of the confidentiality or the gag provision,

18   since the plaintiffs would be free not to discuss these things

19   if they wanted to prospectively, they would be free not to

20   answer questions from certain sources if they chose not to.  I

21   don't see why on earth they wouldn't be entitled to, in

22   advance, say, we will not do those things, as part of a

23   settlement.  I don't think that that's unconscionable or

24   against public policy, at least not in all circumstances, and

25   certainly not in this settlement, in the context of this

19

FCLALOLHps

1    settlement.

2          Similarly, with respect to the waiver of claims, I

3    think it's certainly possible to imagine a scenario where that

4    might be against public policy or might be improper and thereby

5    render a particular settlement unfair or unreasonable.  I don't

6    think that's a per se truth.  And I don't think, in the context

7    of this settlement, that there is anything improper about the

8    very broad waiver language that affects both parties, the

9    defendants and the plaintiffs, in order to have a complete and

10   total settlement that resolves all outstanding claims and puts

11   this thing to bed.  I think that's not uncommon in litigation

12   of all kinds.  And I think it is clearly desirable in many Fair

13   Labor Standards Act claims.

14         So I can't say that this settlement, considered as a

15   whole, with all its various parts, is unfair.  And so therefore

16   I am, unlike perhaps some of my colleagues, who seem to have

17   adopted what appear to be per se rules, I refuse to do that,

18   and I think this is, as written, a fair settlement, in light of

19   all the considerations that we've talked about and that there

20   are also discussed in case law.

21         So let me now turn to the attorney's fees.  The

22   attorney's fees are a little over $38,000.  I guess it's all

23   relative.  That sounds like a lot of money to some folks and

24   for other folks it sounds like a pittance.  I think certainly

25   that, in terms of the hours worked and in terms of the fees,

20

FCLALOLHps

1   that are reasonable fees, I think Mr. Kirschenbaum and

2   Ms. Schulman and their firm are the best in breed -- of firms

3   doing this kind of work.  There are a lot of good ones, but I

4   think this is as good as any.  And I'm not stroking them.  I

5   really do believe that and I've said it before.  So I think the

6   rates that they charge per hour are not crazy.  I think they're

7   justified.

8          I think the number of hours worked also strike me as

9   appropriate.  This case took a lot of work.  It went all the

10  way up to the Second Circuit, where they won.  And then it came

11  back down.

12         So I think these fees, on balance, in consideration of

13  all the different factors that a court is asked to consider, in

14  assessing the reasonableness of attorney's fees, they strike me

15  as very fair and well earned.

16         So I have no problem with the attorney's fees.  It

17  sounds like the plaintiffs don't either.  So I will approve the

18  attorney's fees component of this settlement as well.

19         OK.  So what I propose to do, then, is to issue an

20  order that are just says that I have approved the settlement

21  for the reasons stated on the record.  I guess I will decide

22  whether I want to write to just sort of add my two cents to the

23  growing body of law with respect to waivers of claims and

24  confidentiality.  So I may do that, but maybe I'll do that in a

25  separate opinion to follow just so everybody gets an order that

21

FCLALOLHps

1    says I have approved the settlement.

2           Is there anything else we should cover today?  Let me

3    just first ask the lawyers.  Mr. Kirschenbaum or Ms. Schulman?

4           MR. KIRSCHENBAUM:  Nothing here, your Honor.

5           THE COURT:  OK.

6           MR. GERSHENGORN:  Nothing from the defense, your

7    Honor.

8           THE COURT:  Plaintiffs, let me just ask any of you, is

9    there anything else you would like to say before I bid you

10   farewell and I wish you good luck?

11          MS. LEWIS:  No, your Honor, not here.

12          THE COURT:  OK.

13          MR. RUSH:  No.  Mr. Rush speaking.  No.

14          THE COURT:  And Mr. Lola, you get the last word.

15          MR. LOLA:  No, your Honor.

16          THE COURT:  All right.  Well, I think it is a fair

17   settlement for the reasons I said.  I wish everyone the

18   happiest of holidays and a happy new year, and good luck in all

19   your future endeavors.

20          Let me thank the court reporter.  If anybody would

21   like a copy of this transcript, you can take that up through

22   the court reporter either right after this proceeding or

23   separately through the website.

24          Thank you very much.

25                               o0o

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A-414

# EXHIBIT  5

M6fezivc

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    PAVLE ZIVKOVIC, on behalf of
     himself and others similarly
4    situated,

5            Plaintiffs,

6            v.                    17 Civ. 553 (GHW)

7    LAURA CHRISTY LLC, doing
     business as Valbella, et al.,
8                                  Telephonic Conference

9            Defendants.

10   ------------------------------x
                                   New York, N.Y.
11                                 June 15, 2022
                                   4:01 p.m.
12
     Before:
13
                     HON. GREGORY H. WOODS,
14
                         District Judge
15
                         APPEARANCES
16
     JOSEPH & KIRSCHENBAUM LLP
17        Attorneys for Plaintiffs
     BY:  YOSEF NUSSBAUM
18        LUCAS COLIN BUZZARD
          DANIEL MAIMON KIRSCHENBAUM
19
     DEALY SILBERSTEIN & BRAVERMAN LLP
20        Attorneys for Defendant Laura Christy LLC
     BY:  MARIA LOUISA BIANCO
21
     HAROLD, SALANT, STRASSFIELD & SPIELBERG
22        Attorneys for Defendant Laura Christy Midtown LLC
     BY:  LEONARD I. SPIELBERG
23
     NEAL SANFORD COMER
24        Attorney for Defendants Mr. Ghatanfard and Mr. Luca

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

M6fezivc

```
 1              (Case called)
 2              THE COURT:   So before I begin by taking appearances,
 3    what I'd like to do at the outset is just ask everybody to
 4    please place your devices on mute.  I'm hearing a substantial
 5    amount of background noise.  So if I could just ask everyone to
 6    please place your phones on mute, that would be very helpful.
 7              If you can't place yourselves on mute, and
 8    particularly if you're not participating, we may ask you to, or
 9    mute you.  So again, let me just ask everybody to please place
10    their phones on mute.  The hissing sound that you hear in the
11    background is the sound of someone's phone not being on mute.
12              The line is making the sound now, so, again, I'm going
13    to ask everyone to please place your phones on mute, if you
14    can.  I'm going to begin by taking appearances for the parties.
15    And again, I'll ask that you place yourselves on mute.
16              Let me ask first, who's on the line for plaintiff?
17              MR. NUSSBAUM:   Good afternoon, your Honor.  Yosef
18    Nussbaum for the plaintiff.
19              THE COURT:   Thank you.  And who's on the line on
20    behalf --
21              MR. KIRSCHENBAUM:   Your Honor, Maimon Kirschenbaum.
22    I'm here as well.  Sorry.
23              THE COURT:   Thank you.
24              Who's on the line on behalf of defendant Laura Christy
25    LLC?
```

M6fezivc

1          MS. BIANCO:   Good afternoon, your Honor.  Maria Louisa

2    Bianco for Laura Christy LLC.

3          THE COURT:   Thank you.

4          Who's on the line on behalf of Laura Christy Midtown?

5          MR. SPIELBERG:   Good afternoon, Judge.  It's Leonard

6    Spielberg on behalf of Laura Christy Midtown.

7          THE COURT:   Thank you.

8          And who's on the line on behalf of the other

9    defendants, Mr. Ghatanfard and Mr. Luca?

10          MR. COMER:   Good afternoon, your Honor.  This is Neal

11   Comer on behalf of both of those individual defendants.

12          THE COURT:   Thank you.  Good.

13          So let me ask, is there any other lawyer who has not

14   identified themselves who's participating in the call?

15          MR. BUZZARD:   Good afternoon, your Honor.  This is

16   Lucas Buzzard, also for plaintiffs.

17          THE COURT:   Thank you.  Good.

18          So what I'm going to do is I'm going to, again, ask

19   the parties and participants to place your phones on mute.

20   Whoever is dialing in from -- 6775 is your last digits, you're

21   not on mute.  And I'm going to mute the other participant who

22   refuses -- that has just eliminated a substantial amount of the

23   background noise.  Again, please keep yourselves on mute.  The

24   line that I just muted did not seem to be associated with any

25   of the people from whom I just took appearances on behalf of

M6fezivc

1    the parties.  Again, counsel who's dialing in from a 914

2    number, please place your phone on mute.

3            So let me begin with just a brief instructions about

4    the rules that I'd like the parties to follow during this

5    conference.  At the outset, again, please keep your phones on

6    mute at all times, except when you're speaking to me or to the

7    representative of another party.

8            Second, please remember that this is a public

9    proceeding.  Any member of the public or press is welcome to

10   audit today's call.  You should just keep that in mind.

11           Third, please state your name each time that you speak

12   here.

13           Fourth, please abide by instructions from our court

14   reporter that are designed to help the court reporter do their

15   job.

16           And finally, I'm ordering that there be no recording

17   or rebroadcast to follow any portion of today's conference.

18           So, counsel, with that out of the way, today's

19   proceeding, counsel, I scheduled this as an opportunity to

20   discuss the application for an award of attorneys' fees in this

21   case.  As the parties know well, the plaintiffs prevailed at

22   trial with respect to all of the claims presented.  The class

23   plaintiffs are, therefore, entitled to the payment of

24   attorneys' fees pursuant to Section 663 of the New York Labor

25   Law, which I will refer to here as the NYLL.  In addition,

M6fezivc

1    Mr. Zivkovic seeks an award of attorneys' fees under

2    Section 8-502(g) of the New York City Human Rights Law, which I

3    will refer to as the NYCHRL.

4           Counsel, I've reviewed all of the timely filed

5    submissions in this case, did all of the submissions in this

6    case pertaining to the application for attorneys' fees, which

7    is the principal subject of this conference.  And I believe

8    that I have a view regarding the application on the basis of

9    that review.

10           I'll give the parties the opportunity if you like to

11   add anything to the written submissions that have been

12   previously provided to the Court, understanding that I've

13   reviewed the materials that have already been submitted to

14   date, and that the Court has established deadlines for the

15   submissions of briefing with respect to the issues.

16           Let me begin with counsel for plaintiffs.

17           Counsel, is there anything that you'd like to add to

18   your -- with this application?

19           MR. NUSSBAUM:   This is Yosef Nussbaum.  Thank you,

20   your Honor.

21           We'll rest on the papers, and we're happy and prepared

22   to address any specific questions the Court may have.

23           THE COURT:   Thank you.

24           Let me turn to counsel for Laura Christy.  Anything

25   that you'd like to add with respect to these issues?

A-420

M6fezivc

1          MS. BIANCO:   Thank you, your Honor.  Maria Louisa

2     Bianco.  Nothing to add at this time.

3          THE COURT:   Thank you.

4          Counsel for Laura Christy Midtown?

5          MR. SPIELBERG:   No.  I have nothing to add at this

6     time, Judge.

7          THE COURT:   Thank you.

8          Counsel for Mr. Ghatanfard and Mr. Luca?

9          MR. COMER:   Nothing from us either, Judge.  Thank you

10     very much.  This is Neal Comer.

11          THE COURT:   Thank you very much.  So thank you all for

12     that.

13          I'm going to ask you to place your phones on mute.

14     I'm prepared to rule on the application.  I'm going to do so

15     now, I'm going to do it orally.  Please bear with me.  And,

16     again, if you would please keep your phones on mute as I try to

17     provide the reasoning and ultimate conclusion with respect to

18     the application for an award of fees here.

19          After I've discussed the issues that relate to the

20     award of fees, I want to talk some more about the request for

21     the entry of judgment that the parties presented to the Court,

22     just to preview the topic there so that you can be thinking

23     about it.  I expect to talk about one how that proposed form of

24     judgment can and should be modified in response to the ruling

25     that I expect to enter now.

M6fezivc

1          And second, I want to talk about the process for

2    collection and distribution of the judgment amount and how the

3    plaintiffs in particular propose for us to set up a process to

4    do that under the supervision of the Court.

5          Before I get to that, however, let's turn to the

6    motion itself.  That is the motion for attorneys' fees.

7          So on May 13, 2022, plaintiffs filed a motion for

8    attorneys' fees.  Dkt. No. 306.  In support of the motion,

9    plaintiffs filed a memorandum of law, Dkt. No. 307 (the "P's

10   Mem."), and an affidavit by Mr. Buzzard, Dkt. No. 308 (the

11   "Buzzard Aff.").  The affidavit from Mr. Buzzard attached,

12   among other things, detailed contemporaneous time records for

13   the attorneys and paralegals who worked on the case for

14   plaintiffs.  In addition to requesting an award of fees under

15   the fee-shifting provisions of the NYLL, plaintiffs request

16   that I approve an award to counsel of one-third of the common

17   fund.  They have also requested that the Court approve up to

18   $30,000 in fees to a claims administrator and $15,000 in

19   administrative payments to each of the class representatives

20   who testified at trial.

21          Counsel for Mr. Ghatanfard, Mr. Luca and Laura Christy

22   Midtown did not oppose the motion.  However, counsel for

23   defendant Laura Christy Midtown LLC ("LCM") filed a declaration

24   in opposition to the motion.  Dkt. No. 309 (the "Opposition").

25   In the opposition, LCM challenges only a subset of the

M6fezivc

1  plaintiffs' application for fees.  They ask that the Court not

2  compensate plaintiffs' counsel for the costs associated with

3  litigating two ultimately fruitless motions for summary

4  judgment.  They do not argue that the amount of time spent on

5  those motions was excessive, but, rather, that because the

6  motions did not advance the litigation, they should not be

7  supported by an award of fees.  The declaration was not

8  supported by a memorandum of law.  Plaintiffs filed their reply

9  on June 2, 2022 (the "Reply").  Dkt. No. 312.

10        After reviewing the parties' submissions, I issued an

11  order on June 10, 2022, requesting supplemental briefing

12  regarding the extent to which all of the fees claimed by

13  plaintiffs could be pursued under the NYLL, given that

14  attorneys' fees were expended to develop Mr. Zivkovic's

15  individual claims, which were not brought pursuant to that

16  statute.  Plaintiffs' counsel submitted the requested

17  supplemental briefing on June 13, 2022, together with an

18  affidavit.  Defendants did not submit a response to the

19  supplemental briefing by the date ordered by the Court.

20        I have reviewed the submissions and am prepared to

21  rule on the motion.

22        So Attorneys' Fees, Costs and Expenses.

23        A.  Attorneys' Fees As The Prevailing Party Under the

24  NYLL.

25        In order to evaluate the reasonableness of the fees to

M6fezivc

1   be awarded under the NYLL, the Court begins by calculating the

2   lodestar.  The lodestar -- "the product of a reasonable hourly

3   rate and the reasonable numbers of hours required by the

4   case -- creates a 'presumptively reasonable fee.'"  *Millea* v.

5   *Metro-N R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting

6   *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty of*

7   *Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).  Second Circuit

8   precedent requires a party seeking an award of attorneys' fees

9   to support its request with contemporaneous time records that

10  show "for each attorney, the date, the hours expended, and the

11  nature of the work done."  *New York State Ass'n for Retarded*

12  *Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

13  District courts have "considerable discretion" in determining

14  what constitutes a reasonable award of attorneys' fees.  *Arbor*

15  *Hill*, 522 F.3d at 190.

16          The Second Circuit has directed that district "courts

17  should generally use the hourly rates employed in the district

18  in which the reviewing court sits in calculating the

19  presumptively reasonable fee."  *Restivo v. Hesseman*, 846 F.3d

20  547, 590 (2d Cir. 2017) (quoting *Simmons v. NYC Transit Auth.*,

21  575 F.3d 170, 174 (2d Cir. 2009)).  Those hourly rates "are the

22  market rates 'prevailing in the community for similar services

23  by lawyers of reasonably comparable skill, experience, and

24  reputation.'"  *Gierlinger v. Gleason*, 160 F.3d 858, 882

25  (2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11

M6fezivc

1    (1984)).

2        In determining a reasonable hourly fee, the Second

3    Circuit has also instructed district courts to consider "all of

4    the case-specific variables." *Arbor Hill*, 522 F.3d at 190.

5    The touchstone inquiry is "what a reasonable paying client

6    would be willing to pay." *Id.* at 184; *see Id.* at 192 ("By

7    asking what a reasonable, paying client would do, a district

8    court best approximates the workings of today's market for

9    legal services.").  The court should "bear in mind that a

10   reasonable paying client wishes to spend the minimum necessary

11   to litigate the case effectively" and "should also consider

12   that [a client] might be able to negotiate with his or her

13   attorneys." *Id.* at 190.

14       A district court may additionally factor into its

15   determination "the difficulty of the questions involved, the

16   skill required to handle the problem, the time and labor

17   required, the lawyer's experience, ability and reputation, the

18   customer fee charged by the bar for similar services, and the

19   amount involved." *OZ Mgmt. LP v. Ozdeal Inv. Consultants,*

20   *Inc.*, a 2010 WL 5538552, at *2 (S.D.N.Y. Dec. 6, 2010)

21   (alterations in original) (quoting *F.H. Krear & Co. v. Nineteen*

22   *Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987), *report and*

23   *recommendation adopted.*  No 09 Civ. 8665 (JGK), 2011 WL 43459

24   (S.D.N.Y. Jan. 5, 2011).

25       "The district court retains discretion to determine

M6fezivc

1    what constitutes a reasonable fee." *Millea*, 658 F.3d at 166

2    (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758

3    (2d Cir. 1998)).  "However, this discretion is not unfettered,"

4    and "the district court must abide by the procedural

5    requirements for calculating those fees articulated by [the

6    Second Circuit] and the Supreme Court." *Id.*  "Attorneys' fees

7    must be reasonable in terms of the circumstances of the

8    particular case ..." *Alderman v. Pan Am World Airways*, 169 F.3d

9    99, 102 (2d Cir. 1999).

10             Mr. Kirschenbaum billed 129.3 hours to this case at a

11   rate of $550 per hour.  Mr. Nussbaum billed the most hours to

12   this case -- for the New York Labor Law claims, 409.8 hours as

13   a partner, at a rate of $500 per hour, and before that, 432.8

14   hours as an associate at a rate of $400 per hour.  Mr. Buzzard,

15   an associate, billed 234.4 hours to the NYLL claims in this

16   case at a rate of $400 per hour.  Leah Seliger, an associate,

17   billed 17.7 hours to the case at a rate of $400 per hour.

18   Denise Schulman billed 10.6 hours to the case at a rate of $500

19   per hour.  Six separate paralegals worked on the matter for a

20   total of 101.7 hours, billing $125 per hour.

21             "In determining the number of hours reasonably

22   expended for purposes of calculating the lodestar, the district

23   court should exclude excessive, redundant or otherwise

24   unnecessary hours, as well as hours dedicated to severable

25   unsuccessful claims." *Quaratino v. Tiffany & Co.*, 166 F.3d at

M6fezivc

1    422, 425 (2d Cir. 1999).

2         I have reviewed all of the billing records presented

3    by plaintiffs.  Having done so, I conclude that the total

4    number of attorney hours expended in this matter to be

5    "reasonable number of hours required by the case."  *Millea v.*

6    *Metro-North R.R., Co.* at 658 F.3d 154, 166 (2d Cir. 2011).

7    This case was litigated over an extended period and proceeded

8    through discovery, class certification, summary judgment motion

9    practice and trial.  As a result, plaintiffs were required to

10   expend a substantial amount of time working on the case.

11        I have looked at each of the billing records, and I

12   did not identify any that seemed to be excessive.  Indeed, I

13   was often impressed by the relative efficiency of plaintiffs'

14   counsel in briefing motions presented to the Court.  In

15   particular, I think the amount of time that they worked to

16   brief the pair of summary judgment motions, which are the focus

17   of LCM's declaration, was very reasonable -- they charged

18   relatively little to brief each of those substantial motions.

19        I do not believe that I should reduce the amount of

20   plaintiffs' recoverable fees as a result of the fact that the

21   summary judgment motions that they brought were unsuccessful

22   and did not, ultimately, advance the ball.  Before I turn to

23   the substance of the argument, let me first say that LCM's

24   declaration in opposition to the motion was not properly placed

25   before the Court.  As counsel for plaintiffs correctly argued,

M6fezivc

1   it did not comply with Local Rule 7.1, which provides the

2   following:

3            "Except as otherwise permitted by the Court, all

4   motions and all oppositions thereto shall be supported by a

5   memorandum of law, setting forth the points and authorities

6   relied upon in support of or in opposition to the motion, and

7   divided, under appropriate headings, into as many parts as

8   there are points to be determined.  Willful failure to comply

9   with this rule may be deemed sufficient cause for the denial of

10  a motion or for the granting of a motion by default."

11          Local Civil Rule 7.1.  "Failure to file a memorandum

12  of law in opposition to the opposing party's motion is, by

13  itself, a sufficient basis to grant the motion."  *Kamara v.*

14  *United States*, 2005 WL 2298167 at *1 (S.D.N.Y. Sept. 20, 2005)

15  (citing *Loew v. Kolb*, 2003 WL 22271221 at *2 (S.D.N.Y.

16  September 30, 2003).  It is within the discretion of the Court

17  to consider the opposition notwithstanding its failure to

18  comply with the local rules.  I am exercising my discretion to

19  consider it here, but I think that it is worthwhile to

20  highlight the fact that the declaration does not comply with

21  the rule.  More substantively, it fails to provide any legal

22  support for the position that it advances.

23          At the outset, I recognize that LCM's motion rests in

24  part on comments made by me at the time the briefing schedule

25  was set for the second motion.  As the record reflects, I

M6fezivc

1   thought that the proposed motion was likely to be a waste of

2   time, and I wanted plaintiffs to think carefully before

3   bringing the motion.  I did not say then that I would not award

4   attorneys' fees for the motion; rather, that I would take the

5   issue into account when considering an application for

6   attorneys' fees.  I have done so here.

7          Having done so, I do not find a basis to exclude those

8   costs from the attorneys' fees recoverable by plaintiffs.

9   While unsuccessful -- and in my view a bit of a waste of

10  time -- I do not think that they were frivolous.  I granted

11  plaintiffs leave to file them, and plaintiffs did prevail at

12  trial with respect to the issues advanced in the motions.

13  Section 663 of the NYLL states that plaintiffs "shall recover"

14  "all reasonable attorneys' fees."  I do not believe that the

15  fees incurred in pursuing those motions were unreasonable in

16  amount or type; therefore, they are compensable under the

17  statute.

18         Some of the rates proposed by counsel exceed those

19  that have been endorsed by recent decisions in this district.

20  "Courts in this district have determined in recent cases that a

21  fee ranging from 250 to $450 is appropriate for experienced

22  litigators in wage-and-hour cases." *Tendilla v. 1465 Espresso*

23  *Bar LLC*, 2021 WL 2209873, at *3 (S.D.N.Y. June 1, 2021)

24  (quoting *Yuquilema v. Manhattan's Hero Corp.*, 2014 WL 4207106,

25  at *14 (S.D.N.Y. Aug. 20, 2014).  Additionally, courts in this

M6fezivc

1    district have determined "$175 to $250 per hour is an

2    appropriate range for junior attorneys." *Reinoso v. Cipriani*,

3    2019 WL 2324566, at *3 (S.D.N.Y. May 30, 2019).   Associates

4    with three to four years of experience are usually awarded fees

5    of 200 to $275 per hour. *See Hernandez v. JRPAC Inc.*, 2017 WL

6    66325, at *2 (S.D.N.Y. Jan. 6, 2017) (finding rate of $250 per

7    hour for attorney with three to four years of experience was

8    reasonable).  "Rates in excess of $225 per hour are reserved

9    for FLSA litigators with more than three years' associate

10   experience" while "associates with one to three years of

11   experience have been awarded rates ranging from $150 to $200

12   per hour." *Lu Wan v. YWL USA Inc.*, 2021 WL 1905036, at *6

13   (S.D.N.Y. May 12, 2021).

14          Courts in this district have also awarded a standard

15   hourly paralegal rate of $75 unless the parties have shown that

16   the paralegal has specialized skills. *Lu Wan v. YWL USA Inc.*,

17   2021 WL 1905036, at *5 (S.D.N.Y. May 12, 2021) (citing *Knox v.

18   John Varvatos Enters. Inc.*, 2021 WL 608345, at *6 (S.D.N.Y.

19   Feb. 17, 2021)).

20          I recognize the issues that plaintiffs raise regarding

21   the use of case precedents in establishing appropriate rates

22   for counsel -- namely, that the use of precedent anchors rates

23   in the past.  I have also reviewed the aggregate data presented

24   by plaintiffs in their declaration regarding prevailing hourly

25   rates in New York for employment litigators.  In New York City,

M6fezivc

1     first quartile partners billed $469 per hour, where third

2     quartile partners billed $794 per hour.  Associates in those

3     quartiles billed at 315 and $571 per hour respectively.  The

4     rates that I just recited from the case law present a range

5     that is lower than even the first quartile rates.  Accordingly,

6     I believe that an upward adjustment -- above the rates that I

7     just recited based on the case law -- is appropriate based on

8     my knowledge of the case and prevailing rates.  Because the law

9     firm was retained on a contingency basis, I do not have

10    empirical evidence regarding the amount that their clients are

11    willing to pay.

12               Mr. Kirschenbaum's hourly rate, $550, exceeds the top

13    of the range that courts in this district have awarded to

14    partners with significant employment litigation experience in

15    FLSA cases.  At the same time, I recognize Mr. Kirschenbaum's

16    years of experience in this practice area.  Therefore, I will

17    approve an hourly rate of $500 per hour for Mr. Kirschenbaum.

18    Given their experience in the field, I approve the same hourly

19    rate for each of the partners involved in the case.  The hourly

20    rates of each of the associates of the firm are supported as

21    well.  Mr. Buzzard has been practicing since 2010; Ms. Seliger

22    has been practicing since 2002.  Given their experience and the

23    nature of the work that they performed in this case, a fee at

24    the top of the associate range is appropriate in this case.

25               Counsel has provided detailed biographies for each of

M6fezivc

1  the paralegals who have worked on the case.  Each has

2  sufficient education and experience to command a rate higher

3  than the $75 per hour rate that I described as being supported

4  by the case law.  Based on my knowledge of market conditions, I

5  believe that the proposed rate of $125 per hour is appropriate

6  for each of them as a result of their specialized skill and

7  training, as well as the efficient use of their time in this

8  case as demonstrated in the billing records.

9           As a result, I calculate plaintiffs' attorneys' fees

10  as follows:

11           Mr. Kirschenbaum, a rate of $500 per hour for 129.3

12  hours; total, 64,500.

13           Mr. Nussbaum, who's a partner, $500 per hour for 409.8

14  hours, totaling $204,900.

15           Mr. Nussbaum as an associate, at a rate of $400 an

16  hour, for 432.8 hours, yielding $173,120.

17           Mr. Buzzard at a rate of $400 for 234.4 hours,

18  yielding $94,320.

19           Ms. Seliger at a rate of $400 an hour for 17.7 hours,

20  yielding $7,096.

21           Ms. Schulman at a rate of $500 per hour for 10.6

22  hours, yielding $5,300.

23           And paralegals at a rate of $125 for 101.7 hours,

24  yielding $12,712.50, aggregating $561,948.50.

25           This is the amount of attorneys' fees that plaintiffs'

M6fezivc

1   counsel are entitled to under the NYLL.  This is also the

2   lodestar against which I will measure the proposed percentage

3   of fund award.  Again, the total was $561,948.50.

4              The Costs as the Prevailing Party Under the NYLL.

5              Plaintiffs' counsel also moves the Court for

6   reimbursement of $20,200.57 in litigation expenses under the

7   NYLL.  See P's Mem. at 16-17.  The costs for which plaintiffs

8   seek reimbursement include filing and service costs, postage,

9   deposition costs, interpreting fees and transcripts.  The costs

10  for which they seek reimbursement are properly compensable

11  under the NYLL.  Therefore, the Court awards plaintiffs

12  $20,200.57 in litigation costs.

13             C.  Attorneys' Fees as the Prevailing Party Under the

14  NYCHRL.

15             The NYCHRL provides that a court, "in its discretion,

16  may award the prevailing party reasonable attorneys' fees,

17  expert fees and other costs."  N.Y.C. Admin. Code

18  Section 8-502(g).  Here, I believe that as the prevailing

19  party, counsel for Mr. Zivkovic is entitled to reasonable

20  attorneys' fees on account of his success litigating the

21  discrimination claims against defendants Valbella Midtown,

22  Mr. Ghatanfard, and Mr. Luca.  As with the NYLL claims, the

23  Court must evaluate the reasonableness of the requested fees.

24  For the reasons described before, I conclude that the rates

25  billed by Messrs. Nussbaum and Buzzard -- the only people who

M6fezivc

1   billed on account of these claims -- are reasonable.

2          Mr. Nussbaum billed in the aggregate only 14.2 hours

3   with respect to these claims; Mr. Buzzard billed only 1.4

4   hours.  This amount of time to pursue claims that proceeded

5   through a successful trial is very reasonable.  Indeed, it is

6   extraordinarily little.  While Mr. Zivkovic's assault claim is

7   not subject to the fee-shifting provisions of the NYCHRL, the

8   work to prosecute that claim is clearly inextricably

9   intertwined with the NYCHRL claims the conduct that underpinned

10  the discrimination claim was also at the heart of the assault

11  claim.  "Where the district court determines that the

12  successful and unsuccessful claims are 'inextricably

13  intertwined' and 'involve a common core of facts or [are] based

14  on related legal theories,' it is not an abuse of discretion

15  for the Court to award the entire fee." *Reed v. A.W.*

16  *Lawrence & Co.*, 95 F.3d 1170, 1183 (2d Cir. 1996).

17         For these reasons I'm awarding to Mr. Zivkovic $7,060

18  in attorneys' fees pursuant to the NYCHRL.  This award will be

19  entered against Valbella Midtown, Mr. Ghatanfard, and Mr. Luca.

20         D.  Percentage of Fund Recovery

21         In addition to the recovery of attorneys' fees under

22  the NYLL, plaintiffs' counsel seeks an award of one third of

23  the common fund recovery.  First off, I want to be clear that

24  the common fund recovery here is $4,509,868.78 -- the common

25  fund recovery does not include the amount awarded to

M6fezivc

1    Mr. Zivkovic individually, which amounts to $680,000.  I do not

2    believe that I need to approve the distribution of a portion of

3    that recovery to his counsel pursuant to whatever fee

4    arrangement they have in place.  I am focused on the common

5    fund recovery for the benefit of the class.  33 percent of the

6    common fund is $1,503,274.56.

7              Counsel may recover a percentage of the common fund in

8    addition to statutory attorneys' fees.  See *Cnty. of Suffolk v.*

9    *Long Island Lighting Co.*, 907 F.2d 1295, 1327 (2d Cir. 1990)

10   ("The purpose of fee-shifting statutes, however, is to

11   encourage the prosecution of certain favored actions by private

12   parties.  Under the facts herein, we perceive no basis for

13   concluding that giving effect to the equitable fund doctrine

14   would conflict with this purpose.").  Here, too, I perceive no

15   basis to conclude that giving effect to the equitable fund

16   doctrine would conflict with the purpose behind the

17   fee-shifting provisions of the NYLL.

18             The trend in the Second Circuit is to use the

19   percentage of the fund method to compensate attorneys in common

20   fund cases, although the Court has discretion to award

21   attorneys' fees based on either the lodestar method or the

22   percentage-of-recovery method.  See *Fresno Cty. Employees' Ret.*

23   *Ass'n v. Isaacson/Weaver Family Tr.*, 925 F.3d 63, 68 (2d Cir.

24   2019).

25             The notice provided to class members advised that

M6fezivc

1   class counsel would apply for attorneys' fees for up to

2   one-third of the settlement fund.  No class member objected to

3   that provision.

4            1. *Goldberger* Factors.

5            Reasonableness is the touchstone when determining

6   whether to award attorneys' fees.  In *Goldberger v. Integrated*

7   *Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000), the Second Circuit

8   set forth the following six factors to determine the

9   reasonableness of a fee application:  (1) the time and labor

10  expended by counsel; (2) the magnitude and complexities of the

11  litigation; (3) the risk of the litigation; (4) the quality of

12  the representation; (5) the requested fee in relation to the

13  settlement; and (6) public policy considerations.  *Id.* at 50.

14           2.  Class Counsel's Time and Labor

15           Plaintiffs' counsel spent a substantial amount of time

16  on this litigation, as detailed in the billing records provided

17  to the Court.  That labor was appropriate, given the fact that

18  the case was fully litigated through trial.  This factor weighs

19  in favor of the requested award of fees.

20           3.  Magnitude and Complexity of the Litigation

21           The size and difficulty of the issues in a case are

22  significant factors to be considered in making a fee award.

23  *In Re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F.Supp. 97,

24  100 (S.D.N.Y. 1996).  This case is one of some magnitude,

25  concerning separate subclasses containing many individuals.

M6fezivc

1   The case proceeded to trial and raised complex issues of law.

2   The amount sought by plaintiffs' counsel is commensurate with

3   the magnitude and complexity of this litigation.

4           4.  The Risk of Litigation

5           Plaintiffs' counsel faced significant risk in

6   prosecuting this action and proving the merits of the claims.

7   And, given the complexity of the case, the risk was very large,

8   and would have required extensive work, as it did.  Plaintiffs'

9   counsel bore that risk on a contingency basis over an extended

10  period of time.  This factor weighs in favor of granting

11  plaintiffs' counsel's request.

12          5.  Quality of Representation

13          Plaintiffs' counsel have considerable experience in

14  wage and hour class action lawsuits, such as this.  They did

15  well in presenting the issues to the Court and the jury.  I

16  questioned the wisdom of their partial summary judgment

17  motions -- predicting that they would merely delay the final

18  resolution of the case -- but nonetheless, I find that the

19  quality of their representation was high.  Accordingly, I find

20  that this *Goldberger* factor weighs in favor of approving the

21  requested fee award.

22          6.  When determining whether a fee award is

23  reasonable, courts consider the social and economic value of

24  the class action, "and the need to encourage experienced and

25  able counsel to undertake such litigation." *In re Sumitomo*

M6fezivc

1   *Copper Litig.*, 74 F.Supp. 2nd 393, 399 (S.D.N.Y. 1999).  Here,

2   the Court sees considerable public benefit to pursuing these

3   claims, particularly considering that some of the class

4   members' claims are for a relatively small dollar amount.

5   *Berni v. Barilla G. e R Fratelli S.p.A.*, 332 F.R.D., 14, 36

6   (E.D.N.Y. 2019), vacated and remanded sub on other grounds nom.

7   *Berni v. Barilla S.p.A.*, 964 F.3d 141 (2d Cir. 2020) ("the very

8   small claims of the members of the class when taken separately

9   would not justify the expense of litigation.").  In addition,

10  "there is ... commendable sentiment in favor of providing

11  lawyers with sufficient incentive to bring common fund cases

12  that serve the public interest." *Goldberger*, 209 F.3d at 51.

13  Accordingly, public policy, and more specifically, the goal of

14  incentivizing lawyers to bring private enforcement actions such

15  as this one, favors granting plaintiffs' counsel's request.

16          After considering all the *Goldberger* factors, the

17  requested fee award appears to be reasonable.

18          7. Lodestar "Cross Check"

19          To ensure the reasonableness of a fee awarded under

20  the percentage of the fund method, district courts may

21  cross-check the proposed award against counsel's lodestar.  *See*

22  *Goldberger*, 209 F.3d at 50.

23          The lodestar in this case is $561,948.50.  That means

24  that the requested fees of $1,503,274.56 represents a

25  multiplier of 2.675 of the lodestar calculated by the Court.

M6fezivc

1    It would be a higher lodestar if I include the direct fee

2    recovery under the NYLL.  I'm going to analyze this using the

3    2.65 number, but my conclusion would be the same even if I used

4    the higher number.

5            This lodestar multiplier falls well within the range

6    of appropriate lodestar multipliers; indeed, courts often award

7    lodestar multipliers of up to eight times the lodestar, and in

8    some cases even higher. *Viafara v. MCIZ Corp.*, 2014 WL

9    1777438, at *14 (S.D.N.Y.. May 1, 2014).

10           The requested fee award is within the range of what

11   courts in this circuit regularly award in class actions such as

12   this one, whether calculated as a percentage of the fund or in

13   relation to class counsel's lodestar.  Moreover, the factors

14   established for the review of attorneys' fees awards in

15   *Goldberger* supports the conclusion that the requested fee is

16   reasonable.

17           D.  Service Awards for Class Representatives

18           The service awards requested for the class

19   representatives here are excessive.  An incentive award may be

20   given to compensate named plaintiffs for efforts expended "for

21   the benefit of the lawsuit." *Dornberger v. Metro Life Ins.*

22   *Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001).  Here, plaintiffs'

23   counsel seek an award of $15,000 for each of the four class

24   representatives who testified at trial in this case.  Counsel

25   asserts that each of the class representatives "participated in

M6fezivc

1  the litigation by producing documents, sitting for a

2  deposition, and preparing for trial."  Pls. Mem. at 25.

3          First off, the Court does not find that a payment to

4  Zivkovic -- who's been awarded $680,000 in this case as a

5  result of his direct claims in this case -- is either necessary

6  or appropriate.  *See e.g. Silverberg v. People's Bank*,

7  23 Fed. Appx. 46, 48 (2d Cir. 2001); *Brown v. Steinberg*, 1990

8  U.S. Dist. LEXIS 13516, at *11.  Mr. Zivkovic has been amply

9  compensated for his time testifying at trial.

10          "In calculating incentive payments, courts consider

11  'the existence of special circumstances, including the personal

12  risk (if any) incurred by the plaintiff applicant in becoming

13  and continuing as a litigant, the time and effort expended by

14  that plaintiff in assisting in the prosecution of the

15  litigation or in bringing to bear added value (e.g., factual

16  expertise), any other burdens sustained by the plaintiff in

17  lending himself or herself to the prosecution of the claim and

18  of course, the ultimate recovery.'" *Frank v. Eastman Kodak Co*.,

19  228 F.R.D. 174, 187 (W.D.N.Y. 2005) (quoting *Roberts v. Texaco,*

20  *Inc.*, 979 F.Supp. 185, 200 (S.D.N.Y. 1997)).  Plaintiffs'

21  application for an incentive payment to Mr. Zivkovic does not

22  demonstrate a "level of special circumstances warranting an

23  incentive award." *Silverberg*, 23 Fed. Appx. at 48.

24          As noted, Mr. Zivkovic was pursuing individual claims,

25  as well as his classwide claims.  His testimony at trial

M6fezivc

1   contained testimony both about the classwide matters as well as

2   about his individual claims.  Having observed his individual

3   testimony and the amount of time and labor involved, I don't

4   believe that there is a need for additional payment to

5   Mr. Zivkovic as a result of his work, given the amount of

6   recovery for each of the class members.

7           There is "no indication that Mr. Zivkovic assumed a

8   risk or inconvenience not shared by the other class members

9   which is of such a magnitude to merit" an incentive award, and

10  the plaintiffs haven't provided specific evidence of any

11  purported risks magnitude.  Here, Mr. Zivkovic was amply

12  motivated to provide testimony, I believe, in support of both

13  his individual claims, as well as those on behalf of the class.

14          For the same reasons, I don't believe that the record

15  supports granting each of the testifying class representatives

16  other than Mr. Zivkovic an award of the size that has been

17  requested.  The amount of work that they did as described does

18  not appear to justify an award of $15,000 each.  The amount of

19  work that they did as described in the affidavit, and based on

20  my observations of the testimony of each of the individuals,

21  was more modest.  As a result, I will approve an incentive

22  award to each of the three representative plaintiffs who

23  testified at trial other than Mr. Zivkovic -- that is, Sanchez,

24  Marin and Rendon -- in the amount of $5,000 each.

25          III

M6fezivc

1          In conclusion, I'm awarding plaintiffs' counsel

2    $561,948.50 in attorneys' fees pursuant to the fee-shifting

3    provisions of the NYLL.  I am awarding them $20,200.57 in costs

4    pursuant to the statute.  Plaintiffs' counsel are entitled to

5    an award of 33.3 percent of the common fund recovery for the

6    class action, or $1,503,274.56.  I am also awarding lead

7    plaintiffs Sanchez, Marin and Rendon a representative fee of

8    $5,000 each.  The obligation to pay the amounts that I have

9    just described is borne jointly and severally by Valbella

10   Midtown, Valbella Meatpacking and Mr. Ghatanfard.  In addition,

11   I am awarding counsel for Mr. Zivkovic $7,060 in attorneys'

12   fees pursuant to the NYCHRL.  The obligation to pay this amount

13   will be borne jointly and severally by Valbella Midtown,

14   Mr. Ghatanfard, and Mr. Luca.

15          So thank you very much for your patience, counsel, as

16   I got through that.  My proposal would be that you provide me

17   with a new form of judgment that includes the award of fees

18   that I just described.  The attorneys' fees should be included

19   in the judgment.  As I understand the law, interest on this

20   component of the award does not begin to accrue until judgment

21   with respect to it has been entered.

22          So what I would propose is that the parties present to

23   me a revised form of judgment consistent with this decision

24   that would also award attorneys' fees in the amount that I just

25   described.  I could then enter the judgment, and the parties

M6fezivc

1    could go off to do whatever you want to do next with respect to

2    the case.

3              Separately, I want to spend a little bit of time

4    talking about claims administration and the process going

5    forward.  I did not grant the request that I approve $30,000

6    for a payment of a claim administrator.  I didn't want address

7    that because I'm not sure that I'm yet -- I should say I don't

8    believe that I'm in a position yet to grant that request.  I

9    would like to review the résumé and qualifications of the

10   proposed claim administrator, as well as their costs and any

11   applications for expense reimbursement before I provide

12   authorization for their fee.

13             The other thing that I want to -- so I want to talk

14   about how it is that I'll be getting from you information about

15   the claims administrator who will be doing the distribution

16   work.  There are two other data points regarding the case going

17   forward that I want to talk with the parties about, perhaps

18   principally plaintiff.

19             One is once we have a claims administrator on board, I

20   would expect to see a more detailed plan of distribution than

21   what's been described to me to date.  I have unsworn

22   distribution percentages for the class members, but first I

23   would need for that information to be presented to me in an

24   affirmation or affidavit.

25             Second, more significantly, I'd like to see how it is

A-443

M6fezivc

1    that the claims administrator is planning to get the money out

2    to recipients, and how it will handle issues such as people

3    that they're not able to track down; how any overage, to the

4    extent there is any, will be allocated.

5            So there are a number of distribution-related issues

6    that, counsel, you're familiar with, which I just don't have in

7    front of me, and I'm not in a position to endorse.  And I think

8    that the process there would be helped along by the presence of

9    a claims administrator who can help the plaintiffs' counsel

10   present a more detailed proposal to me.

11           As a threshold, however, with respect to that issue, I

12   recognize that the first point is to make sure that there's

13   something to distribute.  And the issues there are twofold:

14   One is when will money be coming from the defendants; none of

15   them, to my knowledge, have declared bankruptcy, so I assume

16   that they are going to be paid, be paying or pursued for

17   payment at some point.

18           And two, to the extent that payment comes in over time

19   or incrementally -- not that I'm saying that it should or will,

20   but I would like to know how the plaintiffs wish to preserve

21   any moneys that come in for the payment of the common fund or

22   otherwise, and how they will be divvied up, where there are,

23   I'll call it, competing obligations.

24           So, for example, Mr. Ghatanfard and Midtown owe both

25   class obligations and the obligations to Mr. Zivkovic.  So in

M6fezivc

1    the hypothetical scenario in which we don't receive full

2    payment with respect to all of the claims up front, how will

3    allocation decisions be made with respect to the cash that is

4    received?

5             So I usually like to assume that everything will be

6    paid up front quickly, and maybe that will be the case here.

7    But I want to at least acknowledge that that is a part of the

8    plan here as to which I don't have much information, and that

9    which I think I need to know more in order to develop a plan

10   for depositing any funds received, and then distributing them.

11            All of this is brought on by your request for

12   appointing, or I should say approving, the compensation of a

13   claims administrator.  I think there are a number of other

14   threshold issues that we need to address, and as to which I

15   will want to solicit your views, counsel for plaintiffs.

16            So I apologize for the monologue.  My two questions

17   are, one, what's your view about sending me a revised proposed

18   judgment reflecting the things that we just talked about; and

19   two, what are your proposals regarding how to collect and

20   obtain more detail regarding the distribution of any funds from

21   the defendants here?  And I'll hear from each party in turn

22   with respect to each of those issues, beginning with number one

23   regarding the judgment.

24            Counsel for plaintiffs, what do you think about

25   whether or not you can give me a new proposed judgment

M6fezivc

1   reflecting the attorneys' fees as well?

2          MR. NUSSBAUM:   Thank you, your Honor.  Yosef Nussbaum

3   for plaintiffs and the class.

4          We can -- we can get a new proposed judgment to the

5   Court pretty quickly.  We'd want to send it to defendants

6   first, just to run it by them.

7          There is one issue that we would like to include in

8   this new proposed judgment that I don't think is an earlier

9   draft, which is to actually include the names of all of the --

10  the subclass members who are the beneficiaries of the judgment.

11  In preparing for the conference, I think that Rule 23 requires

12  the names of all these individuals to be put in the judgment,

13  and I don't think that was in the previous draft, but we would

14  like to incorporate that as well as, you know, the attorneys'

15  fees that the Court awarded today.

16         I'm happy to address the second issue as well.  I

17  don't know if the Court wants to hear from all the parties

18  first.

19         THE COURT:   Thank you.  I'll hear from the other

20  parties first.

21         With respect to the identity of the class members,

22  I'll come to you in a moment.  I'm not going to take a position

23  on that.  I certainly don't mind if you and the defendants talk

24  about adding additional issues to it.

25         Let me turn to counsel, first, for Mr. Ghatanfard and

A-446

M6fezivc

1    Mr. Luca, just on issue one, namely the judgment proposal.  Can

2    you work with counsel for plaintiffs to develop a new proposed

3    judgment to present to me for hopefully prompt entry?  Counsel

4    for Mr. Luca and Ghatanfard?

5               MR. COMER:   Your Honor, this is Neal Comer.

6               I would certainly be prepared to look at what they

7    draft and go through it with them.  And if it's what your Honor

8    has ruled, then I suppose we would not object to it.

9               THE COURT:   Thank you.

10              Counsel for Midtown?

11              MR. SPIELBERG:   Yes, Judge.  We would be in the same

12   position.

13              THE COURT:   Thank you.

14              Counsel for Meatpacking?

15              MS. BIANCO:   Maria Louisa Bianco.  I agree, your

16   Honor.

17              THE COURT:   Thank you.

18              So let's turn to issue two -- I'm sorry, let me finish

19   up with issue one.

20              Issue one, counsel for plaintiffs, please coordinate

21   with your colleagues on the other side, present me with a

22   proposed form of judgment promptly.  I will review it promptly

23   and try to execute it and enter it so that there is a judgment

24   on the boards in the case.

25              With respect to issue two, counsel for plaintiffs, how

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

M6fezivc

1    do you respond?

2           MR. NUSSBAUM:    Thank you, your Honor.  Yosef Nussbaum

3    for the plaintiffs again.

4           We appreciate the Court's comments on engaging a

5    claims administrator to work through the nitty-gritty issues of

6    how the -- any funds that are recovered would be distributed.

7    What we would do is we would send out a request for a bid.

8    There are a few of the claims administrators that I'm sure your

9    Honor has seen before in labor law class actions; try to find

10   who can get us the best quote.  I have to explain to them

11   exactly what it is we're going to need here.  And as the Court

12   highlighted, one of the important issues would be to figure out

13   where the subclasses are today, or the most recent contact

14   information that we can get for them, for a significant part of

15   the task here would be skip tracing and the like, to try to get

16   the class members' most recent addresses.  Once we find someone

17   who, or a company that gives us, you know, the best proposal,

18   we would then submit to the Court a letter and then try to

19   outline exactly what the specifics of the proposal are for your

20   Honor's approval.

21          In terms of allocating the judgment, what we would

22   suggest and what we've seen in the past is to allocate it on a

23   pro rata basis.  So, you know, the judgment, you know, is

24   $6 million, and $100,000 comes in, and that's -- you know, we

25   know the percentages of how that 6 million number was being

M6fezivc

1   divided to all of the -- all of the judgment creditors; we

2   would just divide it accordingly.

3               THE COURT:   Thank you.

4               Let me just pause --

5               MR. NUSSBAUM:   There's one other --

6               THE COURT:   I'll remind you of the one other -- just

7   pause you on the one issue.

8               I don't know when moneys will be coming in in respect

9   of this judgment and in what increments.  So just one issue to

10  put on the table for your consideration, as you're thinking

11  about that issue, is the size of checks to class members.

12              So I can imagine a situation in which, hypothetically,

13  not the full amount is paid up front, and in which a smaller

14  amount is instead received.  There will be a question about

15  whether and to what extent those moneys should be distributed

16  at all, perhaps, to class members until they hit a trigger

17  amount at which it makes sense to do the work, to do the

18  distribution.  So just an issue to think about.  Again, I

19  don't -- I'm going to assume that the defendants are going to

20  pay promptly and in full, since none have gone bankrupt, but it

21  may be that that is a nuance worth thinking about here.

22              The other issue that I'd raised was the simple

23  question of where money goes when it comes in, assuming money

24  comes in.  Typically I'm asked to approve something like an

25  escrow arrangement into which cash will be deposited and held

M6fezivc

1    for distribution in accordance with a preapproved plan of

2    distribution.  One thing that I don't have here yet is such an

3    application that is to establish some kind of an escrow account

4    into which these moneys will be deposited and only be released

5    subject to the distribution.  That's the other issue that I

6    wanted to ask you to consider, and either address here or in

7    your next submission to the Court.

8            Any thoughts on that, counsel for plaintiffs?

9            MR. NUSSBAUM:   Thank you, your Honor.  Yosef Nussbaum

10   again.

11           We would open an escrow account and ask that the Court

12   allow us any moneys that come in be deposited into -- into the

13   class counsel's escrow account.

14           THE COURT:   Thank you.  Good.

15           MR. NUSSBAUM:   I do have one comment on the Court's

16   previous discussion on if the judgment's paid in installments,

17   how to handle that.  And I have a little bit of experience with

18   this in the past.  I think the situations are too numerous to

19   go through now and would not be fruitful to go through now, but

20   I think we would have to keep the Court involved and, you know,

21   ask for the Court's permission.

22           You know, if a number that was too small came in to

23   justify sending checks to about 400 class members, we would ask

24   the Court's permission to continue to hold the money in escrow

25   until more money came in that would justify sending checks out.

A-450

M6fezivc

1          THE COURT:   Thank you.

2          That's my assumption.  It may be that in whatever

3   proposal you give me, you want to consider prebaked trigger

4   points so you don't need to come to me for preapproval for each

5   distribution.  But I'll leave that to you.  Thank you for being

6   on top of the question.

7          I think this might be, too, principally an issue for

8   counsel for plaintiffs, but if there's any defendant who wishes

9   to be heard with respect to those issues, I welcome any

10   comments.

11          First, counsel for Mr. Luca and Ghatanfard?

12          MR. COMER:   Neal Comer here, Judge.

13          No, your Honor.  No further comment.

14          THE COURT:   Thank you.

15          Counsel for Midtown?

16          MR. SPIELBERG:   Leonard Spielberg.  No further

17   comment, Judge.

18          THE COURT:   Thank you.

19          Counsel for Meatpacking?

20          MS. BIANCO:   Maria Lisa Bianco.  Nothing from me, your

21   Honor.

22          THE COURT:   Thank you very much.

23          I look forward to seeing the judgment, and then the

24   parties will be off to the races.

25          So, counsel for plaintiffs, please do think about the

M6fezivc

1    distribution escrow issues and present whatever you think is

2    appropriate to the Court for approval well in advance of

3    receipt of funds.

4            Thank you all very much.  This proceeding is

5    adjourned.

6            (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

A-452

# EXHIBIT  6



# 2021 Real Rate Report®

## The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices


Wolters Kluwer

When you have to be right



<div style="float:right">**ELM Solutions**</div>

### Report Editor

**Jeffrey Solomon**
Senior Director, Product Management Legal
Analytics, Wolters Kluwer's ELM Solutions

### Lead Data Analysts

**Carol Au**
Business Systems Quantitative Analyst
Wolters Kluwer's ELM Solutions

**Pankaj Saha**
Data Engineer
Wolters Kluwer's ELM Solutions

### ELM Solutions Creative

**David Andrews**
Senior Graphic Designer
Wolters Kluwer's ELM Solutions

### Contributing Analysts and Authors

**Jason Bender**
Legal Analytics Product Manager
Wolters Kluwer's ELM Solutions

**Deniece Bushell**
Senior Product Marketing Manager
Wolters Kluwer's ELM Solutions

**Nathan Cemenska**
Associate Director, Product Management
Wolters Kluwer's ELM Solutions

**Margie Sleboda**
Lead Technology Product Manager
Wolters Kluwer's ELM Solutions

### Executive Sponsor

**Barry Ader**
Vice President, Product Management and
Marketing
Wolters Kluwer's ELM Solutions

---

© 2004 - 2021 Wolters Kluwer's ELM Solutions. All rights reserved. This material may not be reproduced, displayed, modified, or distributed in any form without the express prior written permission of the copyright holders. To request permission, please contact:

ELM Solutions, a Wolters Kluwer business
20 Church Street
Hartford, CT 06103 United States
ATTN: Marketing
+1-860-549-8795

**LEGAL CAVEAT**

Wolters Kluwer's ELM Solutions has worked to ensure the accuracy of the information in this report; however, Wolters Kluwer's ELM Solutions cannot guarantee the accuracy of the information or analyses in all cases. Wolters Kluwer's ELM Solutions is not engaged in rendering legal, accounting, or other professional services. This report should not be construed as professional advice on any particular set of facts or circumstances. Wolters Kluwer's ELM Solutions is not responsible for any claims or losses that may arise from any errors or omissions in this report or from reliance upon any recommendation made in this report.

---

# Table of Contents - 2021 Real Rate Report

**A Letter to Our Readers** • 4

**Report Use Considerations** • 5

**Section I: High-Level Data Cuts** • 9

- Partners, Associates, and Paralegals
- Partners, Associates, and Paralegals by Practice Area and Matter Type
- Partners and Associates by City
- Partners and Associates by City and Matter Type
- Partners by City and Years of Experience
- Associates by City and Years of Experience
- Partners and Associates by Firm Size and Matter Type

**Section II: Industry Analysis** • 64

- Partners, Associates, and Paralegals by Industry Group
- Partners and Associates by Industry Group and Matter Type
- Basic Materials and Utilities
- Consumer Goods
- Consumer Services
- Financials (Excluding Insurance)
- Health Care
- Industrials
- Technology and Telecommunications

**Section III: Practice Area Analysis** • 85

- Bankruptcy and Collections
- Commercial
- Corporate: Mergers, Acquisitions, and Divestitures
- Corporate: Regulatory and Compliance
- Corporate: Other
- Employment and Labor
- Environmental
- Finance and Securities
- General Liability (Litigation Only)
- Insurance Defense (Litigation Only)
- Intellectual Property: Patents
- Intellectual Property: Trademarks
- Intellectual Property: Other
- Real Estate

**Section IV: In-Depth Analysis for Select US Cities** • 175

- Boston, MA
- Chicago, IL
- Los Angeles, CA
- New York, NY
- Philadelphia, PA
- San Francisco, CA
- Washington, DC

**Section V: International Analysis** • 195

**Section VI: Matter Staffing Analysis** • 227

**Appendix: Data Methodology** • 232

# A Letter to Our Readers

**Welcome to the Wolters Kluwer's ELM Solutions Real Rate Report®, the industry's leading data-driven benchmark report for lawyer rates.**

Our Real Rate Report has been a relied upon data analytics resource to the legal industry since its inception in 2010 and continues to evolve. The Real Rate Report is powered by Wolters Kluwer's ELM Solutions LegalVIEW® data warehouse, the world 's largest source of legal performance benchmark data, which has grown to include over $150 billion in anonymized legal data.

This year, we launched our LegalVIEW Insights Report series, which explores the emerging trends behind the overall legal spend volatility seen in corporate legal departments. The insights reports coupled with the Real Rate Report are great tools to drive actionable decisions.

The legal services industry relies on internal analytics and the use of external data resources, such as the LegalVIEW® data warehouse, to support legal management strategies. The depth and details of the data in the Real Rate Report enable you to better benchmark and make more informed investment and resourcing decisions for your organization.

As with past Real Rate Reports, all of the data analyzed are from corporations' and law firms' e-billing and time management solutions. We have included lawyer and paralegal rate data filtered by specific practice and sub-practice areas, metropolitan areas, and types of matters to give legal departments and law firms greater ability to pinpoint areas of opportunity. We strive to make the Real Rate Report a valuable and actionable reference tool for legal departments and law firms.

As always, we welcome your comments and suggestions on what information would make this publication more valuable to you. We thank our data contributors for participating in this program. And we thank you for making Wolters Kluwer's ELM Solutions your trusted partner for legal industry domain expertise, data, and analytics and look forward to continuing to provide market-leading, expert solutions that deliver the best business outcomes for collaboration among legal departments and law firms.

Sincerely,

**Barry Ader**
Vice President, Product Management and Marketing
Wolters Kluwer's ELM Solutions

A-457

# Report Use Considerations

### 2021 Real Rate Report

- Examines law firm rates over time
- Identifies rates by location, experience, firm size, areas of expertise, industry, and timekeeper role (i.e., partner, associate, and paralegal)
- Itemizes variables that drive rates up or down

All the analyses included in the report derive from the actual rates charged by law firm professionals as recorded on invoices submitted and approved for payment.

Examining real, approved rate information, along with the ranges of those rates and their changes over time, highlights the role these variables play in driving aggregate legal cost and income. The analyses can energize questions for both corporate clients and law firm principals.

Clients might ask whether they are paying the right amount for different types of legal services, while law firm principals might ask whether they are charging the right amount for legal services and whether to modify their pricing approach.

### Some key factors[1] that drive rates[2]:

**Attorney location -** Lawyers in urban and major metropolitan areas tend to charge more when compared with lawyers in rural areas or small towns.

**Litigation complexity -** The cost of representation will be higher if the case is particularly complex or time-consuming; for example, if there are a large number of documents to review, many witnesses to depose, and numerous procedural steps, the case is likely to cost more (regardless of other factors like the lawyer's level of experience).

**Years of experience and reputation -** A more experienced, higher-profile lawyer is often going to charge more, but absorbing this higher cost at the outset may make more sense than hiring a less expensive lawyer who will likely take time and billable hours to come up to speed on unfamiliar legal and procedural issues.

**Overhead -** The costs associated with the firm's support network (paralegals, clerks, and assistants), document preparation, consultants, research, and other expenses.

**Firm size –** The rates can increase if the firm is large and has various timekeeper roles at the firm. For example, the cost to work with an associate or partner at a larger firm will be higher compared to a firm that has one to two associates and a paralegal.

### Rates increase in geographic areas with growing population

Additional analysis was performed to examine the impact of geographic location on law firm hourly rates. This report, like previous ones, shows that large, cosmopolitan legal services markets like New York City, San Francisco, and Los Angeles are associated with higher hourly rates. In addition, our analysis reveals a significant spike in hourly rates in areas of the country

---

[1] David Goguen, J.D., University of San Francisco School of Law (2020) Guide to Legal Services Billing Retrieved from: https://www.lawyers.com/legal-info/research/guide-to-legal-services-billing-rates.html
[2] **Source:  2018 RRR.** Factor order validated in multiple analyses since 2010

A-458

# Report Use Considerations

that are currently experiencing high population growth. Significant average rate increases occurred from 2020 to 2021 in many areas, but especially Fresno, California (~15% average rate increase), Greenville, SC (~18%), Miami, FL (~9%), Nashville, TN (~11%), Oklahoma City (~13%), Phoenix, AZ (~10%), and Seattle, WA (~11%) -- all of which have experienced much higher than average population growth in recent years.

The correlation between hourly rates and population growth makes sense. When people and businesses move into an area, it creates a spike in demand for all sorts of goods and services, including legal services. However, it is hard for the supply of legal services to move as quickly as demand because attorneys looking to move into a new geographic area face high switching costs that most will refuse to pay unless they absolutely have to.

First, attorneys looking to take work in a new state have to get licensed there, which takes time and effort and is a distraction that can reduce their current income in the form of the number of hours they are able to bill to clients. Second, despite the rise in remote working, many attorneys looking to establish practices in a new geographic location may have to establish at least some physical presence there, find a new office, new lodging, and potentially uproot their entire family. Third, even if the switching costs of licensure, physically moving, etc. are paid, attorneys may fear yet another switching cost in the form of attrition of their existing clients from their original geographic locale, who may view them as no longer investing in their knowledge of the legal problems and legal solutions that are specific to the original locale.

3 **Source:** **2020 RRR.** Factor order validated in multiple analyses since 2010

# Section III: Practice Area Analysis

## Employment and Labor
By City

**2021 - Real Rates for Associate and Partner**  **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2021 | 2020 | 2019 |
|------|------|---|---------------|--------|----------------|------|------|------|
| Atlanta GA | Partner | 75 | $390 | $468 | $595 | $497 | $500 | $469 |
|  | Associate | 50 | $284 | $331 | $370 | $329 | $323 | $307 |
| Baltimore MD | Partner | 26 | $498 | $613 | $745 | $645 | $546 | $576 |
|  | Associate | 24 | $394 | $475 | $600 | $514 | $457 | $444 |
| Birmingham AL | Partner | 13 | $375 | $450 | $475 | $430 | $415 | $378 |
| Boston MA | Partner | 27 | $400 | $486 | $690 | $533 | $577 | $561 |
|  | Associate | 27 | $375 | $475 | $500 | $460 | $501 | $418 |
| Charlotte NC | Associate | 11 | $225 | $303 | $355 | $303 | $302 | $332 |
| Chicago IL | Partner | 113 | $475 | $650 | $780 | $699 | $673 | $666 |
|  | Associate | 89 | $310 | $390 | $495 | $424 | $443 | $406 |
| Cleveland OH | Partner | 44 | $374 | $400 | $498 | $466 | $465 | $452 |
|  | Associate | 34 | $260 | $295 | $300 | $311 | $310 | $299 |
| Dallas TX | Partner | 43 | $394 | $507 | $618 | $509 | $545 | $503 |
|  | Associate | 24 | $323 | $350 | $419 | $405 | $412 | $367 |
| Denver CO | Partner | 32 | $446 | $539 | $635 | $542 | $537 | $519 |

# Section III: Practice Area Analysis

## Employment and Labor
By City

**2021 - Real Rates for Associate and Partner**          **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2021 | 2020 | 2019 |
|------|------|---|----------------|--------|----------------|------|------|------|
| Denver CO | Associate | 12 | $272 | $298 | $324 | $287 | $324 | $334 |
| Greenville SC | Partner | 16 | $375 | $430 | $494 | $436 | $426 | $446 |
| Houston TX | Partner | 24 | $468 | $531 | $633 | $556 | $599 | $571 |
| | Associate | 12 | $325 | $348 | $394 | $372 | $395 | $388 |
| Indianapolis IN | Partner | 13 | $378 | $425 | $510 | $445 | $470 | $419 |
| Kansas City MO | Partner | 18 | $383 | $404 | $456 | $429 | $411 | $416 |
| | Associate | 17 | $250 | $320 | $325 | $299 | $293 | $292 |
| Los Angeles CA | Partner | 108 | $500 | $655 | $855 | $703 | $666 | $635 |
| | Associate | 104 | $350 | $423 | $580 | $492 | $488 | $456 |
| Memphis TN | Partner | 12 | $330 | $380 | $432 | $386 | $390 | $386 |
| Miami FL | Partner | 16 | $455 | $486 | $768 | $590 | $615 | $560 |
| | Associate | 19 | $289 | $336 | $499 | $397 | $413 | $334 |
| Minneapolis MN | Partner | 32 | $456 | $565 | $690 | $561 | $555 | $532 |
| | Associate | 19 | $314 | $351 | $453 | $388 | $441 | $358 |
| Nashville TN | Partner | 29 | $378 | $441 | $470 | $432 | $437 | $400 |

# Section III: Practice Area Analysis

## Employment and Labor
By City

**2021 - Real Rates for Associate and Partner**  **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2021 | 2020 | 2019 |
|------|------|---|----------------|--------|----------------|------|------|------|
| Nashville TN | Associate | 17 | $252 | $297 | $311 | $291 | $284 | $260 |
| New Orleans LA | Associate | 12 | $312 | $340 | $390 | $349 | $368 | $323 |
| New York NY | Partner | 239 | $469 | $570 | $794 | $673 | $662 | $717 |
| | Associate | 179 | $315 | $376 | $571 | $477 | $455 | $489 |
| Orlando FL | Partner | 13 | $421 | $474 | $482 | $459 | $469 | $480 |
| | Associate | 12 | $280 | $325 | $383 | $324 | $304 | $289 |
| Philadelphia PA | Partner | 107 | $500 | $678 | $810 | $679 | $680 | $640 |
| | Associate | 118 | $398 | $450 | $500 | $449 | $424 | $387 |
| Pittsburgh PA | Partner | 27 | $515 | $612 | $656 | $622 | $570 | $557 |
| | Associate | 23 | $315 | $350 | $380 | $351 | $354 | $339 |
| Portland OR | Associate | 26 | $302 | $336 | $383 | $355 | $353 | $333 |
| San Diego CA | Partner | 17 | $421 | $446 | $518 | $550 | $553 | $449 |
| | Associate | 18 | $300 | $338 | $380 | $364 | $369 | $343 |
| San Francisco CA | Partner | 61 | $390 | $560 | $650 | $557 | $562 | $561 |
| | Associate | 47 | $287 | $325 | $414 | $361 | $382 | $370 |

# Section III: Practice Area Analysis

## Employment and Labor
By City

**2021 - Real Rates for Associate and Partner**          **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2021 | 2020 | 2019 |
|------|------|---|----------------|--------|----------------|------|------|------|
| San Jose CA | Partner | 18 | $599 | $680 | $784 | $706 | $733 | $695 |
| Seattle WA | Partner | 41 | $401 | $467 | $619 | $510 | $534 | $534 |
| | Associate | 38 | $300 | $376 | $533 | $441 | $401 | $423 |
| St. Louis MO | Partner | 16 | $406 | $475 | $571 | $501 | $529 | $505 |
| Tampa FL | Partner | 14 | $349 | $385 | $475 | $441 | $466 | $406 |
| Washington DC | Partner | 147 | $600 | $715 | $825 | $740 | $758 | $726 |
| | Associate | 106 | $390 | $505 | $625 | $515 | $510 | $476 |

# Section IV: In-Depth Analysis for Select US Cities

## New York NY
By Practice Area and Firm Size

**2021 - Real Rates for Associate and Partner**  **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2021 | 2020 | 2019 |
|---|---|---|---|---|---|---|---|---|---|
| Bankruptcy and Collections | 50 Lawyers or Fewer | Partner | 13 | $378 | $390 | $450 | $408 | $406 | $389 |
| | | Associate | 18 | $267 | $375 | $375 | $347 | $348 | $312 |
| | 201-500 Lawyers | Partner | 15 | $408 | $510 | $598 | $519 | $542 | $485 |
| | | Associate | 15 | $300 | $334 | $406 | $346 | $338 | $341 |
| | More Than 1,000 Lawyers | Partner | 16 | $642 | $1,040 | $1,190 | $997 | $1,024 | $846 |
| Commercial | 50 Lawyers or Fewer | Partner | 25 | $317 | $405 | $541 | $471 | $490 | $504 |
| | | Associate | 15 | $308 | $353 | $566 | $415 | $377 | $386 |
| | 201-500 Lawyers | Partner | 38 | $576 | $645 | $863 | $762 | $754 | $752 |
| | | Associate | 22 | $395 | $437 | $507 | $483 | $528 | $532 |
| | 501-1,000 Lawyers | Partner | 90 | $984 | $1,326 | $1,617 | $1,294 | $1,300 | $1,208 |
| | | Associate | 121 | $363 | $670 | $994 | $694 | $691 | $700 |
| | More Than 1,000 Lawyers | Partner | 48 | $1,117 | $1,205 | $1,508 | $1,277 | $1,198 | $1,178 |
| | | Associate | 43 | $707 | $800 | $945 | $842 | $781 | $800 |
| Corporate: Antitrust and Competition | More Than 1,000 Lawyers | Associate | 14 | $669 | $735 | $849 | $742 | $718 | $600 |
| Corporate: Governance | 501-1,000 Lawyers | Partner | 39 | $1,398 | $1,480 | $1,593 | $1,489 | $1,396 | $1,339 |
| | | Associate | 50 | $591 | $795 | $922 | $770 | $732 | $717 |
| | More Than 1,000 Lawyers | Associate | 11 | $564 | $564 | $762 | $662 | $654 | $636 |

# Section IV: In-Depth Analysis for Select US Cities

## New York NY
By Practice Area and Firm Size

**2021 - Real Rates for Associate and Partner**  **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2021 | 2020 | 2019 |
|---|---|---|---|---|---|---|---|---|---|
| Corporate: Mergers, Acquisitions and Divestitures | 501-1,000 Lawyers | Partner | 73 | $1,287 | $1,423 | $1,643 | $1,426 | $1,332 | $1,271 |
| | | Associate | 142 | $679 | $873 | $1,022 | $860 | $777 | $715 |
| | More Than 1,000 Lawyers | Partner | 34 | $1,407 | $1,645 | $1,650 | $1,536 | $1,363 | $1,245 |
| Corporate: Other | 50 Lawyers or Fewer | Partner | 44 | $408 | $520 | $634 | $537 | $540 | $427 |
| | | Associate | 18 | $301 | $361 | $375 | $363 | $355 | $304 |
| | 51-200 Lawyers | Partner | 31 | $471 | $573 | $728 | $634 | $610 | $549 |
| | | Associate | 20 | $305 | $330 | $701 | $474 | $443 | $439 |
| | 201-500 Lawyers | Partner | 74 | $525 | $773 | $950 | $797 | $853 | $842 |
| | | Associate | 58 | $340 | $404 | $632 | $493 | $513 | $482 |
| | 501-1,000 Lawyers | Partner | 194 | $1,201 | $1,345 | $1,505 | $1,322 | $1,228 | $1,182 |
| | | Associate | 299 | $630 | $827 | $955 | $798 | $738 | $697 |
| | More Than 1,000 Lawyers | Partner | 125 | $1,050 | $1,350 | $1,565 | $1,303 | $1,270 | $1,131 |
| | | Associate | 198 | $670 | $804 | $1,030 | $840 | $828 | $724 |
| Corporate: Partnerships and Joint Ventures | 501-1,000 Lawyers | Partner | 29 | $1,250 | $1,287 | $1,361 | $1,273 | $1,318 | $1,275 |
| | | Associate | 52 | $641 | $873 | $933 | $815 | $807 | $772 |
| Corporate: Regulatory and Compliance | 51-200 Lawyers | Associate | 18 | $336 | $415 | $622 | $455 | $467 | $505 |
| | 201-500 Lawyers | Partner | 24 | $593 | $638 | $828 | $734 | $762 | $816 |

# Section IV: In-Depth Analysis for Select US Cities

## New York NY
By Practice Area and Firm Size

**2021 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2021 | 2020 | 2019 |
|---|---|---|---|---|---|---|---|---|---|
| Corporate: Regulatory and Compliance | 201-500 Lawyers | Associate | 14 | $369 | $450 | $505 | $477 | $418 | $480 |
| | 501-1,000 Lawyers | Partner | 55 | $1,063 | $1,291 | $1,536 | $1,269 | $1,193 | $1,132 |
| | | Associate | 72 | $615 | $798 | $958 | $806 | $719 | $689 |
| | More Than 1,000 Lawyers | Partner | 26 | $883 | $1,126 | $1,350 | $1,145 | $1,039 | $1,039 |
| | | Associate | 35 | $620 | $725 | $762 | $684 | $688 | $642 |
| Corporate: Tax | 501-1,000 Lawyers | Partner | 19 | $1,082 | $1,207 | $1,460 | $1,224 | $1,080 | $1,221 |
| | | Associate | 22 | $419 | $588 | $844 | $632 | $431 | $591 |
| | More Than 1,000 Lawyers | Partner | 37 | $847 | $1,238 | $1,517 | $1,201 | $1,189 | $1,101 |
| | | Associate | 45 | $540 | $853 | $1,043 | $848 | $820 | $735 |
| Employment and Labor: Compensation and Benefits | 501-1,000 Lawyers | Partner | 19 | $653 | $1,165 | $1,328 | $978 | $852 | $959 |
| Employment and Labor: Discrimination, Retaliation and Harassment / EEO | 501-1,000 Lawyers | Partner | 17 | $460 | $475 | $538 | $566 | $544 | $588 |
| Employment and Labor: Other | 50 Lawyers or Fewer | Partner | 12 | $361 | $635 | $775 | $593 | $586 | $625 |
| | 201-500 Lawyers | Partner | 37 | $450 | $538 | $675 | $576 | $658 | $704 |
| | | Associate | 26 | $340 | $408 | $558 | $456 | $463 | $473 |
| | 501-1,000 Lawyers | Partner | 83 | $470 | $540 | $779 | $673 | $636 | $738 |
| | | Associate | 47 | $315 | $378 | $775 | $532 | $465 | $546 |
| | More Than 1,000 Lawyers | Partner | 19 | $703 | $843 | $1,043 | $931 | $937 | $899 |

# Section IV: In-Depth Analysis for Select US Cities

## New York NY
By Practice Area and Firm Size

**2021 - Real Rates for Associate and Partner**  **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2021 | 2020 | 2019 |
|---|---|---|---|---|---|---|---|---|---|
| Employment and Labor: Other | More Than 1,000 Lawyers | Associate | 24 | $390 | $520 | $693 | $597 | $588 | $635 |
| Employment and Labor: Union Relations and Negotiations / NLRB | 501-1,000 Lawyers | Partner | 15 | $474 | $613 | $961 | $738 | $658 | $611 |
| Finance and Securities: Debt/Equity Offerings | 501-1,000 Lawyers | Partner | 33 | $904 | $1,330 | $1,650 | $1,283 | $1,213 | $1,088 |
| | | Associate | 45 | $539 | $713 | $955 | $760 | $681 | $683 |
| Finance and Securities: Investments and Other Financial Instruments | 51-200 Lawyers | Partner | 19 | $650 | $806 | $975 | $800 | $906 | $824 |
| | | Associate | 34 | $392 | $625 | $748 | $578 | $601 | $527 |
| | 201-500 Lawyers | Partner | 32 | $910 | $1,095 | $1,111 | $988 | $991 | $1,011 |
| | 501-1,000 Lawyers | Partner | 167 | $1,034 | $1,311 | $1,739 | $1,387 | $1,316 | $1,188 |
| | | Associate | 342 | $700 | $890 | $1,155 | $901 | $815 | $708 |
| | More Than 1,000 Lawyers | Partner | 115 | $932 | $1,188 | $1,488 | $1,226 | $1,203 | $1,089 |
| | | Associate | 76 | $533 | $692 | $885 | $710 | $712 | $625 |
| Finance and Securities: Loans and Financing | 50 Lawyers or Fewer | Partner | 24 | $551 | $736 | $854 | $719 | $616 | $522 |
| | | Associate | 24 | $372 | $441 | $713 | $508 | $397 | $354 |
| | 201-500 Lawyers | Partner | 85 | $1,147 | $1,375 | $1,550 | $1,300 | $1,262 | $1,179 |
| | | Associate | 112 | $629 | $813 | $952 | $756 | $758 | $705 |
| | 501-1,000 Lawyers | Partner | 94 | $1,215 | $1,490 | $1,625 | $1,405 | $1,290 | $1,216 |
| | | Associate | 126 | $711 | $885 | $1,048 | $879 | $801 | $757 |

# Section IV: In-Depth Analysis for Select US Cities

## New York NY
By Practice Area and Firm Size

**2021 - Real Rates for Associate and Partner**                 **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2021 | 2020 | 2019 |
|---|---|---|---|---|---|---|---|---|---|
| Finance and Securities: Loans and Financing | More Than 1,000 Lawyers | Partner | 109 | $1,330 | $1,535 | $1,675 | $1,457 | $1,341 | $1,305 |
| | | Associate | 184 | $750 | $930 | $1,100 | $930 | $883 | $825 |
| Finance and Securities: Other | 501-1,000 Lawyers | Partner | 11 | $1,287 | $1,287 | $1,550 | $1,433 | $1,457 | $1,291 |
| | | Associate | 17 | $840 | $873 | $930 | $873 | $841 | $791 |
| Finance and Securities: SEC Filings and Financial Reporting | 501-1,000 Lawyers | Partner | 16 | $1,351 | $1,505 | $1,688 | $1,484 | $1,419 | $1,180 |
| | | Associate | 28 | $704 | $885 | $1,074 | $876 | $777 | $692 |
| Finance and Securities: Securities and Banking Regulations | 201-500 Lawyers | Partner | 15 | $608 | $1,337 | $1,494 | $1,100 | $1,195 | $1,205 |
| | 501-1,000 Lawyers | Partner | 19 | $1,249 | $1,330 | $1,410 | $1,316 | $1,205 | $1,114 |
| | | Associate | 21 | $425 | $626 | $925 | $650 | $644 | $609 |
| General Liability: Product and Product Liability | 201-500 Lawyers | Associate | 17 | $380 | $400 | $400 | $391 | $392 | $321 |
| Insurance Defense: Auto and Transportation | 50 Lawyers or Fewer | Associate | 30 | $150 | $159 | $160 | $157 | $150 | $142 |
| Insurance Defense: Other | 50 Lawyers or Fewer | Partner | 21 | $207 | $250 | $280 | $278 | $258 | $218 |
| | | Associate | 15 | $180 | $195 | $195 | $211 | $195 | $178 |
| | 51-200 Lawyers | Partner | 39 | $180 | $208 | $299 | $251 | $250 | $230 |
| | | Associate | 15 | $170 | $185 | $255 | $208 | $192 | $185 |
| | 201-500 Lawyers | Partner | 20 | $179 | $210 | $306 | $322 | $270 | $489 |
| | | Associate | 17 | $190 | $190 | $521 | $329 | $277 | $280 |

# Section IV: In-Depth Analysis for Select US Cities

## New York NY
By Practice Area and Firm Size

**2021 - Real Rates for Associate and Partner**    **Trend Analysis – Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2021 | 2020 | 2019 |
|---|---|---|---|---|---|---|---|---|---|
| Insurance Defense: Personal Injury/Wrongful Death | 50 Lawyers or Fewer | Partner | 44 | $175 | $187 | $195 | $183 | $174 | $177 |
| | | Associate | 51 | $154 | $159 | $175 | $161 | $153 | $151 |
| Insurance Defense: Property Damage | 50 Lawyers or Fewer | Partner | 36 | $175 | $195 | $215 | $204 | $184 | $179 |
| | | Associate | 29 | $152 | $160 | $173 | $166 | $153 | $149 |
| | 51-200 Lawyers | Partner | 29 | $195 | $210 | $360 | $268 | $256 | $248 |
| Intellectual Property: Patents | 501-1,000 Lawyers | Partner | 18 | $916 | $948 | $1,131 | $980 | $972 | $975 |
| | | Associate | 34 | $450 | $630 | $810 | $629 | $630 | $634 |
| | More Than 1,000 Lawyers | Partner | 18 | $934 | $1,046 | $1,214 | $1,058 | $1,054 | $931 |
| | | Associate | 31 | $707 | $750 | $875 | $755 | $695 | $618 |
| Marketing and Advertising | 501-1,000 Lawyers | Associate | 14 | $460 | $890 | $903 | $756 | $876 | $864 |
| Miscellaneous: General Advice & Counsel | More Than 1,000 Lawyers | Partner | 12 | $1,569 | $1,650 | $1,725 | $1,611 | $1,409 | $1,373 |
| Requests for Information: Subpoena | 501-1,000 Lawyers | Associate | 23 | $125 | $520 | $895 | $512 | $552 | $673 |

# Appendix:
## Data Methodology

All data and analysis based on data
collected thru Q3 2021

**2021 Real Rate Report**

A-470

# Appendix: Data Methodology

## Invoice Information

Data in Wolters Kluwer's ELM Solutions' reference database and in the 2020 Mid-Year Real Rate Report were taken from invoice line item entries contained in invoices received and approved by participating companies.

Invoice data were received in the Legal Electronic Data Exchange Standard (LEDES) format (LEDES. org). The following information was extracted from those invoices and their line items:

- Law firm (which exists as a random number in the ELM Solutions reference database)

- Timekeeper ID (which exists as a random number in the ELM Solutions reference database)

- Matter ID (which exists as a random number in the ELM Solutions reference database)

- Timekeeper's position (role) within the law firm (partner, associate, paralegal, etc.)

- Uniform Task-Based Management System Code Set, Task Codes, and Activity Codes (UTBMS.com)

- Date of service

- Hours billed

- Hourly rate billed

- Fees billed

## Non-Invoice Information

To capture practice area details, the matter ID within each invoice was associated with matter profiles containing areas of work in the systems of each company. The areas of work were then systematically categorized into legal practice areas. Normalization of practice areas was done based on company mappings to system-level practice areas available in the ELM Solutions system and by naming convention.

The majority of analyses included in this report have been mapped to one of 12 practice areas, further divided into sub-areas and litigation/non-litigation (for more information on practice areas and sub-areas, please refer to pages 238-240).

To capture location and jurisdiction details, law firms and timekeepers were systematically mapped to the existing profiles within ELM Solutions systems, as well as with publicly available data sources for further validation and normalization. Where city location information is provided, it includes any address within that city's defined Core-Based Statistical Area (CBSA) as defined by the Office of Management and Budget (OMB). The CBSAs are urban centers with populations of 10,000 or more and include all adjacent counties that are economically integrated with that urban center.

Where the analyses focus on partners, associates, and paralegals, the underlying data occasionally included some sub-roles, such as "senior partner" or "junior associate." In such instances, those timekeeper sub-roles were placed within the broader partner, associate, and paralegal segments.

Demographics regarding law firm size, location, and lawyer years of experience were augmented by incorporating publicly available information.

# Appendix: Data Methodology
## A Note on US Cities

Throughout the report, we have used city names to refer to CBSA and consistently used the principal city in the CBSA to refer to the entire area. The following are the shorthand city names used in this report and the corresponding CBSA designations, as defined by the OMB.

| Principal City | CBSA Name |
|---|---|
| Akron, OH | Akron, OH |
| Albany, NY | Albany-Schenectady-Troy, NY |
| Albuquerque, NM | Albuquerque, NM |
| Atlanta, GA | Atlanta-Sandy Springs-Alpharetta, GA |
| Austin, TX | Austin-Round Rock-Georgetown, TX |
| Baltimore, MD | Baltimore-Columbia-Towson, MD |
| Baton Rouge, LA | Baton Rouge, LA |
| Birmingham, AL | Birmingham-Hoover, AL |
| Boise City, ID | Boise City, ID |
| Boston, MA | Boston-Cambridge-Newton, MA-NH |
| Bridgeport, CT | Bridgeport-Stamford-Norwalk, CT |
| Buffalo, NY | Buffalo-Cheektowaga, NY |
| Burlington, VT | Burlington-South Burlington, VT |
| Charleston, SC | Charleston-North Charleston, SC |
| Charleston, WV | Charleston, WV |
| Charlotte, NC | Charlotte-Concord-Gastonia, NC-SC |
| Chicago, IL | Chicago-Naperville-Elgin, IL-IN-WI |
| Cincinnati, OH | Cincinnati, OH-KY-IN |
| Cleveland, OH | Cleveland-Elyria, OH |
| Columbia, SC | Columbia, SC |
| Columbus, OH | Columbus, OH |
| Dallas, TX | Dallas-Fort Worth-Arlington, TX |
| Dayton, OH | Dayton-Kettering, OH |
| Denver, CO | Denver-Aurora-Lakewood, CO |
| Detroit, MI | Detroit-Warren-Dearborn, MI |
| Fresno, CA | Fresno, CA |
| Grand Rapids, MI | Grand Rapids-Kentwood, MI |
| Greenville, SC | Greenville-Anderson, SC |
| Harrisburg, PA | Harrisburg-Carlisle, PA |
| Hartford, CT | Hartford-East Hartford-Middletown, CT |
| Honolulu, HI | Urban Honolulu HI |
| Houston, TX | Houston-The Woodlands-Sugar Land, TX |

# Appendix: Data Methodology

## A Note on US Cities

| Principal City | CBSA Name |
| --- | --- |
| Indianapolis, IN | Indianapolis-Carmel-Anderson, IN |
| Jackson, MS | Jackson, MS |
| Jacksonville, FL | Jacksonville, FL |
| Kansas City, MO | Kansas City, MO-KS |
| Lafayette, LA | Lafayette, LA |
| Las Vegas, NV | Las Vegas-Henderson-Paradise, NV |
| Lexington, KY | Lexington-Fayette, KY |
| Little Rock, AR | Little Rock-North Little Rock-Conway, AR |
| Los Angeles, CA | Los Angeles-Long Beach-Anaheim, CA |
| Louisville, KY | Louisville/Jefferson County, KY-IN |
| Madison, WI | Madison, WI |
| Memphis, TN | Memphis-Forrest City, TN-MS-AR |
| Miami, FL | Miami-Fort Lauderdale-Pompano Beach, FL |
| Milwaukee, WI | Milwaukee-Waukesha, WI |
| Minneapolis, MN | Minneapolis-St. Paul-Bloomington, MN-WI |
| Nashville, TN | Nashville-Davidson-Murfreesboro-Franklin, TN |
| New Haven, CT | New Haven-Milford, CT |
| New Orleans, LA | New Orleans-Metairie, LA |
| New York, NY | New York-Newark-Jersey City, NY-NJ-PA |
| Oklahoma City, OK | Oklahoma City, OK |
| Omaha, NE | Omaha-Council Bluffs, NE-IA |
| Orlando, FL | Orlando-Kissimmee-Sanford, FL |
| Philadelphia, PA | Philadelphia-Camden-Wilmington, PA-NJ-DE-MD |
| Phoenix, AZ | Phoenix-Mesa-Chandler, AZ |
| Pittsburgh, PA | Pittsburgh, PA |
| Portland, ME | Portland-South Portland, ME |
| Portland, OR | Portland-Vancouver-Hillsboro, OR-WA |
| Providence, RI | Providence-Warwick, RI-MA |
| Raleigh, NC | Raleigh-Cary, NC |
| Reno, NV | Reno-Carson City-Fernley, NV |
| Richmond, VA | Richmond, VA |
| Rochester, NY | Rochester, NY |
| Sacramento, CA | Sacramento-Roseville-Folsom, CA |
| Salt Lake City, UT | Salt Lake City, UT |

# Appendix: Data Methodology

## A Note on US Cities

| Principal City | CBSA Name |
| --- | --- |
| San Diego, CA | San Diego-Chula Vista-Carlsbad, CA |
| San Francisco, CA | San Francisco-Oakland-Berkeley, CA |
| San Jose, CA | San Jose-Sunnyvale-Santa Clara, CA |
| San Juan, PR | San Juan-Bayamon-Caguas, PR |
| Savannah, GA | Savannah, GA |
| Seattle, WA | Seattle-Tacoma-Bellevue, WA |
| St. Louis, MO | St. Louis, MO-IL |
| Syracuse, NY | Syracuse, NY |
| Tallahassee, FL | Tallahassee, FL |
| Tampa, FL | Tampa-St. Petersburg-Clearwater, FL |
| Toledo, OH | Toledo, OH |
| Trenton, NJ | Trenton-Princeton, NJ |
| Tulsa, OK | Tulsa, OK |
| Washington, DC | Washington-Arlington-Alexandria, DC-VA-MD-WV |
| Wheeling, WV | Wheeling, WV-OH |

A-474

# Appendix: Data Methodology

## Anonymization of the Dataset

Prior to inclusion in the ELM Solutions reference database, we systematically scrubbed the data of any information that would identify a particular matter, company, law firm, invoice, or timekeeper (individual). To ensure relationships necessary for analysis, those variables were assigned randomly generated numbers. To maintain data integrity and allow for proper analysis, these numbers are linked across data tables to enforce their associations.

To further ensure anonymity and confidentiality:

- The information is published in such a manner as to make it reasonably impervious to reverse analysis should some attempt be made to determine what data might pertain to any company, law firm, timekeeper, invoice, or matter;

- The 2021 Real Rate Report will not reveal which ELM Solutions client or clients are included or excluded in its analyses;

- Clients are not and will not be informed as to whether their data are included within a particular facet of analysis; and

- No textual description of any legal work performed by any individual exists in the ELM Solutions reference database.

## A Note on Insurance Litigation

Our aim is to provide a point of comparison for companies purchasing law firm services. To improve comparability, we removed data related to insurance company defense litigation for all analyses unless noted otherwise. Insurance litigation tends to be less expensive than other types of litigation, as it is typically more repetitive and less complex.

## "Real Rate" Definition

The information in this report consists of data taken from client invoices submitted by law firms for work performed from 7/1/2017 through 9/30/2021. All Invoices were submitted through the ELM billing systems.

The analyses contained in this report are derived from aggregating hours, fees, and rates submitted as line items on those invoices. For a line item to qualify for inclusion in this report, it had to undergo multiple and rigorous testing processes to ensure its validity.

For example, for a rate to be loaded to the ELM Solutions reference database and used in this report, it must have been part of an invoice line entry in which all of the following items were included:

- Name of the biller
- Role of the biller
- Date of activity
- Hourly rate charged
- Time charged
- UTBMS code associated with the time charged
- Total amount charged for the activity

In addition, each line item's hourly rate was validated against its "real rate" (calculated by dividing the total amount charged for the activity by the time charged). Any line items with an hourly rate that did not align closely with the real rate were not loaded to the reference database.

Real Rate = Line Item Total/Line Item Hours (Units) Example: $4,000/10 Hours = Real Rate of $400

Adjustments the client made to line item amounts subsequent to submission are not factored into the dataset. These types of adjustments may impact the effective rate paid by the client to the law firm but do not reflect the real rate billed.

A-475

# Appendix: Data Methodology

In short, the real rate is the rate appearing on an approved invoice at the invoice line item level.

Aggregations of data taken from millions of these line item–level invoice entries are the core of the information analyzed.

## A Note on Negotiated Rates and Billing

Practices law firms can generally follow vary for submitting "negotiated" rates on invoices. Firms may submit the negotiated rate as the hourly rate identified on the invoice line item, insert a vendor line item adjustment to ensure compliance, or provide a vendor invoice level adjustment to bring the total amount of the fees into compliance with agreed-on discounts. Although the former two are considered part of the real rate calculation, the latter can be problematic. It is not directly linked to a line item, and therefore, for the purposes of determining the rate, it should not be assumed that the adjustment is related to a specific line item. Invoice-level adjustments may represent a credit or some other type of adjustment placed on the invoice. To ensure these types of adjustments would not adversely impact the analysis contained within the 2021 Real Rate Report, the team reviewed the population of invoices and line items to determine what the deviation of the real rate might be based on inclusion or exclusion. The analysis demonstrated that the variance was not significant (less than 1%).

As such, we decided not to include the vendor-level adjustments in the report.

## Types of Matters Included in the Analysis

Matters within the ELM Solutions system are associated with areas of work described and defined by ELM Solutions clients. Those areas of work were analyzed and systematically categorized into legal practice areas. Normalization of practice areas was supported by mappings to system-level practice areas available in the ELM Solutions system and by naming convention.

All data included within this report have been mapped to a corresponding practice area. The majority of our analyses focus on the following 12 practice areas:

- Bankruptcy and Collections
- Commercial
- Corporate
- Employment and Labor
- Environmental
- Finance and Securities
- General Liability
- Government Relations
- Insurance Defense
- Intellectual Property
- Marketing and Advertising
- Real Estate

Within each client's areas of work, sub-areas are often identified. The lists that follow identify client areas of work and, within those areas, the sub-areas underneath each practice area. Often, the same sub-area appears within different practice areas.  For example, the sub-area "General/Other" when listed under "Commercial and Contracts" refers to general work provided regarding Commercial and Contracts matters. When listed under the "Employment and Labor" practice area, the same sub-area refers to work provided on Employment and Labor. Where applicable and practicable, each area and sub-area has been further subdivided into litigation and non- litigation work for the purposes of granular analysis.

## Bankruptcy and Collections

Chapter 11
Collections
General/Other
Workouts and Restructuring

A-476

# Appendix: Data Methodology

## Commercial (Commercial Transactions and Agreements)

Contract Breach or Dispute
General, Drafting, and Review
General/Other

## Corporate[1]

Antitrust and Competition
Corporate Development
General/Other
Governance
Information and Technology
Mergers, Acquisitions, and Divestitures

Partnerships and Joint Ventures
Regulatory and Compliance
Tax
Treasury
White Collar/Fraud/Abuse

## Employment and Labor

ADA
Agreements
Compensation and Benefits
Discrimination, Retaliation, and Harassment/EEO
Employee Dishonesty/Misconduct
ERISA

General/Other
Immigration
Union Relations and Negotiations/NLRB
Wages, Tips, and Overtime
Wrongful Termination

## Environmental

General/Other
Health and Safety
Superfund
Waste/Remediation

## Finance and Securities

Commercial Loans and Financing
Debt/Equity Offerings
Fiduciary Services
General/Other

Investments and Other Financial Instruments
Loans and Financing
SEC Filings and Financial Reporting
Securities and Banking Regulations

## General Liability

Asbestos/Mesothelioma
Auto and Transportation
Consumer Related Claims
Crime, Dishonesty and Fraud
General/Other

Personal Injury/Wrongful Death
Premises
Product and Product Liability
Property Damage
Toxic Tort

## Government Relations

General/Other
Lobbying and Relations

---

1 All references to "Corporate: General/Other" in the 2020 Mid-Year Real Rate Report are the aggregation of all Corporate subareas excluding the Mergers, Acquisitions, and Divestitures sub-area and the Regulatory and Compliance sub-area.

# Appendix: Data Methodology

## Insurance Defense

Auto and Transportation
General/Other
Personal Injury/Wrongful Death
Product and Product Liability
Professional Liability
Property Damage
Toxic Tort

## Intellectual Property[2]

General/Other
Licensing
Patents
Trademarks

## Marketing and Advertising

General/Other

## Real Estate

Construction/Development
Easement and Right of Way
General/Other
Land Use/Zoning/Restrictive Covenants
Landlord/Tenant Issues
Leasing
Property/Land Acquisition or Disposition
Titles

---

[2] All references to "Intellectual Property: General/Other" in the 2020 Mid-Year Real Rate Report are the aggregation of all Intellectual Property sub-areas excluding the Patents and Trademarks sub-areas.



ELM Solutions

## About Wolters Kluwer's ELM Solutions

Wolters Kluwer's ELM Solutions is the market-leading global provider of enterprise legal spend and matter management, contract lifecycle management, and legal analytics solutions. We provide a comprehensive suite of tools that address the growing needs of corporate legal operations departments to increase operational efficiency and reduce costs. Corporate legal and insurance claims departments trust our innovative technology and end-to-end customer experience to drive world-class business outcomes. Wolters Kluwer's ELM Solutions was named a leader in both the IDC MarketScape: Worldwide Enterprise Legal Spend Management 2020 Vendor Assessment and IDC MarketScape: Worldwide Enterprise Matter Management 2020 Vendor Assessment. The award winning products include Passport®, one of the highest rated ELM solutions in the latest Hyperion MarketView™ Legal Market Intelligence Report; TyMetrix® 360°, the industry's leading SaaS-based e-billing and matter management solution; CLM Matrix, named a "strong performer" in the 2019 Q1 CLM Forrester Wave report; and the LegalVIEW® portfolio of legal analytics solutions based upon the industry's largest and most comprehensive legal spend database, with more than $150 billion in invoices.

A-479

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

|   |   |   |
|---|---|---|
| NINO MARTINENKO, on behalf of herself and others similarly situated, | : | Case No.:  22-CV-518 (JLR) (RWL) |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| -against- | : |  |
|  | : |  |
| 212 STEAKHOUSE, INC., and NIKOLAY VOLPER, | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

_____

## DEFENDANTS OPPOSITION TO PLAINTIFFS MOTION
## FOR ATTORNEYS' FEES

     Defendants hereby file objections to Plaintiffs Motion For Attorneys' Fees and Costs ("Fee Petition").  Defendants do not object to Plaintiffs costs, but take specific objections, set forth below, to the requested attorneys' fees.

     As we have previously indicated, Defendant 212 Steakhouse is a small stand-alone restaurant employing few front of the house (tipped) employees at any given shift.  Indeed, the case was filed by one former front of the house employee as a collective and class action, with state law labor law claims dominating the case.  The case sought an FLSA collective action and Rule 23 class action on the New York State claims.  Other than named Plaintiff, only one (former) employee opted-in to the case.  A significant number of front of the house employees opted-out of the Rule 23 Class.  In the Attorney-Fee Petition[1], Plaintiffs' counsel refers to *Tiro v. Public House*

_____

[1] Pl. Memorandum in Support of Attorneys' fees at p. 12.

A-480

*Invs., LLC, et al.* Nos. 11 Civ. 7679, consolidated with 11 Civ. 8249 (S.D.N.Y.) as a "comparably

sized class action," for its argument that Plaintiffs fees are reasonable.  In *Tiro*, the Court stated:

> To be sure, the number of individuals who opt-in may be a harbinger
> of what the Plaintiff classes will eventually recover if they succeed
> in establishing liability, it is some indication of the level of interest
> in the lawsuit by the members of the Plaintiff class (or at least those
> who received opt-in notice).

Dk. No. 93, Case No. 11-cv-07679 (S.D.N.Y.), 2013 U.S. Dist. LEXS 129252 (S.D.N.U. Sept. 10,

2013).  Here, despite an apparent lack of interest in the Class, counsel forged ahead with this class

action on each claim asserted, only to jettison the state wage notice and wage statement claims

after the Court dismissed lane opt-in Huk's claim for lack of standing and the denial of their

summary judgment on such claims for the named Plaintiff and the Class.  The Court ultimately

dismissed the NYLL Section 195 wage notice and wage statement claims for lack of standing.  Dk.

No. 154 (Judgment).  These claims constituted a significant effort in this case and, clearly more

than the modest reduction of 50 attorney hours reflected in the attorney affidavit in support of the

fee petition.  Plaintiffs further claim that the 50 hour reduction also included "duplicative, vague,

and otherwise excludable entries" in addition to the exclusion of all entries related to the NYLL

Section 195 claims.  Pl. Mem. at 11, DiGuilio Decl. at ¶ 19.[2]

    A comparison of *Tiro v. Public House,* supra which Plaintiffs have cited as a "comparable"

case for purpose of this Fee Petition, is instructive.  That case involved multiple restaurants and

Rule 23 classes consisting of approximately 719 members, including front of the house and back

of the house employees.  The case settled with a common settlement fund of $1,300,000.00 and

the attorneys were awarded one-third (1/3) of the settlement fund as attorneys' fees.

---

[2] In addition, as we will note, Plaintiff did not remove all of the entries from the previous sanctions' attorney fee awarded of $28,805.00, which was paid by Defendants.  Plaintiffs statement of contemporaneous fees in the sanction fee petition totaled 51 hours.  Dk. No. 63-15.

*Tiro* was not a comparable case to this one. It should be noted that courts favor the early resolution of class actions and *Tiro* involved a percentage of attorneys' fees in a common fund settlement. See *Wal-Mart Stores, Inc. v. Visa, USA, Inc,* 396 F.3d 96 (2ⁿᵈ Cir. 2005) (percentage of recovery the preferred method of calculating the award to class counsel). The loadstar method also has been found to discourage early settlement. *Facian v. Rapid Park Holding Corp.,* 2010 U.S. Dist. LEXIS 64382 (E.D.N.Y. June 29, 2010). This case is neither a settlement nor a common fund case. Moreover, it was far less complicated case than *Tiro*, and Plaintiffs here have recovered for less than what they sought. In approving a one-third (1/3) contingency fee to the Plaintiffs' attorneys, the court in *Tiro* noted that "class counsel interviewed numerous class members, obtained and analyzed over 12,000 pages of documents and obtained affidavits from numerous non-named Plaintiffs. Here, by contrast, affidavits were submitted for only the named plaintiff and one opt-in. There was no evidence submitted pertaining to any other employee of Defendant, other than payroll documents produced by Defendants. Here, there was little interest from the Class, which was extremely small in number. Magistrate Judge Lehrburger referred to this case as a "garden variety" wage-hour case. Dk. No. 88 at p 32. A significant portion of the case was voluntarily jettisoned by Plaintiffs' counsel and resulted in a dismissal of such claims in a manner which Plaintiffs were not a prevailing party.[3] As we stated in our letter to the Court on October 23, 2024 (Dk. No. 148), it is questionable why this case, and in particular the NYLL Section 195 claims, were filed as a class action given the predominance issues and lack of interest from class members. The litigation of the class issues pertaining to standing and the Section 195 penalty

---

[3] Judge Lehrburger also noted in his sanctions order that Plaintiffs' counsel hourly rates for garden variety wage hour cases was higher than those rates generally recognized as reasonable in the district. Dk. No. 88 at 37. He nevertheless deemed Plaintiffs counsel's rates acceptable as they had been approved by other judges in prior cases. We take no issue with the rates requested by Plaintiffs and the purpose at pointing this out is to note that this was a garden variety case and any comparison to the hours spent in a large class action involving multiple locations of employees in misplaced and taken out of context to the instant case.

A-482

claims in this court consumed much of the case. As such, for the reasons set forth below, a significant reduction in the claimed attorney's fees is warranted.

1.    **That Plaintiffs Did Not Prevail On All Of Their Claims Warrants a Reduction of The Fees Sought By At Least Fifty Percent**

As recognized by the Second Circuit "the most critical factor in a district court's determination of what constitutes reasonable attorney's fees is the degree of success obtained by the Plaintiffs." *Stanczyk v. City of New York,* 990 F. Supp. 2d 242 (E.D.N.Y. 2013), quoting *Barfield v. N.Y, City Health & Hosp. Corp.,* 537 F. 3d 132, 152 (2nd Cir. 2008). Primary consideration when fixing fees is the amount of damages awarded as compared to the amount sought. *Stanczyk, supra; Farrar. V. Hobby,* 506 U.S. 103 (1992). As such, attorney-fee awards for prevailing parties may be reduced where a Plaintiff achieves only partial success on their claims. *Coker v. Goldberg & Assoc. P.C.,* 2024 U.S. Dist. LEXIS 90218 (S.D.N.Y. May 20, 2024). Where the work on successful claims is unrelated to work on the unsuccessful claims, the work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate results achieved. Id., quoting *Holick v. Cellular Sales of N.Y.,  LLC,* 48 F. 4th 101, 106 (2nd Cir. 2022). Where, as here, a plaintiff who strategically decides to withdraw claims the fact remains that such claims were voluntarily withdrawn and therefore plaintiff did not prevail on them. See *Green v. Torres,* 36 F.3d 96,100 (2nd Cir. 2004) (district court acted within its discretion in reducing fee award based on claims that plaintiff voluntarily dismissed before trial); *Cruz v. Space N.Y. 50th St. LLC,* 2019 U.S. Dist. LEXIS 147492 (S.D.N.Y. Aug. 28, 2019).

Here, Huk's wage statement and notice claims were dismissed based on Defendants motion for judgment. Named Plaintiff Martinenko and the Class claims for wage statement and notice penalties were also dismissed as a result of Plaintiffs request for voluntary dismissal. Dk. No. 154. Plaintiffs' attorney-fee petition attempts to downplay the significance of the wage statement and

notice claims.  However, at each juncture whether by pleading, settlement demand, damage calculation, and court filing the wage notice and statement claims carried greater damages than the claims Plaintiff prevailed upon.  Plaintiffs damage calculation, which was included in their summary judgment motion (Dk. No. 116-1)[4], for the dismissed wage statement and wage notice claims amounted to $255,900.00, while Plaintiffs minimum wage (tip credit) claim was $96,608.35, $2,530.75 for overtime violations and $2,388.00 for spread of hours violations.[5]  From the time undersigned counsel entered the case on April 27, 2024, the wage statement and notice claims became the focus of the litigation.  In every settlement discussion and conference with the court up to the dismissal of the New York Labor Law Section 195 claims, such claims drove the discussions. The subject of the 195 damages, including Plaintiff's standing and class standing, were briefed in the decertification motions as well as Plaintiffs summary judgment motions. Plaintiff even filed objections to the magistrates Report and Recommendation solely on the wage statement and notice claims.  Dk. No. 136.  Plaintiffs continued to believe that they had standing to bring such claims and continued to assert they were entitled to summary judgment on those claims.[6]  As represented in Plaintiffs time records (Dk. No. 152-4 (October 1, 2024)), Plaintiffs indicated they were going to appeal the issue of standing.  Clearly, the presence of such claims was an impediment to an early resolution of this case and a driving force in Plaintiffs seeking to pursue this case as a class action, all while knowing Defendant is a small restaurant that could not satisfy a large judgment, let alone a significant attorney fee award.[7]  Plaintiffs also knew from *Transunion*

---

[4] The 255,900.00 figure consists of $110,900.00 for the § 195(1) penalties and $145,000.00 for the §195(3) penalties.
[5] Plaintiffs were also awarded liquated damages and pre-judgment interest, but the entire judgment (even with prejudgment interest) is less than what was sought for the NYLL Section 195 violations.
[6] While Defendants focused on standing, Defendants would ultimately have a defense at trial (or in state court) to the wage statement and notice claims as Plaintiffs admit they were paid the appropriate credit and their overall pay throughout their employment never fell below the applicable New York minimum wage.  See *Ahmed v. Morgan's Hotel Group Mgmt., LLC*, 74 N.Y.S. 3d 546 (App. Div. 1st Dep't.)
[7] Plaintiffs also knew that they could not pursue a class action on the Section 195 claims in State Court, and Defendants pointed that out in its decertification motions and notice for judgment.  Filing Section NYLL 195 penalty claims in

*LLC v. Ramirez,* 594 U.S. 413 that each class member would have to show actual damages to be eligible for the Section 195 damages. Yet their fee petition continues to include time spent on this issue, which they did not prevail on.

Plaintiffs appear to concede, as they must, in their attorney-fee petition that they did not prevail on the wage statement and notice claims. However, the time entries reflect time expended on these very claims.[8] Moreover, significant time was expended in Plaintiffs Oppositions to Defendants Motion for Judgment, motions for decertification letters to the Court on the 195 claims as well as Plaintiffs Summary Judgment motion on the Section 195 claims (as well as objections to the Magistrate's R & R). Of course, the Complaint, discovery requests, and deposition questions also addressed the Section 195 claims. Reductions should be made on entries related to work on these tasks. In addition, the damage calculations reflected in the time entries (Dk. No. 152-1) contain Section 195 damages for the Class. While Plaintiffs claim that they removed "more than 50 hours of time [out of 566.3 hours sought] that relate solely to Plaintiff's and the Class standing on the NYLL ¶ 195 claims '*as well as* any duplicative, vague, or otherwise excludable entries,'" such claim does not appear to be accurate. (Emphasis added). The NYLL 195 issues were fully briefed in the summary judgment motion and opposition to Defendants motions for decertification and motion for judgment, and in the Objections to the Magistrate's reports and recommendations. See, e.g., time entries between 11/2/23 and 1/12/24 (time spent on summary judgment and oppositions to Defendants motions). These entries contain generic descriptions such as draft summary judgment motion, draft opposition, review opposition to motion to dismiss, review

_____

federal court without any evidence of actual harm carries risk of dismissal and such dismissal is separate and apart from underpayment claims, which carry different damages.

[8] For example, see entries 11/17/23 (review motion re: standing), 12/19/23 (Drafting opp. Brief to standing and decertify), 10/1/24, 10/8/24, 10/10/24, 10/14/24,10/15/24, 10/16/24, 10/21/24, 10/23/24, 10/27/24, 10/28/24, 11/1/24 Dk. No 152-1. Moreover, time reflected in opposition to Defendants motion for judgment and related briefs and letters to the court where the subject was the section 195 claims and, in particular, standing was the main focus.

briefs. The wage notice and wage statement issues were addressed in the filing by Plaintiff. The Section. 195 claims were factually and legally distinct from the overtime, minimum wage and spread of hours claims. Indeed, the penalties imposed by NYLL Section 195 damages for wage statement and notice claims are distinct from damages available for minimum wage, overtime and spread of hours pay. See *Coker v. Goldberg & Assoc., P.C.* supra, 2024 U.S. Dist. LEXIS 90218. As noted by this Court in its Opinion and Order at Docket No. 141, there are differences in the notices for use of the tip credit with respect to minimum wage claims versus the information necessary to satisfy the wage notice and wage statement claims. Dk. No. 141 at 24. These claims sought penalties, not damages for underpayments.

The motion practice in this case reflects the Section 195 claims consumed approximately half of the time expended and the Section 195 claims comprise a large percentage of Plaintiffs and Class damage calculation. Other than Plaintiffs Motion for discovery sanctions, in which they have already received an attorney fee award, besides the motions filed, this was not a heavily litigated case. There were only three depositions taken. Plaintiffs took one deposition of Defendant. Defendant only deposed Martinenko and Huk. There were no other depositions, and no other affidavits submitted by Plaintiffs from any other Class Members. The majority of Plaintiffs case was established with the sanctions motion, as the court deemed the following facts established as a sanction: 1) 212's gross annual revenue in 2021 and 2022 exceed $500,000, 2) Volper was the sole owner of 212, 3) all front of the house employees who clocked in and out on the restaurants POS system were paid the applicable New York tip credit minimum wage for the hours for which they were clocked in, 4) Defendants paid putative class members their regular rate of pay for overtime hours (other than time and a half) and 5) Defendants did not pay putative class members a spread of hours premium. Dk. No. 88 at p. 36. The attorney time expended having

these facts established has already been paid for by Defendants.  A significant amount of the outstanding issues were related to the withdrawn and dismissed claims, of which Plaintiffs did not prevail.  Thus, the Court should reduce the fees sought by at least fifty (50%) percent.  See, *Poulos v. City of New York,* 2018 U.S Dist. LEXIS 118364 (S.D.N.Y July 13, 2018), R&R adopted, 2018 U.S. Dist. LEXIS 132179 (S.D.N.Y. Aug 6, 2018) (applying 50% reduction where billing entries included a mix of recoverable and non-recoverable matters).[9]

## 2.  Attorney-Fee Related To The Sanctions Motion Are Duplicative And Have Already Been Paid In Accordance With The Prior Fee Award.

The Fee Petition also asserts that all time entries based on the Court's previously awarded fees in connection with its sanctions motion have been removed.  Dk. No. 151 at p.11, DiGiulio Decl. at ¶ 20.  This is not the case.

On April 12, 2023 the Magistrate Judge issued an Report and Recommendation on Plaintiffs Motion for Sanctions.  Dk. No. 88.  The Plaintiffs motion for sanctions was to compel compliance with discovery and sought costs and attorney's fees in bringing the Motion.  The Court granted the Motion.  Dk. No.88.  In so doing, the Court awarded attorney's fees and costs in the amount of $28,805.00.  Dk. No. 88 at p. 35.  Defendants paid this sanction.  Plaintiffs instant Fee Petition continues to contain time entries related to the sanctions and deficiency requests that comprised of the sanctions order.  The $28,805 attorney fee award that has been satisfied.  *See,* time entries 8/8/22 (Strategic meeting on sanction requests), 8/9/22, 8/10/22, 8/12/22 (discuss sanctions), 10/12/22 (sanctions call), 10/28/22 (meeting sanctions brief), 3/27/23 (sanctions

---

[9] A district court has authority to make across the board percentage cuts in hours, as opposed to an item by item approach, to arrive at reasonable hours expended.  *Williams v. Epic Sec. Corp.,* 368 F. Supp 3d 651, 656-57 (S.D.N.Y. 2019).  In making the determination of the percentage reduction, the courts are guided by "rough justice" principles, and may "take into account their overall sense of a suit and may use estimates in calculating and allocating an attorney's time."  *Errant Gene Therapeutics, LLC v Sloan-Kettering Inst.,* 286 F. Supp. 3d 585, 588 (S.D.N.Y. 2018).

arguments, binder); 3/29/22 (review sanctions motion and sanctions hearing)[10], 3/30/23 (Preparation for sanctions hearing), 4/3/23 (preparation sanctions hearing), 4/4/23 (sanctions hearing-multiple attorneys), 4/17/23 (review sanctions decision).  These time entries reflect time expended in with respect to the sanctions order and should not be included in this Fee Petition.

### 3. Plaintiffs Damage Calculations Included NYLL Section 195 Damages and Damage For Non Class Members

The attorney-fee petition also includes time for damage calculations, which included NYLL Section 195 damages as well as damages calculations for non-class members.  As such, a reduction should be made as to the entries for the damage calculations.  *See* entries 6/22/23, 8/1/23, 8/30/23. 10/1/23. 11/9/23 (damage calculations for summary judgment motion).  Since the entries generically refer to "damage calculations," the Court may take percentage reduction.  *See Coker,* supra.  Time spent on damage calculations for the wage notice and statement claims are not compensable as such calculations were unrelated to the judgment damages.  Rather than an entry by entry review, the court can make a reduction as unrelated administrative tasks and take a percentage reduction off the overall amount.  *See* fn. 9 *supra*.

### CONCLUSION

WHEREFORE, the foregoing reasons Defendants request that reductions be made of at least fifty percent (50%) of the fees sought plus a reduction of the specific time entries objected to above.

Respectfully submitted,

---

[10] The sanctions motion and hearing related to the discovery sanctions and attorney fee award on the motion to compel. Prior counsel for Defendant did file a disqualification letter/motion but that issue was heard at the same time as the motion to compel.  Based on the transcript from the hearing, which was held April 4, 2023, the disqualification motion was heard and decided immediately without much argument.  Dk. No. 94 (Transcript of 4/4/23 hearing).  It does not appear that Plaintiff filed a written response to the disqualification request.

A-488

*jonathan greenbaum*

Jonathan W. Greenbaum
COBURN GREENBAUM & EISENSTEIN, PLLC
Second Floor
1710 Rhode Island Avenue, NW
Washington, DC 20036
Telephone No.:  202.744.5003
Facsimile No.:  866.561.9712
Email:  jg@coburngreenbaum.com

A-489

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendants Opposition To Plaintiffs

Motion For Attorneys' Fee Petition was filed via ecf this 22nd day of November 2024.

*jonathan greenbaum*

Jonathan W. Greenbaum

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------x
**NINO MARTINENKO, on behalf of**                    **CASE NO. 22 CV 518**
**herself and others similarly situated,**

        **Plaintiff,**

    **v.**

**212 STEAKHOUSE, INC., and NIKOLAY**
**VOLPER,**

        **Defendants.**
-----------------------------------------------------x

## DECLARATION OF DENISE A. SCHULMAN

I, Denise A. Schulman, under penalty of perjury, affirm as follows:

1. I am a partner with Joseph & Kirschenbaum LLP ("JK"), Class Counsel in this action. I am familiar with the facts and circumstances set forth herein.

2. All of the claims in this case – including the minimum wage, overtime, spread of hours, and NYLL § 195 claims – arose out of Class Members' employment with Defendants and related to their hours worked and wages paid.

3. I am not aware of any case with claims for unpaid wages where wage statements were not both relevant and subject to discovery. The content of wage statements is typically pertinent to determining liability and damages for unpaid wages *and* to determining whether NYLL § 195(3) was violated. For example, in this case Defendants' wage statements did not separately identify overtime hours worked and an overtime rate, which reflected both substantive overtime violations and violated NYLL § 195(3).

4. Similarly, because the tip credit (minimum wage) claim in this case was based on whether or not Class Members received written notice of the tip credit, the existence and contend

1

of Defendants' wage notices were highly relevant to both the wage claims and the NYLL § 195(1) claim.

5.  I attended the April 6, 2022 initial conference and the September 14, 2023 pre-motion conference in this case.

6.  I do not recall any substantive discussion of the NYLL § 195 claims at the initial conference.  I do recall that we discussed scheduling and Plaintiff's anticipated motion to dismiss the Defendants' counterclaims.  Defendants ultimately withdrew the counterclaims.

7.  The September 14, 2023 premotion conference addressed the various issues in the parties' premotion letters regarding Plaintiffs' motion for summary judgment and Defendants' motion to decertify the class and dismiss the NYLL § 195 claims, just one of which was standing for the NYLL § 195 claims.

8.  As noted in Plaintiffs' moving papers, we do not seek recovery of fees for time entries that relate *solely* to the NYLL § 195 claims.  The time entries that we removed for this reason before filing our motion for attorneys' fees and costs were time entries that solely related to Plaintiffs' objections to the summary judgment report and recommendation.

9.  The overwhelming majority of the time spent preparing the classwide damage calculation in this case related to the calculation of unpaid minimum wage, overtime, and spread of hours compensation.  This involved extensive data entry of time records that Defendants produced in a PDF format that could not be easily electronically converted to Excel, running Microsoft Access reports to compile each Class Member's weekly hours worked, and then adding the necessary formulas and formatting to calculate each Class Member's

2

unpaid wages.  All of these steps were necessary in order to calculate the unpaid wages and would have been performed whether or not there were NYLL § 195 claims in the case.

10. Any time spent calculating the unpaid wages for Adrian Pizarro, who was found not to be a class member, was *de minimis* in the context of the overall damage calculation.  Pizarro's time records were part of the time records that were automatically converted from PDF to Excel, and his inclusion in the records did not increase the amount of time it took to run Access reports.  As he worked for Defendants in just four workweeks (*see* Dkt. No. 116-5 at 1), adding formulas and formatting to his records took a minimal amount of time.

11. As I did not separately track the amount of time it took to prepare each part of the damage calculation, for this reply, I recreated the NYLL § 195 damage calculation for the absent class members.  It took me 47 minutes to do this (we are not seeking compensation for that time in our fee application).

12. To recreate the NYLL § 195 damage calculation, I first ran two reports from Microsoft Access – one for each of the two groups described in our summary judgment papers (the two groups are for the time records that were converted from PDF to Excel automatically and the time records that had to be manually inputted into Excel).  These reports list all of the clock in dates for each employee.

13. I then cleaned up the reports by deleting employees who opted out of the class and putting each remaining class member's entries in a separate column in Excel.  I also combined the two reports into a single spreadsheet.

14. I then used Excel's advanced filter function to identify all unique days worked by each class member and then used one of Excel's counting functions to count the number of unique days worked by each class member.

3

15. Finally, I applied the applicable formulas for NYLL § 195(1) and NYLL § 195(3) violations to determine each class members' individual damages and totaled them.

16. While I did not recreate the NYLL § 195 calculations for the Named and Opt-In Plaintiffs, the time spent on those calculations at the summary judgment stage was *de minimis*, as each of them worked more than 100 days for Defendants and were therefore entitled to recover the maximum penalties.

17. In Defendants' opposition to Plaintiffs' motion for attorneys' fees and costs, Defendants refer to various time entries that they contend relate to Plaintiffs' motion for sanctions. (Dkt. No. 155 at 8-9.)  Attached hereto as **Exhibit 1** are the time entries that I understand Defendants to be referring to.

18. Attached hereto as **Exhibit 2** are JK's contemporaneous time records for time worked on this case since we filed the motion for attorneys' fees and costs.

Dated: New York, New York
      December 5, 2024                 <u>/s/ Denise A. Schulman</u>
                                           Denise A. Schulman

A-494

Exhibit 1

| Case | Biller | Date | Time | Rate | Total | Description |
|---|---|---|---|---|---|---|
| 212 Steakhouse | Mike DiGiulio | 8/8/2022 | 2 | $350.00 | $700.00 | Review supplemental document production, analyze discovery deficiencies, strategize on sanction requests |
| 212 Steakhouse | D. Maimon Kirschenbaum | 8/9/2022 | 0.2 | $500.00 | $100.00 | Discuss outstanding discovery/30b6 w team |
| 212 Steakhouse | Denise Schulman | 8/10/2022 | 0.1 | $500.00 | $50.00 | Discuss discovery with Mike |
| 212 Steakhouse | Mike DiGiulio | 10/12/2022 | 0.2 | $350.00 | $70.00 | Confer with client re: depo and sanctions call |
| 212 Steakhouse | D. Maimon Kirschenbaum | 10/28/2022 | 0.2 | $500.00 | $100.00 | meeting re: sanctions brief |
| 212 Steakhouse | Jorge Aguirre | 3/27/2023 | 2.2 | $125.00 | $275.00 | Put together motion for sanctions binder |
| 212 Steakhouse | Jorge Aguirre | 3/27/2023 | 0.6 | $125.00 | $75.00 | Printing motion for sanctions |
| 212 Steakhouse | Mike DiGiulio | 3/27/2023 | 0.8 | $350.00 | $280.00 | Review sanctions motions and papers re: arguement |
| 212 Steakhouse | Mike DiGiulio | 3/27/2023 | 0.2 | $350.00 | $70.00 | Organize oral arugment docs |
| 212 Steakhouse | Denise Schulman | 3/29/2023 | 0.1 | $500.00 | $50.00 | Review sanctions motion |
| 212 Steakhouse | Denise Schulman | 3/29/2023 | 0.2 | $500.00 | $100.00 | Discuss sanctions hearing with Mike |
| 212 Steakhouse | Denise Schulman | 3/30/2023 | 0.5 | $500.00 | $250.00 | Discuss sanctions hearing with Mike |
| 212 Steakhouse | Jorge Aguirre | 3/30/2023 | 1 | $125.00 | $125.00 | Put together motion for sanctions binder |
| 212 Steakhouse | Mike DiGiulio | 3/30/2023 | 0.5 | $350.00 | $175.00 | Confer with partner re: sanctions motion |
| 212 Steakhouse | D. Maimon Kirschenbaum | 4/3/2023 | 0.2 | $500.00 | $100.00 | Discussion w team re: hearing |
| 212 Steakhouse | Denise Schulman | 4/3/2023 | 0.3 | $500.00 | $150.00 | Prep for hearing |
| 212 Steakhouse | Mike DiGiulio | 4/3/2023 | 0.5 | $350.00 | $175.00 | Draft timeline and cover sheet for sanctions hearing |
| 212 Steakhouse | Denise Schulman | 4/4/2023 | 0.2 | $500.00 | $100.00 | Discuss hearing with Mike |
| 212 Steakhouse | Denise Schulman | 4/4/2023 | 0.9 | $500.00 | $450.00 | Prep for hearing |
| 212 Steakhouse | Denise Schulman | 4/4/2023 | 0.3 | $500.00 | $150.00 | Discuss hearing with Mike |
| 212 Steakhouse | Denise Schulman | 4/4/2023 | 2 | $250.00 | $500.00 | Travel/waiting time |
| 212 Steakhouse | Denise Schulman | 4/4/2023 | 0.5 | $500.00 | $250.00 | Hearing |
| 212 Steakhouse | Mike DiGiulio | 4/4/2023 | 0.9 | $350.00 | $315.00 | Review motion papers for hearing |
| 212 Steakhouse | Mike DiGiulio | 4/4/2023 | 2.5 | $350.00 | $875.00 | Attend sanctions motion hearing |
| 212 Steakhouse | Denise Schulman | 4/5/2023 | 0.2 | $500.00 | $100.00 | Discuss hearing with Mike |
| 212 Steakhouse | Mike DiGiulio | 4/17/2023 | 0.5 | $350.00 | $175.00 | Review class cert order and sanctions order |
| 212 Steakhouse | Denise Schulman | 4/17/2023 | 0.1 | $500.00 | $50.00 | Discuss sanctions decision with Mike |
| | | **Total:** | **17.9** | | **$5,810.00** | |

Page 1 of 1

A-495

Exhibit 2 - Supplemental Joseph Kirschenbaum LLP time records

| Case | Biller | Date | Time | Rate | Total | Description |
|------|--------|------|------|------|-------|-------------|
| 212 Steakhouse | Andy Pichardo | 11/14/2024 | 1.7 | $125.00 | $212.50 | Prepared NYLL dismissal mailing |
| 212 Steakhouse | Denise Schulman | 11/14/2024 | 0.1 | $500.00 | $50.00 | Review judgment |
| 212 Steakhouse | Denise Schulman | 11/14/2024 | 0.4 | $500.00 | $200.00 | Review court's order/update mailing list/email Andy re: notice mailing |
| 212 Steakhouse | Mike DiGiulio | 11/14/2024 | 0.3 | $350.00 | $105.00 | Review order and opinion re: dismissal of claims and decert letter |
| 212 Steakhouse | Denise Schulman | 11/22/2024 | 1.3 | $500.00 | $650.00 | Draft fee application reply |
| 212 Steakhouse | Denise Schulman | 11/22/2024 | 0.2 | $500.00 | $100.00 | Draft/file letter re: extension of time to file reply |
| 212 Steakhouse | Denise Schulman | 11/22/2024 | 0.5 | $500.00 | $250.00 | Review fee application opposition/discuss same with Mike |
| 212 Steakhouse | Denise Schulman | 11/22/2024 | 0.1 | $500.00 | $50.00 | Email class member re: judgment |
| 212 Steakhouse | Mike DiGiulio | 11/22/2024 | 0.3 | $350.00 | $105.00 | Review opp to fee application |
| 212 Steakhouse | Denise Schulman | 11/25/2024 | 3.1 | $500.00 | $1,550.00 | Research fee application reply |
| 212 Steakhouse | Denise Schulman | 11/25/2024 | 0.7 | $500.00 | $350.00 | Draft fee application reply |
| 212 Steakhouse | Denise Schulman | 11/25/2024 | 0.1 | $500.00 | $50.00 | Email class member re: judgment |
| 212 Steakhouse | Denise Schulman | 11/26/2024 | 3 | $500.00 | $1,500.00 | Draft fee application reply |
| 212 Steakhouse | Andy Pichardo | 11/27/2024 | 0.2 | $125.00 | $25.00 | Took call from class member re: NYLL Dismissal mailing, informed Denise & Mike |
| 212 Steakhouse | Denise Schulman | 12/1/2024 | 1.9 | $500.00 | $950.00 | Draft fee application reply |
| 212 Steakhouse | Denise Schulman | 12/2/2024 | 3.2 | $500.00 | $1,600.00 | Draft fee application reply |
| 212 Steakhouse | Denise Schulman | 12/2/2024 | 0.2 | $500.00 | $100.00 | Call with class member |
| 212 Steakhouse | Mike DiGiulio | 12/2/2024 | 0.4 | $350.00 | $140.00 | Call with client - Nino re: case update |
| 212 Steakhouse | Denise Schulman | 12/3/2024 | 0.6 | $500.00 | $300.00 | Draft reply decl/prepare exhibits |
| 212 Steakhouse | Mike DiGiulio | 12/4/2024 | 0.3 | $350.00 | $105.00 | Review reply brief, send feedback to partner |
| | | Total: | 18.6 | | $8,392.50 | |

**Total by biller**

| | | | | | | |
|------|--------|------|------|------|-------|-------------|
| Denise A. Schulman: 15.4 hours, $7,700 | | | | | | |
| Mike DiGiulio: 1.3 hours, $455 | | | | | | |
| Andy Pichardo: 1.9 hours, $237.50 | | | | | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NINO MARTINENKO, on behalf of herself
and others similarly situated,

                    Plaintiffs,

        -against-

212 STEAKHOUSE, INC., and NIKOLAY
VOLPER,

                    Defendants.

---

Case No. 1:22-cv-00518 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

      Plaintiff Nino Martinenko ("Martinenko" or "Plaintiff") brings this action against Defendants 212 Steakhouse, Inc., and Nikolay Volper (together, "Defendants") for violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), including: (1) paying employees pursuant to a tip credit without providing the notice required under New York law; (2) failing to pay overtime premiums; (3) failing to pay spread of hours premiums; and (4) failing to provide employees with wage notices and wage statements as required by NYLL § 195. The Court referred this matter to Magistrate Judge Robert W. Lehrburger, who issued a Report and Recommendation on Defendants' motion to decertify and Plaintiffs' and Defendants' cross-motions for summary judgment on August 13, 2024. ECF No. 132 ("R&R").

      The Court incorporates the portion of the R&R that sets forth the factual background and procedural history of this case and refers to the R&R for a more comprehensive background. *See* R&R at 1-3. Essentially, Martinenko was a former server at the restaurant 212 Steakhouse, a small restaurant in midtown Manhattan, from 2016 to December 2018, and then again from March 2021 to December 2021. *Id.* at 2-3. Plaintiff Huk worked as a bartender at 212 Steakhouse from August 2020 to September 2021. R&R at 3. Plaintiffs Huk and Martinenko

comprise the collective FLSA class.  R&R at 5.  This Court also certified a Rule 23(b)(3) class

consisting of "all tipped employees — servers, runners, bussers, and bartenders — who worked

for Defendants at any time on or after January 20, 2016 at 212 Steakhouse."  R&R at 3, 6.

Plaintiffs seek damages for the class for unpaid minimum wages, overtime compensation, spread

of hours pay, and other violations of the NYLL.

On November 16, 2024, the parties filed competing motions.  R&R at 6.  Defendants

moved to decertify the Rule 23 class, citing a reduction in class size, and for summary judgment

as to Plaintiff's NYLL Section 195 claims based on a lack of standing.  R&R at 6-7.  Plaintiffs

cross-filed for summary judgment as to liability and damages on each of their asserted claims.

R&R at 7.

Magistrate Judge Lehrburger recommends denial of Defendant's motion to decertify the

Rule 23 class.  R&R at 2.  As for Plaintiffs' motion for summary judgment, Magistrate Judge

Lehrburger recommends that the motion be granted in part and denied in part.  R&R at 2.

Specifically, the R&R recommends granting summary judgment in Plaintiffs' favor on

Martinenko's and Huk's FLSA overtime claims and on all class members' NYLL minimum

wage, overtime, and spread of hours claims.  R&R at 2.  However, with respect to Plaintiffs'

NYLL wage notice and wage statement claims, Magistrate Judge Lehrburger recommends

granting summary judgment against Huk, R&R at 2, and denying summary judgment as to

Martinenko's and the unnamed class members' claims to allow for further fact-finding.  R&R at

2.

Both Plaintiffs and Defendants filed timely objections to the R&R.  *See* ECF Nos. 134

("Pl. Obj.") and 135 ("D. Obj.").  For the reasons set below, the Court adopts the comprehensive

and thorough R&R in its entirety.

A-498

## STANDARD OF REVIEW

With respect to dispositive motions, a district court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3). A district court must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In *de novo r*eview, district courts must consider "the report, the record, applicable legal authorities, along with [p]laintiff's and [d]efendant's objections and replies." *Diaz v. Girdich*, No. 04-cv-05061 (RJH), 2007 WL 187677, at *1 (S.D.N.Y. Jan. 23, 2007).

"To the extent, however, that the party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 174 (S.D.N.Y. 2018). "In addition, new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) (citation and quotation marks omitted); *see United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (rejecting argument raised for the first time as objection to report and recommendation). Finally, to the extent there are portions of the report and recommendation to which no party objects, the Court reviews those for clear error. *See, e.g.*, *Goodman v. Goodman*, No. 21-cv-10902 (GHW), 2023 WL 1967577, at *1 (S.D.N.Y. Feb. 12, 2023).

## DISCUSSION

### I.    Defendants' Objections to the R&R

Defendants raise three objections to the R&R: (1) first, the motion to decertify should be granted in light of the class's reduced size; (2) second, summary judgment as to damages on

class members' underpayment claims should be denied because material factual disputes remain as to the number of hours that employees worked; and (3) third, there is a genuine issue of material fact, not addressed by the R&R, as to whether Defendants had actual or constructive knowledge of employees' time worked.  The Court will address each objection in turn under a *de novo* review standard.

### 1. The Motion to Decertify the Rule 23 Class Is Denied

Defendants seek to decertify the Rule 23 class on the basis that numerosity, commonality, predominance, and superiority are no longer met.  "[A] defendant seeking to decertify a class bears a heavy burden to prove the necessity of the drastic step of decertification." *Zimmerman v. Portfolio Recovery Assocs., LLC*, No. 09-cv-04602(PGG), 2013 WL 1245552, at *2 (S.D.N.Y. Mar. 27, 2013) (citations, quotation marks, and ellipses omitted).  "[T]he Court may not disturb its prior certification findings absent some significant intervening event or a showing of compelling reasons to reexamine the question." *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 169 (S.D.N.Y. 2011) (citation and quotation marks omitted).  Moreover, "courts faced with a motion to decertify must also take account of the progression of the litigation." *Id.*

Magistrate Judge Lehrburger recommends denial of Defendants' motion for decertification.  For the reasons set forth below, this Court agrees.

### 1. Numerosity

Defendants' argument for decertification hinges largely on the class's reduced size — in Defendant's view, the class has at most only 24 remaining class members and therefore does not satisfy numerosity.  D. Obj. at 5.  Defendant's calculation, however, erroneously excludes members whose notices were returned as undeliverable and deceased class members.  The Court

A-500

agrees with Magistrate Judge Lehrburger that both groups are properly counted toward a Rule 23 class.

Turning first to those members whose notices were returned as undeliverable, Rule 23 is clear: due process does not require actual notice, but only the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see also In re Merrill Lynch Tyco Rsch. Sec. Litig*., 249 F.R.D. 124, 132-33 (S.D.N.Y. 2008) ("Notice need not be perfect, but need only be the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as counsel acted reasonably."). Judge Lehrburger relies on *Rannis v. Recchia*, which is squarely on point. R&R at 13 (citing *Rannis v. Recchia*, 380 F. App'x 646 (9th Cir. 2010)). In *Rannis*, the Ninth Circuit found that seven class members whose notices were returned as undeliverable were properly included in the class because those members "received the best notice that is practicable under the circumstances." *Id.* at 650. The Court underscored that "due process requires reasonable effort to inform affected class members through individual notice, *not receipt of individual notice*." *Id.* (emphasis added). Defendants seek to cabin *Rannis*'s holding to the peculiarities of that case, pointing to the Ninth Circuit's characterization of the *Rannis* class as a "jurisprudential rarity" because it consisted of only twenty members. D. Obj. at 5-6 (citing *Rannis*, 380 F. App'x at 651). That fact, however, had no bearing on the Ninth Circuit's analysis of undeliverable notices, which instead relied upon the express language of Rule 23 and due process considerations.[1]

---

[1] Defendants' assertion that the R&R "essentially disregards the caselaw that supports [Defendant's] Motion" is unfounded. D. Obj. at 8. The R&R addresses each of the authorities Defendants cite and concludes that they are inapposite. *Rule v. Int'l Ass'n of Bridge, Structural and Ornamental Ironworkers* "did not analyze and was not even presented with [the] specific issue" of whether undelivered notices should be excluded. R&R at *13-14 (distinguishing *Rule*, 568 F.2d 558, 563-64 (8th Cir. 1977)). *Zimmerman v. Portfolio Recovery Assocs., LLC*, makes no finding on the issue of whether undeliverable notice should be counted toward the class. *See*

The Court likewise agrees that deceased class members are properly counted toward the class. For one, there is no requirement that the class definition expressly include legal representatives and/or estates of any deceased class members. The Court agrees with the R&R that it is sufficient that the class definition encompasses all "tipped employees" who worked for Defendants "at any time on or after January 2016," and that the deceased class members clearly fall within that definition. Defendants rely heavily on N.Y. C.P.L.R. § 210(a) to argue that deceased members should nevertheless be excluded. Pursuant to C.P.L.R. Section 210(a), when a "person entitled to commence an action dies before the expiration of the time within which the action must be commenced and the cause of action survives, an action may be commenced by his representative within one year after his death." Defendants argue that the deceased class members' claims are foreclosed because they were brought more than a year after their deaths. This misreads the objective of C.P.L.R. Section 210(a), which is "designed to extend periods of limitation that would otherwise expire shortly after a plaintiff's death" but "does not operate to reduce statutory periods that would otherwise have more than one year to run." *Gordon v. Gordon*, 110 A.D.2d 623, 624 (2d Dep't 1985). The Court agrees with Magistrate Judge Lehrburger that there is no basis for limiting this well-established principle to "cases involving causes of actions brought by an executor of a decedent's estate" but "not [cases brought by] a class representative in a class action," as Defendants argue. D. Obj. at 9. The deceased class

---

R&R at 14 (distinguishing *Zimmerman*, No. 09-cv-04602 (PGG), 2013 WL 1245552, at *3 (S.D.N.Y. Mar. 27, 2013)). And in *Benavides v. Serenity Spa N.Y. Inc.*, the court's decision to exclude three individuals for whom notices were returned as undeliverable was rendered under vastly different circumstances: the parties had jointly moved for decertification, were in an early phase of litigating their Rule 23 claims, and had not yet even mailed out notice to potential class members. R&R at 15 (distinguishing *Benavides v. Serenity Spa N.Y. Inc.*, No. 15-cv-09189, 2018 WL 2383144, at *2-3 (S.D.N.Y. May 25, 2018)).

members' claims are brought well within the six-year statute of limitations and are therefore timely.

Accounting for deceased members and members whose notices were returned as undeliverable brings the class size to 32 members. However, while Defendants fixate on the class size, the numerosity requirement does not turn on class numbers alone. Where, as here, there are fewer than 40 class members, courts should consider "all the circumstances surrounding a case," including "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, [and the] financial resources of class members." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). The Court agrees with Magistrate Judge Lehrburger that these additional factors weigh in favor of certification, *even if* Defendants' more conservative estimate of only 24 class members is used.

Consolidating employees' complaints in a single class action pertaining to the same illegal labor practices serves judicial economy by preventing a multiplicity of individual suits. *See, e.g.*, *Neff v. Flowers Foods, Inc*., No. 5:15-cv-00254, 2019 WL 10750005, at *12 (D. Vt. May 16, 2019) (finding that "[t]hirty-three cases would represent a considerable burden to the court and to the parties to prepare and try as individual lawsuits"); *Balverde v. Lunella Ristorante, Inc.*, No. 15-cv-05518 (ER), 2017 WL 1954934, at *6 (S.D.N.Y. May 10, 2017) (finding that thirty-eight class members satisfies numerosity); *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (certifying class consisting of twenty-eight individuals). Moreover, this is a wage and hour suit brought by minimum wage workers, and therefore involves a group of individuals who likely have limited resources for pursuing legal action. Defendants' efforts to suggest otherwise are unpersuasive.

Finally, the Court finds that the R&R properly considered plausible retaliation by Defendants in rendering its numerosity determination. Contrary to Defendants' assertion that any such claim of retaliation is "unfounded," D. Obj. at 11-12, every current employee opted out of the class action, and did so using nearly identical forms, sent from the same zip code, using the same envelopes. That is sufficient to at least raise the specter of retaliation. In any event, Defendants were not unfairly prejudiced by Magistrate Judge Lehrburger's suggestion of retaliation — Defendants' plausible retaliation is not outcome determinative, but merely another thumb on the scale in favor of certification.

## 2. Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Mangahas v. Eight Oranges Inc.*, No. 22-cv-04150, 2024 WL 2801922, at *6 (S.D.N.Y. 2024) (citation and quotation marks omitted). "[C]laims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 127 (S.D.N.Y. 2011).

Commonality is readily satisfied here, where Defendants engaged in unlawful wage and hour violations applicable to all class members. It is undisputed that Defendants paid all tipped employees the tip credit minimum wage, that Defendants paid class members the regular rate for overtime, and that Defendants did not pay class members a spread-of-hours premium. *See* ECF No. 93 at 3 ("Sanctions Order"); se*e also Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 371 (S.D.N.Y. Jan. 29, 2007) (commonality satisfied where it was "clear that all of the

proposed class members would rely on the same allegedly wrongful conduct of the defendants

and muster the same legal arguments in support of their New York Labor Law claims"); *Campos*

*v. Goode*, No. 10-cv-00224 (DF), 2010 WL 5508100, at *2 (S.D.N.Y. Nov. 29, 2010)

("[A]lleged wage and hour violations – involving common operative facts stemming from

corporate policies that affected the class members in the same way – are sufficient to meet Rule

23(a)'s commonality factor.").

Defendants now assert that commonality is not satisfied with respect to the overtime and

spread of hour claims because those claims "do not appear to affect the class as a whole since

more than half the class was not subject to unlawful overtime or spread of hours policies."  D.

Obj. at 13.  However, courts certify classes "based on a theory of a common policy of unlawful

practice even if there is evidence that some of the putative class members were either not

affected or were affected to a lesser degree."  *Pichardo v. Carmine's Broadway Feast Inc*., No.

15-cv-03312 (RA)(SN), 2016 WL 4379421, at *6 (S.D.N.Y. June 13, 2016); *see also Pichardo v.*

*Carmine's Broadway Feast Inc*., 2016 WL 5338551, at *4 (S.D.N.Y. Sept. 23, 2016) ("If . . .

some workers were ultimately paid the proper amount because . . . they worked under forty

hours, such differences in the class members may be addressed by individualized damages, and

do not militate against class certification").

In any event, all parties agree that there is at least a "single common question" among all

putative class members, namely, whether Defendants' payment of the tip credit minimum wage

violated the NYLL.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[F]or

purposes of Rule 23(a)(2), even a single common question will do") (citation and quotation

marks omitted); *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 690 (S.D.N.Y. 1996), *aff'd*

*sub nom*, 126 F.3d 32 (2d Cir. 1997) ("[Commonality] will be satisfied if the named plaintiffs

share at least one question of fact or law with the grievances of the prospective class.").  All class members received the tip credit minimum wage, and none received notice as to Defendants' use of a tip allowance.

### 3.  Predominance

Pursuant to Federal Rule of Civil Procedure 23(b)(3), a class action may be maintained if "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual class members."  "The predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *In re U.S. Foodservice Inc. Pricing Litig.,* 729 F.3d 108, 118 (2d Cir. 2013).

According to Defendants, individual damages on the overtime and spread of hours claims predominate over the liability issues in this case.  Not so.  "[T]he Second Circuit has found that individualized calculations of damages do not defeat the predominance requirement."  *Schear v. Food Scope America, Inc*., 297 F.R.D. 114, 126 (S.D.N.Y. Jan 10, 2014) (citing *In re U.S. Foodservice Inc.*, 729 F.3d at 123 n.8); *see also Johnson v. Brennan*, 2011 WL 4357376, at *6 (S.D.N.Y. Sept. 16, 2011) ("[I]t is well-settled that individualized damages calculations do not defeat predominance.").  To the extent there are individualized damages issues in this case, they involve "straightforward, mechanical calculations" as to employees' hours worked and rate of pay.  *Schear*, 297 F.R.D. at 126 (finding predominance requirement was satisfied were individualized damages issues involved "straightforward, mechanical" calculations).  That is clear from Magistrate Judge Lehrburger's ability to readily calculate class members' damages on their underpayment claims using Defendants' timesheets.

Presumably recognizing the weakness of their damages argument, Defendants separately attempt to refashion what are straightforward damages issues — the number of hours worked by employees and employees' respective pay rates — as jurisdictional standing issues. Defendants argue that individual issues regarding the overtime and spread of hours claims implicate "not merely a calculation of damages," but "whether each class member suffered a particular injury-in-fact and thus ha[s] standing to maintain the claim in this Court." Obj. at 13. Defendants miss the mark. For the purposes of class certification, "[s]tanding is satisfied so long as at least one named plaintiff can demonstrate the requisite injury." *Hyland v. Navient Corp.*, 48 F.4th 110, 117-18 (2d Cir. 2022); *accord In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16-cv-00740 (JMF), 2023 WL 199284, at *1 (S.D.N.Y. Jan. 17, 2023). Class members' individual standing is relevant only for recovering individual damages, and as discussed previously, the existence of individualized damages claims does not foreclose class certification. Here, the "class definition used . . . makes clear that all the class members were subject to the policies at issue," which is "standing sufficient to maintain the certification of the class." *Chen-Oster v. Goldman, Sachs & Co.*, No. 10-cv-06950 (AT) (RWL), 2022 WL 814074, at *20 (S.D.N.Y. Mar. 17, 2022); *see also In re AXA Equitable Life Ins. Co. COI Litig.*, 2023 WL 199284, at *2 ("[T]he possibility that a well-defined class will nonetheless encompass some class members who have suffered no injury . . . is generally unproblematic as the non-injured parties can just be sorted out at the remedies phase of the suit.").

### 4. Superiority

Finally, because Plaintiffs bring their class action pursuant to Rule 23(b)(3), Plaintiffs must show that a "class action is superior to other available methods for fairly and effectively adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Magistrate Judge Lehrburger concluded

11

that the superiority standard is readily satisfied here given the common liability questions among class members. Defendants disagree, largely regurgitating their arguments that individualized standing and damages issues bar certification.

Defendants' objections fail. For the same reasons that the presence of individualized damages would not defeat the commonality or predominance requirements for class certification, they do not defeat the superiority requirement. *See, e.g.*, *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374, 385 (S.D.N.Y. 2016) ("Individualized damages determinations alone cannot preclude certification under Rule 23(b)(3)."); *Bernstein v. Cengage Learning, Inc.*, No. 19-cv-07541 (ALC) (SLC), 2023 WL 6211771, at *5 (S.D.N.Y. Sept. 25, 2023) ("Predominance does not require the absence of individual damages.").

Defendants' argument that superiority cannot be established because there are individualized standing inquiries with respect to class members' tip credit and NYLL Section 195 claims is likewise unpersuasive. There are no individualized questions of injury-in-fact with respect to class members' tip credit claims: it is undisputed that Defendants did not notify *any* of the class members of the tip credit allowance, and that all class members were paid the tip credit minimum wage. As for individualized standing inquiries for class members' NYLL Section 195 claims, "standing in a class action is satisfied so long as at least one named plaintiff can demonstrate the requisite injury." *In re AXA Equitable Life Ins. Co. COI Litig.*, 2023 WL 199284, at *1. "[E]ach member of a class need not submit evidence of personal standing to certify a class that meets Rule 23's requirements." *Id.* (citation and quotation marks omitted); *see also Chen-Oster*, 2022 WL 814074, at *19 ("[T]he test for standing . . . asks whether the class is defined in such a way as to ensure that the class members were subject to the policy [at issue].")." For the reasons explained below, the Court finds that Named Plaintiff Martinenko has

made a sufficient showing of standing with respect to her NYLL Section 195 claims to defeat summary judgment. *See infra* at II.1. Martinenko therefore satisfies the Article III standing requirement for class certification at this juncture.

Moreover, as Defendants themselves concede, there are various management tools to address individualized damages issues, to the extent such issues arise at the remedies phase. *See, e.g.*, *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001), *abrogated on other grounds by In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) (identifying a number of management tools available to a district court to address individualized damages, including: (1) bifurcating liability and damage trials; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial; (4) creating subclasses; or (5) altering or amending the class).

### 2. There is No Genuine Factual Dispute as to the Number of Compensable Hours Worked by Class Members

Defendants do not dispute that they are liable for the class's minimum wage, overtime, and spread of hours claims. They maintain, however, that the R&R erred in granting summary judgment on damages because a genuine factual dispute remains with respect to the number of hours employees worked, and in particular, whether some of the clocked-in hours on class members' time records were non-compensable meal breaks.

Defendants dispute the accuracy of their own time records, which Defendants relied upon to pay class members and which reflect the hours employees clocked in and clocked out. Those records do not show any meal breaks. By Defendants' own admission, then, they failed to meet their record-keeping obligations, and "[t]he Court must construe the gaps in Defendant[s]' employment records against Defendant[s]." *Marcelino v. 374 Food, Inc.*, No. 16-cv-06827 (KPF), 2018 WL 1517205, at *19 (S.D.N.Y. Mar. 27, 2018). Where, as here, Defendants have

failed to maintain accurate documentation of hours worked and wages paid, courts apply a burden-shifting framework to evaluate class members' claims of unpaid wages. *Gamero v. Koodo Shushi Corp.*, 272 F. Supp. 3d 481, 497 (S.D.N.Y. Sept. 28, 2017). An employee need only "submit sufficient evidence from which violations of the FLSA and the amount of an award may be reasonably inferred." *Gonzalez v. Masters Health Food Serv. Inc.*, No. 14-cv-07603 (VEC), 2017 WL 3835960, at *16 (S.D.N.Y. July 27, 2017) (citing *Reich v. Southern New England Telecommc'ns. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997)) (quotation marks omitted). The employee's burden is "not high" and can be met "through estimates based on his own recollection." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011). The burden then shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946). Under the NYLL, an employer who fails to keep accurate records shoulders the more demanding burden of coming forward with evidence of precise wages and hours. *Galvez v. 800 Ginza Sushi Inc.*, No. 19-cv-08549 (JPC), 2022 WL 748286, at *7 ("[Under NYLL], [a]n employer must demonstrate that it in fact paid its employee[']s wages, benefits, and supplements") (citation and quotation marks omitted).

The R&R properly applied this burden-shifting framework and determined that Plaintiffs met their burden of establishing, by a "reasonable inference," that Defendants treated all clocked-in time as compensable time. Defendants insist that Magistrate Judge Lehrburger erroneously conflated time paid with compensable time. D. Obj. at 18-19. To be sure, time paid does not always translate into compensable time. However, here, Plaintiffs' testimony, Defendants' own time records, and Defendants' documented practice of paying class members

14

for all clocked-in time at least gives rise to an inference that such time was compensable for the purposes of the FLSA and NYLL.  See *Hart v. Rick's Cabaret Intern, Inc.*, 60 F. Supp. 3d 447, 475 (S.D.N.Y. Nov. 14, 2014) ("[Class members] are entitled to be compensated for all hours worked between the time they logged in until the time they logged out."); *Scott v. City of New York*, 592 F. Supp. 2d 386, 408 (S.D.N.Y. Aug. 28, 2008) ("[L]ongstanding NYPD practice evinces an agreement to treat meal periods as working hours, *including payment for such hours*") (emphasis added).

Defendants, however, have offered next to no evidence in rebuttal and therefore have failed to discharge their burden.  Defendants' evidence that employees took bona fide breaks is scant and speculative.  Defendants cite only to (1) the restaurant's provision of a lunch meal for all employees; and (2) the fact that house employees clocked in with "ample time" to take a break prior to the restaurant's formal opening.  D. Obj. at 19-20.  This does not create a genuine dispute of material fact.  Defendants must either "negative the reasonableness" of Plaintiffs' evidence or "come forward with evidence of the precise amount of work performed."  *Anderson*, 328 U.S. 687-88.  They have done neither.  *See also Tambriz v. Taste and Sabor LLC*, 577 F. Supp. 3d 314, 325 (S.D.N.Y.2021) (finding that plaintiffs' workday time was compensable where plaintiffs asserted that they did not receive any meal breaks and the court "ha[d] no information before it to contradict their assertions.").

The authority cited by Defendants does not move the needle in their favor.  29 C.F.R. § 778.320 provides that "unless it appears from all the pertinent facts that the parties have treated [activities that would not be regarded as working time under the FLSA] as hours worked, payment for such time will be regarded as qualifying for exclusion from the regular rate."  Here, the "pertinent facts" show that the parties in fact treated meal breaks as hours worked.

15

Defendants also cite to *Liu v. Matsuya Quality Japanese Inc*., No. 16-cv-03624 (ERK) (VMS), 2018 WL 3213275, (E.D.N.Y. June 29, 2018).  In *Liu*, the court acknowledged that "just because an employer provides an employee with a paid lunch hour does not *necessarily* mean that hour is added to the employee's total weekly working hours for the purposes of FLSA's overtime requirements."  *Id*. at *5 (emphasis in original).  But the court proceeded to state that the relevant inquiry is "whether or not it appears from all the pertinent facts that the parties have agreed to treat such time as hours worked."  *Id.* (citation omitted).  Again, the totality of the evidence offered by Plaintiffs gives rise to a reasonable inference that the parties agreed to treat meal breaks as time worked.

> ### 3. There is No Genuine Factual Dispute as to Whether Defendants Had Actual or Constructive Knowledge of Employees' Time Worked

Defendants separately argue that the R&R's grant of summary judgment as to Plaintiffs' underpayment claims was erroneous because the R&R does not address whether Defendants had "actual or constructive" knowledge of employees' hours.

The Court agrees with Plaintiffs that Defendants' claim that they had no actual or constructive knowledge of employees' time worked is dubious.  Defendants were the custodians of class members' timesheets.  Those timesheets did not report meal breaks and are themselves sufficient to establish Defendants' actual and constructive knowledge of class members' hours.  *See Rodriguez v. Avondale Care Group, LLC*, No. 16-cv-03084 (SN), 2018 WL 1582433, at *7 (S.D.N.Y. Mar. 27, 2018) ("[Defendant] has constructive knowledge that [Plaintiff] was unable to take her required breaks because she did not report that she took them.").  *Gordon v. Kaleida Health*, 299 F.R.D. 380, 392 (W.D.N.Y. 2014), cited by Defendants, is inapposite.  *Kaleida* involved an employer's knowledge of "unreported" and "uncompensated" time and is therefore readily distinguishable from the circumstances here, where employees reported their total hours

(inclusive of meal breaks) to Defendants and were compensated accordingly. *Cf. id.* at 392

("[S]ummary judgment is denied because reasonable minds could differ as to whether

[Defendant] had actual or constructive knowledge of *unreported, uncompensated time*.")

(emphasis added).

## II.    Plaintiffs' Objections to the R&R

Plaintiffs' sole exception to the R&R is directed to its analysis of standing for class

members' NYLL Section 195 claims. Section 195(1) of the NYLL requires that employers

provide employees with notice at the time of hiring of "the rate or rates of pay, and basis thereof,

whether paid by the hour, shift, day, week, salary, piece, commission, or other; [and] allowances,

if any claimed as part of the minimum wage, including tip, meal, or lodging allowances."

N.Y.L.L. § 195(1)(a). Section 195(3) provides that employers must give employees certain wage

statements "with every payment of wages." *Id.* § 195(3). While Magistrate Judge Lehrburger

determined that it was beyond dispute that Defendants violated NYLL Section 195, he concluded

that, "for the purposes of seeking damages, Plaintiffs have not produced evidence to show that

they suffered an injury." R&R at 61. Plaintiffs disagree. The Court will again review this

objection *de novo*.

To establish Article III standing, a "plaintiff must show (i) that he suffered an injury in

fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused

by the defendant, and (iii) that the injury would likely be redressed by judicial relief."

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "Every class member must have Article

III standing in order to *recover* individual damages," as "Article III does not give federal courts

the power to order relief to any uninjured plaintiff, class action or not." *Id.* at 431 (emphasis

added) (citation and quotation marks omitted). Moreover, plaintiffs "must demonstrate standing

for each claim that they press and for each form of relief that they seek." *Id.* "As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *Id.* at 430-31.

The Second Circuit recently opined on the issue of Article III standing for the purposes of NYLL Section 195 and 198 claims. *See, e.g.*, *Guthrie v. Rainbow Fencing Inc.*, No. 23-350, 2024 WL 3997427 (2d Cir. Aug. 30, 2024). Applying the Supreme Court's decision in *TransUnion*, the Second Circuit held that "a plaintiff cannot rely on technical violations of the Labor Law but must allege actual injuries suffered as a result of the alleged wage notice and wage statement violations." *Id.* at *305 (ellipses, quotation marks, and citations omitted). The court approved theories of "informational injury" based on the unlawful withholding of requested information but underscored that plaintiffs asserting "informational harm" need to show "some causal connection between the lack of accurate notices and [a] downstream harm." *Id.* at *308. Plaintiffs "cannot . . . rely on speculation and conjecture" to draw that causal connection. *Id.* at 309 (citation and quotation marks omitted). It is not sufficient, for example, for the plaintiff to "identif[y] potential harms that *could* result from an employer's failure to provide wage notices and wage statements." *Id.* at *310 (emphasis in original). Instead, the plaintiff must "show that he or she would have undertaken . . . advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided." *Id.* at *308-09. *Guthrie* clarifies and bolsters, but does not disturb, the R&R's standing analysis, which was premised on caselaw that is consistent with *Guthrie's* holding. *See, e.g.*, R&R at 61 (observing that "plaintiffs alleging violations of the wage notice and statement provisions of the NYLL must show more than technical violations of the law").

Plaintiffs proffer two independent theories of standing for Class Members' NYLL wage

notice and wage statement claims: (1) the wage notice violations directly caused class members'

monetary harm in the form of underpayment; and (2) deficient wage statements hindered class

members' ability to identify Defendants' underpayment and therefore prevented them from

taking remedial action in a timely fashion.  For the reasons set forth below, the Court agrees with

Magistrate Judge Lehrburger that Plaintiffs, including unnamed class members, have not at this

juncture sufficiently established standing for their NYLL Section 195 claims.

### 1. Plaintiffs Have Not Shown Informational Injury

Plaintiffs argue that Defendants' NYLL Section 195 violations "hindered Class

Members' ability to identify and remedy Defendants' wage and hour violations."  Pl. Obj. at 10.

Magistrate Judge Lehrburger concluded that whether unnamed class members had suffered

informational harm was "indeterminate" because absent class members have not yet submitted

evidence of standing.  R&R at 69.  Moreover, Magistrate Judge Lehrburger found "competing

evidence" as to whether Martinenko had suffered informational harm.  R&R at 68-69.  Finally,

Judge Lehrburger determined that there was no record evidence that Opt-In Plaintiff Huk had

incurred a concrete informational harm, and, finding no basis for a direct monetary harm either,

recommended dismissing Huk's Section 195 claims for lack of standing.  R&R at 66-67.  The

Court agrees with the R&R's findings, and therefore denies summary judgment against

Martinenko and unnamed class members' Section 195 claims and dismisses Huk's Section 195

claims.

*Guthrie* supports this result.  *Guthrie* clarified that an informational harm can establish

Article III standing for the purposes of a NYLL Section 195 claim so long as there are

downstream consequences and plaintiffs "link the general harms an employee *might* experience

to any harms that [plaintiffs] *did*, in fact, experience." 2024 WL 3997427, at *7 (emphasis in original); *see also Kaur v. Natasha Accessories Ltd.*, No. 23-cv-06948 (JPO), 2024 WL 3429129, at *4 (S.D.N.Y. July 16, 2024) (finding that plaintiff "plausibly alleges" that "her wage statements showed fewer hours than what she actually worked, which prevented her from determining and seeking payment for the precise amount of her unpaid wages," thereby resulting in "tangible" financial harm) (quotation marks and brackets omitted). Plaintiffs have not established that class members "would have undertaken . . . advocacy" on their behalf or that they "plausibly would have avoided some harm or obtained some actual benefit if accurate notices had been provided." *Guthrie*, 2024 WL 3997427, at *5.

Turning first to Opt-in Plaintiff Huk — the Court agrees with the Magistrate Judge that Plaintiffs have not identified any record evidence of Huk incurring a concrete informational harm. In the absence of any such allegation, Huk does not have standing based on an informational harm. *See id.* at *7 ("Without plausible allegations that [plaintiff] suffered a concrete injury because of [defendant's] failure to provide the required notices and statements, Guthrie lacks standing to sue for that statutory violation.").

As for Named Plaintiff Martinenko, the Court agrees with the R&R's finding that, at this juncture, there are issues of fact as to whether Martinenko suffered informational harm. Martinenko has asserted that she never received a legally sufficient wage notice; that she never complained to anyone about her wages because she did not know that they were incorrect; and that if she had been informed that she was entitled to overtime pay, she would have escalated the issue to Defendants. R&R at 67-69. The parties offer competing evidence as to whether Martinenko in fact "would have undertaken such advocacy . . . if accurate notices had been provided." *Guthrie*, 2024 WL 3997427, at *5. In particular, the parties dispute the extent of

Martinenko's pre-existing knowledge as to Defendants' wage violations. *See* R&R at 67-69.

Given the fact disputes, the Court agrees with the R&R that "[d]ismissal or summary judgment

against Martinenko based on standing . . . is not warranted." R&R at 68.

The same conclusion necessarily follows for the unnamed class members, whom the

R&R rightfully observes have had "no opportunity to submit evidence that they have standing on

the [Section] 195 claims." R&R at 69. *Cf. Castillo v. Hollis Delicatessen Corp.*, No. 22-cv-

05476 (AMD) (PK), 2024 WL 4107258, at *1, n.1 (E.D.N.Y. Sept. 6, 2024) (plaintiff established

Article III standing where plaintiff specifically alleged that "defendants were able to hide their

violations of wage and hour laws and take advantage of Plaintiff's relative lack of sophistication

by failing to provide her with wage information") (quotation marks and citations omitted); *Rosas

v. M and M LA Solucion Flat Fixed Inc.*, No. 23-cv-01212 (DG)(MMH), 2024 WL 4131905, at

*12 (E.D.N.Y. Sept. 10, 2024) (plaintiffs sufficiently established Article III standing where they

"aver[ed] that Defendants' alleged failure to provide wage notices and statements caused [them]

to endure uncertainty regarding [their] wages and prevented [them] from taking action to correct

Defendants' wage and hour violations") (citation and quotation marks omitted)*; Reyes et al. v.

Crystal Window & Door Sys., Ltd.*, No. 23-cv-02578 (RPK) (JRC), 2024 WL 4028308, at *4

(E.D.N.Y. Sept. 3, 2024) (plaintiffs adequately pleaded concrete injuries where they "allege[d]

that defendant's failure to provide the notices resulted in Plaintiffs working for years without

knowledge of their correct pay frequency and overtime rate").

Plaintiffs' citation to this Court's prior decisions, including *Lipstein v. 20X Hospitality

LLC*, does not change the result. *Lipstein* involved a different procedural posture — a motion to

dismiss — wherein the Court was obliged to draw all reasonable inferences in favor of the

plaintiff-employee. *Lipstein v. 20X Hospitality LLC*, No. 22-cv-04812, 2023 WL 6124048, at

*9, 11 (S.D.N.Y. Sept. 19, 2023) (Rochon, J.). Unlike at the motion to dismiss stage, where a plaintiff need only "alleg[e] facts that affirmatively and plausibly suggest they have standing," *Metcalf v. TransPerfect Translations Int'l, Inc.*, No. 19-cv-10104 (ER) (KHP), 2023 WL 2674743, at *4 (S.D.N.Y. Mar. 29, 2023) (citation and quotation marks omitted), Plaintiffs must proffer "specific facts" in support of standing to prevail on their motion for summary judgment. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Indeed, this Court expressly acknowledged in *Lipstein* that its standing analysis might change with the benefit of additional discovery and fact-finding: "Discovery may ultimately bear out that the allegedly insufficient wage statements and notices did not actually hinder Plaintiff and others from raising issues regarding underpayment." *Lipstein*, 2023 WL 6124048, at 11; *see also Lubinski v. Johnson Controls, Inc.*, 2024 U.S. Dist. LEXIS 119705, at *3-4 (S.D.N.Y. July 9, 2024) (Rochon, J.) (plaintiffs sufficiently pleaded an injury-in-fact where, at the motion to dismiss stage, they alleged that defendant's failure to provide required wage statements and notices harmed them by denying them information necessary to determine whether they were being paid lawful wages).

### 2. Plaintiffs Have Not Shown Monetary Harm

Presumably recognizing the difficulties of establishing informational injury on behalf of unnamed class members at this juncture, Plaintiffs separately endeavor to articulate a direct monetary harm. According to Plaintiffs, Defendants' failure to provide legally sufficient wage notices and wage statements "directly caused" class members to be underpaid. Pl. Obj. at 6. With respect to the NYLL Section 195(1) violations, Plaintiffs contend that "[d]efendants' failure to provide wage notices plainly caused all Class Members to be underpaid because it was this lack of notice that made Defendants' use of the tip credit an unlawful underpayment." *Id.* But for Defendants' deficient wage notices, Plaintiffs argue, Defendants' payment of the tip

credit minimum wage would not have been unlawful and class members therefore would not have been paid less than their due.  *Id.*  As for the NYLL Section 198 violations, Plaintiffs argue that Defendants' deficient wage statements "resulted in the actual underpayment of overtime to Class Members" because employees' checks were issued based on those wage statements.  *Id.*

Magistrate Judge Lehrburger properly concluded that Plaintiffs' theory of monetary harm fails not for a lack of concrete injury, but because Plaintiffs cannot directly trace Class Members' underpayment to Defendants' deficient wage notices and wage statements.  R&R at 64.  That is, Plaintiffs cannot show that they or other class members were underpaid *because* Defendants issued deficient documentation.  The underpayment of employees' wages is more appropriately attributed to Defendants' illegal pay practices, including Defendants' failure to pay overtime and Defendants' failure to notify employees of the tip credit.  *See, e.g.*, *Freeland v. Findlay's Tall Timbers Distrib. Center, LLC*, No. 22-cv-6415 (FPG), 2024 WL 2702201, at *4 (W.D.N.Y. May 24, 2024), *abrogated on other grounds by Guthrie*, 113 F.4th 300 ("Although the allegedly inaccurate wage statements may have made it more difficult for plaintiff to calculate his proper overtime rate, it is not apparent — short of legal action — how an accurate statement would have dissuaded Defendant from underpaying Plaintiff and thus prevented his monetary harm.") (quotation marks, citation, and parentheticals omitted); *Quieju v. La Jugueria Inc.*, 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023) ("The injury that plaintiff suffered (*i.e.*, defendants' failure to pay him) is not an injury he sustained because of a lack of the required documents; it is an injury he sustained because his employer violated its obligation to pay the minimum wage, overtime, and spread-of-hours pay under other, express requirements of federal and state law.").

Plaintiffs are also wrong to assert that "if Defendants provided Plaintiffs and the Class Members with NYLL [Section] 195(1)-compliant wage notices, their use of the tip credit would

have been lawful." Pl. Obj. at 9. NYLL imposes stringent requirements for the tip credit, including that employers obtain employees' signed acknowledgment of the tip credit, 12 N.Y.C.R.R. § 146-2.2(a), and explain that tips are being credited against their minimum wages. *See, e.g.*, *Gamero*, 272 F. Supp. 3d at 501; *Galvez* 2022 WL 748286, at *10 ("Employers must state the intent to take a tip credit *specifically*, and not just, for example, inform employees that they will receive wages augmented by tips.") (emphasis added); *Hristova v. 3321 Astoria Inc.*, No. 17-cv-01633 (RER), 2018 WL 4006880, at *4 (E.D.N.Y. June 27, 2018) ("Defendants have not produced evidence to support their claim that the tip-credit notice was proper" where manager "testified that he had [plaintiff] sign the WTPA wage notice, but there is no evidence that he ever explained the tip credit statute to the [p]laintiff."). Therefore, even if Defendants had issued legally sufficient wage notices, that would not have been sufficient to satisfy their obligation to inform employees of the tip credit or to pay wages based on the tip credit.

*Guthrie* in no way abrogates the traceability requirement for Article III standing. To the extent *Guthrie* distinguishes cases cited in the R&R, including *Freeland v. Findlay's Tall Timbers Dist. Center*, 2024 WL 2702201 (W.D.N.Y.), and *Jackson v. ProAmpac LLC*, 694 F. Supp. 3d 352, 363 (S.D.N.Y. 2023*), abrogated on other grounds by Guthrie*, 113 F.4th 300, it does so out of a concern that those cases misapply Second Circuit precedent to foreclose standing based on theories of *informational* harm. Specifically, the Second Circuit determined that *Freeland* and *Jackson* have misapplied its holding in *Harty*, a case involving a plaintiff-tester who failed to receive statutorily required disclosures. *Guthrie*, 113 F.4th at 309-10 (citing *Harty v. West Point Realty, Inc.*, 28 F.4th 435 (2d Cir. 2022)). *Guthrie* observes that these and other courts have subverted *Harty*'s reasoning to require plaintiffs asserting NYLL Section 195 violations to "show an interest in using the [withheld] information *beyond bringing [their]*

*lawsuit.*" *Id.* (emphasis added). *Guthrie* emphasizes that "an employee who has actually lost wages is not analogous to a plaintiff-tester" who "seeks to promote compliance with statutory disclosure requirements through lawsuits" and who therefore "must show some concrete interest in each lawsuit to have standing." *Id.*

*Guthrie* does not disturb, however, the well-established principle that, where a plaintiff alleges *monetary* harm, that harm must still be "fairly traceable to Defendant's alleged violation of the NYLL wage statement requirement." *Freeland*, 2024 WL 2702201, at *4. The traceability requirement for Article III standing is separate and distinct from the concreteness requirement that *Guthrie* analyzes. Here, as in *Jackson* and *Freeland*, Plaintiffs' "monetary harm is . . . better traced as injury flowing from Defendant's alleged violations of state and federal overtime requirements, not Defendant's inaccurate wage statements." *Id*. at 4 (citation and quotation marks omitted); *see also Jackson*, 694 F. Supp. 3d at 363 ("Plaintiff's monetary harm is better traced as an injury flowing from [defendant-employer's] rounding policy, not [defendant-employer's] inaccurate wage notices.").

The Court is unpersuaded by the cases cited by Plaintiffs, which are once more in different procedural postures. *See, e.g.*, *Isayeva v. Diamond Braces*, No. 22-cv-04575 (KPF), 2024 WL 1053349, at *17 (S.D.N.Y. Mar. 11, 2024) (at motion to dismiss stage, plaintiff-employees "plausibly establish[ed]" that defendants' deficient wage statements "not only hindered Plaintiffs from realizing their rights at the time of payment, but also injured Plaintiffs by enabling the actual underpayment of their wages"); *Mateer v. Peloton Interactive, Inc*., No. 22-cv-00740 (LGS), 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022) (at motion to dismiss stage, construing "all reasonable inferences in [plaintiff's] favor" to find Article III standing). In response to a summary judgment motion, however, the plaintiff "can no longer rest on . . .

25

allegations," but "must set forth by affidavit or other evidence specific facts" in support of standing. *Lujan*, 504 U.S. at 561 (citations and quotation marks omitted). Plaintiffs have not met this burden.

### III.    Uncontested R&R Findings

The parties do not contest the R&R's recommendations with respect to the calculation of damages for Plaintiffs' unpaid wages, Defendant Volper's individual liability, or Plaintiffs' entitlement to pre-judgment interest. The Court has reviewed those portions of the R&R for clear error and finds that they are comprehensive and well-reasoned, and therefore adopts them in their entirety. *See, e.g.*, *Gomez v. Brown*, 655 F. Supp. 2d 332, 341 (S.D.N.Y. 2009) ("[W]ith respect to the uncontested portions of a report and recommendation, a district court need only satisfy itself that there is no clear error on the face of the record.") (citations and quotation marks omitted).

### CONCLUSION

For the foregoing reasons, the Court adopts the R&R in its entirety. Defendants' motion to decertify the Rule 23 class is DENIED. Plaintiffs' motion for summary judgment is GRANTED in part and DENIED in part. Defendants' cross-motion for summary judgment is GRANTED in part and DENIED in part. Specifically, the Court orders that:

1. The class be awarded unpaid minimum wages under the NYLL without a tip credit allowance in the total amount of $96,608.35;

2. The class be awarded unpaid overtime wages under the NYLL without a tip credit allowance in the total amount of $2,530.75;

3. The class be awarded unpaid spread-of-hours premiums under the NYLL where applicable in the total amount of $2,388;

4.  The class be awarded liquidated damages under the NYLL in the total amount of $101,527.10;

5.  Defendant Volper be held individually liable for damages under the FLSA and NYLL;

6.  Plaintiff Huk's NYLL Section 195 wage notice and statement claims be dismissed for lack of standing;

7.  Summary judgment be denied on the rest of the class members' NYLL Section 195 wage notice and wage statement claims;

8.  The parties be ordered to meet and confer regarding next steps for addressing individualized injury with respect to the unnamed class member Section 195 claims; and

9.  Prejudgment interest be awarded from June 18, 2019, at a rate of 9% on the total unpaid wages of $101,527.10.

Dated: September 24, 2024
      New York, New York

                              SO ORDERED.

                              JENNIFER L. ROCHON
                              United States District Judge

27

A-523

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

NINO MARTINENKO, on behalf of herself
and others similarly situated,

                       Plaintiffs,                   22 **CIVIL** 0518 (JLR)

        -against-                      <u>**JUDGMENT**</u>

212 STEAKHOUSE, INC., and NIKOLAY
VOLPER,

                       Defendants.

-------------------------------------------------------------------------X

      It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons

stated in the Court's Opinion and Order dated September 24, 2024, the Court adopts the R&R in

its entirety. Defendants' motion to decertify the Rule 23 class is DENIED. Plaintiffs' motion for

summary judgment is GRANTED in part and DENIED in part. Defendants cross-motion for

summary judgment is GRANTED in part and DENIED in part. Specifically, the Court orders

that: 1. The class is awarded unpaid minimum wages under the NYLL without a tip credit

allowance in the total amount of $96,608.35; 2. The class is awarded unpaid overtime wages

under the NYLL without a tip credit allowance in the total amount of $2,530.75; 3. The class is

awarded unpaid spread-of-hours premiums under the NYLL where applicable in the total amount

of $2,388; 4. The class is awarded liquidated damages under the NYLL in the total amount of

$101,527.10; 5. Defendant Volper is held individually liable for damages under the FLSA and

NYLL; 6. Plaintiff Huk's NYLL Section 195 wage notice and statement claims be dismissed for

lack of standing; 7. Summary judgment is denied on the rest of the class members' NYLL

Section 195 wage notice and wage statement claims; 8. The parties is ordered to meet and confer

A-524

regarding next steps for addressing individualized injury with respect to the unnamed class member Section 195 claims; and 9. Prejudgment interest awarded from June 18, 2019, at a rate of 9% on the total unpaid wages of $101,527.10 to the entry of the judgment in the amount of $48,215.64.

**Dated:**  New York, New York
September 25, 2024

**DANIEL ORTIZ**
_____
**Acting Clerk of Court**

**BY:**  *Negam Dulal*
_____
**Deputy Clerk**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NINO MARTINENKO, on behalf of herself
and others similarly situated, and DAGMARA
MAJA HUK,

                            Plaintiffs,

            -against-

212 STEAKHOUSE, INC., and NIKOLAY
VOLPER,

                            Defendants.

---

Case No. 1:22-cv-00518 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Named Plaintiff Nino Martinenko, individually and on behalf of others similarly situated, brings this wage-and-hour action against 212 Steakhouse, Inc., and Nikolay Volper (together, "Defendants"). Dkt. 1. Plaintiff Dagmara Maja Huk ("Opt-in Plaintiff Huk" and, together with Named Plaintiff Martinenko, "Plaintiffs") opted in to the suit on May 16, 2022. Dkt. 32. On August 13, 2024, Magistrate Judge Robert W. Lehrburger issued a Report and Recommendation on Defendants' motion to decertify, and on Plaintiffs' and Defendants' cross-motions for summary judgment. Dkt. 132. On September 24, 2024, this Court adopted Magistrate Judge Lehrburger's Report and Recommendation in its entirety. Dkt. 141 ("Order"). As a result, the Court denied Defendants' motion to decertify and granted summary judgment in Plaintiffs' favor on Named Plaintiff Martinenko's and Opt-in Plaintiff Huk's Fair Labor Standards Act ("FLSA") overtime claims, and on all Class Members' NYLL minimum-wage, overtime, and spread-of-hours claims. *Id.* at 2. However, the Court dismissed Opt-in Plaintiff Huk's New York Labor Law ("NYLL") Section 195 claims for lack of standing. *Id.* The only remaining claims are therefore Named Plaintiff Martinenko's and the unnamed Class Members' NYLL Section 195

wage-notice and wage-statement claims, which the Court allowed to proceed for further fact finding on standing. *Id.*

Plaintiffs now move to voluntarily dismiss the remaining NYLL Section 195 claims without prejudice. Dkt. 145 ("Mot."); Dkt. 149 ("Reply"). Defendants in turn seek to have the NYLL Section 195 claims dismissed with prejudice and move once more to decertify the Class. Dkt. 147 ("Opp."). For the reasons set forth below, Plaintiffs' motion to dismiss the NYLL Section 195 claims without prejudice is GRANTED, and Defendants' motion to decertify the class is DENIED.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 41(a) provides that "the plaintiff may dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A). "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." *Seidman v. Chobani, LLC*, No. 14-cv-04050 (PGG), 2016 WL 1271066, at *1 (S.D.N.Y. Mar. 29, 2016) (quoting Fed. R. Civ. P. 41(a)(2)). Moreover, under Rule 23(e), the claims of a certified class may be voluntarily dismissed "only with the court's approval." Fed. R. Civ. P. 23(e).

"'The Second Circuit has not resolved the issue of whether the proper vehicle' for a plaintiff's voluntary dismissal of *some* claims, instead of the entire action, 'is Rule 15 or Rule 41(a).'" *Thorpe v. City of New York*, No. 19-cv-05995 (CM) (RWL), 2022 WL 3112125, at *1 (S.D.N.Y. Aug. 4, 2022) (quoting *Seidman*, 2016 WL 1271066, at *2). However, the Second Circuit has stated that the "district court may permit withdrawal of a claim under Rule

15 . . . subject to the same standard of review as a withdrawal under Rule 41(a)." *Id*. (quoting *Wakefield v. N. Telecom, Inc*., 769 F.2d 109, 114 n.4 (2d Cir. 1985)); *see also* G-*I Holdings, Inc. v. Baron & Budd*, No. 01-cv-00216 (RWS), 2004 WL 374453, at *1 (S.D.N.Y. Feb. 27, 2004) ("The same considerations are relevant to dropping a claim regardless of which rule [41(a) or 15(a)] is invoked." (alterations omitted)).  "Accordingly, 'although a motion to eliminate only certain claims may actually be a motion to amend the complaint (under Rule 15) rather than one for dismissal, there is no substantive difference between the two.'" *Seidman*, 2016 WL 1271066, at *2 (alterations omitted) (quoting *Machne Menachem, Inc. v. Hershkop*, No. 97-cv-02550 (ILG), 2003 WL 1193528, at *2 (E.D.N.Y. Jan. 31, 2003).

Whether the motion to withdraw a claim is fashioned as a motion to amend under Rule 15 or a voluntary dismissal under Rule 41, the Court has "considerable discretion in deciding whether to allow withdrawal of a claim without prejudice." *Wakefield*, 762 F.2d at 114.  "In general, the court may allow such a dismissal if the defendant will not be prejudiced thereby," *id.*, and "there is a general presumption that motions to dismiss claims without prejudice should be granted," *Benitez v. Hitachi Metals Am., Ltd*., No. 11-cv-06816 (NRB), 2012 WL 3249417, at *1 (S.D.N.Y. Aug. 6, 2012).

"The Second Circuit has identified 'two lines of authority' to guide district courts" when considering contested motions to withdraw a claim without prejudice.  *SEC. v. Compania Internacional Financiera S.A*., No. 11-cv-04904 (JPO), 2012 WL 1856491, at *2 (S.D.N.Y. May 22, 2012) (quoting *Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006)); *accord Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*, No. 16-cv-05393 (KMW), 2018 WL 1115517, at *2 (S.D.N.Y. Feb. 26, 2018).  Under one test, courts weigh five factors, which the Court will refer to as the *Zagano* factors: (1) "the plaintiff's diligence in bringing the motion";

(2) "any 'undue vexatiousness' on plaintiff's part"; (3) the stage of the litigation, including

whether defendant has expended effort and expense to prepare for trial; (4) "the duplicative

expense of relitigation"; and (5) "the adequacy of plaintiff's explanation for the need to dismiss."

*Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990).  Other courts permit withdrawal of

claims without prejudice unless "the defendant would suffer some plain legal prejudice other

than the mere prospect of a second lawsuit."  *Compania Internacional*, 2012 WL 1856491, at *2

(quoting *Camilli*, 436 F.3d at 123).

## DISCUSSION

### I.    Dismissal of the Remaining NYLL Section 195 Claims

Plaintiffs move to dismiss the remaining NYLL Section 195 claims without prejudice,

pursuant to Rule 41(a)(2) and Rule 23(e).  The Court finds that under either the *Zagano* factors

or the legal-prejudice test, dismissal of Plaintiffs' NYLL Section 195 claims without prejudice is

warranted.

First, Plaintiffs were not dilatory in bringing their motion, instead moving promptly after

the Court's entry of its summary judgment Order.  The Court's Order made clear that, post-

*Guthrie*, the NYLL Section 195 claims would require individualized evidence of standing.

Order at 18; *see, e.g.*, *Guthrie v. Rainbow Fencing, Inc.*, 113 F.4th 300, 309 (2d Cir. 2024)

(addressing standing for NYLL Section 195 claims and holding that plaintiff-employee cannot

"assume" harm "without analysis" or "rely on 'speculation and conjecture'" (quoting *Quieju v.

La Jugueria Inc.*, No. 23-cv-00264 (BMC), 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25,

2023))).  The *Guthrie* decision – which was the first time that the Second Circuit squarely

addressed the informational harm necessary to establish standing for a NYLL Section 195 claim,

113 F.4th at 305 – was rendered only after Magistrate Judge Lehrburger's Report and

Recommendation. Plaintiffs therefore moved for dismissal shortly after this Court's Order was issued discussing *Guthrie*. *C.f., e.g.*, *Kwan v. Schlein*, 634 F.3d 224, 231-32 (2d Cir. 2011) (granting voluntary dismissal of counterclaims without prejudice even though defendants moved for dismissal after the completion of discovery and the denial of their motions for summary judgment).[1]

Second, there is no evidence of undue vexatiousness on Plaintiffs' behalf in bringing their motion to voluntarily dismiss the NYLL claims. "Courts define 'undue vexatiousness' to mean 'that the plaintiff acted with "ill motive" in bringing or maintaining its claims.'" *Compania Internacional*, 2012 WL 1856491, at *5 (quoting *SEC v. Chakrapani*, Nos. 09-cv-00325 (RJS) and 09-cv-1043 (RJS), 2010 WL 2605819, at *3 (S.D.N.Y. June 29, 2010)). There is no suggestion in the record that Plaintiffs either have brought, or are moving to, dismiss the outstanding NYLL Section 195 claims for any improper purpose. Rather, Plaintiffs appear to be acting out of the best interests of the Class following the Court's Order, which relied upon the Second Circuit's recent decision in *Guthrie*. Realizing that trial on the NYLL Section 195 claims may be "extremely time consuming," Mot. at 1, Plaintiffs seek "the most efficient path to adjudication of these claims on the merits" that is, through litigation in state court, *id.* at 2.

With respect to the procedural posture of the case, the parties have moved past discovery and summary judgment, which would ordinarily weigh against granting dismissal without

---

[1] Without reaching the issue of whether Rule 15 or Rule 41 is the appropriate procedural vehicle for voluntarily dismissing Plaintiffs' NYLL claims, the Court finds that, for the same reasons, there is "good cause" under Rule 16(b) to allow amendment of the Complaint after the pleading deadline. Plaintiffs moved diligently after the Court's summary judgment Order holding that Class Members would need to submit individualized proof of standing. *See Kassner v. 2nd Avenue Delicatessen, Inc.*, 496 F.3d 229, 243 (2d Cir. 2007) ("[W]ith respect to the Rule 16(b) standard, '"good cause" depends on the diligence of the moving party.'" (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000))).

prejudice.  *See Am. Fed'n of State, Cty. & Mun. Emps. Dist. Council 37 Health & Sec. Plan v. Pfizer, Inc*., No. 12-cv-02237 (JPO), 2013 WL 2391713, at *4 (S.D.N.Y. June 3, 2013) ("The standard for concluding that a suit has progressed far enough to weigh against dismissal . . . is usually satisfied only where substantial discovery, summary judgment motion practice, or trial preparation has occurred.").  However, as Plaintiffs note, Defendants only objected to standing for the NYLL claims after class-wide discovery and class certification motion practice were complete.  *See* Dkt. 97 (August 2023 letter raising standing issue for the first time).  It would make little sense for this Court to require dismissal with prejudice when, if the NYLL claims were to proceed to trial and *then* be dismissed for a lack of Article III standing, the Court would necessarily dismiss them without prejudice.  *See Katz v. Donna Karan Co.*, 872 F.3d 114, 121 (2d Cir. 2017) ("[W]here a case is dismissed for lack of Article III standing . . . that disposition cannot be entered with prejudice, and instead must be dismissed *without prejudice*.").

For the same reason, the fourth factor – the potential for the duplicative expense of relitigating – likewise weighs in favor of granting Plaintiffs' motion.  As noted above, if these claims were to proceed to trial and thereafter be dismissed without prejudice for a lack of standing, the Class Members would be entitled to reassert those claims in state court, *after* the parties had already incurred the time and expense of trial preparation and trial.  Plaintiffs' motion therefore lessens the prospect of duplicative expenses and efforts by both parties.

Finally, the Court credits Plaintiffs' explanation for moving to voluntarily dismiss their NYLL Section 195 claims.  Plaintiffs assert that they seek to withdraw these claims in the interest of expediency and to allow the Class Members to proceed in state court where Article III standing will not pose a barrier to recovery.  Plaintiffs argue that this will in turn allow immediate entry of an enforceable judgment in this matter, which is important given that there

6

are various state court actions pending against Defendants, and therefore "any delay in entry of judgment creates serious risks to the Class's ability to enforce their judgment." Reply at 3. The Court deems these sufficient justifications for granting dismissal without prejudice.

Given the balance of the *Zagano* factors, Defendants have not demonstrated legal prejudice sufficient to bar Plaintiff's motion for a voluntary dismissal of the Section 195 claims. Defendants' only theory of prejudice is that they have already "expended significant resources defending the claims, including the class assertions." Opp. at 2. That does not translate to sufficient legal prejudice. *See, e.g., Pelaez*, 2018 WL 1115517, at *3 ("[T]he prospect of starting an entirely new litigation, along with the attendant additional expense, does not translate to legal prejudice sufficient to deny a motion to voluntarily withdraw." (quoting *Brown v. Nat'l R.R. Passenger Corp.*, 293 F.R.D. 128 (E.D.N.Y. 2013))); S*tinson v. City Univ. of N.Y.*, No. 18-cv-05963 (RA), 2020 WL 2133368, at *2 (S.D.N.Y. May 4, 2020) ("The mere prospect of a second lawsuit or some tactical disadvantage is not sufficient legal prejudice to prevent a Rule 41(a)(2) dismissal." (quoting *Jaskot v. Brown*, 167 F.R.D. 372, 373 (S.D.N.Y. 1996))).

The Court therefore finds that the *Zagano* factors and the legal-prejudice test both favor dismissal without prejudice of Plaintiffs' NYLL Section 195 claims.

## II.     Decertification of the Class

Separately, Defendants seek to construe Plaintiffs' voluntary dismissal of their NYLL Section 195 claims as an intervening event warranting decertification of the Class. Opp. at 2. The court disagrees.

As noted in the Court's summary judgment Order, a "defendant seeking to decertify a class bears a heavy burden to prove the necessity of the drastic step of decertification." Order at 4 (quoting *Zimmerman v. Portfolio Recovery Assocs., LLC*, No. 09-cv-04602 (PGG), 2013 WL

1245552, at *2 (S.D.N.Y. Mar. 27, 2013)).  "[T]he Court may not disturb its prior [certification] findings absent 'some significant intervening event,' or 'a showing of compelling reasons to reexamine the question.'"  *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 169 (S.D.N.Y. 2011) (second alteration in original) (quoting *Doe v. Karadzic*, 192 F.R.D. 133, 136-37 (S.D.N.Y. 2000)).

The Court declines to revisit its decision on Defendants' decertification motion and finds that nothing about Plaintiffs' request for a dismissal of the NYLL Section 195 claims alters the Court's determination as to the propriety of the Class.  Defendants argue that a class action is no longer the appropriate vehicle for bringing this case because that there is a "conflict between the class representative and the absent class members" and a question as to "whether the representative party is fairly and adequately representing the class."  Opp. at 2.  The Court disagrees, and finds, for the reasons noted above, that the class representative and class counsel are seeking a resolution that would allow efficient resolution of the Class Members' NYLL claims on the merits.  Moreover, for the reasons set forth in its summary judgment Order, the Court finds that the Class still satisfies the numerosity, commonality, predominance, and superiority requirements for its minimum-wage, overtime, and spread-of-hours claims.  Fed. R. Civ. P. 23(a)(2); *see* Order at 4-13.  Any individualized-damages issues as to those claims are readily resolved through straightforward and mechanical calculations and therefore do not predominate over the Class's commonalities.  *Compare Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 126 (S.D.N.Y. 2014) (finding predominance requirement satisfied where individualized-damages issues involved "straightforward, mechanical" calculations), *with* Dkt. 145 at 2 (proposing proportional allocation of damages among class members).  Allowing Class Members to bring their NYLL Section 195 claims in state court does not in any way disturb the

Court's prior holding on class certification, which did not depend on the NYLL claims to find that common issues predominated across the Class. Therefore, having already entered judgment in favor of Plaintiffs and Class Members on their underpayment claims, the Court declines to disturb its previous Order by now decertifying the Class.

The Court therefore DENIES Defendants' motion for decertification and enters final judgment in favor of Plaintiffs on the minimum-wage, overtime, and spread-of-hours claims, consistent with the Court's summary judgment Order and Plaintiffs' proposed per–Class Member breakdown. Dkt. 145-2.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to voluntarily dismiss the remaining NYLL Section 195 claims without prejudice is GRANTED, and Defendants' motion to decertify the class is DENIED. The Court will enter the proposed judgment at Dkt. 145-2 that includes the allocation among Class Members, and Plaintiffs are ordered to issue the notice to Class Members set forth at Dkt. 145-1.

Dated: November 13, 2024
        New York, New York

SO ORDERED.

_Jennifer Rochon_
JENNIFER L. ROCHON
United States District Judge

9

A-534

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
**NINO MARTINENKO, on behalf of**                              **CASE NO. 22 CV 518 (JLR)**
**herself and others similarly situated,**

        **Plaintiff,**

    **v.**

**212 STEAKHOUSE, INC., and**
**NIKOLAY VOLPER,**

        **Defendants.**

----------------------------------------------------------x

**{proposed} JUDGMENT**

    It is hereby **ORDERED, ADJUDGED, AND DECREED**, that the Clerk of Court shall

enter judgment as follows:

    1.    Pursuant to the Court's Opinion and Order dated September 24, 2024, judgment

shall be entered against Defendants 212 Steakhouse, Inc. and Nikolay Volper, jointly and severally,

and in favor of the class in the total amount of $251,269.84 as follows: i. The class is awarded

unpaid minimum wages under the NYLL without a tip credit allowance in the total amount of

$96,608.35; ii. The class is awarded unpaid overtime wages under the NYLL without a tip credit

allowance in the total amount of $2,530.75; iii. The class is awarded unpaid spread-of-hours

premiums under the NYLL where applicable in the total amount of $2,388; iv. The class is awarded

liquidated damages under the NYLL in the total amount of $101,527.10; v. Prejudgment interest

is awarded from June 18, 2019 to September 25, 2024, at a rate of 9% on the total unpaid wages

of $101,527.10 in the amount of $48,215.64.  The judgment of $251,269.84 shall be allocated

among the Class Members as set forth in Exhibit A to this Judgment.

    2.    If the judgment is not entirely paid within 90 days of judgment, or 90 days after the

expiration of time to appeal and no appeal is then pending, whichever is later, the total amount of

judgment shall automatically increase by 15 percent. The Court also awards post-judgment interest pursuant to 28 U.S.C. § 1961.

    3.    For the reasons stated in the Court's Opinion and Order dated September 24, 2024, Plaintiff Huk's NYLL Section 195 wage notice and statement claims are dismissed without prejudice for lack of standing.

    4.    The Court grants Plaintiffs' request to dismiss Plaintiff Martinenko's and all remaining class members' NYLL Section 195 wage notice and statement claims without prejudice.

The Clerk of Court is respectfully requested to close the case.

Dated: November 14, 2024
      New York, New York

By: _____
    Hon. Jennifer L. Rochon, U.S.D.J.

2

A-536

**Judgement Allocation Among Class Members**

| Class Member | Share of judgment |
|---|---|
| Angel Hernandez | $13,941.55 |
| Benny Torres | $150.87 |
| Charles Gabriel | $3,214.97 |
| Cora Bethea | $4,989.41 |
| Dagmara Huk | $20,651.32 |
| Damian Zabrodin | $3,396.33 |
| Danny Birlandeau | $4,613.97 |
| Gisely Rosa | $536.31 |
| Haley Melendez | $1,321.35 |
| Hector Conoz | $7,987.01 |
| Iroel Vazquez | $1,343.39 |
| Jake Willis | $2,515.20 |
| Jamie Tovar | $10,448.24 |
| Jose Garcia | $64.59 |
| Jose Pena | $528.98 |
| Juan Aguilar | $11,342.60 |
| Juan Deluna | $3,731.74 |
| Kelsey Foley | $6,081.58 |
| Keya Rocaverte | $608.35 |
| Lytchez Lazarov | $28,566.20 |
| Mark Smith | $10,509.59 |
| Michelle Marquez | $456.73 |
| Miguel Torress | $7,489.40 |
| Nino Martinenko | $54,149.63 |
| Noel Lora | $19,862.55 |
| Radzivon Babaniyazav | $8,126.97 |
| Raul Romero | $3,827.93 |
| Shonda Williams | $220.03 |
| Stefana Marzano | $4,327.97 |
| Tela Wittig | $3,344.59 |
| Tristian Collazzo | $9,935.74 |
| Vivian Peng | $2,984.75 |
| **Total:** | **$251,269.84** |

A-537

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NINO MARTINENKO, on behalf of herself and
others similarly situated,

                             Plaintiffs,

                  -against-

212 STEAKHOUSE, INC., and NIKOLAY
VOLPER,

                             Defendants.

---

Case No. 1:22-cv-00518 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Named Plaintiff Nino Martinenko ("Martinenko" or "Plaintiff"), individually and on behalf of others similarly situated, brought this action against Defendants 212 Steakhouse, Inc., and Nikolay Volper (together, "Defendants") for violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Dkt. 1 ("Compl."). Plaintiff Dagmara Maja Huk ("Opt-in Plaintiff Huk" and, together with Named Plaintiff Martinenko, "Plaintiffs") opted in to the suit on May 16, 2022. Dkt. 32. On September 24, 2024, this Court denied Defendants' motion to decertify the Rule 23 Class and granted summary judgment on Named Plaintiff Martinenko's and Opt-in Plaintiff Huk's FLSA claims, and on all Class Members' NYLL minimum-wage, overtime, and spread-of-hours claims. Dkt. 141. However, the Court dismissed Opt-in Plaintiff Huk's NYLL Section 195 claims for lack of standing. *Id.* On November 13, 2024, the Court granted Plaintiffs' request to voluntarily dismiss Named Plaintiff Martinenko's and Class Members' outstanding NYLL Section 195 wage notice and wage statement claims without prejudice and entered final judgment in Plaintiffs' favor. Dkt. 153 ("Opinion and Order"); Dkt. 154 (the "Judgment.").

Plaintiffs now move for attorneys' fees and costs from Defendants under the fee-shifting provisions of the FLSA and NYLL in the amount of $223,958.28. For the reasons set

forth below, Plaintiffs' motion is GRANTED in part.  The Court awards Plaintiffs $223,458.28 in fees and expenses.

## BACKGROUND

The Court assumes the parties' familiarity with the underlying facts.  Briefly stated, Martinenko and Huk were former employees at 212 Steakhouse, a small restaurant in midtown Manhattan.  Dkt. 132 ("R&R") at 2-3.  Martinenko commenced this class and collective action on January 20, 2022.  *See generally* Compl.  She asserted various violations of the NYLL and FLSA against Defendants, including: (1) paying employees pursuant to a tip credit without providing the notice required under New York law; (2) failing to pay overtime premiums; (3) failing to pay spread-of-hours premiums; and (4) failing to provide employees with wage notices and wage statements.  Compl. ¶¶ 23-31.

On April 26, 2022, the Court granted Martinenko's motion for conditional class certification of her FLSA claim and on May 16, 2022, Huk joined the action as an opt-in plaintiff.  Dkts. 30, 32.  The Court subsequently certified a Rule 23 class consisting of "all tipped employees — servers, bussers, and bartenders — who worked for Defendants at any time on or after January 20, 2016 at 212 Steakhouse."  Dkt. 92 at 3.

On November 1, 2022, Martinenko moved under Federal Rule of Civil Procedure ("Rule") 37 for sanctions against Defendants for various discovery deficiencies.  Dkt. 61.  On April 28, 2023, this Court granted Martinenko's motion and imposed sanctions against Defendants, including an award for attorneys' fees and costs in the amount of $28,805.  Dkt. 93 at 3-4.

On November 16, 2024, Plaintiffs filed a motion for summary judgment on liability and damages as to all Class Members' claims.  Dkts. 113-18.  Defendants in turn moved to decertify the Rule 23 Class and to dismiss the NYLL Section 195 claims.  Dkts. 111-12.  On

2

A-539

August 13, 2024, Magistrate Judge Lehrburger issued a Report and Recommendation ("R&R") recommending that the Court grant summary judgment on the Class Members' minimum wage, overtime, and spread-of-hours claims. Dkt. 132 at 72-73. However, the R&R recommended dismissing Plaintiff Huk's NYLL Section 195 claims and denying both Plaintiffs' and Defendants' motions as they pertained to Plaintiff Martinenko's and the Class' NYLL Section 195 claims, finding that there was a factual dispute as to whether Martinenko and the Class had suffered an injury-in-fact for those claims. *Id.* at 61-70. On September 24, 2024, over objections from both parties, the Court adopted the R&R in its entirety. Dkt. 141 at 2. The Court therefore ordered Defendants to pay the Class $101,527.10 in compensatory damages, $101,527.10 in liquidated damages, and prejudgment interest from June 18, 2019, at a rate of 9 percent on the total unpaid wages of $101,527.10 to the entry of judgment, in the amount of $48,215.64. *Id.* at 26-27. The Clerk of Court accordingly entered judgment on behalf of the Class in the amount of $251,269.84. Dkt. 154.

On October 15, 2024, Plaintiffs moved pursuant to Federal Rules of Civil Procedure 41(a)(2) and 23(e) to voluntarily dismiss without prejudice the outstanding NYLL Section 195 claims. Dkt. 145. In response, Defendants moved for the claims to be dismissed with prejudice and renewed their motion to decertify the Class. Dkt. 147. On November 13, 2024, the Court granted Plaintiffs' request to voluntarily dismiss Plaintiff Martinenko's and Class Members' outstanding wage notice and wage statement claims without prejudice and denied Defendants' renewed motion to decertify the class. Dkt. 153 at 2.

On October 1, 2024, Plaintiffs sought and received an extension of the deadline to file a motion for attorneys' fees and costs related to the Judgment. Dkts. 143, 144. On November 8, 2024, Plaintiffs filed their motion for attorneys' fees and costs. Dkt. 151 ("Br."). On

November 22, 2024, Defendants filed their opposition, Dkt. 155 ("Opp.") and on December 5, 2024, Plaintiffs filed their reply, Dkt. 160 ("Reply").

## LEGAL STANDARD

"Under both the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), prevailing Plaintiffs are entitled to an award of reasonable attorney's fees and costs." *Solano v. Andiamo Café Corp*., No. 19-cv-03264 (SN), 2021 WL 2201372, at *1 (S.D.N.Y. June 1, 2021); *see* 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a) (McKinney 2024). "The fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs." *Fisher v. SD Prot. Inc*., 948 F.3d 593, 600 (2d Cir. 2020). But "the determination of fees should not result in a second major litigation," *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quotation marks and citation omitted), and a district court enjoys "considerable discretion in determining what constitutes reasonable attorney's fees in a given case . . . ." *Holick v. Cellular Sales of N.Y., LLC*, 48 F.4th 101, 105 (2d Cir. 2022) (citation omitted). "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal . . . is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox*, 563 U.S. at 838.

## DISCUSSION

Because the Court found that Defendants violated the FLSA and the NYLL, and Plaintiffs obtained a judgment on behalf of the Class on their NYLL claims, Plaintiffs are entitled to reasonable attorneys' fees and costs. *See, e.g.*, *Solano*, 2021 WL 2201372, at *1-3 (granting reasonable attorneys' fees and costs where Plaintiffs prevailed on FLSA and NYLL claims). Plaintiffs seek $219,807.50 in attorney and paralegal fees, and $4,150.78 in costs. Br. at 1; Reply at 10.

The Court will first address Plaintiffs' request for attorney and paralegal fees and then the request for costs.

### I.  Attorneys' Fees

The Second Circuit applies the lodestar analysis to determine whether the attorneys' fees sought are reasonable.  *Millea v. Metro-N. R.R. Co*., 658 F.3d 154, 166 (2d Cir. 2011).  The lodestar method determines a "presumptively reasonable fee" that is the "product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Id*. (citation omitted).  "Courts determine the 'presumptively reasonable fee' for an attorney's services by looking to 'what a reasonable, paying client would be willing to pay . . . who wishes to pay the least amount necessary to litigate the case effectively.'"  *Solano*, 2021 WL 2201372, at *1 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 (2d Cir. 2007)).  "Requested fees must be supported 'with contemporaneous time records establishing for each attorney for whom fees are sought, the date on which work was performed, the hours expended, and the nature of the work done.'"  *Id.* at *1 (quoting *Annuity, Welfare & Apprenticeship Skill Imp. & Safety Funds of Int'l Union of Operating Engr's, Local 15 v. Integrated Structures Corp*., No. 12-cv-00436 (LGS) (KNF), 2013 WL 269644, at *7 (S.D.N.Y. June 13, 2013), *report and recommendation adopted*, 2013 WL 3684933 (S.D.N.Y. July 12, 2013)).

### A.  Reasonable Hourly Rate

The Court first evaluates the hourly rates charged by Plaintiffs' counsel.  The Second Circuit's "forum rule" generally requires use of the "hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee."  *Bergerson v. N.Y. State Off. of Mental Health*, 652 F.3d 277, 290 (2d Cir. 2011) (citation omitted).  "A court may determine the reasonable hourly rate by relying both on 'its own knowledge of

comparable rates charged by lawyers in the district,' as well as on 'evidence proffered by the parties.'" *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010) (citation omitted) (first quoting *Morris v. Eversley*, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2005); and then quoting *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005)). However, this analysis is ultimately "case-specific," and courts "consider a variety of factors in assessing the reasonableness of a rate, including what are known as the *Johnson* factors." *H.W. v. N.Y.C. Dep't of Educ.*, No. 21-cv-08604 (JLR), 2023 WL 5529932, at *4 (S.D.N.Y. Aug. 28, 2023). The *Johnson* factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorneys' customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* (quoting *Lilly v. City of New York*, 934 F. 3d 222, 228 (2d. Cir. 2019)). A court "need not recite and make separate findings as to all twelve *Johnson* factors, provided that it takes each into account in setting the attorneys' fee award." *Id.* at *5 (citation omitted). The Court has considered all the *Johnson* factors here.

The law firm of Joseph & Kirschenbaum LLP represented Plaintiffs in this matter. Class Counsel has substantial experience litigating wage and hour disputes in this District, including as such disputes pertain to the food services industry. *See* Dkt. 152 ("DiGiulio Decl.") ¶¶15-17 (citing cases). Plaintiffs are seeking hourly rates of $500 per hour for Managing Partner D. Maimon Kirschenbaum and Partner Denise A. Schulman; $350 per hour for senior associate Michael DiGiulio, and $125 per hour for the paralegals and administrative assistants on the matter. Br. at 5. Defendants "take no issue with the rates requested by

Plaintiffs," Opp. at 3 n.3, and the Court deems the requested rates reasonable. That is consistent with the Court's previous ruling on Plaintiffs' motion for attorney fees in connection with the sanctions motion in this case. Dkt. 88 at 31-34 (report and recommendation finding rates of $500 per hour for Schulman and $350 per hour for DiGiulio reasonable); Dkt. 93 (adopting report and recommendation and awarding fees).

Moreover, Courts in this District routinely grant comparable attorneys' fees, including in cases that involved Class Counsel. *See, e.g.*, *Dougherty v. 2With Deli Corp.*, No. 23-cv-03496 (ER), 2023 WL 8432866, at *2 (S.D.N.Y. Dec. 5, 2023) (finding hourly rate of $500 per hour for Kirschenbaum and Schulman reasonable). Admittedly, Class Counsel's requested rates are higher than those previously granted in routine wage and hour disputes such as this one, but the Court nevertheless finds $500 reasonable here, especially when accounting for inflation and increases in attorneys' hourly rates over time. *See, e.g.*, *Rodriguez v. 3551 Realty Co.*, No. 17-cv-06553 (WHP), 2017 WL 5054728, at *3 (S.D.N.Y. Nov. 2, 2017) (finding that hourly rate of $450 for partners is "somewhat higher than the presumptively reasonable rates in this District [in 2017]," but "not beyond the pale"); *see also Champagne v. Columbia Dental P.C.*, No. 18-cv-01390 (VLB), 2022 WL 951687, at *5-6 (D. Conn. Mar. 30, 2022) (discussing appropriateness of increasing attorneys' hourly rates due to lapse of time and cumulative increases in the cost of living). Indeed, in *Zivkovic v. Laura Christy LLC*, Judge Woods observed that a $500 rate was higher than the rate awarded in other wage and hour disputes, but nevertheless held that it was an appropriate rate for Kirschenbaum and Schulman given their significant employment law experience. Dkt. 152-5 at 15-16 (Transcript of Conference at 15:18-16:24, *Zivkovic*, No. 17-cv-00553 (June 15, 2022)). In so ruling, Judge Woods acknowledged that the use of case precedents in establishing appropriate rates for counsel has the effect of "anchor[ing] rates in the past," and

that an upward adjustment was therefore appropriate. *Id.* at 15-16 (Transcript of Conference at 16:20-17:8, *Zivkovic*, No. 17-cv-00553 (June 15, 2022)). This Court agrees with Judge Woods's reasoning.

With respect to DiGiulio, the Court holds that the rate of $350 per hour is also reasonable. Mr. DiGiulio graduated from law school in 2014 and joined Jospeh & Kirschenbaum LLP in 2020. DiGiulio Decl. ¶ 8. His requested rate is within the range approved by other courts for associates. *See, e.g.*, *Lopez v. Emerald Staffing, Inc.*, No. 18-cv-02788 (SLC), 2020 WL 915821, at *13 (S.D.N.Y. Feb. 26, 2020) (noting that courts in this District generally award between $300 to $400 per hour for wage-and-hour attorneys); *Rodriguez*, 2017 WL 5054728, at *3 (approving hourly rate of $350 for associates).

Finally, with respect to support staff and paralegals, the Court finds the hourly rate of $125 reasonable. Indeed, "[h]ourly rates for paralegals of $100 to $150 per hour are typical for awards in this [D]istrict." *Diaz-Caballero v. Midtown Catch Corp.*, No. 18-cv-04672 (AT), 2020 WL 8880944, at *2 (S.D.N.Y. Apr. 15, 2020) (citation omitted). Courts approve similar rates for legal assistants. *See, e.g.*, *Dougherty*, 2023 WL 8432866, at *2 (approving hourly rate of $125); *Ravina v. Columbia Univ.*, No. 16-cv-02137 (RA), 2020 WL 1080780, at *7 (S.D.N.Y. Mar. 6, 2020) (approving hourly rate of $150 for legal assistants).

## B. Reasonably Expended Hours

The Court next considers whether the hours expended by Class Counsel were reasonable. When evaluating the reasonableness of hours billed, courts must make a "conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Haley v. Pataki*, 106 F.3d 478, 484 (2d Cir. 1997) (quoting *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) (per curiam)). "[T]he critical inquiry is 'whether, at the time the work was performed, a

reasonable attorney would have engaged in similar time expenditures.'" *Samms v. Abrams*, 198 F. Supp. 3d 311, 322 (S.D.N.Y. 2016) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).  "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded," and "in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quotation marks and citation omitted).  To make this determination, a court reviews "contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Id.*

The Court has reviewed the time entries submitted by Class Counsel and deems them nonduplicative and reasonable. *See generally* Dkts. 152-1, 161-1, 161-2.  Plaintiffs seek reimbursement for 470.6 hours of attorney time and 114.3 hours of paralegal/administrative assistant time since the commencement of this case in January 2022. *See* Dkts. 152, 161-2. In the nearly three years that this case has been pending, class counsel has taken and defended depositions; briefed a motion for FLSA collective certification; briefed a motion for Rule 23 class certification; completed discovery on a class-wide basis; engaged in settlement efforts; opposed a motion to decertify the Rule 23 Class and fully briefed a motion for summary judgment; and obtained a class-wide judgment on the minimum-wage, overtime, and spread-of-hours claims.  Moreover, Class Counsel represents that they removed more than fifty hours of entries that related solely to Plaintiffs' and the Class's NYLL Section 195 claims (which Plaintiffs voluntarily dismissed) or that were otherwise duplicative, vague or excludable. DiGuilio Decl. ¶¶ 19; Br. at 11.  Class Counsel further represents that they also removed time entries for which the Court previously awarded it fees in connection with the sanctions motion

in this case, and that a half rate was applied for travel time and wait times.  DiGuilio Decl. ¶¶ 20-21.

Defendants raise three primary objections to Plaintiffs' request for attorneys' fees. Defendants contend that (1) the fees sought should be reduced by at least fifty percent to reflect that Plaintiffs did not prevail on their NYLL Section 195 claims; (2) to the extent the fees sought include time spent on damages calculations, the fees should be reduced for time spent on damages calculations for the NYLL Section 195 claims and on damages for non-Class members; and (3) the Court should exclude time expended on the sanctions motion in this case, for which Plaintiffs previously received an award of attorneys' fees.  *See generally* Opp.

With respect to Plaintiffs' NYLL Section 195 claims, Defendants argue that those claims "constituted a significant effort in this case and, clearly more than the modest reduction of 50 attorney hours reflected in the attorney affidavit in support of the fee petition."  Opp. at 2.  Defendants assert that because Plaintiffs did not prevail on their wage notice and wage statement claims, and because those claims carried greater damages than the claims on which Plaintiffs prevailed, the attorneys' fees award should be reduced by at least 50 percent.  Opp. at 4.  Defendants point to the significant expenditures of time on the wage notice and wage statement claims throughout the course of this litigation, including in connection with the parties' cross-motions for summary judgment, Defendants' motion for decertification, and related briefs and letters; the drafting of the complaint; discovery requests; and deposition questions.  *Id*. at 6.  Plaintiffs maintain that they have removed all time entries that were related "solely" to the NYLL Section 195 claims, and that Plaintiffs are entitled to recover fees for non-severable time spent on those claims.  Reply at 1-2.  Plaintiffs further argue that a 50 percent reduction is, in any event, unwarranted, and that the Court should apply at most a

10 percent reduction.  *Id.* at 5.  In so arguing, Plaintiffs refute Defendants' characterization of

the time expended on litigating the NYLL Section 195 claims, including Defendant's

assertion that the NYLL Section 195 claims "'drove the discussions'" "'[i]n every settlement

discussion and conference with the court up to the dismissal of the New York Labor Law

Section 195 claims."  Reply at 6-8 (alteration in original) (quoting Opp. at 5).

In a NYLL or FLSA case, "where the plaintiff achieved only limited success, the

district court should award only that amount of fees that is reasonable in relation to the results

obtained."  *Coker v. Goldberg & Assocs., P.C.*, No. 23-cv-01803 (JLR), 2024 WL 2274035, at

*2 (S.D.N.Y. May 20, 2024) (quoting *Holick v. Cellular Sales of N.Y., LLC*, 48 F.4th 101, 106

(2d Cir. 2022)).  "A district court's assessment of the degree of success achieved in a case is

not limited to inquiring whether a plaintiff prevailed on individual claims," and "[b]oth the

quantity and quality of relief obtained, as compared to what plaintiff sought to achieve . . . are

key factors in determining the degree of success achieved."  *Barfield v. N.Y.C. Health &*

*Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quotation marks and citations omitted).  This

extends to claims that are voluntarily dismissed — even where a plaintiff "strategically

decide[s] to withdraw [their] claims, the fact remains that [they] voluntarily withdrew them

and therefore did not prevail on them."  *Coker*, 2024 WL 2274035, at *3; *see also Green v.*

*Torres*, 361 F.3d 96, 99-100 (2d Cir. 2004) (affirming district court's reduction of fee award

based on claims that plaintiff voluntarily dismissed before trial). "When a plaintiff succeeds

on some claims but not others, courts must also consider whether the claims brought are based

on different facts and legal theories, or if the claims involve a common core of facts or [are]

based on related legal theories."  *Holick*, 48 F.4th at 106  (alteration in original) (internal

quotation marks and citation omitted).  "Attorney's fees may be awarded for unsuccessful

claims as well as successful ones [] where they are inextricably intertwined and involve a

11

common core of facts or are based on related legal theories." *Id.* (alteration in original) (quoting *Quarantino v. Tiffany & Co.*, 165 F.3d 422, 425 (2d Cir. 1999)).

Here, the Court dismissed Huk's wage statement and wage notice claims for a lack of standing and granted Plaintiffs' motion to voluntarily dismiss Martinenko's and Class Members' NYLL Section 195 claims. Plaintiffs otherwise prevailed, however, on class certification and class-wide claims for unpaid wages, liquidated damages, interest, and individual liability. Dkts. 141, 154. Moreover, Class Counsel represents that they excluded any time related "solely" to the NYLL Section 195 claims, and indeed, Class Counsel's time records do not reflect, for instance, drafting Plaintiffs' objections to the R&R, which solely addressed Plaintiffs' and Class Members' standing for their NYLL § 195 claims. *See* Schulman Decl. ¶ 8; Dkt. 152-1 at 24 (reflecting only review of and drafting responses to Defendants' R&R objections).[1] The Court agrees with Plaintiffs that to the extent certain time entries still reflect marginal time expended by Class Counsel toward litigation of the NYLL Section 195 claims, that time is non-severable, and Plaintiffs are therefore entitled to recover for it. District courts often find statutory wage-and-hour claims to be intertwined with one another because they arise from a "common core of facts," that is, employees' employment with the defendant-employer. *See Coker*, 2024 WL 2274035, at *3 (finding that plaintiff's "voluntarily dismissed NYLL overtime and spread-of-hours claims [were] sufficiently intertwined with Plaintiff's successful FLSA unpaid-overtime claim, as the claims involved common factual and legal issues about the amount and nature of Plaintiff's work and her compensation for that work"); *see also Holick,* 48 F.4th at 108 (finding that plaintiffs' wage-

---

[1] To the extent there are generalized entries pertaining to the R&R, for instance, "draft R&R sections," Dkt. 152-1 at 24, these time entries post-date Plaintiffs' filing of their objections to the R&R, and therefore necessarily refer to the drafting of Plaintiffs' opposition to Defendants' objections to the R&R.

and-hour statutory claims "clearly ar[o]se from a common nucleus of operative fact regarding their time working for [defendant]"); *Bond v. Welpak Corp.*, No. 15-cv-02403 (JBW) (SMG), 2017 WL 4325819, at *6 (E.D.N.Y. Sept. 26, 2017) (finding claims relating to failure to pay overtime, failure to pay wages in a timely manner, and failure to provide wage notices arose from the same common core of facts); *Cabrera v. Schafer*, No. 12-cv-06323 (ADS) (AKT), 2017 WL 9512409, at *8-9 (E.D.N.Y. Feb. 17, 2017), *report and recommendation adopted*, 2017 WL 1162183 (E.D.N.Y. Mar. 27, 2017) (holding that claims related to overtime wages, spread-of-hours wages, and proper wage notices were interrelated).

The same is true here. As Plaintiffs argue, Defendants' wage statements and wage notices would have been relevant to Defendants' liability and subject to discovery even if Plaintiffs had not sought relief under NYLL Section 195. The wage statements and wage notices are highly relevant to establishing Plaintiffs' and Class Members' hours worked and their pay rates — which in turn bear directly upon Plaintiffs' and Class Members' minimum wage, overtime, and spread-of-hours claims. The content of Defendants' wage notices and wage statements is also relevant to Plaintiffs' and Class Members' minimum-wage claims insofar as those claims turn on whether 212 Steakhouse employees received adequate notice of Defendants' application of a tip credit.[2] Therefore, because Plaintiffs' and Class Members' wage notice and wage statement claims are intertwined with the unpaid-wages claims on

---

[2] This Court previously held that legally compliant wage notice requirements would not necessarily have satisfied Defendants' obligation to provide adequate notice of their tip credit to employees. Dkt. 141 at 23-24. But, as Plaintiffs note, "it is of course possible for an employer to provide employees with a single notice that satisfies all of the requirements of 12 N.Y.C.R.R. § 146-2.2 and NYLL § 195." Reply at 4 n.3. Therefore, had the wage notices provided legally compliant notice of the tip credit, Plaintiffs' and Class Members' minimum-wage claims would have failed as a matter of law. At a minimum, wage statements and wage notices would have been evidence relevant to — even if not necessarily dispositive of — Plaintiffs' and Class Members' notice of a tip credit.

which Plaintiffs prevailed, Class Counsel is entitled to recover attorneys' fees for the time they directed thereto.

*Poulos v. City of New York* which Defendants cite in support of a 50 percent reduction of the requested fees, *see* Opp. at 8, is readily distinguishable.  No. 14-cv-03023 (LTS) (BCM) 2018 WL 3750508 (S.D.N.Y. July 13, 2018), *report and recommendation adopted*, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018).  *Poulos* did not address inter-related claims like those here; rather, in *Poulos*, the plaintiff sought attorneys' fees as against only one of the defendants.  *Id.* at *11.  The Court held that the defendant should not be responsible for fees related either to work undertaken on behalf of other defendants or in support of the case as a whole.  *Id.* at *13  Moreover, the court in *Poulos* found that many of counsel's entries were too "vague," referring, for instance, only to "review order" or "review file," and therefore recommended that a 50 percent reduction was warranted.  *Id*.  Here, the Court finds that Class Counsel's entries are sufficiently clear and precise to allow a determination as to the reasonableness of the fees requested.

Moving next to time expended on damages calculations, Class Counsel represents that they recreated the time to calculate the NYLL Section 195 damages, and that it took forty-seven minutes to do so.  Dkt. 161 ¶ 11.  As for the calculation of unpaid wages for Adrian Pizarro, who was ultimately found not to be a Class Member, Class Counsel represents that any time expenditure would have been "*de minimis*" in the context of the overall damage calculation.  *Id.* ¶ 10.  Counsel also represents that any time spent calculating NYLL Section 195 damages for Martinenko and Huk at the summary judgment stage was likewise *de minimis*, because they were both entitled to recover maximum penalties.  *Id.* ¶ 16.  The Court therefore subtracts one hour from Schulman's time expended, for a total of 257.4 hours (inclusive of two hours of travel time).

14

Finally, the Court likewise rejects Defendants' request that the Court reduce the award of fees because it includes time related to the sanctions motion for which Plaintiffs were already awarded attorneys' fees. Opp. at 8-9. It is not clear which time entries Defendants are referencing in their Opposition. Nonetheless, having cross-referenced the dates and descriptions identified by Defendants, against the time sheets submitted in support of Plaintiffs' motion for attorneys' fees in connection with the sanctions motion, the Court has confirmed that Plaintiffs were not previously compensated for the fees sought here. *Compare* Opp. at 8-9 (citing time entries submitted in connection with the present motion), *with* Dkts. 63-15, 69-1 (listing time entries submitted in connection with fees request for sanctions motion); *see also* Dkt. 161-1 (time entries related to sanctions submitted in connection with the present motion). Indeed, at least six of the entries cited by Defendants — the March 27, March 29, March 30, and April 3, April 4, and April 17, 2023 entries — relate to preparing for and attending the sanctions hearing and reviewing the sanctions decision, and therefore could not have been included in Plaintiffs' sanctions motion and fee request, for which Plaintiffs completed briefing on November 22, 2022. Dkts. 68, 69. Moreover, at least three of the 2022 entries relate to discovery in general, or to a combination of sanctions and non-sanctions topics, and therefore would not necessarily have been compensable on the sanctions motion. *See* Dkt. 152-1 at 5, 7; Dkt. 161-1 at 1. Plaintiffs were not previously compensated for any of this time and are therefore now entitled to fees for the time they expended; Defendants cite no authority in support of a contrary holding.

## II.    Expenses

Finally, Plaintiffs seek to recover $4,150.78 in expenses for, among other things, court filings, process servers, depositions, mailings, and court-transcript orders over the course of the more than two years that this action was pending. Br. at 12.

Both the FLSA and NYLL provide for the recovery of reasonable costs. *See* 29 U.S.C. § 216(b); N.Y. Lab Law § 663(1). "Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d. Cir. 1998) (alteration adopted) (citation omitted). These include, for instance, charges for "photocopying, binding, shipping, travel, and filing fees." *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 37-38 (N.D.N.Y. 2015). The Court has reviewed the disbursement records and receipts submitted by Class Counsel and has determined that the expenses charged are compensable.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part Plaintiffs' motion for attorneys' fees, and expenses. Plaintiffs are hereby awarded $223,458.28 in fees and expenses.

Dated: December 23, 2024
     New York, New York

SO ORDERED.

*Jennifer Rochon*

JENNIFER L. ROCHON
United States District Judge

A-553

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| NINO MARTINENKO, on behalf of herself and others similarly situated, | : | Case No.: 22-CV-518 (JLR) (RWL) |
| | : | |
| Plaintiff, | : | |
| | : | **NOTICE OF APPEAL** |
| -against- | : | |
| | : | |
| 212 STEAKHOUSE, INC., and NIKOLAY VOLPER, | : | |
| | : | |
| Defendants. | : | |

NOTICE IS HEREBY GIVEN THAT 212 Steakhouse, Inc. and Nikolay Volper, defendants in the above-captioned action ("Defendants"), hereby appeal to the United States Court of Appeals for the Second Circuit from the entirety of the Final Judgment entered in this action on November 14, 2024 ("Final Judgment"). Defendants also appeal the Court's Judgment entered in this action on September 25, 2024 ("Judgment"). Specifically, Defendant appeals from the Judgment as to the Court's denial of Defendants motions to decertify the Rule 23 class and the grant of summary judgment to Plaintiffs on the New York Labor Law claims, as specified in Exhibit B hereto.

Attached hereto as Exhibit A is a true and correct copy of the Final Judgment. Attached hereto as Exhibit B is a true and correct copy of the Judgment.

Date    December 11, 2024
New York, New York

Jonathan W. Greenbaum
COBURN GREENBAUM & EISENSTEIN PLLC
Second Floor
1710 Rhode Island Avenue, NW
Washington, DC. 20036

A-554

Telephone No.:  202.744.5003
Facsimile No.:  1866.561.9712
Email:  jg@coburngreenbaum.com

**NEW YORK ADDRESS:**

99 Hudson Street
Fifth Floor
New York, NY  10013

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Notice of Appeal was filed this 11th day of December 2024 via ecf.

Jonathan W. Greenbaum

A-555

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
**NINO MARTINENKO, on behalf of**       **CASE NO. 22 CV 518**
**herself and others similarly situated,**

    **Plaintiff,**

      **v.**

**212 STEAKHOUSE, INC., and**
**NIKOLAY VOLPER,**

    **Defendants.**
-------------------------------------------------------x

**NOTICE OF CROSS-APPEAL**

Notice is hereby given that Opt-In Plaintiff Dagmara Huk cross-appeals to the United

States Court of Appeals for the Second Circuit from the Order entered on September 24, 2024, the

Judgments entered on September 25, 2024 and November 14, 2024, and all antecedent and

subsequent orders, to the extent that those orders and judgments dismissed Opt-In Plaintiff Huk's

N.Y. Lab. L. § 195 claims for lack of standing.

Dated: New York, New York           JOSEPH & KIRSCHENBAUM LLP
       December 12, 2024

                              /s/ Denise A. Schulman
                              D. Maimon Kirschenbaum
                              Denise A. Schulman
                              Michael DiGiulio
                              32 Broadway
                              Suite 601
                              New York, NY 10004
                              Tel: (212) 688-5640

                              *Attorneys for Plaintiff, Opt-In Plaintiff, and*
                              *the Class*

A-556

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| NINO MARTINENKO, on behalf of herself and others similarly situated, | : | Case No.: 22-CV-518 (JLR) (RWL) |
| | : | |
| Plaintiff, | : | |
| | : | **AMENDED NOTICE OF** |
| | : | **APPEAL** |
| -against- | : | |
| | : | |
| 212 STEAKHOUSE, INC., and NIKOLAY VOLPER, | : | |
| | : | |
| Defendants. | : | |

NOTICE IS HEREBY GIVEN THAT 212 Steakhouse, Inc. and Nikolay Volper, defendants in the above-captioned action ("Defendants"), hereby files this amended appeal to the United States Court of Appeals for the Second Circuit from the entirety of the Final Judgment entered in this action on November 14, 2024 ("Final Judgment"). Defendants also appeal the Court's Judgment entered in this action on September 25, 2024 ("Judgment"). Specifically, Defendant appeals from the Judgment as to the Court's denial of Defendants motions to decertify the Rule 23 class and the grant of summary judgment to Plaintiffs on the New York Labor Law claims, as specified in Exhibit B hereto.

Attached hereto as Exhibit A is a true and correct copy of the Final Judgment. Attached hereto as Exhibit B is a true and correct copy of the Judgment.

NOTICE IS ALSO HEREBY OF GIVEN THAT Defendants appeal the Court's Opinion and Order on attorney's fees entered December 23, 2024, and attached hereto as Exhibit C.

Date    December 30, 2024
New York, New York

A-557

_____

Jonathan W. Greenbaum
COBURN GREENBAUM & EISENSTEIN PLLC
Second Floor
1710 Rhode Island Avenue, NW
Washington, DC. 20036
Telephone No.:  202.744.5003
Facsimile No.:  1866.561.9712
Email:  jg@coburngreenbaum.com

**NEW YORK ADDRESS:**

99 Hudson Street
Fifth Floor
New York, NY  10013

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Amended Notice of Appeal was filed this 30th day of December 2024 via ecf.

_____

Jonathan W. Greenbaum